BRETT A. AXELROD, ESQ.
Nevada Bar No. 5859
ANNE M. LORADITCH, ESQ.
Nevada Bar No. 8164
FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
Telephone: (702) 262-6899
Facsimile: (702) 597-5503
Email: baxelrod@foxrothschild.com
       aloraditch@foxrothschild.com
[Proposed] Counsel for Whitton Corporation

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| In re<br><br>WHITTON CORPORATION, a Nevada corporation,<br><br>           Debtor. | Case No. BK-S-10-32680-BAM<br><br>Chapter 11<br><br>**STIPULATION AND ORDER (I) AUTHORIZING THE DEBTORS TO USE CASH COLLATERAL, AND (II) GRANTING ADEQUATE PROTECTION TO BANK OF LAS VEGAS AND INDEPENDENT BANKERS BANK**<br><br>Hearing Date:   January 18, 2010<br>Hearing Time:   11:00 a.m. |

      Upon the consent of Whitton Corporation, a Nevada corporation ("<u>Whitton</u>" or "<u>Debtor</u>"), debtor and debtor-in-possession in the above captioned chapter 11 case (the "<u>Chapter 11 Case</u>"), and Bank of Las Vegas ("<u>BLV</u>" or "<u>Lender</u>," together with Debtor, the "<u>Parties</u>"), hereby enter into this

Stipulation and Order (I) Authorizing Debtor to Use Cash Collateral, and (II) Granting Adequate Protection to Bank of Las Vegas and Independent Bankers Bank ("Stipulation and Order" or "BLV Cash Collateral Order") and hereby agree as follows:[1]

**IT IS HEREBY STIPULATED BY THE UNDERSIGNED PARTIES THAT**:

A. On December 5, 2010 (the "Petition Date"), Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Nevada.

B. Debtor is operating its businesses and managing its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of title 11 of the United States Code (the "Bankruptcy Code").

C. No official committee of unsecured creditors or equity security holders has been appointed in the Chapter 11 Case.

D. This Court has jurisdiction over this Chapter 11 Case, pursuant to 28 U.S.C. §§ 157(b) and 1334.

E. Consideration of Stipulation and Order constitutes a core proceeding as defined in 28 U.S.C. § 157(b)(2).

F. The predicates for the relief granted herein are Sections 105, 361, 362 and 363 of the Bankruptcy Code and Rules 2002, 4001(b), 4001(d) and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and LR 4001 of the Local Rules of Bankruptcy Practice and Procedure for the United States District Court for the District of Nevada (the "Local Rules").

G. Venue of the Chapter 11 Case in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

H. Debtor is the owner of the following real property (the "BLV Property" or "BLV Real Property Collateral"): 27,363 square feet of flexible use and light industrial space located at 2475 West Cheyenne Avenue in North Las Vegas, Nevada 89032.

---

[1] Capitalized terms used, but not defined herein, shall have the meanings ascribed to such terms in the Omnibus Declaration (defined below) filed contemporaneously herewith.

I.  As more fully set forth in the Omnibus Declaration of Tom E. Hallett Filed in Support of Initial Pleadings ("Omnibus Declaration"), BLV, successor-in-interest to Black Mountain Community Bank ("Black Mountain") through merger completed in or around February 2010, and Whitton, as successor-in-interest to South Tech Cheyenne 2475, LLC, are parties to that certain secured loan agreement dated October 24, 2008, executed to finance the purchase of the BLV Real Property Collateral.

J.  Black Mountain, as lender, and South Tech Cheyenne 2475, LLC, as borrower, executed that promissory note dated October 24, 2008 (the "BLV Note"), which had an original principal amount of $2,740,000 (the "BLV Loan") at a fixed rate of 6.00%, subject to rate adjustment thereafter, with an original maturity date of October 24, 2010. Tom Hallett, Tonya Hallett, Tom E Hallett Separate Property Trust, and Affiliates (defined below) South Tech Partners, LLC and TEH Investments, LLC, are the guarantors on the BLV Note, which is secured by a deed of trust dated October 24, 2008 (the "BLV 2475 Deed of Trust") and an assignment of rents dated October 24, 2008 (the "BLV 2475 Assignment of Rents") in the BLV Property. On October 30, 2008, Black Mountain recorded the BLV 2475 Deed of Trust and the BLV 2475 Assignment of Rents in the Official Records, Clark County Recorder's Office, as Instrument No. 0004305 in Book 20081030 and Instrument No. 0004036 in Book 20081030, respectively. The BLV 2475 Deed of Trust and BLV 2475 Assignment of Rents secure the BLV Note by granting a security interest in all buildings, improvements and fixtures, easements, rights of way, appurtenances, water, water rights, ditch rights, all other rights, royalties and profits relating to the BLV Property and an absolute assignment of rents and profits from the BLV Property. Debtor's books and records indicate that approximately $2,714,213.05 remains outstanding on the BLV Note. All of the loan documents executed in connection with the BLV Loan, including, without limitation all of the documents referenced hereinabove and that certain Business Loan Agreement dated October 24, 2008, by and between Black Mountain, as lender, and South Tech Cheyenne 2475, LLC, as borrower, shall collectively be referred to as the "BLV Loan Documents."

