BRETT A. AXELROD, ESQ.
Nevada Bar No. 5859
ANNE M. LORADITCH, ESQ.
Nevada Bar No. 8164
**FOX ROTHSCHILD LLP**
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
Telephone: (702) 262-6899
Facsimile: (702) 597-5503
Email: baxelrod@foxrothschild.com
aloraditch@foxrothschild.com
*[Proposed] Counsel for Whitton Corporation*

Electronically Filed December 21, 2010

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| In re<br><br>WHITTON CORPORATION, a Nevada corporation,<br><br>Debtor. | Case No. BK-S-10-32680-BAM<br><br>Chapter 11<br><br>**EMERGENCY MOTION FOR ENTRY OF AN ORDER, ON AN INTERIM AND FINAL BASIS, (I) AUTHORIZING DEBTOR'S USE OF CASH COLLATERAL, PURSUANT TO 11 U.S.C. § 363; (II) PROVIDING ADEQUATE PROTECTION, PURSUANT TO 11 U.S.C. §§ 361, 362, 363 AND 364; AND (III) SCHEDULING A FINAL HEARING, PURSUANT TO FED. R. BANKR. R. 2002, 4001(b), 4001 (c), AND 6004**<br><br>Hearing Date:  OST PENDING<br>Hearing Time:   OST PENDING |

Whitton Corporation, a Nevada corporation ("Whitton" or "Debtor"), as debtor and debtor in possession, by and through its proposed counsel, the law firm of Fox Rothschild LLP, hereby submits this emergency motion (the "Cash Collateral Motion") and respectfully represents as follows:

## I. BACKGROUND

1. On December 5, 2010 (the "Petition Date"), Debtor sought protection from its creditors and filed a voluntary petition under chapter 11 of title 11 of the United States Code (the "Bankruptcy

*VG1 62499v3 12/21/10*                   1

Code") thereby commencing the above-captioned bankruptcy case (the "Chapter 11 Case"). See Docket No. 1.

2. Debtor is authorized and continues to operate its business and manage its property as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. See generally, Docket. No request has been made for the appointment of an examiner or trustee, and no official committee has been appointed. Id.

3. This Court has subject matter jurisdiction to consider and determine this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## II. RELIEF REQUESTED

4. By this Cash Collateral Motion, Debtor requests the Court's approval of stipulations for use of cash collateral, by entry of such stipulations and proposed forms of interim orders, as follows: (a) by and between Debtor and The Bank of Las Vegas ("BLV") regarding the 2475 Cheyenne property (the "Bank of Las Vegas Interim Order"); and (b) by and between Debtor and Hudson Americas, LLC ("Hudson"), regarding the Cheyenne 2455, Dean Martin 7625, Diablo, Russell, Seven Hills and Stephanie properties (the "Hudson Interim Order") (collectively, the "Stipulated Interim Orders"), substantially in the forms attached hereto as **Exhibit A-B**, respectively.

5. By this Cash Collateral Motion, Debtor also requests the Court's approval of the proposed forms of interim cash collateral orders regarding (a) secured lender, Bank of America, N.A. ("BofA") and the Annie Oakley property ("BofA Interim Order"); and (b) secured lender, GSMS 2004-GG2 Sparks Industrial, LLC ("GSMS"), and the Kleppe properties (the "GSMS Interim Order," together with the BofA Interim Order, the "Proposed Interim Orders"); attached hereto as **Exhibit C-D**, respectively. Collectively with the Stipulated Interim Orders, the Proposed Interim Orders are referred to herein as the "Interim Orders."

6. Debtor and BofA have substantially agreed to the terms of, and were in the processing of finalizing, the BofA Interim Order at the time of this Cash Collateral Motion. Likewise, Debtor and GSMS have substantially agreed to the terms of, and were also in the processing of finalizing, the GSMS Interim Order at the time of this Cash Collateral Motion. Debtor's counsel circulated copies of

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

the Proposed Interim Orders to counsel for the respective lenders but did not receive any comments from either before filing the Cash Collateral Motion. Nevertheless, Debtor believes neither BofA nor GSMS had substantive changes to the Proposed Interim Orders and, in light of Debtor's urgent need to use Cash Collateral and obtain Court approval of the Interim Orders, attached the Proposed Interim Orders hereto for the Court's consideration and approval. If agreement is reached prior to a hearing on this Cash Collateral Motion, Debtor will file new Proposed Interim Orders reflecting the parties' agreement.

7. This Cash Collateral Motion is made and based on an emergency interim basis pursuant to Rule 4001(b) of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>") and Rule 4001(b) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Nevada (the "<u>Local Rules</u>" or "<u>LR</u>"), and seeks entry of the Interim Orders and final orders (the "<u>Final Orders</u>," together with the Interim Orders, the "<u>Cash Collateral Orders</u>"):

    (a) authorizing Debtor to use proceeds from Cash Collateral for the purpose of (i) operating Debtor's business during the pendency of this Chapter 11 Case, and (ii) as well as the fees required to be paid to the United States Trustee (collectively, the "<u>Chapter 11 Expenses</u>"), all in accordance with the Budgets[1] and subject to the terms, conditions, and limitations set forth in the Cash Collateral Orders;

    (b) providing adequate protection (the "<u>Adequate Protection</u>") to the secured lenders[2] under those certain loan documents entered into prior to the Petition Date with each of the Affiliates, together with each of the other lenders as may from time to time be parties thereto (each, an "<u>Adequate Protection Party</u>" and collectively, the "<u>Adequate Protection Parties</u>") for any Diminution in Value (defined below) of their respective interests in the Prepetition Collateral (defined below), including the Cash Collateral; and

    (c) scheduling a hearing to consider the relief requested herein at least twenty-one (21) days hereafter should any opposition be filed with regard to approval of this Cash Collateral Motion on a final basis.

