# * * § 362 INFORMATION SHEET * *

**Whitton Corporation**
DEBTOR

10-32680-bam
Case No:

MOTION #:

**Wells Fargo Bank, N.A.**
MOVANT

CHAPTER: 11

***Certification of Attempt to Resolve the Matter Without Court Action:***

*Moving counsel hereby certifies that pursuant to the requirements of LR 4001(a)(2), an attempt has been made to resolve the matter without court action, but movant has been unable to do so.*

*Date:* *03/14/2011*

*Signature:* */s/ Claire Y. Dossier*
*Attorney for Movant*

PROPERTY INVOLVED IN THIS MOTION: *See* Exhibit A to this 362 Information Sheet
NOTICE SERVED ON: Debtor(s) X ; Debtor's counsel X ; Trustee X ;
DATE OF SERVICE: via CM/ECF on 3/16/11

| MOVING PARTY'S CONTENTIONS: | DEBTOR'S CONTENTIONS: |
|---|---|
| The EXTENT and PRIORITY of LIENS: | The EXTENT and PRIORITY of LIENS: |
| 1st See chart on p. 26 of Motion | 1st See chart on p. 26 of Motion |
| 2nd | 2nd |
| 3rd | 3rd |
| 4th | 4th |
| Other: | Other: |
| Total Encumbrances: | Total Encumbrances: |
| APPRAISAL of OPINION as to VALUE: | APPRAISAL of OPINION as to VALUE: |

| TERMS of MOVANT'S CONTRACT with the DEBTOR(S): | DEBTOR'S OFFER of "ADEQUATE PROTECTION" for MOVANT: |
|---|---|
| Amount of Note: See chart on p. 26 of Motion | • |
| Interest Rate: Variable | • |
| Duration: Variable | • |
| Payment per Month: Variable | • |
| Date of Default: Variable; Receiver appointed in April 2010 | • |
| Amount in Arrears: Variable; *see* Declaration filed in Support of Motion | • |
| Date of Notice of Default: Variable; see Motion | • |
| SPECIAL CIRCUMSTANCES: Five separate loan transactions secured by five different pieces of property are subject to this lift stay motion. See Exhibit A, attached hereto. | SPECIAL CIRCUMSTANCES: |
| SUBMITTED BY: Claire Y. Dossier | SUBMITTED BY: |
| SIGNATURE: /s/ Claire Y. Dossier | SIGNATURE: |

EXHIBIT A

Collateral includes, but is not limited to, the real property and rents generated therefrom located at:

1) 5480 Valley View Boulevard, Las Vegas, NV 89118 (defined as the "Diablo Real Property")

2) 5720 and 5770 South Valley View Boulevard, Las Vegas, NV 89118, bearing Assessor Parcel Number 162-32-101-001 (defined as the "Russell Real Property")

3) 2455 Cheyenne, Las Vegas, NV 89032, bearing Assessor Parcel Number 139-17-510-039 (defined as the "Partners Real Property")

4) 7625 Dean Martin Drive, Las Vegas, NV 89139, bearing Assessor Parcel Number 177-08-211-001 (defined as the "Rio Real Property (Dean Martin Drive)")

5) 835 and 855 Seven Hills, Henderson, NV 89052, bearing Assessor Parcel Numbers 177-35-512-002 and 177-35-512-004 (defined as the "Polaris Real Property").

**E-filed: March 16, 2011**

Robert R. Kinas (Nevada Bar No. 6019)
Claire Y. Dossier (Nevada Bar No. 10030)
Nishat Baig (Nevada Bar No. 11047)
SNELL & WILMER L.L.P.
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, NV 89169
Telephone: (702) 784-5200
Facsimile: (702) 784-5252
Email: rkinas@swlaw.com
cdossier@swlaw.com
nbaig@swlaw.com
*Attorneys for Wells Fargo Bank, N.A.*

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

In re

WHITTON CORPORATION[1], a Nevada corporation,

☒ Affects this Debtor
☐ Affects all Debtors
☐ Affects South Tech Simmons 3040C, LLC,

Debtors.

WELLS FARGO BANK, N.A.

Movant,

v.

WHITTON CORPORATION, a Nevada corporation,

Respondent.

Case No. 10-32680-bam
Case No. 10-32857-bam

Chapter 11

Jointly Administered Under
Case No. 10-32680-bam

**WELLS FARGO BANK'S MOTION FOR A DETERMINATION THAT DEBTOR IS SUBJECT TO THE BANKRUPTCY CODE'S REQUIREMENTS FOR A SINGLE ASSET REAL ESTATE CASE AND FOR RELIEF FROM STAY, AND, IN THE ALTERNATIVE, FOR ADEQUATE PROTECTION**

**Hearing Date: April 20, 2011**

**Hearing Time: 9:30 a.m.**

**Hearing Location:**
**United States Bankruptcy Court**
**Foley Federal Building, Courtroom No. 3**
**300 Las Vegas Blvd South, Third Floor**
**Las Vegas, Nevada 89101**

[1] Debtor was formerly doing business as the following entities: South Tech Brooks 2750, LLC, fdba Desert Pacific Properties, L.L.C., fdba South Tech Partners, LLC, fdba South Tech Real Estate Services, LLC, fdba South Tech-Polaris, LLC, fdba South Tech Dean Martin 7625, LLC, fdba South Tech Annie Oakley, LLC, fdba TEH Investments, LLC, fdba South Tech Seven Hills, LLC, fdba South Tech Construction Corp., fdba South Tech Cheyenne 2475, LLC, fdba South Tech Cheyenne West 2455A LLC, fdba South Tech Kleppe, LLC fdba, South Tech Stephanie 1000, LLC, fdba South Tech Development, LLC, fdba South Tech-Russell, LLC, fdba South Tech Glendale 155, LLC, fdba South Tech Greg, LLC, fdba South Tech – Rio, LLC, fdba South Tech – Diablo, LLC

Wells Fargo Bank, N.A. ("Wells Fargo"), by and through its counsel, Snell & Wilmer L.L.P., hereby brings this *Motion for a Determination that Debtor Is Subject to the Bankruptcy Code's Requirements for a Single Asset Real Estate and for Relief from Stay, and, in the Alternative, for Adequate Protection* (the "Motion") pursuant to 11 U.S.C. § 362(d)(1), (d)(2), and (d)(3) to allow Wells Fargo to exercise any and all of its available rights and remedies in and to its collateral, which consists of certain real property and the revenues generated therefrom located at: 1) 5480 Valley View Boulevard, Las Vegas, NV 89118 (defined below as the "Diablo Real Property"); 2) 5720 and 5770 South Valley View Boulevard, Las Vegas, NV 89118, bearing Assessor Parcel Number 162-32-101-001 (defined below as the "Russell Real Property"); 3) 2455 Cheyenne, Las Vegas, NV 89032, bearing Assessor Parcel Number 139-17-510-039 (defined below as the "Partners Real Property"); 4) 7625 Dean Martin Drive, Las Vegas, NV 89139, bearing Assessor Parcel Number 177-08-211-001 (defined below as the "Rio Real Property (Dean Martin Drive)"), and 5) 835 and 855 Seven Hills, Henderson, NV 89052, bearing Assessor Parcel Numbers 177-35-512-002 and 177-35-512-004 (defined below as the "Polaris Real Property").

This motion is supported by the accompanying Memorandum of Points and Authorities, the § 362 Information Sheet required by LR 4001(a)(2), the Declaration of David Witherspoon, filed concurrently herewith (the "Declaration"), all pleadings and papers of record, and any oral argument the Court may entertain.

DATED this 16th day of March, 2011.

SNELL & WILMER L.L.P.

By: /s/ Claire Y. Dossier
Robert R. Kinas (Nevada Bar No. 6019
Claire Y. Dossier (Nevada Bar No. 10030)
Nishat Baig (Nevada Bar No. 11047)
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, NV 89169
*Attorneys for Wells Fargo Bank, N.A.*

# TABLE OF CONTENTS

Page


MEMORANDUM OF POINTS AND AUTHORITIES. .... 3

INTRODUCTION .... 3

JURISDICTION .... 4

RELEVANT FACTS AND BACKGROUND .... 4

A. The Diablo Loan, Default, Receivership, Merger, and Bankruptcy .... 5

1. The Diablo Loan Documents .... 5
2. The Diablo Default .... 6
3. The Diablo Receivership .... 7
4. Debtor's Merger and Bankruptcy Petition .... 8
5. Wells Fargo's Interest in the Diablo Loan .... 8

B. The Russell Loan, Default, Receivership, Merger, and Bankruptcy .... 9

6. The Russell Loan Documents .... 9
7. The Russell Default .... 11
8. The Russell Receivership .... 11
9. Russell's Merger and Bankruptcy Petition .... 12
10. Wells Fargo's Interest in the Russell Loan .... 12

C. The Partners Loan, Default, Receivership, Merger, and Bankruptcy .... 13

11. The Partners Loan Documents .... 13
12. The Partners Default .... 14
13. The Partners Receivership .... 15
14. Debtor's Merger and Bankruptcy Petition .... 15
15. Wells Fargo's Interest in the Partners Loan .... 15

D. The Rio Loan, Default, Receivership, Merger, and Bankruptcy .... 16

16. The Rio Loan Documents .... 16
17. The Rio Default .... 18
18. The Rio Receivership .... 19
19. Rio's Merger and Bankruptcy Petition .... 19
20. Wells Fargo's Interest in the Rio Loan .... 19

E. Polaris Loan, Default, Receivership, Merger, and Bankruptcy .... 20

21. The Polaris Loan Documents .... 20
22. The Polaris Default .... 22
23. The Polaris Receivership .... 23
24. Debtor's Merger and Bankruptcy Petition .... 23
25. Wells Fargo's Interest in the Polaris Loan .... 23

RELIEF REQUESTED .... 24

ARGUMENT .... 25

A. Stay Relief Is Appropriate Pursuant to 11 U.S.C. § 362(d)(2) Because Debtor Has No Equity in the Property and It Is Not Necessary for an Effective Reorganization .... 25

B. Debtor Is Subject to the Single Asset Real Estate Requirements Set Forth in 11 U.S.C. § 362(d)(3), and the Stay Should Terminate If Debtor Fails to Comply With Those Requirements .... 27