K.  Pursuant to the terms of the BLV Loan Documents, BLV has security interests in and liens on the BLV Property to secure the obligations under the BLV Loan Documents and the borrower has assigned its rights to receive all rents derived from the BLV Property as well as any future leases

1  (the "BLV Rents") (all of the collateral described in the BLV Loan Documents including the BLV
2  Property and BLV Rents being the "BLV Prepetition Collateral").

3      L.    Prior to the Petition Date, one or more defaults of events of default occurred under the
4  BLV Loan Documents and Lender exercised its rights under the Loan Documents.

5      M.    On or about October 28, 2010, BLV commenced nonjudicial foreclosure proceedings in
6  Clark County, Nevada in connection with the BLV Real Property Collateral by recording a Notice of
7  Breach and Election to Sell Under Deed of Trust as Instrument No. 0000516 in Book 20101028 of the
8  official records of the Clark County Recorder's Office.

9      N.    Without prejudice to the rights of any other party, Debtor admits, stipulates, and agrees
10 that:

11     i)    as of the Petition Date, Debtor was indebted and liable to the Lender,
without defense, counterclaim or offset of any kind, in the following principal amount of
12 the BLV Loan: $2,714,213.05 plus interest on the note, fees and expenses (including any
reasonable attorneys' and advisors' fees that are chargeable or reimbursable under the
13 BLV Loan Documents) (all such indebtedness set forth in this paragraph (i), the "BLV
14 Prepetition Indebtedness");

15     ii)    the BLV Prepetition Indebtedness constitutes the legal, valid and binding
obligations of Debtor, enforceable in accordance with its terms (other than in respect of
16 the stay of enforcement against Debtor arising from Bankruptcy Code section 362); and

17     iii)    the liens and security interests granted to BLV pursuant to and in
connection with the BLV Loan Documents, including, without limitation, all security
18 agreements, pledge agreements, mortgages, deeds of trust, assignments (including
assignments of rents, revenue, income, issues and profits) and other security documents
19 executed by the Debtor in favor of BLV, are (a) valid, binding, perfected, enforceable,
first-priority liens and security interests in the tangible and intangible property
20 constituting the BLV Prepetition Collateral, and (b) subject and subordinate only to
21 (I) the Carveout (as defined below), and (II) valid, perfected and unavoidable liens to the
extent such liens are senior to the liens of BLV on the BLV Prepetition Collateral BLV.
22

23     O.    All of Debtor's cash resulting from the collection of the BLV Rents (whether held by
24 Debtor or BLV) constitutes BLV Prepetition Collateral or proceeds of the BLV Prepetition Collateral
25 and, therefore, is cash collateral within the meaning of Bankruptcy Code section 363(a) (the "BLV Cash
26 Collateral").

27     P.    Without the ability to utilize the BLV Cash Collateral, the value of the BLV Prepetition
28 Collateral will deteriorate substantially. BLV and Debtor have negotiated at arm's length and in good

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

1  faith regarding the use of the BLV Cash Collateral to fund Debtor's business and entry of this BLV
2  Cash Collateral Order is in the best interests of Debtor, its estate and its creditors and equity holders.
3  The reliance of BLV and Debtor on this BLV Cash Collateral Order is in good faith.

4        Q.      Pursuant to Bankruptcy Code sections 361, 362 and 363, Debtor is required to provide
5  adequate protection to the Lender. The terms of the proposed adequate protection arrangements and use
6  of the BLV Cash Collateral are fair and reasonable under the circumstances, are supported by
7  reasonably equivalent value and fair consideration and are likely to minimize disputes and litigation
8  with the Lender and other parties in interest.

9        R.      Under the circumstances, the notice given by Debtor of this Stipulation and Order
10 constitutes due and sufficient notice thereof and complies with the requirements of Bankruptcy Code
11 section 363, Bankruptcy Rules 2002 and 4001(b) and Local Rule 4001.