---

[1] Unless otherwise defined herein, all capitalized terms used herein shall have the meanings ascribed to them in the Omnibus Declaration of Tom E. Hallett Filed in Support of Initial Pleadings [Docket No. 36] (the "<u>Omnibus Declaration</u>").

[2] A chart detailing the secured lenders, a description of the respective real property prepetition collateral (collectively, the "<u>Prepetition Collateral</u>") and the Affiliate with which such lender entered into a loan transaction prior to the Petition Date is attached hereto as Exhibit E and supersedes the organizational chart that was attached to the Omnibus Declaration as Exhibit 1 thereto. Exhibit E attached hereto reflects the most current information, as recently obtained from Debtor's secured lenders.

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

8. Debtor believes that the enterprise value of its business will not diminish provided the Debtor's business continues to operate in the ordinary course under its current management and the expenditure of operational expenses proposed in the Budgets are made. This is evidenced by the cash projections for the 21-day interim period as well as the 13-week forecast (together, the "Cash Projections") that are attached to the Interim Orders and incorporated for all purposes herein by this reference. As indicated by the Cash Projections, Debtor currently has a positive cash position and will remain cash positive through at least the first 100 days of this Chapter 11 Case by which time Debtor hopes to have a plan of reorganization on file. See id.

### III. BANKRUPTCY RULE 4001 AND LOCAL RULE 4001 CONCISE STATEMENT

**BANK OF LAS VEGAS INTERIM ORDER**

| TERM | DESCRIPTION | CITATION |
| --- | --- | --- |
| **Authorized User** | Whitton Corporation | Bank of Las Vegas Interim Order, ¶ 1. |
| **Adequate Protection Parties** | Bank of Las Vegas | Bank of Las Vegas Interim Order, ¶ 3. |
| **Use of Cash Collateral** | Debtor is authorized to use all of its funds from the rents generated by the Property, including prepetition deposit accounts, all proceeds, products, rents, issues or profits of Prepetition Collateral and Postpetition Collateral, through the date of the Final Hearing to satisfy the following expenses (collectively, the "Permitted Expenses"):<br>• Expenses provided for in the budget attached as Exhibit 1 to the Bank of Las Vegas Interim Order or any revised budget approved in writing by Debtor and BLV (the "Budget");<br>• Expenses related to items provided for in the Budget without exceeding in any category or line item one hundred and twenty per cent (120%) of the budgeted amounts for any item for the applicable period, (any such excess amount a "Permitted Variance"); provided, however, that no Supplemental Budget Request (defined | Bank of Las Vegas Interim Order, ¶ 1. |

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

| | | |
|---|---|---|
| | below) is necessary so long as the aggregate total of variances across all line items is no greater than 120% of the total monthly budget.<br><br>• Expenses approved in writing by BLV, pursuant to any Supplemental Budget Request (defined below). | |
| **Termination Events** | • Entry of an order in this Chapter 11 Case granting relief from the automatic stay so as to allow a third party or third parties to proceed against any Prepetition Collateral or Postpetition Collateral;<br>• Conversion of this Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code or dismissal of this Chapter 11 Case.<br><br>Notwithstanding the occurrence of a Termination Event, Debtor shall be entitled to continue to use Cash Collateral to pay all expenses set forth in and in accordance with the Budget through the Termination Date upon Debtor's receipt of sufficient funds to make such payments. | Bank of Las Vegas Interim Order, ¶ 8. |
| **Adequate Protection Liens** | BLV shall be granted (effective and perfected as of the Petition Date and without the necessity of the execution by Debtor of mortgages, security agreements, pledge agreements, financing statements or other agreements) valid, binding and enforceable security interests in and liens on (the "<u>Replacement Liens</u>"), all currently owned or hereafter acquired proceeds of the BLV Prepetition Collateral, including, without limitation, all cash from BLV Rents, including all cash held by the Lender or by Debtor (the "<u>BLV Postpetition Collateral</u>"), to the same extent and with the same validity, priority, enforceability, and subject to the same defenses and claims (including subordination, recharacterization and avoidance) as the liens held by Lender in the BLV Prepetition Collateral with such Replacement Liens being subject and subordinate only to (i) the Carveout (as defined below) and (ii) all other valid, perfected and enforceable liens of record, which are senior in priority to the liens held by BLV | Bank of Las Vegas Interim Order, ¶ 3(a). |
| **Superpriority Claims** | The Lender Adequate Protection Claims shall constitute allowed administrative expense claims under Bankruptcy Code sections 503(b)(1), 507(a) and 507(b) (the "<u>Lender 507(b) Claims</u>") and shall | Bank of Las Vegas Interim Order, ¶ 3(b)-(d). |