C. "Cause" Exists to Terminate the Stay Under 11 U.S.C. § 362(d)(1) .... 29

**TABLE OF CONTENTS**
**(continued)**

**Page**

1. Cause Exists to Terminate the Stay Because Debtor Lacks Equity in the Property and Wells Fargo Is Not Adequately Protected .................... 29
2. Bad Faith Constitutes Additional Cause to Terminate the Stay.............. 30
3. Cause Also Exists to Terminate the Automatic Stay Because Debtor Has Failed to Make Monthly Payments ............................................... 33

D. If the Court Does Not Lift the Stay, Wells Fargo is Entitled to Adequate Protection Payments.................................................................................. 33

VI. CONCLUSION ........................................................................................................ 34

## TABLE OF AUTHORITIES

Page

### CASES

Adelson v. Smith (In re Smith), 389 B.R. 902, 924 (Bankr. D. Nev. 1998)............... 30, 32

In re Arnold, 806 F.2d 937, 939 (9th Cir. 1986)........................................................29-31

In re CBJ Development, Inc., 202 B.R. 467, 470 (9th Cir. B.A.P. 1996)......................... 28

In re Delaney-Morin, 304 B.R. 365, 370 (9th Cir. B.A.P. 2003)................................29-30

In re Heather Apts. Ltd. P'ship, 366 B.R. 45-50 (Bankr. D. Minn. 2007)........................ 29

In re Jones, 189 B.R. 13, 15 (Bankr. E.D. Okla. 1995)............................................. 29, 33

In re Kkemko, Inc., 181 B.R. 47, 49 (Bankr. S.D. Ohio 1995)......................................... 28

In re LDN Corp., 191 B.R. 320, 326-27 (Bankr. E.D. Va. 1996)...............................27-28

In re Mellor, 734 F.2d 1396, 1400 (9th Cir. 1984) .......................................................... 33

In re Setzer, 47 B.R. 340, 345 (Bankr. E.D.N.Y. 1985) .................................................. 30

In re Winshall Settlor's Trust, 758 F.2d 1136, 1137 (6th Cir. 1985)............................... 32

In re Yukon Enterprises, 39 B.R. 919, 921-22 (Bankr. C.D. Cal. 1984) ......................... 30

Marsch v. Marsch (In re Marsch), 36 F.3d 825, 828 (9th Cir. 1994)............................... 30

Matter of Little Creek Development Co., 779 F.2d 1068, 1071 (5th Cir. 1986).........30-31

Sun Valley Ranches, Inc. v. Equitable Life Assurance Society of the United States (In re Sun Valley Ranches, Inc.), 823 F.2d 1373, 1375 (9th Cir. 1987)...................... 30

United Savings Assoc. of Texas v. Timbers of Inwood Forest Assoc., Ltd., 44 U.S. 365, 375-76 (1988)............................................................................................ 26

### STATUTES

11 U.S.C. § 101(51B)............................................................................................... 3, 28

11 U.S.C. § 361 ............................................................................................................. 33

11 U.S.C. § 362(d) ............................................................................................... 4, 25-33

11 U.S.C. § 362(d)(1)..................................................................................... 4, 25, 29-33

11 U.S.C. § 362(d)(2)............................................................................................ 4, 25-27

11 U.S.C. § 362(d)(3)............................................................................. 4, 25, 27-29, 32

11 U.S.C. § 362(g)(1)-(g)(2) .............................................................................................. 30

11 U.S.C. § 363 ........................................................................................................... 4, 33

28 U.S.C. § 157 ................................................................................................................ 4

28 U.S.C. § 1334 .............................................................................................................. 4

## TABLE OF AUTHORITIES
**(continued)**

**Page**

### RULES

Fed. R. Bankr. P. 9014 .......... 4
Fed. R. Bankr. P. 4001(a)(3) .......... 25

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.**

**INTRODUCTION**

Wells Fargo is a creditor with liens on five different commercial real estate projects, pursuant to five separate loan transactions with Debtor's predecessors in interest. Before Debtor's bankruptcy all of these projects were owned by different entities in default, and subject to a receivership pending in Nevada state court since March 2010. The receiver remains in place post-bankruptcy pursuant to a previous order by this Court. Two days before Debtor filed its petition for chapter 11 relief as a debtor-in-possession, it filed a series of Articles of Merger with the Nevada Secretary of State, merging the various single purpose entities into the Debtor's current incarnation, Whitton Corporation.

The pre-petition merger obscures Debtor's true colors and adds layers of complication for creditors. Without the mergers, the various Debtor entities would likely have constituted "single asset real estate" or "SARE" cases pursuant to 11 U.S.C. § 101(51B). As this Court is well aware, Congress has imposed a variety of restrictions on bankruptcy petitions filed by SARE entities, including a truncated ninety-day timeline to either commence adequate protection payments, or file a plan with a reasonable possibility of confirmation. By merging a slew of entities two days prior to filing bankruptcy, Debtor has avoided those provisions of the Bankruptcy Code. Debtor's merger also avoided the substantive consolidation requirements imposed by the Bankruptcy Code, and enmeshed a series of unrelated creditors into an expensive and complicated bankruptcy case.

Debtor's true colors are revealed not only by the pre-petition merger, but also by Debtor's recent DIP financing motion. *See Motion for Interim and Final Order Pursuant to 11 U.S.C. §§ 105, 364, Fed. R. Bankr. P. Rule 4001(c) and L.R. 4001(b) and (c): (I) Authorizing Debtors to Obtain Postpetition Financing; (II) Granting Related Relief, and (III) Scheduling Final Hearing*

///

///

///

[Docket No. 229] (the "DIP Financing Motion"). The DIP Financing Motion seeks funding solely for professionals' fees, and contemplates a return of equity to Tom Hallet, Debtor's insider, as well as a $200,000 per year salary. The DIP Financing Motion benefits Debtor's professionals and insiders, but fails to show that Debtor has an actual need for the proposed funding.

Grounds exist to terminate the automatic stay pursuant to 11 U.S.C. § 362(d)(2), (d)(3) and (d)(1). First, the Court should terminate the automatic stay pursuant to Section 362(d)(2), because Debtor lacks equity in the subject property, and it is not necessary to an effective reorganization.

Second, the Court should not permit Debtor's series of mergers two days prior to the petition date to thwart the requirements for a single asset real estate case pursuant to Section 362(d)(3). Wells Fargo thus asks the Court to recognize that Debtor is subject to the Bankruptcy Code's provisions for a single asset real estate case. Accordingly, because Debtor has not commenced monthly payments or filed a plan with a reasonable possibility of being confirmed within ninety days of the petition date, i.e. March 7, 2011, the automatic stay should terminate.

Third, "cause" exists to terminate the stay pursuant to Section 362(d)(1) because: 1) Wells Fargo is not adequately protected; 2) Debtor has failed to make any monthly payments; and 3) Debtor's series of mergers and bankruptcy filings could constitute cause and bad faith.

## II.

## JURISDICTION

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(G) and is a contested matter pursuant to Rule 9014 of the Federal Rules of Bankruptcy Procedure.

## III.

## RELEVANT FACTS AND BACKGROUND

Wells Fargo has a properly-perfected, first priority security interest in five separate parcels of rent-generating commercial real property located in Henderson and Las Vegas, Nevada, pursuant to five separate loans. Debtor's five separate predecessors-in-interest defaulted under each of the respective loans, and a receiver was appointed over each of the five

properties. Two days prior to the Debtor's petition date, Debtor filed a series of Articles of Merger with the Nevada Secretary of State, merging the previous entities into Debtor's current incarnation, the Whitton Corporation.

The following discussion addresses each of Debtor's five separate predecessors-in-interest's respective loans, defaults, receiverships, and mergers in turn.

**A. The Diablo Loan, Default, Receivership, Merger, and Bankruptcy**

**1. The Diablo Loan Documents**

a. On or about March 31, 2005, South Tech-Diablo, LLC ("Diablo") executed an "Adjustable Rate Promissory Note" for $2,400,000.00 (the "Diablo Note") in favor of Citibank (West) FSB, a federal savings bank ("Citibank FSB"), with interest on the unpaid principal balance from the date of the Diablo Note until paid (the "Diablo Loan"). A true and correct copy of the Diablo Note is attached hereto as **Exhibit 1** and incorporated herein by this reference.

b. Diablo secured the Diablo Note by executing a "Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing" dated March 31, 2005 in favor of Citibank FSB (the "Diablo Deed of Trust"). The Diablo Deed of Trust was duly recorded with the Clark County Recorder on April 8, 2005, as Instrument No. 20050408-0004830, Official Records, Clark County, Nevada. A true and correct copy of the recorded Diablo Deed of Trust is attached hereto as **Exhibit 2** and incorporated herein by this reference. The Diablo Deed of Trust encumbers, among other things, the real property described therein and located at 5480 Valley View Boulevard, Las Vegas, NV 89118, bearing Assessor Parcel Number 162-29-301-039 (the "Diablo Real Property").

c. Diablo also executed an "Absolute Assignment of Rents and of Landlord's Interest in Leases" dated March 31, 2005 in favor of Citibank FSB (the "Diablo Assignment of Rents"). The Diablo Assignment of Rents was duly recorded with the Clark County Recorder on April 8, 2005, as Instrument No. 20050408-0004831, Official Records, Clark County, Nevada. A true and correct copy of the Diablo Assignment of Rents is attached hereto as **Exhibit 3** and incorporated herein by this reference.

d. A UCC Financing Statement was duly filed against Diablo with the Nevada Secretary of State on June 29, 2005, as Document No. 2005020085-4 (the "Diablo Financing Statement"). A true and correct copy of the filed Diablo Financing Statement is attached hereto as **Exhibit 4** and incorporated herein by this reference. The Diablo Note, Diablo Deed of Trust, Diablo Assignment of Rents and Diablo Financing Statement are hereafter collectively referred to as the "Diablo Loan Documents."

e. Pursuant to the terms of the Diablo Deed of Trust and all provisions incorporated by reference therein, Citibank FSB received a first priority, properly perfected lien in, on and to, among other things, the Diablo Real Property and all the tangible and intangible personal property and interests identified in the Diablo Deed of Trust, Diablo Assignment of Rents and Diablo Financing Statement (the "Diablo Property").

f. Pursuant to the Diablo Deed of Trust and Diablo Assignment of Rents, Debtor assigned Citibank FSB its interest in all leases and rental, tenancy and occupancy agreements now or hereafter on or affecting the Diablo Property or any improvements thereto, as defined in the Diablo Deed of Trust and Diablo Assignment of Rents, and all books and records pertaining thereto, together with all rents, issues, profits, security deposits, royalties, tolls earnings, income and other benefits payable thereunder (the "Diablo Rents").

g. Pursuant to Section 6 of the Diablo Note and Paragraph 20 of Diablo Deed of Trust, it is a "Default" under the Diablo Note and Diablo Deed of Trust if, among other things, Diablo fails to make any payment or to do any act as provided in the Diablo Loan Documents or fails to perform any obligation secured by the Diablo Deed of Trust, or should Diablo do any act Diablo agreed not to do.

h. Pursuant to Paragraphs 18 and 20 of Diablo Deed of Trust and Paragraph 5(d) of the Diablo Assignment of Rents, Wells Fargo may apply to a court of competent jurisdiction for, and obtain appointment of, a receiver of the Diablo Property upon the occurrence of a Default.