**ACCORDINGLY, THE PARTIES AGREE IT SHOULD BE ORDERED** that:

1. <u>Use of BLV Cash Collateral Per Budget</u>. Subject to the terms and conditions hereof, Debtor hereby is authorized, subject to the occurrence of a Termination Event (as defined below), to use BLV Cash Collateral through date which is ninety (90) days from the date this Stipulation and Order is entered by the Bankruptcy Court (the "<u>Cash Collateral Period</u>") solely in accordance with the terms hereof. Debtor may use BLV Cash Collateral only to satisfy the following expenses (collectively, the "<u>Permitted Expenditures</u>")

    a) Expenses provided for in the budget attached hereto as <u>Exhibit 1</u> or any revised budget approved in writing by Debtor and the Lender (the "<u>Budget</u>");

    b) Expenses related to items provided for in the Budget without exceeding in any category or line item one hundred and twenty per cent (120%) of the budgeted amounts for any item for the applicable period, (any such excess amount a "<u>Permitted Variance</u>"); provided, however, that no Supplemental Budget Request (defined below) is necessary so long as the aggregate total of variances across all line items is no greater than 120% of the total monthly budget.

    c) Expenses approved in writing by the Lender, pursuant to any Supplemental Budget Request (defined below).

With respect to any non-budgeted expenditure item or budgeted expenditure items that exceed the Permitted Variance, the Lender shall respond to Debtor's requests (which shall be e-mailed and faxed) for payment of such expenses (which shall include or attach reasonably sufficient evidence

*FOX ROTHSCHILD LLP*
*3800 Howard Hughes Parkway, Suite 500*
*Las Vegas, Nevada 89169*
*(702) 262-6899*
*(702) 597-5503 (fax)*

demonstrating the need for any such non-budgeted expenditure) ("<u>Supplemental Budget Requests</u>") not later than five (5) business days after receipt thereof and shall not unreasonably withhold, delay or condition such consent. Without limiting the generality of the foregoing and notwithstanding anything contrary contained in this BLV Cash Collateral Order or in the Budget, Debtor shall be permitted to use BLV Cash Collateral (i) to bring current all outstanding accounts payable to utilities, and to pay any utility deposit required under Bankruptcy Code section 366 associated with the BLV Property's utility service within two business days of the entry of an order granting Debtor's section 366 utilities motion, and (ii) to pay United States Trustee statutory fees.

2. <u>Reports</u>. On or before the tenth business day of any calendar month, Debtor shall deliver to Lender and its advisors a report in form and substance reasonably acceptable to the Lender (a "<u>Monthly Report</u>") with respect to activity in the prior calendar month, which shall be in form and substance substantially similar to any monthly reports received prepetition by the Lender from the Receiver and in any event shall include the following:

    a) A statement reflecting actual receipts, expenditures and ending cash compared to the Budget, including a description of any material variances from expenditures permitted by the Budget (*i.e.*, variances in excess of 20% in the aggregate) on a total budget basis, the reasons underlying such variances and reasonably sufficient evidence demonstrating the need for any such variance.

    b) A statement identifying any Supplemental Budget Requests which Debtor reasonably anticipates it may be required to make in the month in which the report is delivered.

    c) A statement confirming that Cash Collateral disbursed to and expended or otherwise transferred by Debtor has solely been used to satisfy Permitted Expenditures during the immediately preceding period (*i.e.*, the period since the delivery of the last Monthly Report, or in the case of the first Monthly Report, the period since the entry of this Order).

    d) A monthly leasing report and an updated rent roll, together with copies of any new leases.

3. <u>Adequate Protection Liens and Claims</u>. Pursuant to Bankruptcy Code sections 361 and 363, Lender is entitled to adequate protection of its interests in the BLV Prepetition Collateral, including the BLV Cash Collateral, for and equal in amount to the aggregate diminution in value of the BLV Prepetition Collateral, including, without limitation, any such diminution resulting from the sale, lease or use by Debtor (or other decline in value) of BLV Cash Collateral or any other BLV Prepetition

Collateral and the imposition of the automatic stay pursuant to Bankruptcy Code section 362 (collectively, the "<u>Lender Adequate Protection Claims</u>"). As adequate protection, the Lender is hereby granted the following:

a) As security for the payment of the Lender Adequate Protection Claims, the Lender is hereby granted (effective and perfected as of the Petition Date and without the necessity of the execution by Debtor of mortgages, security agreements, pledge agreements, financing statements or other agreements) valid, binding and enforceable security interests in and liens on (the "<u>Replacement Liens</u>"), all currently owned or hereafter acquired proceeds of the BLV Prepetition Collateral, including, without limitation, all cash from BLV Rents, including all cash held by the Lender or by the Debtor (the "<u>BLV Postpetition Collateral</u>"), to the same extent and with the same validity, priority, enforceability, and subject to the same defenses and claims (including subordination, recharacterization and avoidance) as the liens held by Lender in the BLV Prepetition Collateral with such Replacement Liens being subject and subordinate only to (i) the Carveout (as defined below) and (ii) all other valid, perfected and enforceable liens of record, which are senior in priority to the liens held by Lender;