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

| | | |
|---|---|---|
| | be paid with priority over any and all (i) administrative expenses (other than the Carveout and Other Lender 507(b) Claims as defined below) of the kinds specified or ordered pursuant to any provision of the Bankruptcy Code including, without limitation, Bankruptcy Code sections 105, 326, 328, 330, 331 and 726, and (ii) unsecured claims, in each case against Debtor, now existing or hereafter arising of any kind or nature.<br><br>The Lender 507(b) Claims shall at all times be *pari passu* and paid *pro rata* with any similar claims granted by the Court in this case under Sections 503(b)(1), 507(a) and 507(b) of the Bankruptcy Code to any other lenders holding liens on Debtor's real property and assignment of rents therefrom other than the BLV Property and BLV Rents ("Other Lender 507(b) Claims").<br><br>The Lender 507(b) Claims and Other Lender 507(b) Claims shall be senior to the rights of Debtor, and any successor trustee or any creditor, in this chapter 11 case or any subsequent case under the Bankruptcy Code. Subject only to and except for the Carveout and Other Lender 507(b) Claims, no cost or expense of administration under Sections 105, 503(b) or otherwise, including those resulting from the conversion of this chapter 11 case pursuant to Section 1112 of the Bankruptcy Code, shall be senior to, or *pari passu* with, the Lender 507(b) Claims arising out of the Lender Adequate Protection Claims (other than the Other Lender 507(b) Claims). | |
| **Waiver of the Automatic Stay** | The automatic stay shall be modified to the extent necessary, if any, to authorize, implement and effectuate the terms and conditions of this Bank of Las Vegas Interim Order. | Bank of Las Vegas Interim Order, ¶ 15. |

### HUDSON INTERIM ORDER

| TERM | DESCRIPTION | CITATION |
|---|---|---|
| **Authorized User** | Whitton Corporation | Hudson Interim Order, ¶ 1. |
| **Adequate Protection Parties** | Wells Fargo Bank, N.A. | Hudson Interim Order, ¶ 6. |

| TERM | DESCRIPTION | CITATION |
|---|---|---|
| **Termination Events** | As long as the Receiver continues in possession of the Pre-Petition Collateral in accordance with the terms and provisions of this Stipulation and Order, neither Wells Fargo nor Hudson shall file a motion to terminate the automatic stay, a motion to dismiss this case, a motion to convert this case to a chapter 7 case, a motion to appoint a trustee or examiner, or a motion under Bankruptcy Code Section 543(d) to permit either or both the Receiver or any replacement receiver(s) to continue in possession of the Pre-Petition Collateral under terms or with any rights and powers other than those set forth in the State Court Receivership Orders as supplemented by this Stipulation and Order, until after the earlier to occur of (i) that date which is 45 days from the date of this Stipulation and Order, (ii) the entry of a final order appointing a trustee or examiner, or (iii) the entry of a final order converting this case to a case under Chapter 7. | Hudson Interim Order, ¶ 1(f). |
| **Adequate Protection Liens** | To the extent that any of the Pre-Petition Collateral is of the type described in Bankruptcy Code Section 552(b), and to the extent of any use, loss or diminution of value of the Pre-Petition Collateral, Debtor consents to the creation of and grants to Wells Fargo to secure the Loans a post-petition replacement lien ("<u>Replacement Lien</u>") in all property of Debtor and its estate of the kind or type covered by the Loan Documents that (i) is created or acquired after the commencement of this case, or (ii) exists as of the commencement of this case. The Replacement Lien shall have the same priority and extent as the pre-petition liens and security interests that secure the Loans. | Hudson Interim Order, ¶ 6. |

**BOFA INTERIM ORDER**

| TERM | DESCRIPTION | CITATION |
|---|---|---|
| **Authorized User** | Whitton Corporation | BofA Interim Order, ¶ 1. |
| **Adequate Protection Parties** | Bank of America, N.A. | BofA Interim Order, ¶ 4. |
| **Use of Cash Collateral** | Debtor is (i) authorized to collect and receive all rent payments from its tenants from this day | BofA Interim Order, ¶ 1. |

forward unless and until otherwise ordered by this Court, and (ii) authorized to use all of its funds, including the contents of all of the Debtor's prepetition deposit accounts and debtor in possession deposit accounts, all proceeds, products, rents, issues or profits of any collateral, including Prepetition Collateral and Postpetition Collateral, and any other Cash Collateral, through the date of the Final Hearing, to satisfy the following expenses (collectively, the "Permitted Expenses"):

- Expenses provided for in the budget or any revised budget approved in writing by Debtor and BofA (the "Budget");
- Expenses related to items provided for in the Budget without exceeding in any category or line item one hundred and twenty per cent (120%) of the budgeted amounts for any item for the applicable period, (any such excess amount a "Permitted Variance"); provided, however, that no Supplemental Budget Request (defined below) is necessary so long as the aggregate total of variances across all line items is no greater than 120% of the total monthly budget.
- Expenses approved in writing by BofA, pursuant to any Supplemental Budget Request (defined below).