2. **The Diablo Default**

a. Diablo defaulted under the Diablo Loan Documents. *See* Verified

Complaint (the "Verified Complaint"), filed in District Court, Clark County, Nevada as Case No. A10611352, a copy of which is attached hereto, without exhibits as **Exhibit 5**.

b. Payments required to be made under the Diablo Note on October 1, 2009, and all subsequent payments were not made when due. *Id.*

c. Diablo's failure to timely make payments under the Diablo Note constitutes a Default under the Diablo Note and Diablo Deed of Trust. *Id.*

d. As of February 24, 2010, the amount due and owing from Diablo to Citibank FSB under the Diablo Note was an amount of not less than $2,230,758.50 with additional fees, costs, and interest continuing to accrue under the terms of the Diablo Loan Documents. *Id.*

e. On or about December 30, 2009, Citibank FSB provided Diablo written notice of default and acceleration of the entire principal balance under the Diablo Note together with all accrued and unpaid interest as being immediately due (the "Diablo Notice"). A true and correct copy of the Diablo Notice is attached hereto as **Exhibit 6**. In the Diablo Notice, Citibank FSB advised Defendants that based on such defaults, the loan obligations under the Diablo Note were presently due and owing and that if not paid Citibank FSB reserved the right to exercise "all of its rights and remedies" contained in the Diablo Loan Documents.

f. Citibank FSB recorded a "Notice of Default and Election to Sell under Deed of Trust" in Clark County, Nevada (the "Diablo Recorded Notice") pursuant to the Diablo Deed of Trust, which was recorded with the Clark County Recorder on February 26, 2010 as Instrument No. 20100226-0000270, Official Records, Clark County, Nevada. A true and correct copy of the Diablo Recorded Notice is attached hereto as **Exhibit 7** and incorporated herein by reference.

3. **The Diablo Receivership**

a. On March 5, 2010, the successor in interest to Citibank FSB, Citibank, N.A. (*see disc. infra.)* filed a complaint for the appointment of receiver for the Diablo Property with the State Court

b. The State Court entered an Order appointing a receiver for the Diablo

Property on or about April 8, 2010.

4. **Debtor's Merger and Bankruptcy Petition**

a. On December 3, 2010, Diablo and Debtor Whitton Corporation filed Articles of Merger (the "Diablo Articles of Merger") with the Nevada Secretary of State. A true and correct copy of the Diablo Articles of Merger is attached hereto as **Exhibit 8.**

b. On December 5, 2010 (the "Petition Date"), Debtor filed a chapter 11 petition for relief.

5. **Wells Fargo's Interest in the Diablo Loan**

a. Pursuant to the Comptroller of the Currency's written official certification of merger between Citibank FSB and Citibank, N.A., Citibank, N.A. duly succeeded to Citibank FSB's interest as lender in all of the Diablo Loan Documents. A true and correct copy of the letter of official certification from the Comptroller of the Currency for Citibank FSB to merge with and into, Citibank, N.A. is attached hereto as **Exhibit 9**.

b. On October 15, 2010, Citibank, N.A., executed that certain Allonge (the "Diablo Allonge I") in favor of LSREF2 Nova Investments, LLC, assigning the Diablo Note to LSREF2 Nova Investments, LLC. A true and correct copy of the Diablo Allonge I is attached as **Exhibit 10**.

c. On November 24, 2010, an "Assignment of Mortgage and Assignment of Rents and Leases" (the "Diablo Assignment of Mortgage"), assigning Citibank, N.A.'s interest in the Diablo Deed of Trust to LSREF Nova Investments, LLC, was recorded with the Clark County Recorder's Office as Instrument No. 20101124-0002199. A true and correct copy of the Diablo Assignment of Mortgage is attached as **Exhibit 11.**

d. On December 10, 2010, LSREF2 Nova Investments, LLC executed that certain Allonge (the "Diablo Allonge II") in favor of Wells Fargo Bank, N.A., assigning the Diablo Note to Wells Fargo. A true and correct copy of the Diablo Allonge II is attached hereto as **Exhibit 12**.

e. On December 16, 2010, an "Assignment of Security Instruments" (the "Diablo Assignment of Security Instruments"), assigning LSREF2 Nova Investments, LLC's

interest in the Diablo Deed of Trust to Wells Fargo, was recorded with the Clark County Recorder's Office as Instrument No. 20101216-0004472. A true and correct copy of the Diablo Assignment of Security Instruments is attached hereto as **Exhibit 13.**

f. Wells Fargo has succeeded to all of Citibank FSB's interests in the Diablo Loan.

g. As of the Petition Date, the amount due and owing under the Diablo Loan was no less than $2,464,717.75. *See* Declaration.

**B. The Russell Loan, Default, Receivership, Merger, and Bankruptcy**

6. **The Russell Loan Documents**

a. On or about March 31, 2005, South Tech-Russell, LLC ("Russell") executed an "Adjustable Rate Promissory Note" (the "Russell Note") in favor of Citibank FSB in the amount of $2,000,000.00 with interest on the unpaid principal balance from the date of the Russell Note until paid (the "Russell Loan"). A true and correct copy of the Russell Note is attached hereto as **Exhibit 14** and incorporated herein by this reference.

b. On or about March 31, 2005, Russell executed a "Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing" in favor of Citibank FSB (the "Russell Deed of Trust"). The Russell Deed of Trust was duly recorded with the Clark County Recorder on April 8, 2005, as Instrument No. 20050408-0004834, Official Records, Clark County, Nevada. A true and correct copy of the recorded Russell Deed of Trust is attached hereto as **Exhibit 15** and incorporated herein by this reference. The Russell Deed of Trust encumbers, among other things, the real property described therein and located at 5720 and 5770 South Valley View Boulevard, Las Vegas, NV 89118, bearing Assessor Parcel Number 162-32-101-001 (the "Russell Real Property").

c. Russell also executed an "Absolute Assignment of Rents and of Landlord's Interest in Leases" dated March 31, 2005 in favor of Citibank FSB (the "Russell Assignment of Rents"). The Russell Assignment of Rents was duly recorded with the Clark County Recorder on April 8, 2005, as Instrument No. 20050408-0004835, Official Records, Clark County, Nevada. A true and correct copy of the Russell Assignment of Rents is attached

hereto as **Exhibit 16** and incorporated herein by this reference.

d. A UCC Financing Statement was duly filed against Russell with the Nevada Secretary of State on June 29, 2005, as Document No. 2005020089-2 (the "Russell Financing Statement"). A true and correct copy of the filed Russell Financing Statement is attached hereto as **Exhibit 17** and incorporated herein by this reference. The Russell Note, Russell Deed of Trust, Russell Assignment of Rents and Russell Financing Statement are hereafter collectively referred to as the "Russell Loan Documents."

e. Pursuant to the terms of the Russell Deed of Trust and all provisions incorporated by reference therein, Citibank FSB received a first priority, properly perfected lien in, on and to, among other things, the Russell Real Property and all the tangible and intangible personal property and interests identified in the Russell Deed of Trust, Russell Assignment of Rents and Russell Financing Statement (the "Russell Property").

f. Pursuant to the Russell Deed of Trust and Russell Assignment of Rents, Citibank FSB was irrevocably, absolutely and unconditionally assigned all right, title, and interest of Russell in and to any and all leases and rental, tenancy and occupancy agreements now or hereafter on or affecting the Russell Real Property or any improvements thereto, as defined in the Russell Deed of Trust and Russell Assignment of Rents, and all books and records pertaining thereto, together with all rents, issues, profits, security deposits, royalties, tolls earnings, income and other benefits payable thereunder (the "Russell Rents").

g. Pursuant to Section 6 of the Russell Note and Paragraph 20 of Russell Deed of Trust, it is a "Default" under the Russell Note and Russell Deed of Trust if, among other things, Russell fails to make any payment or to do any act as provided in the Loan Documents or fails to perform any obligation secured by the Russell Deed of Trust, or should Russell do any act Russell agreed not to do.

h. Pursuant to Paragraphs 18 and 20 of Russell Deed of Trust and Paragraph 5(d) of the Russell Assignment of Rents, Citibank FSB may apply to a court of competent jurisdiction for, and obtain appointment of, a receiver of the Russell Property upon the occurrence of a Default.

7. **The Russell Default**

a. Payments required to be made under the Russell Note on October 1, 2009, and all subsequent payments were not made when due. *See* Verified Complaint, Exhibit 5.

b. Russell's failure to timely make payments under the Russell Note constitutes a Default under the Russell Note and Russell Deed of Trust. *Id.*

c. As of February 24, 2010, the amount due and owing from Russell to Citibank FSB under the Russell Note was an amount of not less than $1,858,458.09 with additional fees, costs, and interest continuing to accrue under the terms of the Russell Loan Documents. *Id.*

d. On or about December 30, 2009, Citibank FSB provided Russell written notice of default and acceleration of the entire principal balance under the Russell Note together with all accrued and unpaid interest as being immediately due (the "Russell Notice"). A true and correct copy of the Russell Notice is attached hereto as **Exhibit 18**. In the Russell Notice, Citibank FSB advised Defendants that based on such defaults, the loan obligations under Russell Note were presently due and owing and that if not paid Citibank FSB reserved the right to exercise "all of its rights and remedies" contained in the Russell Loan Documents.

e. Citibank FSB has recorded a "Notice of Default and Election to Sell under Deed of Trust" in Clark County, Nevada (the "Russell Recorded Notice") pursuant to the Russell Deed of Trust, which was recorded with the Clark County Recorder on February 26, 2010 as Instrument No. 20100226-0000269, Official Records, Clark County, Nevada. A true and correct copy of the Russell Recorded Notice is attached hereto as **Exhibit 19** and incorporated herein by reference.