b) The Lender Adequate Protection Claims shall constitute allowed administrative expense claims under Bankruptcy Code sections 503(b)(1), 507(a) and 507(b) (the "<u>Lender 507(b) Claims</u>") and shall be paid with priority over any and all (i) administrative expenses (other than the Carveout and Other Lender 507(b) Claims as defined below) of the kinds specified or ordered pursuant to any provision of the Bankruptcy Code including, without limitation, Bankruptcy Code sections 105, 326, 328, 330, 331 and 726, and (ii) unsecured claims, in each case against Debtor, now existing or hereafter arising of any kind or nature.

c) The Lender 507(b) Claims shall at all times be *pari passu* and paid *pro rata* with any similar claims granted by the Court in this case under Sections 503(b)(1), 507(a) and 507(b) of the Bankruptcy Code to any other lenders holding liens on Debtor's real property and assignment of rents therefrom other than the BLV Property and BLV Rents ("<u>Other Lender 507(b) Claims</u>").

d) The Lender 507(b) Claims and Other Lender 507(b) Claims shall be senior to the rights of Debtor, and any successor trustee or any creditor, in this chapter 11 case or any subsequent case under the Bankruptcy Code. Subject only to and except for the Carveout and Other Lender 507(b) Claims, no cost or expense of administration under Sections 105, 503(b) or otherwise, including those resulting from the conversion of this chapter 11 case pursuant to Section 1112 of the Bankruptcy Code, shall be senior to, or <u>pari passu</u> with, the Lender 507(b) Claims arising out of the Lender Adequate Protection Claims (other than the Other Lender 507(b) Claims).

The Replacement Liens granted under this BLV Cash Collateral Order shall be to the same extent and with the same validity, perfection and priority and subject to the same defenses, claims, counterclaims, causes of action (including, without limitation, equitable subordination, avoidance and

recharacterization) as the liens held by Lender on the BLV Prepetition Collateral and shall not be subject to Bankruptcy Code sections 549 or 550.

    4.    <u>Disbursement of BLV Cash Collateral</u>.

    a)    The BLV Cash Collateral shall be applied by Debtor to pay or reserve for payment of all Permitted Expenditures incurred or anticipated to be incurred during the Cash Collateral Period.

    b)    To the extent that any of the aforementioned expenses are not satisfied with respect to any calendar month, the Debtor shall make "catch up" payments on account of such previously unpaid amounts in all ensuing months in which there is available cash, in order to ensure that available BLV Cash Collateral is distributed to meet and pay all Permitted Expenditures incurred or to be during the term of this BLV Cash Collateral Order (*e.g.*, if an amount was not paid in December, no amounts which are junior shall be paid in January until such time as the more senior payment that was not made in December shall have been satisfied from any available BLV Cash Collateral).

    c)    Any cash remaining in the possession of Debtor after all disbursements, payments and/or reserves in accordance with this paragraph have been made which is in excess of sums required to fund all disbursements required to be made during the Cash Collateral Period under the terms of this BLV Cash Collateral Order and Budget shall be paid to Lender as adequate protection payments.

    5.    <u>Document Execution</u>. Notwithstanding that, as set forth herein, no documents need be executed or filed to create or perfect the liens and security interests granted hereunder, Debtor is hereby directed to execute and deliver such further documents as the Lender may request to evidence and give notice of the liens granted hereunder.

    6.    <u>Replacement Lien Perfection and Validity</u>. The Replacement Liens shall be prior and senior to all liens and encumbrances of all other secured creditors in and to such BLV Postpetition Collateral granted, or arising, after the Petition Date (including, without limitation, liens and security interests, if any, granted in favor of any federal, state, municipal or other governmental unit, commission, board or court for Debtor or its affiliates but excluding any liens for taxes, assessments or levies which are not yet due and payable, or if due and payable, which are being contested in good faith by appropriate proceedings). The Replacement Liens granted pursuant to this Stipulation and Order shall constitute valid and duly perfected security interests and liens to the same extent and with the same validity, priority, enforceability, and subject to the same defenses and claims (including subordination, recharacterization and avoidance) as the liens held by BLV in the BLV Prepetition

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

Collateral , and BLV shall not be required to file or serve financing statements, notices of lien or similar instruments that otherwise may be required under federal or state law in any jurisdiction, or take any action, including taking possession, to validate and perfect such security interests and liens; and the failure by Debtor to execute any documentation relating to the Replacement Liens shall in no way affect the validity, perfection or priority of such Replacement Liens.