| | | |
|---|---|---|
| **Termination Events** | • Entry of an order in this Chapter 11 Case granting relief from the automatic stay so as to allow a third party or third parties to proceed against any Prepetition Collateral or Postpetition Collateral; and<br>• Conversion of this Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code or dismissal of this Chapter 11 Case.<br><br>Notwithstanding the occurrence of a Termination Event, Debtor shall be entitled to continue to use Cash Collateral to pay all expenses set forth in and in accordance with the Budget through the Termination Date upon Debtor's receipt of sufficient funds to make such payments. | BofA Interim Order, ¶ 8. |
| **Adequate Protection Liens** | As security for the payment of the Lender Adequate Protection Claims, the Lender is hereby granted (effective and perfected as of the Petition Date and without the necessity of the execution by Debtor of mortgages, security agreements, pledge agreements, | BofA Interim Order, ¶ 4(a). |

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

| | | |
|---|---|---|
| | financing statements or other agreements) valid, binding and enforceable security interests in and liens on (the "Replacement Liens"), all currently owned or hereafter acquired proceeds of the BofA Prepetition Collateral, including, without limitation, all cash from BofA Rents, including all cash held by the Lender or by the Debtor (the "BofA Postpetition Collateral" and together with the BofA Prepetition Collateral collectively referred to as the "BofA Collateral"), to the same extent and with the same validity, priority, enforceability, and subject to the same defenses and claims (including subordination, recharacterization and avoidance) as the liens held by Lender in the BofA Prepetition Collateral with such Replacement Liens being subject and subordinate only to (i) the Carveout (as defined below) and (ii) all other valid, perfected and enforceable liens of record, which are senior in priority to the liens held by Lender. | |
| **Superpriority Claims** | The Adequate Protection Claims shall constitute first-priority administrative expense claims against the Debtor, with priority over any and all administrative expenses, and all other claims against the Debtor or its estate now existing or hereafter arising ("Superpriority Adequate Protection Claims"), to the extent that section 507(b) becomes applicable if adequate protection otherwise provided is not sufficient to fully adequately protect the Adequate Protection Claims. | BofA Interim Order, ¶ 4(b)-(c). |
| **Waiver of the Automatic Stay** | The automatic stay shall be modified to the extent necessary, if any, to authorize, implement and effectuate the terms and conditions of this BofA Interim Order. Further, Debtor is authorized and directed to perform all acts and execute and comply with the terms of such other documents, instruments, and agreements necessary to effectuate the terms and conditions of the BofA Interim Order. | BofA Interim Order, ¶ 15. |

## GSMS INTERIM ORDER

| TERM | DESCRIPTION | CITATION |
|---|---|---|
| **Authorized User** | Whitton Corporation | GSMS Interim Order, Recitals, ¶ 1. |
| **Adequate Protection Parties** | GSMS 2004-GG2 Sparks Industrial, LLC | GSMS Interim Order, Recitals, ¶ 6. |
| **Use of Cash Collateral** | Subject to the limitations set forth in the Cash Collateral Orders, Debtor is authorized to use Cash Collateral through the Final Hearing Date to satisfy | GSMS Interim Order, ¶ 1. |

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

| | | the following expenses (collectively, the "Permitted Expenses"):<br>• Expenses provided for in the budget or any revised budget approved in writing by Debtor and GSMS (the "Budget");<br>• Expenses related to items provided for in the Budget without exceeding in any category or line item one hundred and twenty per cent (120%) of the budgeted amounts for any item, or $500, whichever is greater for the applicable period, (any such excess amount a "Permitted Variance");<br>• Expenses approved in writing by GSMS, pursuant to any Supplemental Budget Request (defined below). | |
|---|---|---|---|
| **Termination Events** | • Entry of an order in this Chapter 11 Case granting relief from the automatic stay so as to allow a third party or third parties to proceed against any Prepetition Collateral or Postpetition Collateral;<br>• Conversion of this Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code or dismissal of this Chapter 11 Case; or<br>• A chapter 11 trustee is appointed | GSMS Interim Order, ¶ 12. |
| **Adequate Protection Liens** | As security for the payment of the Lender Adequate Protection Claims, GSMS shall be granted (effective and perfected as of the Petition Date and without the necessity of the execution by Debtor of mortgages, security agreements, pledge agreements, financing statements or other agreements) valid, binding and enforceable security interests in and liens (the "Replacement Liens"), on all currently owned or hereafter acquired proceeds of the Prepetition Collateral, including, without limitation, all cash from Rents, including all cash held by the GSMS or by Debtor (the "Postpetition Collateral"), to the same extent and with the same validity, priority, enforceability, and subject to the same defenses and claims (including subordination, recharacterization and avoidance) as the liens held by GSMS in the Prepetition Collateral with such Replacement Liens being subject and subordinate only to all other valid, perfected and enforceable liens of record, which are senior in priority to the liens held by GSMS; provided, however, that Debtor is aware of no liens which are senior in priority to GSMS' liens | GSMS Interim Order, ¶ 8(a). |