8. **The Russell Receivership**

a. On March 5, 2010, the successor in interest to Citibank FSB, Citibank, N.A. (*see disc. infra.)* filed a complaint for the appointment of receiver for the Russell Property with the State Court

b. The State Court entered an Order appointing a receiver for the Russell Property on or about April 8, 2010.

9. **Russell's Merger and Bankruptcy Petition**

a. On December 3, 2010, Russell and Debtor Whitton Corporation filed Articles of Merger (the "Russell Articles of Merger") with the Nevada Secretary of State. A true and correct copy of the Russell Articles of Merger is attached hereto as **Exhibit 20.**

b. Two days later, on the Petition Date, Debtor filed a chapter 11 petition for relief.

10. **Wells Fargo's Interest in the Russell Loan**

a. Pursuant to the Comptroller of the Currency's written official certification of merger between Citibank FSB and Citibank, N.A., Citibank, N.A. duly succeeded to Citibank FSB's interest as lender in all of the Russell Loan Documents. *See* Exhibit 8, letter of official certification from the Comptroller of the Currency for Citibank FSB to merge with and into, Citibank, N.A.

b. On October 12, 2010, Citibank, N.A., executed that certain Allonge (the "Russell Allonge I") in favor of LSREF2 Nova Investments, LLC, assigning the Russell Note to LSREF2 Nova Investments, LLC. A true and correct copy of the Russell Allonge I is attached hereto as **Exhibit 21**.

c. On November 24, 2010, that certain "Assignment of Mortgage and Assignment of Rents and Leases" (the "Russell Assignment of Mortgage"), assigning Citibank, N.A.'s interest in the Russell Deed of Trust to LSREF Nova Investments, LLC, was recorded with the Clark County Recorder's Office as Instrument No. 20101124-00023331. A copy of the Russell Assignment of Mortgage is attached hereto as **Exhibit 22.**

d. On December 10, 2010, LSREF2 Nova Investments, LLC executed that certain Allonge (the "Russell Allonge II") in favor of Wells Fargo Bank, N.A., assigning the Russell Note to Wells Fargo. A true and correct copy of the Russell Allonge II is attached hereto as **Exhibit 23**.

e. On December 16, 2010, an "Assignment of Security Instruments" (the "Russell Assignment of Security Instruments"), assigning the interests of LSREF2 Nova Investments, LLC in the Russell Deed of Trust to Wells Fargo, was recorded with the Clark

County Recorder's Office as Instrument No. 20101216-0004475. A copy of the Russell Assignment of Security Instruments is attached as **Exhibit 24.**

f. Wells Fargo has succeeded to all of Citibank FSB's interests in the Russell Loan.

g. As of the Petition Date, the amount due and owing under the Russell Loan was no less than $2,054,108.33. *See* Declaration.

**C. The Partners Loan, Default, Receivership, Merger, and Bankruptcy**

**11. The Partners Loan Documents**

a. On or about January 12, 2006, South Tech Partners, LLC ("Partners") executed a "Fixed Rate Promissory Note" (the "Partners Note") in favor of Citibank FSB for $3,000,000.00, with interest on the unpaid principal balance from the date of the Partners Note until paid (the "Partners Loan"). A true and correct copy of the Partners Note is attached hereto as **Exhibit 25** and incorporated herein by this reference.

b. On or about January 12, 2006, Partners, as "Grantor," executed a "Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing" in favor of Citibank FSB (the "Partners Deed of Trust"). The Partners Deed of Trust was duly recorded with the Clark County Recorder on January 13, 2006, as Instrument No. 20060113-0003744, Official Records, Clark County, Nevada. A true and correct copy of the recorded Partners Deed of Trust is attached hereto as **Exhibit 26** and incorporated herein by this reference. The Partners Deed of Trust encumbers, among other things, the real property described therein and located at 2455 Cheyenne, Las Vegas, NV 89032, bearing Assessor Parcel Number 139-17-510-039 (the "Partners Real Property").

c. A UCC Financing Statement was duly filed against Partners with the Nevada Secretary of State on February 9, 2006, as Document No. 2006004513-5 (the "Partners Financing Statement"). A true and correct copy of the filed Partners Financing Statement is attached hereto as **Exhibit 27** and incorporated herein by this reference. The Partners Note, Partners Deed of Trust and Partners Financing Statement are hereafter collectively referred to as the "Partners Loan Documents."

d. Pursuant to the terms of the Partners Deed of Trust and all provisions incorporated by reference therein, Citibank FSB has a first priority, properly perfected lien in, on and to, among other things, the Partners Real Property and all the tangible and intangible personal property and interests identified in the Partners Deed of Trust and Partners Financing Statement (the "Partners Property"), including all rents, issues, profits, security deposits, royalties, tolls earnings, income and other benefits payable generated by the Partners Property (the "Partners Rents").

e. Pursuant to Section 4 of the Partners Note and Paragraph 20 of Partners Deed of Trust, it is a "Default" under the Partners Note and Partners Deed of Trust if, among other things, Partners fails to make any payment or to do any act as provided in the Loan Documents or fails to perform any obligation secured by the Partners Deed of Trust, or should Partners do any act Partners agreed not to do.

f. Pursuant to Paragraphs 18 and 20 of Partners Deed of Trust, Citibank FSB may apply to a court of competent jurisdiction for, and obtain appointment of, a receiver of the Partners Property upon the occurrence of a Default.

12. **The Partners Default**

a. Payments required to be made under the Partners Note on October 1, 2009, and all subsequent payments were not made when due. *See* Verified Complaint, Exhibit 5.

b. Partners' failure to timely make payments under the Partners Note constitutes a Default under the Partners Note and Partners Deed of Trust. *Id.*

c. As of February 24, 2010, the amount due and owing from Partners to Citibank FSB under the Partners Note was an amount of not less than $2,861,013.65 with additional fees, costs, and interest continuing to accrue under the terms of the Partners Loan Documents. *Id.*

d. On or about December 30, 2009, Citibank FSB provided Partners written notice of default and acceleration of the entire principal balance under the Partners Note together with all accrued and unpaid interest as being immediately due (the "Partners Notice"). A true and correct copy of the Partners Notice is attached hereto as **Exhibit 28**. In the Partners Notice,

Citibank FSB advised Defendants that based on such defaults, the loan obligations under the Partners Note were presently due and owing and that if not paid Citibank FSB reserved the right to exercise "all of its rights and remedies" contained in the Partners Loan Documents.

e. Citibank FSB recorded a "Notice of Default and Election to Sell under Deed of Trust" in Clark County, Nevada (the "Partners Recorded Notice") pursuant to the Partners Deed of Trust, which was recorded with the Clark County Recorder on February 26, 2010 as Instrument No. 20100226-0000265, Official Records, Clark County, Nevada. A true and correct copy of the Partners Recorded Notice is attached hereto as **Exhibit 29** and incorporated herein by reference.

13. **The Partners Receivership**

a. On March 5, 2010, the successor in interest to Citibank FSB, Citibank, N.A. (*see disc. infra.)* filed a complaint for the appointment of receiver for the Partners Property with the State Court

b. The State Court entered an Order appointing a receiver for the Partners Property on or about April 8, 2010.

14. **Debtor's Merger and Bankruptcy Petition**

a. On December 3, 2010, Partners, South Tech Cheyenne 2475, LLC, South Tech Brooks 2750, LLC, South Tech Klepps, LLC, and Debtor Whitton Corporation filed Articles of Merger (the "Partners Articles of Merger") with the Nevada Secretary of State. A true and correct copy of the Partners Articles of Merger is attached hereto as **Exhibit 30.**

b. Two days later, on the Petition Date, Debtor filed a chapter 11 petition for relief.

15. **Wells Fargo's Interest in the Partners Loan**

a. Pursuant to the Comptroller of the Currency's written official certification of merger between Citibank FSB and Citibank, N.A., Citibank, N.A. duly succeeded to Citibank FSB's interest as lender in all of the Partners Loan Documents. *See* Exhibit 8, letter of official certification from the Comptroller of the Currency for Citibank FSB to merge with and into, Citibank, N.A.

b. On October 15, 2010, Citibank, N.A., executed that certain Allonge (the "Partners Allonge I") in favor of LSREF2 Nova Investments, LLC, assigning the Partners Note to LSREF2 Nova Investments, LLC. A true and correct copy of the Partners Allonge I is attached hereto as **Exhibit 31**.

c. On November 24, 2010, that certain "Assignment of Mortgage" (the "Partners Assignment of Mortgage"), assigning Citibank, N.A.'s interest in the Partners Deed of Trust to LSREF2 Nova Investments, LLC, was recorded with the Clark County Recorder's Office as Instrument No. 20101124-0002219. A copy of the Partners Assignment of Mortgage is attaches as **Exhibit 32.**

d. On December 10, 2011, LSREF2 Nova Investments, LLC executed that certain Allonge (the "Partners Allonge II") in favor of Wells Fargo Bank, N.A., assigning the Partners Note to Wells Fargo. A true and correct copy of the Partners Allonge II is attached hereto as **Exhibit 33**.

e. On January 20, 2011, an "Assignment of Security Instruments" (the "Partners Assignment of Security Instruments"), assigning LSREF2 Nova Investments, LLC's interest in the Partners Deed of Trust to Wells Fargo, was recorded with the Clark County Recorder's Office as Instrument No. 20110112-00001186. A copy of the Partners Assignment of Security Instruments is attached hereto as **Exhibit 34**

f. Wells Fargo has succeeded to all of Citibank FSB's interests in the Partners Loan.

g. As of the Petition Date, the amount due and owing under the Partners Loan was no less than $3,249,907.01. *See* Declaration.