7. <u>Carveout</u>. As used in this BLV Cash Collateral Order, "<u>Carveout</u>" means all unpaid fees required to be paid to the Clerk of the Bankruptcy Court and to the Office of the United States Trustee pursuant to 28 U.S.C. § 1930(a) (the "<u>Statutory Fees</u>").

8. <u>Termination of Use of Cash Collateral</u>. Unless the Lender has otherwise agreed in writing, Debtor's authority to use the BLV Cash Collateral under this BLV Cash Collateral Order shall terminate on the date (the "<u>Termination Date</u>") that is the fifth business day after the Lender provides written notice to counsel for Debtor, the Office of the United States Trustee for the District of Nevada, counsel for any statutory committees and, if no committee for unsecured creditors is appointed, and the top 20 general unsecured creditors, that a Termination Event has occurred and is occurring. As used in this BLV Cash Collateral Order, the term "<u>Termination Event</u>" means the occurrence of any of the following:

    a) The entry of an order in this Chapter 11 Case granting relief from the automatic stay so as to allow a third party or third parties to proceed against any BLV Prepetition Collateral or BLV Postpetition Collateral; and

    b) This Chapter 11 Case is converted to a case under chapter 7 of the Bankruptcy Code or is dismissed.

Debtor stipulates that the giving of any notice hereunder shall not constitute a violation of the automatic stay, require approval of this Court, or otherwise be subject to any ruling or finding of this Court. Notwithstanding the occurrence of a Termination Event, Debtor shall be entitled to continue to use BLV Cash Collateral to pay all expenses set forth in and in accordance with the Budget through the Termination Date upon Debtor's receipt of sufficient funds to make such payments..

9. <u>Dismissal of Case</u>. If an order dismissing this Chapter 11 Case under Bankruptcy Code section 1112 or otherwise is at any time entered, (a) the Replacement Liens (as subject to the Carveout) granted pursuant to this BLV Cash Collateral Order shall continue in full force and effect with the

priorities provided herein and shall remain binding on all parties in interest notwithstanding such dismissal until the obligations secured thereby shall have been indefeasibly paid and satisfied in full, and (b) this Court shall retain jurisdiction, notwithstanding such dismissal, for the limited purposes of enforcing such Replacement Liens.

10. <u>Conversion of Case</u>. The provisions of this BLV Cash Collateral Order and any actions taken pursuant hereto shall survive entry of any order, which may be entered converting this Chapter 11 Case to a chapter 7 case, and the terms and provisions of this BLV Cash Collateral Order, as well as the Lender 507(b) Claims and the Replacement Liens (each as subject to the Carveout and Other Lender 507(b) Claims) granted pursuant to this BLV Cash Collateral Order, shall continue in full force and effect notwithstanding the entry of any such order, and such Lender 507(b) Claims and Replacement Liens shall maintain their priority as provided by this BLV Cash Collateral Order until all of the Lender Adequate Protection Claims are paid in full and discharged.

11. <u>Successors</u>. The provisions of this BLV Cash Collateral Order shall be binding upon and inure to the benefit of the Lender and Debtor and their respective successors and assigns, including any trustee hereafter appointed in the chapter 11 case as a legal representative of the Debtor or Debtor's estate.

12. <u>Reservation of Rights</u>.

    a) Except to the extent expressly provided herein (including in the factual stipulations made by Debtor hereunder) nothing contained herein shall prejudice Debtor or the Lender with respect to any matter.

    b) Without limiting the generality of the foregoing or any other provisions of this BLV Cash Collateral Order, the Parties reserves all of their respective rights, remedies, claims, defenses and positions regarding any issues or matters not expressly provided for in this BLV Cash Collateral Order, including, without limitation, such rights, remedies, claims defenses, positions regarding (i) the extent, validity, priority, subordination, avoidance and/or recharacterization of Lender's security interests, liens, or any other interests, any Section 506 issues with respect to such liens and interests, including, without limitation, determinations regarding Lender's secured claims and Section 506(c) surcharge and (ii) voting, seeking confirmation of, opposing, or supporting any plan of reorganization

    c) In addition, without limiting the generality of the foregoing subsections (a) and (b) above, in the event of a Termination Event or any other termination of Debtor's authority to use BLV Cash Collateral, Debtor reserves its rights to seek non-

consensual use of BLV Cash Collateral; provided, however, that the factual stipulations contained herein shall survive any Termination Event. The Lender reserves its rights to oppose such non-consensual use.