| | | |
|---|---|---|
| **Superpriority Claims** | The Lender Adequate Protection Claims shall constitute allowed administrative expense claims under Bankruptcy Code sections 503(b)(1), 507(a) and 507(b) (the "Lender 507(b) Claims") and, except as otherwise provided in this Stipulation and Order, shall be paid with priority over any and all (i) administrative expenses of the kinds specified or ordered pursuant to any provision of the Bankruptcy Code including, without limitation, Bankruptcy Code sections 105, 326, 328, 330, 331 and 726, and (ii) unsecured claims, in each case against Debtor, now existing or hereafter arising of any kind or nature. | GSMS Interim Order, ¶ 8(b)-(d). |
| | The Lender 507(b) Claims shall at all times be *pari passu* and paid pro rata with any similar claims granted by the Court in this case under Sections 503(b)(1), 507(a) and 507(b) of the Bankruptcy Code to any other lenders holding liens on Debtor's real property and assignment of rents therefrom other than on the Kleppe properties and Cash Collateral ("Other Lender 507(b) Claims"). | |
| | Lender 507(b) Claims and Other Lender 507(b) Claims shall be senior to the rights of Debtor, any successor trustee or fiduciary, and any creditor, in this case or any subsequent case under the Bankruptcy Code. Subject only to and except for the Other Lender 507(b) Claims, no cost or expense of administration under Sections 105, 503(b) or otherwise, including those resulting from the conversion of this chapter 11 case pursuant to Section 1112 of the Bankruptcy Code, shall be senior to, or *pari passu* with, the Lender 507(b) Claims arising out of the Lender Adequate Protection Claims (other than the Other Lender 507(b) Claims). | |
| **Waiver of the Automatic Stay** | The automatic stay shall be modified to the extent necessary, if any, to authorize, implement and effectuate the terms and conditions of the GSMS Interim Order. Further, Debtor is authorized and directed to perform all acts and execute and comply with the terms of such other documents, instruments, and agreements necessary to effectuate the terms and conditions of the GSMS Interim Order. | GSMS Interim Order, ¶ 20. |

Debtor cannot meet its ongoing postpetition obligations unless it has the immediate ability to use Cash Collateral. In the absence of such use, immediate and irreparable harm will result to Debtor, the Estate, and creditors, and will render an effective and orderly reorganization of the Debtor's business impossible. Debtor intends to use the Cash Collateral for the payment of ordinary, reasonable,

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

and necessary expenses in connection with the operation of Debtor's business, including, but not limited to, wages and related expenses and benefits, utility charges, trade payables, insurance, governmental fees and taxes, maintenance capital expenditures, other budgeted capital expenditures, contract extension/renewal payments, and Chapter 11 administrative and other related costs, fees, and expenses corresponding to this Chapter 11 Case in conformance with the Budgets attached to the Interim Orders.

9. This Cash Collateral Motion proposes Debtor's use of Cash Collateral in accordance with the Budgets while providing Adequate Protection and preserving the claims of the Adequate Protection Parties regarding the Cash Collateral and permitting Debtor to effectively operate and maintain its business during the Chapter 11 Case. Such use is critical to Debtor's operations during the interim period and to an effective reorganization overall.

### IV. DEBTOR'S BUSINESS

10. A thorough narrative relating to Debtor's business, background, capital structure, and the events leading up to the commencement of the Chapter 11 Case are set forth in the Omnibus Declaration and are incorporated for all purposes herein by this reference. See Docket No. 36.

11. Additionally, the factual statements set forth in the Stipulated Interim Orders are also incorporated for all purposes herein by this reference. See Exhibits A-B.

12. With respect to BofA, Debtor is the owner of the following real property (the "Property" or "BofA Property", or "BofA Real Property Collateral"): 26,941 square feet of office and flexible use space located at 3950 E. Sunset in Las Vegas, NV.

13. BofA, successor-in-interest to First Republic Bank ("First Republic"), is the beneficiary to the promissory note (the "Note") secured by deed of trust executed by First Republic and Fidelity National Title Insurance Company, as trustee and Shoshone Cattle and Land Development Co. ("Shoshone"). On or about January 15, 2008, Whitton (f/k/a South Tech – Polaris, LLC) purchased the property from Shoshone and assumed all rights duties and obligations under the original loan documents and the deed of for the Property as hereinafter defined. Upon execution of the original note

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

and deed of trust between First Trust and Shoshone, First Republic allegedly recorded the deed of trust and properly perfected its security interests in the Property.[3]

14. First Republic, as lender, and Shoshone, as borrower, executed the Note on February 11, 2004, which had an original principal amount of $4.0 million (the "<u>BofA Loan</u>") at a fixed rate of 5.75% through March 1, 2009, subject to rate adjustment thereafter. Tom E. Hallett is the guarantor of the Loan, which is secured by that certain deed of trust, fixture filing, assignment of rents, and security agreement dated February 11, 2004, recorded in the official records ("<u>Official Records</u>") of the recorder's office for Clark County, Nevada, on February 23, 2004, in Book No. 20040223 as Instrument No. 03087 (the "<u>Deed of Trust</u>"). The Deed of Trust secures the Note by granting a security interest in all buildings, fixtures, easements, rents and profits, development rights, water rights, mineral rights, and crops in the BofA Property[4] and an absolute assignment of rents and profits from the BofA Property (the "<u>BofA Rents</u>"). Debtor's books and records indicate that approximately $3.6 million remains outstanding on the Note. On September 27, 2010, BofA recorded its substitution of the trustee under the Deed of Trust by which Nevada Title Company was substituted as trustee for Fidelity National Title Insurance Company in the Clark County Recorder's Office at Instrument No. 0000699 in Book 201000927.