**D. The Rio Loan, Default, Receivership, Merger, and Bankruptcy**

16. **The Rio Loan Documents**

a. On or about April 4, 2006, South Tech-Rio, LLC ("Rio") executed an "Adjustable Rate Promissory Note" (the "Rio Note (Dean Martin Drive)") in favor of Citibank FSB for $2,100,000.00, with interest on the unpaid principal balance from the date of the Rio Note (Dean Martin Drive) until paid (the "Rio Loan (Dean Martin Drive)"). A true and correct

copy of the Rio Note (Dean Martin Drive) is attached hereto as **Exhibit 35** and incorporated herein by this reference.

b. On or about April 4, 2006, Rio executed a "Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing" in favor of Citibank FSB (the "Rio Deed of Trust (Dean Martin Drive)").[2] The Rio Deed of Trust (Dean Martin Drive) was duly recorded with the Clark County Recorder on April 6, 2006, as Instrument No. 20060406-0004306, Official Records, Clark County, Nevada. A true and correct copy of the recorded Rio Deed of Trust (Dean Martin Drive) is attached hereto as **Exhibit 36** and incorporated herein by this reference. The Rio Deed of Trust (Dean Martin Drive) encumbers, among other things, the real property described therein and located at 7625 Dean Martin Drive, Las Vegas, NV 89139, bearing Assessor Parcel Number 177-08-211-001 (the "Rio Real Property (Dean Martin Drive)").

c. A UCC Financing Statement was duly filed against Rio with the Nevada Secretary of State on April 10, 2006, as Document No. 2006011117-4 (the "Rio Financing Statement (Dean Martin Drive)"). A true and correct copy of the recorded Rio Financing Statement (Dean Martin Drive) is attached hereto as **Exhibit 37** and incorporated herein by this reference. The Rio Note (Dean Martin Drive), Rio Deed of Trust (Dean Martin Drive) and Rio Financing Statement (Dean Martin Drive) are hereafter collectively referred to as the "Rio Loan Documents (Dean Martin Drive)."

d. Pursuant to the terms of the Rio Deed of Trust (Dean Martin Drive) and all provisions incorporated by reference therein, Citibank FSB has a first priority, properly perfected lien in, on and to, among other things, the Rio Real Property (Dean Martin Drive) and all the tangible and intangible personal property and interests identified in the Rio Deed of Trust (Dean Martin Drive) and Rio Financing Statement (Dean Martin Drive) (the "Rio Property (Dean Martin Drive)").

e. Pursuant to the Rio Deed of Trust (Dean Martin Drive), Citibank FSB was

---

[2] Wells Fargo includes the phrase "Dean Martin Drive" in its abbreviations for the Rio transaction because another secured lender, LSREF2 Nova Investments II, LLC, also asserts a security interest via a loan with Rio, except the property subject to that loan transaction is located at 1000 Stephanie Street, Henderson, NV.

irrevocably, absolutely and unconditionally assigned all right, title, and interest of Rio in and to any and all leases and rental, tenancy and occupancy agreements now or hereafter on or affecting the Rio Real Property (Dean Martin Drive) or any improvements thereto, as defined in the Rio Deed of Trust (Dean Martin Drive), and all books and records pertaining thereto, together with all rents, issues, profits, security deposits, royalties, tolls earnings, income and other benefits payable thereunder (the "Rio Rents (Dean Martin Drive)").

f. Pursuant to Section 6 of the Rio Note (Dean Martin Drive) and Paragraph 20 of Rio Deed of Trust (Dean Martin Drive), it is a "Default" under the Rio Note (Dean Martin Drive) and Rio Deed of Trust (Dean Martin Drive) if, among other things, Rio fails to make any payment or to do any act as provided in the Loan Documents or fails to perform any obligation secured by the Rio Deed of Trust (Dean Martin Drive), or should Rio do any act Rio agreed not to do.

g. Pursuant to Paragraphs 18 and 20 of Rio Deed of Trust (Dean Martin Drive), Citibank FSB may apply to a court of competent jurisdiction for, and obtain appointment of, a receiver of the Rio Property (Dean Martin Drive) upon the occurrence of a Default.

17. **The Rio Default**

a. Payments required to be made under the Rio Note (Dean Martin Drive) on October 1, 2009, and all subsequent payments were not made when due.

b. Rio's failure to timely make payments under the Rio Note (Dean Martin Drive) constitutes a Default under the Rio Note (Dean Martin Drive) and the Rio Deed of Trust (Dean Martin Drive).

c. As of February 24, 2010, the amount due and owing from Rio to Citibank FSB under the Rio Note (Dean Martin Drive) was an amount of not less than $2,033,971.39 with additional fees, costs, and interest continuing to accrue under the terms of the Rio Loan Documents (Dean Martin Drive).

d. On or about December 30, 2009, Citibank FSB provided Rio written notice of default and acceleration of the entire principal balance under the Rio Note (Dean Martin Drive) together with all accrued and unpaid interest as being immediately due (the "Rio

Notice"). A true and correct copy of the Rio Notice is attached hereto as **Exhibit 38**. In the Rio Notice, Citibank FSB advised Defendants that based on such defaults, the loan obligations under Rio Note (Dean Martin Drive) were presently due and owing and that if not paid Citibank FSB reserved the right to exercise "all of its rights and remedies" contained in the Rio Loan Documents (Dean Martin Drive).

e. Citibank FSB has recorded a "Notice of Default and Election to Sell under Deed of Trust" in Clark County, Nevada (the "Rio Recorded Notice") pursuant to the Rio Deed of Trust, which was recorded with the Clark County Recorder on February 26, 2010 as Instrument No. 20100226-0000268, Official Records, Clark County, Nevada. A true and correct copy of the Rio Recorded Notice is attached hereto as **Exhibit 39** and incorporated herein by reference.

18. **The Rio Receivership**

a. On March 5, 2010 Citibank FSB filed a complaint for the appointment of receiver for the Rio Property (Dean Martin Drive) with the State Court.

b. The State Court entered an Order appointing a receiver for the Rio Property (Dean Martin Drive) on or about April 8, 2010.

19. **Rio's Merger and Bankruptcy Petition**

a. On December 3, 2010, Rio, South Tech Dean Martin 7625, LLC, South Tech Stephanie 1000, LLC, and Debtor Whitton Corporation filed Articles of Merger (the "Rio Articles of Merger") with the Nevada Secretary of State. A true and correct copy of the Rio Articles of Merger is attached hereto as **Exhibit 40.**

b. Two days later, on the Petition Date, Debtor filed a chapter 11 petition for relief.

20. **Wells Fargo's Interest in the Rio Loan**

a. Pursuant to the Comptroller of the Currency's written official certification of merger between Citibank FSB and Citibank, N.A., Citibank, N.A. duly succeeded to Citibank FSB's interest as lender in all of the Rio Loan Documents. *See* Exhibit 8, letter of official certification from the Comptroller of the Currency for Citibank FSB to merge with and into,

Citibank, N.A.

b. On October 15, 2010, Citibank, N.A. executed that certain Allonge (the "Rio Allonge I") in favor of LSREF2 Nova Investments, LLC, assigning the Rio Note to LSREF2 Nova Investments, LLC. A true and correct copy of the Rio Allonge I is attached hereto as **Exhibit 41**.

c. On November 24, 2010, an "Assignment of Mortgage" (the "Rio Assignment of Mortgage"), assigning Citibank, N.A.'s interest in the Rio Property to LSREF2 Nova Investments, LLC, was recorded with the Clark County Recorder's Office as Instrument No. 20101124-0002224. A true and correct copy of the Rio Assignment of Mortgage is attached hereto as **Exhibit 42.**

d. On December 10, 2011, LSREF2 Nova Investments, LLC executed that certain Allonge (the "Rio Allonge II") in favor of Wells Fargo Bank, N.A., assigning the Rio Note to Wells Fargo. A true and correct copy of the Rio Allonge II is attached hereto as **Exhibit 43**.

e. On December 16, 2011, an "Assignment of Security Interests" (the "Rio Assignment of Security Instruments"), transferring LSREF2 Nova Investments, LLC's interest in the Rio Property to Wells Fargo, was recorded with the Clark County Recorder's Office as Instrument No. 20101216-0004474. A true and correct copy of the Rio Assignment of Security Instruments is attached hereto as **Exhibit 44**.

f. Wells Fargo has succeeded to all of Citibank FSB's interests in the Rio Loan.

g. As of the Petition Date, the amount due and owing under the Rio Loan was no less than $2,271,013.75. *See* Declaration.

**E. Polaris Loan, Default, Receivership, Merger, and Bankruptcy**

21. **The Polaris Loan Documents**

a. On or about February 1, 2008, South Tech-Polaris, LLC ("Polaris"), as borrower, executed a "Fixed Rate Promissory Note" (the "Polaris Note") in favor of Citibank FSB for $8,000,000.00, with interest on the unpaid principal balance from the date of the Polaris

Note until paid (the "Polaris Loan"). A true and correct copy of the Polaris Note is attached hereto as **Exhibit 45** and incorporated herein by this reference.

b. On or about February 1, 2008, Polaris executed a "Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing" in favor of Citibank FSB (the "Polaris Deed of Trust"). The Polaris Deed of Trust was duly recorded with the Clark County Recorder on February 5, 2008, as Instrument No. 20080205-0003559, Official Records, Clark County, Nevada. A true and correct copy of the recorded the Polaris Deed of Trust is attached hereto as **Exhibit 46** and incorporated herein by this reference. The Polaris Deed of Trust encumbers, among other things, the real property described therein and located at 835 and 855 Seven Hills, Henderson, NV 89052, bearing Assessor Parcel Numbers 177-35-512-002 and 177-35-512-004 (the "Polaris Real Property").

c. A UCC Financing Statement was duly filed against Polaris with the Nevada Secretary of State on February 8, 2008, as Document No. 2008004213-3 (the "Polaris Financing Statement"). A true and correct copy of the recorded Polaris Financing Statement is attached hereto as **Exhibit 47** and incorporated herein by this reference. The Polaris Note, Polaris Deed of Trust and Polaris Financing Statement are hereafter collectively referred to as the "Polaris Loan Documents."

d. Pursuant to the terms of the Polaris Deed of Trust and all provisions incorporated by reference therein, Citibank FSB has a first priority, properly perfected lien in, on and to, among other things, the Polaris Real Property and all the tangible and intangible personal property and interests identified in the Polaris Deed of Trust and Polaris Financing Statement (the "Polaris Property").

e. Pursuant to the Polaris Deed of Trust, Citibank FSB was irrevocably, absolutely and unconditionally assigned all right, title, and interest of Polaris in and to any and all leases and rental, tenancy and occupancy agreements now or hereafter on or affecting the Polaris Real Property or any improvements thereto, as defined in the Polaris Deed of Trust, and all books and records pertaining thereto, together with all rents, issues, profits, security deposits, royalties, tolls earnings, income and other benefits payable thereunder (the "Polaris Rents").

f. Pursuant to Section 4 of the Polaris Note and Paragraph 20 of Polaris Deed of Trust, it is a "Default" under the Polaris Note and Polaris Deed of Trust if, among other things, Polaris fails to make any payment or to do any act as provided in the Loan Documents or fails to perform any obligation secured by the Polaris Deed of Trust, or should Polaris do any act Polaris agreed not to do.

g. Pursuant to Paragraphs 18 and 20 of Polaris Deed of Trust, Citibank FSB may apply to a court of competent jurisdiction for, and obtain appointment of, a receiver of the Polaris Property upon the occurrence of a Default.