13. <u>Reservation re Characterization of Claim</u>. Notwithstanding anything to the contrary contained anywhere else in this Order, all parties in interest reserve their respective rights with regard to the characterization of the BLV Prepetition Indebtedness as "oversecured" or "undersecured," pursuant to Bankruptcy Code section 506, as well as the characterization or application of any payments made to Lender after the Petition Date (including that any such payments should be applied to reduce any Lender's allowed secured claim), and the Court makes no determination with regard to that matter at this time.

14. <u>No Disgorgements</u>. In the event of a Termination Event, any amounts that have been disbursed to third parties as Permitted Expenditures in accordance with the terms of this BLV Cash Collateral Order, shall not be subject to disgorgement in favor of the Lender absent a finding of mistaken payment, bad faith or fraud.

15. <u>Stay Modification</u>. The automatic stay imposed by Bankruptcy Code section 362 shall be, and hereby is, modified to the extent necessary, if any, to authorize, implement and effectuate the terms and conditions of this BLV Cash Collateral Order. Further, Debtor is authorized and directed to perform all acts and execute and comply with the terms of such other documents, instruments, and agreements necessary to effectuate the terms and conditions of this BLV Cash Collateral Order.

16. <u>Service of Notice</u>. Debtor shall cause a copy of this BLV Cash Collateral Order to be served within three (3) business days of the Bankruptcy Court's entry of this BLV Cash Collateral Order, by first class mail, on the (a) attorneys for the Lender: Kolesar & Leatham, Chtd., 3320 West Sahara, Suite 380, Las Vegas, Nevada 89102, Attn: Nile Leatham, Esq., and Joseph Went, Esq.; (b) the Office of the United States Trustee for the District of Nevada, Attn: Michal J. Bloom; (c) counsel for any statutory committee appointed in this case, once appointed, (d) all other secured creditors, (e) Debtor's known unsecured creditors, and (f) all parties-in-interest who have filed a notice of appearance or a request for pleadings in this Chapter 11 Case, pursuant to Bankruptcy Rule 2002 (collectively, the "<u>Notice Parties</u>").

///

17. <u>Final Hearing</u>.  A hearing to consider entry of an order granting the relief set forth in this BLV Cash Collateral Order on a final basis (the "<u>Final BLV Cash Collateral Order</u>") shall be held on January 18, 2010, at 11:00 a.m. (the "<u>Final Hearing</u>") in Courtroom 3 in the Foley Federal Building, Third Floor, 300 Las Vegas Boulevard South, Las Vegas, Nevada 89101; with any objections (the "<u>Objections</u>") to entry of a Final BLV Cash Collateral Order due to be timely filed electronically with the Court and served on the Notice Parties and Debtor's counsel:  Fox Rothschild, LLP, 3800 Howard Hughes Parkway, Suite 500, Las Vegas, Nevada 89169, Attn: Brett A. Axelrod, Esq. (collectively, the "<u>Objection Notice Parties</u>") (with a courtesy copy delivered directly to the Chambers of the Honorable Bruce A. Markell) so as to be actually received no later than January 4, 2011.  Replies to timely-filed Objections, if any, shall be filed with the Bankruptcy Court electronically and served so that they are received no later than January 11, 2010 (with a courtesy copy delivered directly to the Chambers of the Honorable Bruce A. Markell) by the Objection Notice Parties and the objecting party, so as to be actually received by such filing deadline.  If no timely Objections are filed, this BLV Cash Collateral Order may be deemed the Final BLV Cash Collateral Order upon the expiration of the filing deadline for such Objections, as set forth above in this paragraph 17, at the Final Hearing.

18. <u>Immediate Effectiveness</u>.  Pursuant to Bankruptcy Rule 6004(h), this Stipulation and Order shall be effective immediately upon entry.

DATED:    December 20, 2010

Prepared and respectfully submitted by:

**FOX ROTHSCHILD LLP**

By    *s/ Anne M. Loraditch*
    BRETT A. AXELROD, ESQ.
    Nevada Bar No. 5859
    ANNE M. LORADITCH, ESQ.
    Nevada Bar No. 8164
    3800 Howard Hughes Parkway, Suite 500
    Las Vegas, Nevada  89169

*[Proposed] Counsel for Whitton Corporation*

**APPROVED**/~~DISAPPROVED~~:

**KOLESAR & LEATHAM, CHTD.**

By    *s/ Joseph Went*
    NILE LEATHAM, ESQ.
    JOSEPH WENT, ESQ.
    3320 West Sahara, Suite 380
    Las Vegas, Nevada 89102