15. Section 2.14 of the Deed of Trust provides, in pertinent part, that Whitton, as successor in interest to Shoshone:

> [A]bsolutely, irrevocably and unconditionally grants, transfers and assigns to Lender all Rents and Profits. Prior to the occurrence of and Event of Default, [Whitton] shall have a license to collect and retain on the terms of this Section 2.14 all Rents and Profits as they become due and payable. Upon the occurrence of an Event of Default, [Whitton's] license to collect Rents and Profits shall automatically be revoked without notice to [Whitton]. Following such revocation, Lender shall be entitled to collect and retain all Rents and Profits, whether or not Lender has taken possession of the Property, and [Whitton] shall

---

[3] Nothing contained herein shall constitute an admission that any lien, encumbrance, or security interest asserted by any alleged lender in this Chapter 11 Case is attached to the alleged collateral or that any security interest is properly perfected under the Bankruptcy Code or applicable state law. Debtor expressly reserves all rights to investigate and challenge the validity of any lien, encumbrance, or security interest asserted by any lender pursuant to Bankruptcy Code section 544 or any other applicable law.

[4] The BofA Property securing the BofA Loan is identical to Annie Oakley, as prior to the Merger, Affiliate, South Tech – Polaris, LLC held 100% of the equity of, Affiliate, South Tech – Annie Oakley, LLC.

immediately pay or deliver to Lender any Rents and Profits then held or thereafter collected by [Whitton]. All Rents and Profits collected by or on behalf of Lender may be applied by Lender to the Obligations in such order and amounts as Lender may determine. If Lender elects to seek the appointment of a receiver following the occurrence of an Event of Default, [Whitton] irrevocably and unconditionally consents to the appointment of a receiver without regard to the adequacy of the security for any of the Obligations. Notwithstanding anything to the contrary contained in this Deed of Trust, the assignment of Rents and Profits contained in this Section is an absolute assignment and not an assignment as security.

16. All of the loan documents executed in connection with the BofA Loan, including, without limitation all of the documents referenced hereinabove, shall collectively be referred to as the "<u>BofA Loan Documents</u>" and the BofA Property and BofA Rents shall be referred to as the "<u>BofA Prepetition Collateral</u>."

17. Prior to the Petition Date, one or more defaults of events of default occurred under the BofA Loan Documents and BofA exercised its rights under the BofA Loan Documents.

18. On November 11, 2010, BofA filed its complaint (the "<u>BofA Complaint</u>") in the Eighth Judicial District Court (the "<u>Clark County Court</u>"), in and for Clark County, Nevada, case number A-10-629158-B seeking the appointment of a receiver for the Property (the "<u>BofA Complaint</u>").

19. The BofA Complaint alleges that beginning January 1, 2010, the Debtor failed to make its monthly payment due under the Note and that as of November 4, 2010, excluding costs and fees, $321,176.32 was past due.

20. Without prejudice to the rights of any other party, Debtor admits, stipulates, and agrees that:

    a) as of the Petition Date, Debtor was indebted and liable under the BofA Loan, without defense, counterclaim or offset of any kind, in the following approximate amount: $3.6 million, plus interest, fees and expenses (including any reasonable attorneys' and advisors' fees that are chargeable or reimbursable under the BofA Loan Documents) (all such indebtedness set forth in this paragraph (ii), the "<u>BofA Prepetition Indebtedness</u>"); and

    b) the BofA Prepetition Indebtedness constitutes the legal, valid and binding obligations of Debtor, enforceable in accordance with its terms (other than in respect of the stay of enforcement against Debtor arising from Section 362 of the Bankruptcy Code).

21. All of Debtor's cash resulting from the collection of the BofA Rents (whether held by Debtor, or BofA) constitutes BofA Prepetition Collateral or proceeds of the BofA Prepetition Collateral

and, therefore, is cash collateral within the meaning of Bankruptcy Code section 363(a) (the "<u>BofA Cash Collateral</u>").

22. Without the ability to utilize the BofA Cash Collateral, the value of the BofA Prepetition Collateral will deteriorate substantially and entry of the BofA Interim Order is in the best interests of Debtor, its estate and its creditors and equity holders.

23. Debtor is the owner of the following real property (the "<u>GSMS Property</u>," or "<u>GSMS Real Property Collateral</u>"): approximately 80,515 square feet of office light industrial and warehouse space located at 1215 & 1275 Kleppe Lane and 1455 Deming Way, Sparks NV.

24. The GSMS Property was purchased by Whitton (f/k/a South Tech – Kleppe, LLC) from Kleppe Industrial Park by assuming all liabilities under the then existing loan agreement and deed of trust by and between Kleppe Industrial Park A, B & E, LLC and the original lender, Skymar Capital Corporation ("<u>Skymar</u>" or "<u>Original Lender</u>"), as set forth below.

25. Skymar, as original lender, and Kleppe Industrial Park A, B, & E, LLC, as original borrower ("<u>Original Borrower</u>"), executed the "Promissory Note (Kleppe Industrial Park)" dated June 23, 2004 (the "<u>GSMS Note</u>"), which had an original principal amount of $2.9 million. The Note is secured by that certain Deed of Trust, Assignment of Rents and Security Agreement dated June 23, 2004 (the "<u>GSMS Deed of Trust</u>"), recorded in the Official Records of the Washoe County Recorder on June 23, 2004. GSMS asserts that through a series of allonges and assignments it is perfected in the GSMS Note and GSMS Deed of Trust. The Note is also secured by that certain Assignment of Leases and Rents dated June 23, 2004, recorded Official Records of the Washoe County Recorder on June 23, 2004. Hereinafter the aforesaid Assignment of Leases and Rents dated June 23, 2004 shall be referred to as the "<u>Assignment of Rents</u>." GSMS asserts it holds an assignment of all of the Assignor's right, title and interest in and to the Leases (as defined in the Assignment of Rents), together with all rents, earnings, income, profits, benefits and advantages arising from the Kleppe Property and from the Leases, all as more fully set forth in the Assignment of Rents (the "<u>GSMS Rents</u>").