22. **The Polaris Default**

a. Payments required to be made under the Polaris Note on October 1, 2009, and all subsequent payments were not made when due. *See* Verified Complaint, Exhibit 5.

b. Polaris' failure to timely make payments under the Polaris Note constitutes a Default under the Polaris Note and Polaris Deed of Trust. *Id.*

c. As of February 24, 2010, the amount due and owing from Polaris to Citibank FSB under the Polaris Note was an amount of not less than $8,293,204.04 with additional fees, costs, and interest continuing to accrue under the terms of the Polaris Loan Documents. *Id.*

d. On or about December 30, 2009, Citibank FSB provided Polaris written notice of default and acceleration of the entire principal balance under the Polaris Note together with all accrued and unpaid interest as being immediately due (the "Polaris Notice"). A true and correct copy of the Polaris Notice is attached hereto as **Exhibit 48**. In the Polaris Notice, Citibank FSB advised Defendants that based on such defaults, the loan obligations under the Polaris Note were presently due and owing and that if not paid Citibank FSB reserved the right to exercise "all of its rights and remedies" contained in the Polaris Loan Documents.

e. Citibank FSB recorded a "Notice of Default and Election to Sell under Deed of Trust" in Clark County, Nevada (the "Polaris Recorded Notice") pursuant to the Polaris Deed of Trust, which was recorded with the Clark County Recorder on February 26, 2010 as Instrument No. 20100226-0000267, Official Records, Clark County, Nevada. A true and correct

copy of the Polaris Recorded Notice is attached hereto as **Exhibit 49** and incorporated herein by reference.

23. **The Polaris Receivership**

a. On March 5, 2010, the successor in interest to Citibank FSB, Citibank, N.A. (*see disc. infra.)* filed a complaint for the appointment of receiver for the Polaris Property with the State Court

b. The State Court entered an Order appointing a receiver for the Polaris Property on or about April 8, 2010.

24. **Debtor's Merger and Bankruptcy Petition**

a. On December 3, 2010, Polaris, South Tech Annie Oakley, LLC, South Tech Seven Hills, LLC, and Debtor Whitton Corporation filed Articles of Merger (the "Polaris Articles of Merger") with the Nevada Secretary of State. A true and correct copy of the Polaris Articles of Merger is attached hereto as **Exhibit 50.**

b. Two days later, on the Petition Date, Debtor filed a chapter 11 petition for relief.

25. **Wells Fargo's Interest in the Polaris Loan**

a. Pursuant to the Comptroller of the Currency's written official certification of merger between Citibank FSB and Citibank, N.A., Citibank, N.A. duly succeeded to Citibank FSB's interest as lender in all of the Polaris Loan Documents. *See* Exhibit 8, letter of official certification from the Comptroller of the Currency for Citibank FSB to merge with and into, Citibank, N.A.

b. On October 15, 2010, Citibank, N.A., executed that certain Allonge (the "Polaris Allonge I") in favor of LSREF2 Nova Investments, LLC, assigning the Polaris Note to LSREF2 Nova Investments, LLC. A true and correct copy of the Polaris Allonge I is attached hereto as **Exhibit 51**.

c. On November 24, 2010, an "Assignment of Mortgage" (the "Polaris Assignment of Mortgage") was recorded with the Clark County Recorder's Office as Instrument No. 20101124-0002250, assigning Citibank, N.A.'s interest in the Polaris Deed of Trust to

LSREF2 Nova Investments, LCC. A copy of the Polaris Assignment of Mortgage is attached hereto as **Exhibit 52.**

d. On December 10, 2010, LSREF2 Nova Investments, LLC executed that certain Allonge (the "Polaris Allonge II") in favor of Wells Fargo Bank, N.A., assigning the Polaris Note to Wells Fargo. A true and correct copy of the Polaris Allonge II is attached hereto as **Exhibit 53**.

e. LSREF2 Nova Investments, LLC assigned its interest in the Polaris Deed of Trust to Wells Fargo pursuant to an "Assignment of Security Instruments" (the "Polaris Assignment of Security Instruments"). The Polaris Assignment of Security Instruments was recorded with the Clark County Recorder on December 10, 2010, as Instrument No. 20101216-0004471. A copy of the Polaris Assignment of Security Instruments is attached hereto as **Exhibit 54.**

f. Wells Fargo has succeeded to all of Citibank FSB's interests in the Polaris Loan.

g. As of the Petition Date, the amount due and owing under the Polaris Loan was no less than $9,619,119.49. *See* Declaration.

**IV.**

**RELIEF REQUESTED**

26. Wells Fargo respectfully requests that the Court enter an Order recognizing that Debtor is subject to the single asset real estate provisions of the Bankruptcy Code, and terminating the automatic stay as to permit Wells Fargo to exercise all rights and remedies under the Loan Documents and applicable law or at equity with respect to any collateral, including without limitation, Diablo Property, Russell Property, Partners Property, Rio Property (Dean Martin Drive), and the Polaris Property (collectively, the "Property") pursuant to 11 U.S.C. § 362(d)(3), (2), and (1).[3] Wells Fargo's rights include, but are not limited to, seeking turnover of rents from the receiver.

---

[3] The Diablo Loan Documents, Russell Loan Documents, Partner Loan Documents, Rio Loan Documents, and Polaris Loan Documents are hereafter referred to collectively as the "Loan Documents."

27. Wells Fargo also requests, pursuant to Rule 4001(a)(3) of the Federal Rules of Bankruptcy Procedure that the Court's order take effect immediately, and that the fourteen (14) day stay period set forth therein expressly not apply.

28. Alternatively, and only in the event the Court denies Wells Fargo's request to terminate the stay as to the Property, Wells Fargo respectfully requests that the Court enter an Order providing adequate protection.

V.

**ARGUMENT**

Grounds exist to terminate the automatic stay pursuant to Sections 362(d)(2), (d)(3, and (d)(1) of the Bankruptcy Code. The Court should terminate the automatic stay pursuant to Section 362(d)(2), because Debtor lacks equity in the subject property, and it is not necessary to an effective reorganization. Moreover, Debtor's series of mergers two days prior to the petition date do not exempt Debtor from the single asset real estate requirements established by Section 362(d)(3). Because Debtor has failed to commence payments or file a plan with a reasonable possibility of being confirmed within ninety days of the petition date, i.e. March 7, 2011, the automatic stay should terminate. Finally, "cause" exists to terminate the stay pursuant to Section 362(d)(1) because: 1) Wells Fargo is not adequately protected; 2) Debtor has failed to make its monthly payments, and 3) Debtor's series of mergers and subsequent bankruptcy filing could constitute bad faith and cause. In the event the Court does not terminate the stay, Debtor should be required to make monthly adequate protection payments to Wells Fargo.

**A. Stay Relief Is Appropriate Pursuant to 11 U.S.C. § 362(d)(2) Because Debtor Has No Equity in the Property and It Is Not Necessary for an Effective Reorganization**

Section 362(d)(2) grants a party-in-interest relief from the automatic stay if: (i) the Debtor does not have equity in the property; and (ii) the property is not necessary for an effective reorganization. Once the movant establishes that there is no equity in the collateral "it is the burden of the Debtor to establish that the collateral at issue is 'necessary to an effective reorganization.'" *United Savings Assoc. of Texas v. Timbers of Inwood Forest Associates, Ltd.*, 44 U.S. 365, 375-376, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988) (citation omitted). "What this

requires is not merely a showing that if there is conceivably to be an effective reorganization, this property will be needed for it; but that the property is essential for an effective reorganization **that is in prospect**." *Id.* (emphasis added). Furthermore, there must be "a reasonable possibility of successful reorganization within a reasonable time." *Id.* (citations omitted).

Debtor concedes on its schedules that it lacks equity in the Property. Specifically, according to Debtor's own Schedule A, there is no "equity cushion" to protect Wells Fargo's interests in any of the various parcels of Property. Moreover, Wells Fargo has obtained independent appraisals of the Properties, and these appraisals also support a finding that Debtor lacks equity in the Properties. The following summarizes the amounts due and owing, Debtor's valuation pursuant to its Schedule A, and Wells Fargo's valuation.

| **Property Name** | **Original Loan Amount** | **Amount Due**[4] | **Debtor Valuation** | **WF Valuation**[5] |
|---|---|---|---|---|
| Diablo | $2,400,000 | $2,464,717.75 | $1,100,000 | $2,050,000 |
| Russell | $2,000,000 | $2,054,108.33 | $1,214,931 | $1,725,000 |
| Partners | $3,000,000 | $3,249,907.01 | $1,930,930 | $3,200,000 |
| Rio | $2,100,000 | $2,271,013.75 | $750,000 | $500,000 |
| Polaris | $8,000,000 | $9,619,119.49 | $2,583,322 | $3,500,000 |

Review of the chart shows that the Properties lack equity. In addition, the Partners Property may diminish in value further because, on information and belief, its major tenant may soon be vacating the premises. Accordingly, pursuant to 11 U.S.C. § 362(d)(2), Debtor must show that the Property is "essential for an effective reorganization that is in prospect." *Id.*

To date, Debtor has not filed a Disclosure Statement or a Plan of Reorganization. Debtor has filed its DIP Financing Motion, however, and the DIP Financing Motion shows the type of plan contemplated by Debtor. As noted in Wells Fargo's Opposition, the DIP Financing Motion

[4] *See* Declaration.