*Counsel for Bank of Las Vegas*

**ORDER**

It is so **ORDERED.**

# # #

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

*VG1 61059v3 12/20/10*       13

# EXHIBIT 1

**BUDGET**

| Property # | | 34 | | | | | | | | | | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Property Name | | Cheyenne2475 | | | | | | | | | | | | | | | | | | | | | | | | | |
| Lookup Sheet Row | | 14 | | | | | | | | | | | | | | | | | | | | | | | | | |
| Year | | 2010 | 2010 | 2010 | 2010 | 2011 | 2011 | 2011 | 2011 | 2011 | 2011 | 2011 | 2011 | 2011 | 2011 | 2011 | 2011 | 2011 | 2011 | 2011 | 2011 | 2011 | 2011 | 2011 | 2011 | 2011 | 2011 |
| Period | | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 |
| Week Ending | | 12/10/10 | 12/17/10 | 12/24/10 | 12/31/10 | 01/07/11 | 01/14/11 | 01/21/11 | 01/28/11 | 02/04/11 | 02/11/11 | 02/18/11 | 02/25/11 | 03/04/11 | 03/11/11 | 03/18/11 | 03/25/11 | 04/01/11 | 04/08/11 | 04/15/11 | 04/22/11 | 04/29/11 | 05/06/11 | 05/13/11 | 05/20/11 | 05/27/11 | 06/03/11 |
| % Occupancy | | 70.9% | 70.9% | 70.9% | 70.9% | 71.5% | 71.5% | 71.5% | 71.5% | 72.2% | 72.2% | 72.2% | 72.2% | 72.8% | 72.8% | 72.8% | 72.8% | 73.5% | 73.5% | 73.5% | 73.5% | 73.5% | 74.1% | 74.1% | 74.1% | 74.1% | 74.1% |
| Rent Revenue - Vacancy Adjusted | | $ - | $ - | $ - | $ - | $ 14,645 | $ - | $ - | $ - | $ 14,705 | $ - | $ - | $ - | $ 14,766 | $ - | $ - | $ - | $ 14,827 | $ - | $ - | $ - | $ - | $ 14,887 | $ - | $ - | $ - | $ 14,887 |
| COC Revenue | | - | - | - | - | 2,146 | - | - | - | 2,165 | - | - | - | 2,185 | - | - | - | 2,204 | - | - | - | - | 2,224 | - | - | - | 2,224 |
| Fee and Charge Revenue | | - | - | - | - | 1,262 | - | - | - | 1,273 | - | - | - | 1,284 | - | - | - | 1,296 | - | - | - | - | 1,307 | - | - | - | 1,307 |
| **Total Gross Revenues** | | - | - | - | - | 18,053 | - | - | - | 18,144 | - | - | - | 18,235 | - | - | - | 18,327 | - | - | - | - | 18,418 | - | - | - | 18,418 |
| Bad Rent | | - | - | - | - | 732 | - | - | - | 735 | - | - | - | 738 | - | - | - | 741 | - | - | - | - | 744 | - | - | - | 744 |
| Bad CAMs | | - | - | - | - | 170 | - | - | - | 172 | - | - | - | 173 | - | - | - | 175 | - | - | - | - | 177 | - | - | - | 177 |
| Rent Abatement | | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Vacancy Loss - Total** | | - | - | - | - | 903 | - | - | - | 907 | - | - | - | 912 | - | - | - | 916 | - | - | - | - | 921 | - | - | - | 921 |
| **Gross Actual Revenues** | | $ - | $ - | $ - | $ - | $ 17,150 | $ - | $ - | $ - | $ 17,237 | $ - | $ - | $ - | $ 17,324 | $ - | $ - | $ - | $ 17,410 | $ - | $ - | $ - | $ - | $ 17,497 | $ - | $ - | $ - | $ 17,497 |
| **COC Expenses** | Mo. Avg. | | | | | | | | | | | | | | | | | | | | | | | | | | |
| PM Fee (A) | $ 1,991 | | | | | $ 1,991 | $ - | $ - | $ - | $ 1,991 | $ - | $ - | $ - | $ 1,991 | $ - | $ - | $ - | $ 1,991 | $ - | $ - | $ - | $ - | $ 1,991 | $ - | $ - | $ - | $ 1,991 |
| Insurance and Bonds | 167 | | | | | 167 | - | - | - | 167 | - | - | - | 167 | - | - | - | 167 | - | - | - | - | 167 | - | - | - | 167 |
| Government Fee and Tax | 4,213 | | | | | 12,639 | - | - | - | - | - | - | - | - | - | - | - | 12,639 | - | - | - | - | - | - | - | - | - |