26. South Tech Kleppe, LLC, took control of the GSMS Property and assumed all liabilities under the GSMS Note through that certain Assumption of Liability and Modification Agreement between Original Lender, Original Borrower, South Tech Kleppe, LLC and others – recorded with the

Washoe County Recorder on January 4, 2006 as document number 3332285. The grant, bargain and sale deed conveying the GSMS Property from Kleppe Industrial Park A, B, & E, LLC to South Tech Kleppe, LLC, was recorded in the Official Records of the Washoe County Recorder on January 4, 2006, and an amendment to the UCC-1 filed with the Nevada Secretary of State on behalf of Skymar on July 13, 2004 (file number 2004021944-5), was filed in conjunction with the sale and assignment to South Tech – Kleppe, LLC.

27. Prior to the Petition Date, one or more defaults of events of default occurred under the GSMS Loan Documents and GSMS exercised its rights under the GSMS Loan Documents.

28. Without prejudice to the rights of any other party, Debtor admits, stipulates, and agrees that:

    a) as of the Petition Date, Debtor was indebted and liable under the Loan, without defense, counterclaim or offset of any kind, in the following approximate amount: $2.6 million, plus interest, fees and expenses (including any reasonable attorneys' and advisors' fees that are chargeable or reimbursable under the Loan Documents) (all such indebtedness set forth in this paragraph (ii), the "<u>GSMS Prepetition Indebtedness</u>"); and

    b) the GSMS Prepetition Indebtedness constitutes the legal, valid and binding obligations of Debtor, enforceable in accordance with its terms (other than in respect of the stay of enforcement against Debtor arising from Section 362 of the Bankruptcy Code).

29. All of Debtor's cash resulting from the collection of the GSMS Rents (whether held by Debtor, or GSMS) constitutes prepetition collateral or proceeds of the prepetition collateral and, therefore, is cash collateral within the meaning of Bankruptcy Code section 363(a) (the "<u>GSMS Cash Collateral</u>").

Without the ability to utilize the GSMS Cash Collateral, the value of the its prepetition collateral will deteriorate substantially and entry of the GSMS Interim Order is in the best interests of Debtor, its estate and its creditors and equity holders.

## V. DEBTOR'S PROPOSED USE OF CASH COLLATERAL

**A.** **<u>Negotiations Leading to the Cash Collateral Motion and the Chapter 11 Case.</u>**

30. Prior to the Petition Date, Debtor and its advisors surveyed various sources of refinancing to fund Debtor's efforts to pay off the Secured Obligations. In exploring those options,

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

1  Debtor recognized that the Secured Obligations are secured by the Prepetition Collateral, which
2  constitute substantially all of Debtor's assets.

3        31.    Consequently, Debtor has determined that initiating the Chapter 11 Case, obtaining the
4  right to use cash collateral, and providing the Adequate Protection is appropriate and necessary on an
5  interim and a final basis under these circumstances and affords Debtor the best chance to maximize the
6  value of its assets and enhance the recovery for all creditors. Given the amount of cash generated by
7  Debtor's operations, no postpetition financing is needed to maintain operations if Debtor is granted the
8  use of Cash Collateral which will sufficiently address Debtor's working capital and liquidity needs, will
9  enable Debtor to maintain a good business relationship with its vendors, suppliers and customers, and
10 will allow Debtor to make payroll and necessary capital expenditures. Accordingly, this Cash
11 Collateral Motion should be approved.

12 **B.**    <u>**Adequate Protection of the Secured Lenders.**</u>

13       32.    In order to fund its ongoing business operations and address its working capital needs,
14 Debtor requires the immediate use of Cash Collateral. The use of Cash Collateral will provide Debtor
15 with the necessary capital to operate its business, pay its employees and maximize value for the Secured
16 Lenders.

17       33.    Pursuant to sections 361 and 363(e) of the Bankruptcy Code, the Secured Lenders are
18 entitled to adequate protection of their interests in their respective Prepetition Collateral, including the
19 Cash Collateral, for and equal in amount to the aggregate diminution in the value (each such
20 diminution, a "<u>Diminution in Value</u>") of their security interests in the Prepetition Collateral as a result
21 of, among other things, Debtor's sale, lease or use of Cash Collateral and any other Prepetition
22 Collateral and the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code or
23 otherwise. As adequate protection, the Secured Lenders are granted those protections set forth in the
24 Concise Statement provided above.

25       34.    The provisions of the Cash Collateral Orders also provide for the relative priorities of the
26 replacement liens and superpriority claims of the Adequate Protection Claims. In essence, the Secured
27 Lenders will hold the most senior liens and are first priority administrative expenses with the collateral
28

security granted and the superpriority status conferred subject to payments allowed under any order granting the use of Cash Collateral.