[5] Wells Fargo's valuation is based on appraisals, copies of which have been provided to the Debtor, do not necessarily constitute Wells Fargo's final position regarding Property values.

initially elevated professionals' expenses to super-priority, encumbered estate property with junior liens, and provided Debtor's principal with an equity stake and a $200,000 annual salary. While Debtor's amended credit agreement, addressed by the Court during the March 15, 2011 interim hearing, removes some of the problematic aspects of the DIP Financing Motion, it still seeks to return equity to an insider without any kind of bidding process or valuation analysis, and includes complicated default provisions that could handicap the chapter 11 process. In addition, the DIP Financing Motion still fails to show a need – other than returning equity to insiders and funding professionals' fees – for the proposed financing. In short, the DIP Financing Motion does not support a finding that the Property is essential for an effective, in prospect reorganization. Accordingly, stay relief is appropriate pursuant to 11 U.S.C. § 362(d)(2).

**B. Debtor Is Subject to the Single Asset Real Estate Requirements Set Forth in 11 U.S.C. § 362(d)(3), and the Stay Should Terminate If Debtor Fails to Comply With Those Requirements**

Unique lift stay provisions apply to single asset real estate cases. Through the enactment of Section 362(d)(3), "Congress expressly attempted to avoid the usual delays experienced in Chapter 11 in single asset real estate cases, which historically have been filed to avoid foreclosure and in the hope that the debtor can come up with some form of miracle in order to formulate an acceptable plan." *In re LDN Corp.*, 191 B.R. 320, 326 (Bankr. E.D. Va. 1996).

Section 362(d)(3) provides in relevant part:

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay–
>
> ... (3) with respect to a stay of an act against single asset real estate under subsection (a), by a creditor whose claim is secured by an interest in such real estate, unless, not later than the date that is 90 days after the entry of the order for relief...or 30 days after the court determines that the debtor is subject to this paragraph, whichever is later–
>
> (A) the debtor has filed a plan of reorganization that has a reasonable possibility of being confirmed within a reasonable time; or
>
> (B) the debtor has commenced monthly payments that –
>
> (i) may, in the debtor's sole discretion, notwithstanding Section 363(c)(2), be made from rents or other income generated

> before, on, or after the date of the commencement of the case by or from the property to each creditor whose claim is secured by the real estate (other than a claim secured by a judgment lien or by an unmatured statutory lien); and
>
> (ii) are in an amount equal to interest at the then applicable nondefault contract rate of interest on the value of the creditor's interest in the real estate.

11 U.S.C. § 362(d)(3)(B).

The conditions in Section 362(d)(3) are *requirements* to continuation of the automatic stay with respect to single asset real estate. "[T]he consequence of not meeting [these] requirement[s] is that the automatic stay of § 362 may be lifted without further ado." *In re Kkemko, Inc.*, 181 B.R. 47, 49 (Bankr. S.D. Ohio 1995). The Ninth Circuit Bankruptcy Appellate Panel has quoted favorably persuasive authority for the proposition that "relief under § 362(d)(3) is *mandatory* where its provisions are not strictly complied with." *In re CBJ Development, Inc.*, 202 B.R. 467, 470 (9th Cir. BAP 1996) (quoting *In re LDN Corp.*, 191 B.R. 320 at 327) (emphasis added).

Until approximately two days before the Petition Date, Debtor consisted of a widespread panoply of single asset real estate entities, each with their own separate loans. *See disc. supra.* If any one of these entities had filed bankruptcy individually, most would have likely met the definition of a single asset real estate case under Section 101(51B) of the Bankruptcy Code.[6]

Congress enacted Section 362(d)(3) to encourage expedited treatment of SARE cases. Specifically, the legislative history and structure of Section 362(d)(3) shows that:

> Congress was concerned about the relative unfairness of lengthy delay in Chapter 11 cases involving single-asset real estate projects; that one of its goals aims to expedite the proposal of meritorious plans of reorganization; and that, where the case does not early kick forward toward confirmation, a debtor must compensate its mortgagee for the time-value of the mortgagee's debt-investment, by the payment of interest at the original contract rate.

---

[6] The sole exception appears to be Rio. Rio held title to two different pieces of real property – the Rio Real Property (Dean Martin Drive), as defined herein, and another piece of property, located at 1000 and 1030 Stephanie Place, Henderson, NV 89014 (the "Rio Real Property (Stephanie Place)"). The Rio Real Property (Stephanie Place) is subject to another secured creditor's motion for stay relief. *See* LSREF2 Nova Investments II, LLC's *Motion for Stay Relief and, in the Alternative, for Adequate Protection*, filed concurrently herewith. As noted in this Motion, however, grounds exist to terminate the stay pursuant to 11 U.S.C. § 362(d)(1) and (2) for the Rio Property, even if Rio does not constitute a single asset real estate entity.

*In re Heather Apts. Ltd. P'ship*, 366 B.R. 45, 49-50 (Bankr. D. Minn. 2007) (citations omitted). The Court should not permit Debtor to avoid the requirements of Section 362(d)(3) merely because it filed a series of mergers two days prior to the Petition Date, conglomerating multiple would-be SARE cases into a single disjointed and monolithic chapter 11 case.

Instead, Wells Fargo requests that the Court enter an Order recognizing that Debtor is subject to Section 362(d)(3)'s requirements. The Order should further establish that because Debtor has not commenced payments or filed a plan with a reasonable possibility of confirmation by **March 7, 2011** – ninety days after the Petition Date – the automatic stay terminates.

**C. <u>"Cause" Exists to Terminate the Stay Under 11 U.S.C. § 362(d)(1)</u>**

Pursuant to 11 U.S.C. § 362(d)(1), a party-in-interest may be granted relief from the automatic stay for "cause." The Bankruptcy Code does not define the term "cause," although it specifically references lack of adequate protection as a type of a cause for stay relief. 11 U.S.C. § 362(d)(1). In addition, a debtor's failure to make its regular monthly payments to a creditor constitutes "cause" to terminate the automatic stay. *In re Delaney-Morin*, 304 B.R. 365, 370 (9th Cir. B.A.P. 2003); *In re Jones*, 189 B.R. 13, 15 (Bankr. E.D. Okla. 1995). Finally, courts recognize that a debtor's bad faith in filing bankruptcy may constitute cause to terminate the automatic stay. *See, e.g., In re Arnold*, 806 F.2d 937, 939 (9th Cir. 1986). Here, lack of adequate protection, Debtor's failure to make monthly payments, and Debtor's potential bad faith in merging a plethora of single asset real estate entities two days prior to filing chapter 11 all constitute cause to terminate the automatic stay under 11 U.S.C. § 362(d)(1).

**1. Cause Exists to Terminate the Stay Because Debtor Lacks Equity in the Property and Wells Fargo Is Not Adequately Protected**

Cause exists to terminate the stay because Wells Fargo is not adequately protected. The burden of proof on a motion to modify the automatic stay is a shifting one, with the creditor bearing the initial burden of proving the debtor's lack of equity in the property. 11 U.S.C. § 362(g)(1). Thereafter, the burden shifts to the debtor to prove all other issues, including whether cause exists to terminate the automatic stay, and adequate protection. 11 U.S.C. § 362(g)(2); *see, e.g., Sun Valley Ranches, Inc. v. Equitable Life Assurance Society of the United States (In re Sun Valley Ranches,*

*Inc.)*, 823 F.2d 1373, 1375 (9th Cir. 1987) (debtor has burden to prove that movant's interest in the property at issue is adequately protected).

Wells Fargo can meet its burden to show Debtor's lack of equity in the Property. *See disc. supra*. Now that Wells Fargo has met its burden to show lack of equity, the burden now shifts to Debtor to show that Wells Fargo's interest in the Property is adequately protected.

Wells Fargo is not adequately protected. A secured creditor lacks adequate protection if there is a threat of decline in the value of its collateral. *In re Delaney-Morin*, 304 B.R. 365, 370 n. 3 (9th Cir. B.A.P. 2003). The value of Southern Nevada commercial real estate is generally known to be in decline, and Debtor has not presented any evidence of either appreciation or stabilization in property values.

**2. Bad Faith Constitutes Additional Cause to Terminate the Stay**

Debtor's pre-petition merger and actions establish a genuine issue regarding good faith, and could constitute cause to terminate the stay. Cause exists to terminate the stay when a debtor files bankruptcy in bad faith. *See* 11 U.S.C. § 362(d); *see also, Arnold*, 806 F.2d at 939 (9th Cir. 1986), citing *Matter of Little Creek Development Co.*, 779 F.2d 1068, 1071 (5th Cir. 1986) (lack of good faith constitutes "cause" for lifting the stay). "The existence of good faith depends on an amalgam of factors and not upon a specific fact. The test is whether a debtor is attempting to deter and harass creditors or attempting a speedy, efficient reorganization on a feasible basis." *Marsch v. Marsch* (*In re Marsch*, 36 F.3d 825, 828 (9th Cir. 1994); *see also, Adelson v. Smith (In re Smith*), 389 B.R. 902, 924 (Bankr. D. Nev. 1998). Once a movant establishes the existence of a genuine issue concerning the debtor's lack of good faith, the debtor then bears the burden of proving good faith by a preponderance of the evidence. *See, e.g., In re Yukon Enterprises*, 39 B.R. 919, 921-22 (Bankr. C.D. Cal. 1984); *In re Setzer*, 47 B.R. 340, 345 (Bankr. E.D.N.Y. 1985).

To aid them in their inquiry, courts have fashioned lists of factors typically present in bad faith filings. The most influential list of factors may be from *Little Creek*, wherein the Fifth Circuit listed various factors associated with bad faith in the form of "new debtor syndrome."

*See, e.g., Arnold*, 806 F.2d at 939, citing *Little Creek* factors with approval. The *Little Creek* court factors include the following:

(1) the debtor has only one asset;

(2) secured creditors' liens encumber the asset;

(3) there are no employees except for principals, and there is little or no cash flow, and no available sources of income to sustain a plan of reorganization or to make adequate protection payments;

(4) the property has been posted for foreclosure because of arrearages on debt, and the debtor has been unsuccessful in defending against foreclosure in state court;

(5) there are few, if any, unsecured creditors whose claims are relatively small;

(6) there are allegations of wrongdoing on the part of the debtor or its principals;

(7) bankruptcy offers the only possibility of forestalling loss of the property, and

(8) there is "new debtor syndrome" in which a one-asset entity has been created or revitalized on the eve of foreclosure to isolate insolvent property and its creditors.