| Professional Services | 602 | | | | | 278 | - | 278 | - | 278 | - | 278 | - | 278 | - | 278 | - | 278 | - | 278 | - | - | 278 | - | 278 | - | 278 | - |
| Security | 182 | | | | | 84 | - | 84 | - | 84 | - | 84 | - | 84 | - | 84 | - | 84 | - | 84 | - | - | 84 | - | 84 | - | 84 | - |
| Site RMS | 522 | | | | | 241 | - | 241 | - | 241 | - | 241 | - | 241 | - | 241 | - | 241 | - | 241 | - | - | 241 | - | 241 | - | 241 | - |
| Building RMS | 766 | | | | | 353 | - | 353 | - | 353 | - | 353 | - | 353 | - | 353 | - | 353 | - | 353 | - | - | 353 | - | 353 | - | 353 | - |
| Utility Expense (D) | 769 | | | | | 355 | - | 355 | - | 355 | - | 355 | - | 355 | - | 355 | - | 355 | - | 355 | - | - | 355 | - | 355 | - | 355 | - |
| **Total COC Expense** | | - | - | - | - | 16,108 | - | 1,311 | - | 3,469 | - | 1,311 | - | 3,469 | - | 1,311 | - | 16,108 | - | 1,311 | - | - | 1,311 | 2,158 | 1,311 | - | 1,311 | 2,158 |
| **Non-COC Expenses** | Mo. Avg. | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Commission (B) | $ 1,000 | | | | | 462 | - | 462 | - | 462 | - | 462 | - | 462 | - | 462 | - | 462 | - | 462 | - | - | 462 | - | 462 | - | 462 | - |
| Administrative Expense | - | | | | | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Occupancy (C) | 500 | | | | | 231 | - | 231 | - | 231 | - | 231 | - | 231 | - | 231 | - | 231 | - | 231 | - | - | 231 | - | 231 | - | 231 | - |
| **Total Non-COC Expenses** | | $ - | $ - | $ - | $ - | $ 692 | $ - | $ 692 | $ - | $ 692 | $ - | $ 692 | $ - | $ 692 | $ - | $ 692 | $ - | $ 692 | $ - | $ 692 | $ - | $ - | $ 692 | $ - | $ 692 | $ - | $ 692 | $ - |
| **NOI** | | $ - | $ - | $ - | $ - | $ 349 | $ - | $ (2,003) | $ - | $ 13,075 | $ - | $ (2,003) | $ - | $ 13,162 | $ - | $ (2,003) | $ - | $ 610 | $ - | $ (2,003) | $ - | $ - | $ (2,003) | $ 15,339 | $ (2,003) | $ - | $ (2,003) | $ 15,339 |
| Beginning Cash | | $ - | $ - | $ - | $ - | $ - | 349 | $ 349 | $ (1,654) | $ (1,654) | $ 11,421 | $ 11,421 | $ 9,418 | $ 9,418 | $ 22,580 | $ 22,580 | $ 20,577 | $ 20,577 | $ 21,187 | $ 21,187 | $ 19,183 | $ 19,183 | $ 17,180 | $ 32,519 | $ 30,515 | $ 30,515 | $ 28,512 |
| Cash Receipts | | - | - | - | - | 17,150 | - | - | - | 17,237 | - | - | - | 17,324 | - | - | - | 17,410 | - | - | - | - | 17,497 | - | - | - | 17,497 |
| Cash Disbursement | | - | - | - | - | (16,800) | - | (2,003) | - | (4,161) | - | (2,003) | - | (4,161) | - | (2,003) | - | (16,800) | - | (2,003) | - | - | (2,003) | (2,158) | (2,003) | - | (2,003) | (2,158) |
| **Ending Cash** | | $ - | $ - | $ - | $ - | $ 349 | 349 | $ (1,654) | $ (1,654) | $ 11,421 | $ 11,421 | $ 9,418 | $ 9,418 | $ 22,580 | $ 22,580 | $ 20,577 | $ 20,577 | $ 21,187 | $ 21,187 | $ 19,183 | $ 19,183 | $ 17,180 | $ 32,519 | $ 30,515 | $ 30,515 | $ 28,512 | $ 43,851 |

(A) Property Management fee is based on what Whitton proposes to charge for management fees if in control of the property.  If not in control, management fees & receiver fees are higher
(B) Commissions to be paid directly from property cash flows based on actual leasing commissions
(C) Occupany Expenses are for carpet & paint touchup when a suite is turned over.
(D) Utility line does not include required deposits