## VI. THE INTERIM ORDERS SHOULD BE APPROVED

35. Bankruptcy Code Section 363(c) provides that "[t]he trustee may not use, sell, or lease cash collateral under paragraph ( 1 ) of this subsection unless—(A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section." 11 U.S.C. § 363(c)(2).

36. Debtor requires the use of Cash Collateral [4] to fund its day-to-day operations. Debtor's operational needs can be satisfied only if Debtor is immediately authorized to use Cash Collateral on an interim basis in the amount of $58,881 in the aggregate to fund its operations. Indeed, absent such relief, Debtor's business will be brought to an immediate halt with damaging consequences for Debtor, its estate and creditors.

37. An integral aspect of maintaining Debtor's relationships and its business operations is Debtor's ability to use Cash Collateral to preserve a stable and consistent operation as a going concern. Approval of Debtor's use of Cash Collateral as proposed herein will provide Debtor with immediate and ongoing access to funding, pay its current and ongoing operating expenses, including postpetition wages and salaries, vendor, and other operational costs (such as rent and utilities) assuring the maximum value for such assets and recovery for creditors.

38. Unless Debtor is permitted to use Cash Collateral and such expenditures are made, Debtor will be forced to cease operations, which would have a devastating effect on any hope of recovery on the assets at anything approaching their value if Debtor is operating as a going concern.

///

---

[4] The term "cash collateral" is defined in Section 363(a) as including the following:

[C]ash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring, rents, or profits of property and the fees, charges, accounts or other payments for the use or occupancy of rooms and other public facilities in hotels, motels, or other lodging properties subject to a security interest as provided in section 552 (b) of this title, whether existing before or after the commencement of a case under this title.

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

39. Section 363(e) provides, in pertinent part, as follows:

(e) Notwithstanding any other provision of this section, at any time, on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest. . . .

11 U.S.C. § 363(e).

40. Section 361 of the Bankruptcy Code delineates the permissible forms of adequate protection, which include periodic cash payments, additional liens, replacement liens, and other forms of relief. 11 U.S.C. § 361. What constitutes adequate protection must be decided on a case-by-case basis. See In re O'Connor, 808 F.2d 1393, 1396 (10th Cir. 1987); In re Martin, 761 F.2d 472, 474 (8th Cir. 1985). The focus of the requirement is to protect a secured creditor from diminution in the value of its interest in the particular collateral during the period of use. In re Kain, 86 B.R. 506, 513 (Bankr. W.D. Mich. 1988); see also Delbridge v. Production Credit Assoc. and Fed. Land Bank, 104 B.R. 824, 827-28 (E.D. Mich. 1989); In re Ledgemere Land Corp., 116 B.R. 338, 343 (Bankr. D. Mass. 1990).

41. In this Chapter 11 Case, the interests of the Secured Lenders in the Cash Collateral will be protected by the Adequate Protection set forth in the proposed Interim Orders and detailed above. The replacement liens and security interests, the payment of Excess Cash and other protections offered to the Secured Lenders will sufficiently protect their interests.

42. The Adequate Protection proposed herein is fair and reasonable and sufficient to satisfy the requirements of Bankruptcy Code sections 363(c)(2) and (e). Accordingly, this Court should approve Debtor's request to use Cash Collateral in the operation and maintenance of its business as a going concern and the administration of this Chapter 11 Case.

## VII. NOTICE

43. No trustee or examiner has been appointed in this Chapter 11 Case. Debtor has served notice of this Motion on: (i) the Office of the United States Trustee for the District of Nevada (Attn: J. Michal Bloom); (ii) those creditors holding the twenty largest unsecured claims against the Debtor's estate; (iii) Counsel for Bank of Las Vegas (Attn: Nile Leatham, Esq. and Joseph Went, Esq. at Kolesar & Leatham, Chtd.); Counsel for Hudson Americas (Attn: Robert Kinas, Esq. and Stephen Yoken, Esq. at Snell & Wilmer); Counsel for Bank of America (Attn: Rodney M. Jean, Esq. and Mohamed Iqbal,

Esq. at Lionel Sawyer & Collins); and Counsel for GMS 2004-GG-2, Sparks Industrial, LLC (Attn: Phillip Wang, Esq. at Duane Morris, LLP); (iv) any other entity asserting recorded liens against any of Debtor's assets, and their counsel, if known; (v) the Internal Revenue Service; and (vi) the Securities and Exchange Commission in compliance with Bankruptcy Rules 4001(b) and (c) and the Local Rules (collectively, the "Notice Parties"). Debtor submits that no other or further notice need be provided.

44. No previous request for the relief sought herein has been made by Debtor to this Court or any other court.

WHEREFORE, Debtor respectfully requests that the Court grant the relief requested herein and enter the Interim Orders substantially in the form attached hereto as Exhibits A-D, respectively, and grant such other and further relief as it deems just and proper.

DATED this 21st day of December 2010.

**FOX ROTHSCHILD LLP**

By *s/ Brett A. Axelrod*
BRETT A. AXELROD, ESQ.
Nevada Bar No. 5859
ANNE M. LORADITCH, ESQ.
Nevada Bar No. 8164
MICAELA RUSTIA, ESQ.
Nevada Bar No. 9676
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169

*[Proposed] Counsel for Whitton Corporation*

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)