*Little Creek*, 779 F.2d at 1073. "The 'new debtor syndrome,' in which a one-asset entity has been created or revitalized on the eve of foreclosure to isolate the insolvent property and its creditors, exemplifies, although it does not uniquely categorize, bad faith cases." *Id.* The *Little Creek* court went on to note that "[r]esort to the protection of the bankruptcy laws is not proper under these circumstances because there is no going concern to preserve, there are no employees to preserve, and there is no hope of rehabilitation, except according to the debtor's 'terminal euphoria.'" *Id.*

The *Little Creek* factors weigh in favor of a finding of bad faith in this case. Up until roughly two days before the Petition Date, Debtor consisted of a widespread panoply of single asset real estate entities, each with their own separate loans. *See disc. supra.* As discussed above, all five of the projects subject to Wells Fargo's liens were in receivership in State Court. Thus, several of the bad faith factors – a single asset, encumbered by a secured claim, state court litigation where the debtor has been unsuccessful, and bankruptcy offering the only possibility of

forestalling loss of the property – are present in this situation.

Moreover, the ramifications of filing a bankruptcy as a single asset real estate entity, or "SARE," are well-known. *See* 11 U.S.C. § 362(d)(3) (debtors have ninety days to either make adequate protection payments or file a plan with a reasonable possibility of confirmation). Prior to the slew of mergers effectuated two days prior to the Petition Date, each of the respective borrower entities, with the exception of Rio, would likely have constituted single asset real estate cases under the Bankruptcy Code. As a "SARE" case, the various borrowers would have been subject to Section 362(d)(3)'s ninety day deadline. The Petition Date was December 5, 2010, so the borrowers would have had until **March 7, 2011** to either commence adequate protection payments, or file a plan with a reasonable possibility of being confirmed.

It is also notable that the Property subject to this Motion – five separate commercial properties – was in the hands of a State Court-appointed receiver, and thus already functioning via a neutral third party.

This is not a typical situation, whereby a debtor files on the eve of foreclosure to obtain breathing room and bring creditors to the table. *See, e.g., In re Winshall Settlor's Trust*, 758 F.2d 1136, 1137 (6th Cir. 1985) (noting that the purpose of chapter 11 is to assist financially distressed business enterprises by providing them with breathing space in which to return to a viable state). Instead, this is a situation where Debtor effectuated a complicated series of mergers and transactions, so that it could remove the Property from the State Court's jurisdiction, and seek all of the powers attendant with a debtor-in-possession filing. Congress has set forth specific restrictions on single asset real estate cases. Debtor's slew of mergers two days prior to the Petition Date does not suggest that Debtor has attempted a "speedy, efficient reorganization on a feasible basis." *See Smith*, 389 B.R. at 924.

To date, no evidence has been put before the Court of a reason for this amalgamation. But the Debtor's true colors are revealed, at least in part, by the recent DIP Financing Motion. The DIP Financing Motion would have the Court elevate professionals' claims to superpriority administrative expenses, short circuit the chapter 11 plan process, avoid the protections of the 11 U.S.C. § 363 sales procedure, and return equity and a $200,000 annual salary to Debtor's principal.

The DIP Financing Motion fails to show an actual need for the proposed funding, beyond benefiting insiders and professionals.

In short, Debtor has avoided the Bankruptcy Code's single asset real estate provisions, enmeshed unrelated creditors in a complicated and expensive bankruptcy, and now seeks financing to fund its professionals and insiders. Accordingly, cause may exist to terminate the stay based on Debtor's actions, and on a potential lack of good faith. It is now Debtor's burden to show that cause does not exist.

**3. Cause Also Exists to Terminate the Automatic Stay Because Debtor Has Failed to Make Monthly Payments**

A debtor's failure to make its regular monthly payments to a creditor constitutes "cause" to terminate the automatic stay. *See, e.g., In re Jones*, 189 B.R. 13, 15 (Bankr. E.D. Okla. 1995). As discussed above, Debtor has failed to make the payments due under the Loan Documents. Specifically, Debtor has not made a payment under the Loan Documents since the State Court appointed the receiver in April 2010. *See* Declaration. Accordingly, "cause" exists to terminate the stay due to Debtor's failure to make regular monthly payments.

**D. <u>If the Court Does Not Lift the Stay, Wells Fargo is Entitled to Adequate Protection Payments</u>**

If the Court declines to award immediate stay relief, Wells Fargo requests that the Court award adequate protection pursuant to 11 U.S.C. § 361 to protect against depreciation of its collateral. While the term "adequate protection" is not defined in the Code, 11 U.S.C. § 361 sets forth three non-exclusive examples of what may constitute adequate protection: (1) periodic cash payments equivalent to decrease in value, (2) an additional or replacement lien on other property, or (3) other relief that provides the indubitable equivalent. 11 U.S.C. § 361; *In re Mellor*, 734 F.2d 1396, 1400 (9th Cir. 1984). Wells Fargo is entitled to adequate protection pursuant to Section 361 because the value of the Property is declining during the pendency of the case. The Debtor cannot offer replacement liens as it does not have sufficient unencumbered property. Nor can it offer any other form of protection that constitutes an "indubitable equivalent". Therefore,

Wells Fargo is entitled to receive periodic cash payments from the Debtor equal to the decline in value of the Property.

## VI.

## CONCLUSION

For the reasons discussed above, Wells Fargo respectfully requests that the Court enter an order terminating the stay to allow Wells Fargo to exercise its rights and remedies, including foreclosure, as to the Property.

DATED this 16th day of March, 2011.

SNELL & WILMER L.L.P.

By: /s/ Claire Y. Dossier

Robert R. Kinas (Nevada Bar No. 6019
Claire Y. Dossier (Nevada Bar No. 10030)
Nishat Baig (Nevada Bar No. 11047)
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, NV 89169
*Attorneys for Wells Fargo, N.A.*

Snell & Wilmer
L.L.P.
LAW OFFICES
3883 HOWARD HUGHES PARKWAY, SUITE 1100
LAS VEGAS, NEVADA 89169
(702)784-5200

**INDEX OF EXHIBITS**

| No. | Description |
|---|---|
| 1 | Diablo Adjustable Rate Promissory Note |
| 2 | Diablo Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing |
| 3 | Diablo Absolute Assignment of Rents and of Landlord's Interest in Leases |
| 4 | Diablo UCC Financing Statement |
| 5 | Verified Complaint filed in District Court |
| 6 | Diablo Notice of Default and Acceleration |
| 7 | Diablo Notice of Default and Election to Sell under Deed of Trust |
| 8 | Diablo Articles of Merger |
| 9 | Comptroller of the Currency's Written Official Certification of Merger Between Citibank FSB and Citibank, N.A. |
| 10 | Diablo Allonge in favor or LSREF2 Nova Investments, LLC |
| 11 | Diablo Assignment of Mortgage and Assignment of Rents and Leases |
| 12 | Diablo Allonge in favor of Wells Fargo Bank, N.A. |
| 13 | Diablo Assignment of Security Instruments |
| 14 | Russell Adjustable Rate Promissory Note |
| 15 | Russell Deed of Trust, Assignment of Rents, Security Agreement & Fixture Filing |
| 16 | Russell Absolute Assignment of Rents and of Landlord's Interest in Leases |
| 17 | Russell UCC Financing Statement |
| 18 | Russell Notice of Default and Acceleration |
| 19 | Russell Notice of Default and Election to Sell Under Deed of Trust |
| 20 | Russell Articles of Merger |
| 21 | Russell Allonge in favor of LSREF2 Nova Investments, LLC |
| 22 | Russell Assignment of Mortgage and Assignment of Rents and Leases |
| 23 | Russell Allonge in favor of Wells Fargo Bank, N.A. |

| | |
|---|---|
| 24 | Russell Assignment of Security Instruments |
| 25 | Partners Fixed Rate Promissory Note |
| 26 | Partners Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing |
| 27 | Partners UCC Financing Statement |
| 28 | Partners Notice of Default and Acceleration |
| 29 | Partners Notice of Default and Election to Sell Under Deed of Trust |
| 30 | Partners Articles of Merger |
| 31 | Partners Allonge in favor of LSREF2 Nova Investments, LLC |
| 32 | Partners Assignment of Mortgage |
| 33 | Partners Allonge in favor of Wells Fargo Bank, N.A. |
| 34 | Partners Assignment of Security Instruments |
| 35 | Rio Adjustable Rate Promissory Note |
| 36 | Rio Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing |
| 37 | Rio UCC Financing Statement |
| 38 | Rio Notice of Default and Acceleration |
| 39 | Rio Notice of Default and Election to Sell Under Deed of Trust |
| 40 | Rio Articles of Merger |
| 41 | Rio Allonge in favor of LSREF2 Nova Investments, LLC |
| 42 | Rio Assignment of Mortgage |
| 43 | Rio Allonge in favor of Wells Fargo Bank, N.A. |
| 44 | Rio Assignment of Security Instruments |
| 45 | Polaris Fixed Rate Promissory Note |
| 46 | Polaris Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing |
| 47 | Polaris UCC Financing Statement |
| 48 | Polaris Notice of Default and Acceleration |
| 49 | Polaris Notice of Default and Election to Sell Under Deed of Trust |
| 50 | Polaris Articles of Merger |

Snell & Wilmer
L.L.P.
LAW OFFICES
3883 HOWARD HUGHES PARKWAY, SUITE 1100
LAS VEGAS, NEVADA 89169
(702)784-5200

| | |
|---|---|
| 51 | Polaris Allonge in favor of LSREF2 Nova Investments, LLC |
| 52 | Polaris Assignment of Mortgage |
| 53 | Polaris Allonge in favor of Wells Fargo Bank, N.A. |
| 54 | Polaris Assignment of Security Instruments |

Snell & Wilmer
L.L.P.
LAW OFFICES
3883 HOWARD HUGHES PARKWAY, SUITE 1100
LAS VEGAS, NEVADA 89169
(702)784-5200