DOMINICA C. ANDERSON (SBN 2988)
LUCAS M. GJOVIG (SBN 10053)
**DUANE MORRIS LLP**
100 North City Parkway, Suite 1560
Las Vegas, NV 89106
Telephone: 702.868.2600
Facsimile: 702.385.6862
E-Mail: dcanderson@duanemorris.com
        lmgjovig@duanemorris.com

PHILLIP K. WANG (CA 186712)
*Admitted Pro Hac Vice*
**DUANE MORRIS LLP**
Spear Tower
One Market Plaza, Suite 2200
San Francisco, CA 94105
Telephone: 415.957.3000
Facsimile: 415.957.3001
E-Mail: pkwang@duanemorris.com

WENDY K. SIMKULAK (PA 89452)
*Admitted Pro Hac Vice*
**DUANE MORRIS LLP**
30 South 17th Street
Philadelphia, PA 19103
Telephone: 215.979.1000
Facsimile: 215.979.1020
E-Mail: wmsimkulak@duanemorris.com

Attorneys for Secured Creditor and Movant
GERMAN AMERICAN CAPITAL
CORPORATION

## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF NEVADA

| | |
|---|---|
| In re | Case No. 10-32680-bam |
| | Case No. 10-32857-bam |
| WHITTON CORPORATION[1], a Nevada corporation, | |
| | Chapter 11 |
| ☒ Affects this Debtor | Jointly Administered Under |
| ☐ Affects all Debtors | Case No. 10-32680-bam |
| ☐ Affects South Tech Simmons 3040C, LLC, | |
| Debtors. | **MOTION OF GERMAN AMERICAN CAPITAL CORPORATION FOR (I) RELIEF FROM STAY PURSUANT TO 11 U.S.C. § 362(d)(2) AND (d)(1), OR (II) IN THE ALTERATIVE, (A) DETERMINATION THAT DEBTOR IS SUBJECT TO SINGLE ASSET REAL ESTATE REQUIREMENTS OF 11 U.S.C. § 362(d)(3) AND (B) FOR RELIEF FROM STAY THEREUNDER OR (III) IN THE ALTERNATIVE, FOR ADEQUATE PROTECTION PURSUANT TO 11 U.S.C. § 363(e)** |
| GERMAN AMERICAN CAPITAL CORPORATION, a Maryland corporation, | |
| Movant, | |
| v. | |
| SOUTH TECH SIMMONS 3040C, LLC, a Nevada corporation, | |
| Respondent. | |

[1] Debtor was formerly doing business as the following entities: South Tech Brooks 2750, LLC, fdba Desert Pacific Properties, L.L.C., fdba South Tech Partners, LLC, fdba South Tech Real Estate Services, LLC, fdba South Tech-Polaris, LLC, fdba South Tech Dean Martin 7625, LLC, fdba South Tech Annie Oakley, LLC, fdba TEH Investments, LLC, fdba South Tech Seven Hills, LLC, fdba South Tech Construction Corp., fdba South Tech Cheyenne 2475, LLC, fdba South Tech Cheyenne West 2455A LLC, fdba South Tech Kleppe, LLC fdba, South Tech Stephanie 1000, LLC, fdba South Tech Development, LLC, fdba South Tech-Russell, LLC, fdba South Tech Glendale 155, LLC, fdba South Tech Greg, LLC, fdba South Tech – Rio, LLC, fdba South Tech – Diablo, LLC

Hearing Date:        **May 23, 2011**

Hearing Time:        **9:30 a.m.**

Estimated Time for Hearing:  30 minutes

Hearing Location:
   **United States Bankruptcy Court**
   **Foley Federal Building, Courtroom No. 3**
   **300 Las Vegas Blvd South, Third Floor**
   **Las Vegas, Nevada 89101**

German American Capital Corporation ("Movant" or "Secured Creditor"), by and through its counsel, Duane Morris LLP, hereby brings this *Motion for (I) Relief from Stay pursuant to 11 U.S.C. § 362(d)(2) and (d)(1), or (II) in the Alternative, (a) Determination that Debtor is Subject to Single Asset Real Estate Requirements of 11 U.S.C. § 362(d)(3) and (b) for Relief from Stay thereunder or (III) in the Alternative, for Adequate Protection Pursuant to 11 U.S.C. § 363(e)* (the "Motion") to allow Secured Creditor to exercise any and all of its available rights and remedies in and to its collateral, which consists of certain real and personal property located at:  (i) 1220 and 1250 Greg Street, City of Sparks, Washoe County, Nevada (together with other real property related thereto, the "Greg Real Property" and together with the other collateral as more specifically defined herein, the "Greg Property"); (ii) 155 Glendale Avenue, City of Sparks, Washoe County, Nevada (together with other real property related thereto, the "Glendale Real Property" and together with the other collateral as more specifically defined herein, the "Glendale Property"); and (iii) 2750 West Brooks Avenue, City of Las Vegas, Clark County, Nevada (together with other real property related thereto, the "Brooks Real Property" and together with the other collateral as more specifically defined herein, the "Brooks Property") (the Greg Real Property, Glendale Real Property and Brooks Real Property are referred to collectively hereinafter as the "Real Property"; the Greg Property, Glendale Property and Brooks Property are referred to collectively hereinafter as the "Property").

This Motion is filed against Whitton Corporation ("Debtor" or "Borrower") and is supported by the accompanying Memorandum of Points and Authorities, the § 362 Information Sheet required

///

///

by LR 4001(a)(2), the Declaration of Ravi Alimchandani, filed concurrently herewith (the

"Declaration"), all pleadings and papers of record, and any oral argument the Court may entertain.

DATED: April 18, 2011

DUANE MORRIS LLP


By:    */s/ Lucas M. Gjovig*
        Dominica C. Anderson (SBN 2988)
        Lucas M. Gjovig (SBN 10053)

Attorneys for Secured Creditor and Movant
German American Capital Corporation

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Secured Creditor holds a properly-perfected, first priority security interest in and lien on the Property.  Debtor has defaulted under the Loan Documents (as defined herein).

As a preliminary matter, the automatic stay should be immediately terminated pursuant to 11 U.S.C. § 362(d)(2) and (d)(1) and Federal Rule of Bankruptcy Procedure 4001(a)(3).  Specifically, the Court should terminate the automatic stay pursuant to Section 362(d)(2) because Debtor does not have equity in the Property and the Property is not necessary to an effective reorganization.  Additionally, "cause" exists to terminate the stay pursuant to Section 362(d)(1) because Secured Creditor is not adequately protected and Debtor has defaulted under the Loan Documents.  Alternatively, the Court should find that the Debtor is subject to the single asset real estate requirements set forth in 11 U.S.C. § 362(d)(3) and enter an order providing that the automatic stay terminates, without the need for further action or order, automatically 30 days from the date of such order.  If the court does not grant relief from the stay, Secured Creditor is entitled to adequate protection under 11 U.S.C. § 363(e).

### II.    JURISDICTION

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(G) and is a contested matter pursuant to Rule 9014 of the Federal Rules of Bankruptcy Procedure.

### III.    RELEVANT FACTS AND BACKGROUND

Secured Creditor has a properly-perfected, first priority security interest in and lien on the Property.  Debtor has defaulted under the Loan Documents.

**A.  Loan to South Tech Greg, LLC**

1.    **The Greg Loan Documents**

a.    On or about December 21, 2005, South Tech Greg, LLC ("South Tech Greg") executed that certain "Fixed Rate Note" (the "Greg Note") in favor of JPMorgan Chase, N.A. ("Original Lender"), pursuant to which South Tech Greg promised to pay the principal sum of

$3,450,000.00 with interest thereon.  A true and correct copy of the Greg Note is attached hereto as **Exhibit 1**.

b.     On or about December 21, 2005, South Tech Greg executed that certain "Deed of Trust and Security Agreement" (the "Greg Deed of Trust") to secure, among other things, "the payment of the Debt . . . and the performance of all of its obligations under the Note and the Other Obligations."  Pursuant to Article I, the Greg Deed of Trust encumbers the Greg Property. The Greg Deed of Trust was duly recorded with the Washoe County Recorder on December 21, 2005 as document number 3326939.  A true and correct copy of the recorded Greg Deed of Trust is attached hereto as **Exhibit 2**.

c.     On or about December 21, 2005, South Tech Greg further executed that certain "Assignment of Leases and Rents" (the "Greg Assignment of L&R"). The Greg Assignment of L&R was duly recorded with the Washoe County Recorder on December 21, 2005 as document number 3326940.  A true and correct copy of the recorded Greg Assignment of L&R is attached hereto as **Exhibit 3**.

d.     As set forth in §§ 1.2 and 18.1 of the recorded Greg Deed of Trust, South Tech Greg assigned all of its "right, title, and interest in and to all current and future Leases and Rents" relating to or arising from the "Property" as more specifically defined in the Greg Deed of Trust to "Lender and any subsequent holder of the Note."  Similarly, pursuant to § 1.1 of the Greg Assignment of L&R, South Tech Greg assigned to Original Lender all "Leases" and "Rents" and related property interests as  more specifically defined therein.

e.     Pursuant to § 1.2 of the Greg Deed of Trust and § 4.1 of the Greg Assignment of L&R, so long as South Tech Greg was not in default under the Greg Deed of Trust, South Tech Greg was entitled to utilize its license to collect and use the "Rents" for payment of the "Debt" owed to Original Lender.  Such license terminated automatically upon the occurrence of a default by the South Tech Greg.

f.     The Greg Deed of Trust was intended as a security agreement within the meaning of the Uniform Commercial Code ("UCC"), and Original Lender was granted a security interest in the "Collateral" defined in § 12.1 of the Greg Deed of Trust.  UCC Financing Statements

(including amendments and continuation) were duly filed with the Secretary of State of the State of Nevada on January 30, 2006, June 30, 2006, and July 26, 2010 as Document Numbers 2006003110-0, 2006020947-4, and 2010018591-4.  UCC Financing Statements were also recorded with the Washoe County Recorder on December 21, 2005 as document number 3326941, on September 20, 2006 as document number 3440685, and on July 27, 2010 as document number 3905275. Collectively such documents are hereafter referred to as the "Greg Financing Statements."  True and correct copies of the Greg Financing Statements are attached hereto as **Exhibit 4**.

       g.      Pursuant to the terms of § 12.2 therein, the Greg Deed of Trust was effective as a financing statement filed as a fixture filing with respect to all fixtures included within the Greg Property.

       h.      Original Lender has a first priority, properly perfected lien in, on and to, among other things, the "Property" more specifically identified in § 1.1 of the Greg Deed of Trust which includes, without limitation, (i) the "Land;" (ii) all "Improvements;" (iii) all easement and other rights of way, (iv) all fixtures and "Personal Property;" (v) all "Leases" and "Rents;" (vi) all condemnation awards, (vii) all insurance proceeds; (viii) all agreements, (ix) all accounts, and (x) any and all other rights related to the Greg Property.

       i.      The Greg Note, Greg Deed of Trust, Greg Assignment of L&R, and Greg Financing Statements, together with all other documents specifically identified therein as "Loan Documents" or the "Other Loan Documents" in the Greg Deed of Trust are hereinafter collectively referred to as the "Greg Loan Documents."

       j.      Pursuant to Article 16 of the Greg Deed of Trust, South Tech Greg agreed that Original Lender could at any time sell, transfer, or assign the Greg Loan Documents or otherwise issue mortgage pass-through certificates or other securities.

       k.      Following the initial loan transaction, Original Lender assigned its interest in the Greg Loan Documents to Wells Fargo Bank, as Trustee for the Benefit of the Holders of JPMorgan Chase Commercial Securities Corp., Commercial Mortgage Pass-Through Certificates, Series 2006-LDP6 (the "Trust").

l.      On September 20, 2006, an "Assignment of Deed of Trust and Security Agreement and Assignment of Assignment of Leases and Rents" (the "Greg Loan Assignment") was recorded with the Washoe County Recorder as document number 3440684. Attached hereto as **Exhibit 5** is a true and correct copy of the recorded Greg Loan Assignment.

m.      On or about July 2, 2010, the Trust assigned its interest in the Greg Loan Documents to Secured Creditor pursuant to the following documents:  (i) Allonge in favor of Secured Creditor assigning the Greg Note to Secured Creditor, (ii) Assignment of Security Instrument, recorded with the Washoe County Recorder on July 20, 2010 as document number 3903212; and (iii) Assignment of Assignment of L&R to Secured Creditor, recorded with the Washoe County Recorder on July 23, 2010 as document number 3904203.  True and correct copies of each of the foregoing documents are attached hereto as **Exhibit 6, Exhibit 7** and **Exhibit 8,** respectively.

n.      A UCC Financing Statement Amendment to reflect the assignment to Secured Creditor was duly filed with the Secretary of State of the State of Nevada on July 26, 2010 as Document Number 2010018591-4.  A true and correct copy of the foregoing is attached hereto as **Exhibit 9**.

2.      **The Defaults.**

a.      As set forth in § 2.1 of the Greg Deed of Trust, the "Debt" includes, without limitation, the outstanding principal amount, together with all interest accrued and unpaid thereon and all other sums due and owing under the Greg Loan Documents.

b.      Pursuant to § 9.1 of the Greg Deed of Trust, an "Event of Default" occurs "if any portion of the Debt is not paid prior to the seventh (7th) calendar day after the same is due . . . ."

c.      Pursuant to Section 5 of the Greg Note, South Tech Greg agreed that "[s]o long as an Event of Default exists, [Original Lender] may, at its option, without notice or demand to Borrower, declare the Debt immediately due and payable."

d.      Similarly, pursuant to § 10.1 of the Greg Deed of Trust, the parties agreed that, upon an Event of Default, Original Lender had the following rights and remedies:  (i) the right to "declare the entire unpaid balance of the Debt immediately due and payable;" (ii) the right to

institute nonjudicial foreclosure proceedings; (iii) the right to exercise any rights or remedies allowed under the UCC; and (iv) any other rights and remedies available to Original Lender pursuant to applicable law.

e.      On or about February 12, 2010, Secured Creditor's predecessor-in-interest provided written notice to South Tech Greg for failing to make the September 1, 2009 and subsequent monthly payments due under the Greg Note as well as escrow installments, late charges, and default interest.

f.      On or about April 27, 2010, Secured Creditor's predecessor-in-interest provided South Tech Greg written notice of its acceleration of the outstanding Debt, and a written demand for payment of rents.  Additional fees, costs, and interest may continue to accrue and are recoverable under the terms of the Greg Loan Documents.

g.      South Tech Greg's failure to pay monies due and owing under the terms of the Greg Loan Documents constitutes an "Event of Default."  South Tech Greg's default under the Greg Loan Documents remains uncured.

h.      As a result of South Tech Greg's default, the maturity dates of all of the indebtedness owed under and in connection with the Greg Loan Documents have been properly accelerated.  All of South Tech Greg's indebtedness is now due, payable and delinquent, but has not been paid in full.

i.      On August 11, 2010, Secured Creditor's predecessor-in-interest caused a "Notice of Default and Election to Sell Under Deed of Trust" to be recorded in Washoe County, Nevada pursuant to the Greg Deed of Trust.

3.      **The Receivership**

a.      On August 19, 2010, Secured Creditor's predecessor-in-interest filed a complaint for the appointment of a receiver with the state court.

b.      The state court entered an Order appointing a receiver for the Property on or about October 20, 2010.

c.      On December 17, 2011, Debtor, Secured Creditor and the receiver filed a stipulation in this case for the receiver to turn over the Greg Property to the Debtor.

**B.** **Loan to South Tech Glendale 155, LLC**

4. **The Loan Documents**

a. On or about December 21, 2005, South Tech Glendale 155, LLC ("South Tech Glendale") executed that certain "Fixed Rate Note" (the "Glendale Note") in favor of Original Lender, pursuant to which South Tech Glendale promised to pay the principal sum of $2,600,000.00 with interest thereon. A true and correct copy of the Glendale Note is attached hereto as **Exhibit 10**.

b. On or about December 21, 2005, South Tech Glendale executed that certain "Deed of Trust and Security Agreement" (the "Glendale Deed of Trust") to secure, among other things, "the payment of the Debt . . . and the performance of all of its obligations under the Note and the Other Obligations." Pursuant to Article I, the Glendale Deed of Trust encumbers the Glendale Property. The Glendale Deed of Trust was duly recorded with the Washoe County Recorder on December 21, 2005 as document number 3326943. A true and correct copy of the recorded Glendale Deed of Trust is attached hereto as **Exhibit 11**.

c. On or about December 21, 2005, South Tech Glendale further executed that certain "Assignment of Leases and Rents" (the "Glendale Assignment of L&R"). The Glendale Assignment of L&R was duly recorded with the Washoe County Recorder on December 21, 2005 as document number 3326944. A true and correct copy of the recorded Glendale Assignment of L&R is attached hereto as **Exhibit 12**.

d. As set forth in §§ 1.2 and 18.1 of the recorded Glendale Deed of Trust, South Tech Glendale assigned all of its "right, title, and interest in and to all current and future Leases and Rents" relating to or arising from the "Property" as more specifically defined in the Glendale Deed of Trust to "Lender and any subsequent holder of the Note." Similarly, pursuant to § 1.1 of the Glendale Assignment of L&R, South Tech Glendale assigned to Original Lender all "Leases" and "Rents" and related property interests as more specifically defined therein.

e. Pursuant to § 1.2 of the Glendale Deed of Trust and § 4.1 of the Glendale Assignment of L&R, so long as South Tech Glendale was not in default under the Glendale Deed of Trust, South Tech Glendale was entitled to utilize its license to collect and use the "Rents" for

payment of the "Debt" owed to Original Lender.  Such license terminated automatically upon the occurrence of a default by the South Tech Glendale.

       f.     The Glendale Deed of Trust was intended as a security agreement within the meaning of the Uniform Commercial Code ("UCC"), and Original Lender was granted a security interest in the "Collateral" defined in § 12.1 of the Glendale Deed of Trust.  UCC Financing Statements (including amendments and continuation) were duly filed with the Secretary of State of the State of Nevada on January 30, 2006, June 30, 2006, and July 26, 2010 as Document Numbers 2006003111-2, 2006020951-3, and 2010018590-2.  UCC Financing Statements were also recorded with the Washoe County Recorder on December 21, 2005 as document number 3326945, on September 20, 2006 as document number 3440687, and on July 27, 2010 as document number 3905276.  Collectively such documents are hereafter referred to as the "Glendale Financing Statements."  True and correct copies of the Glendale Financing Statements are attached hereto as **Exhibit 13.**

       g.     Pursuant to the terms of § 12.2 therein, the Glendale Deed of Trust was effective as a financing statement filed as a fixture filing with respect to all fixtures included within the Glendale Property.

       h.     Original Lender has a first priority, properly perfected lien in, on and to, among other things, the "Property" more specifically identified in § 1.1 of the Glendale Deed of Trust which includes, without limitation, (i) the "Land;" (ii) all "Improvements;" (iii) all easement and other rights of way, (iv) all fixtures and "Personal Property;" (v) all "Leases" and "Rents;" (vi) all condemnation awards, (vii) all insurance proceeds; (viii) all agreements, (ix) all accounts, and (x) any and all other rights related to the Glendale Property.

       i.     The Glendale Note, Glendale Deed of Trust, Glendale Assignment of L&R, and Glendale Financing Statements, together with all other documents specifically identified therein as "Loan Documents" or the "Other Loan Documents" in the Glendale Deed of Trust are hereinafter collectively referred to as the "Glendale Loan Documents."

///

///

j.      Pursuant to Article 16 of the Glendale Deed of Trust, South Tech Glendale agreed that Original Lender could at any time sell, transfer, or assign the Glendale Loan Documents or otherwise issue mortgage pass-through certificates or other securities.

k.      Following the initial loan transaction, Original Lender assigned its interest in the Glendale Loan Documents to the Trust.

l.      On September 20, 2006, an "Assignment of Deed of Trust and Security Agreement and Assignment of Assignment of Leases and Rents" (the "Glendale Loan Assignment") was recorded with the Washoe County Recorder as document number 3440686. Attached hereto as **Exhibit 14** is a true and correct copy of the recorded Glendale Loan Assignment.

m.      On or about July 2, 2010, the Trust assigned its interest in the Glendale Loan Documents to Secured Creditor pursuant to the following documents:  (i) Allonge in favor of Secured Creditor assigning the Glendale Note to Secured Creditor, (ii) Assignment of Security Instrument, recorded with the Washoe County Recorder on July 20, 2010 as document number 3903209; and (iii) Assignment of Assignment of L&R to Secured Creditor, recorded with the Washoe County Recorder on July 20, 2010 as document number 3903210.  True and correct copies of each of the foregoing documents are attached hereto as **Exhibit 15, Exhibit 16** and **Exhibit 17,** respectively.

n.      A UCC Financing Statement Amendment to reflect the assignment to Secured Creditor was duly filed with the Secretary of State of the State of Nevada on July 26, 2010 as Document Number 2010018590-2.  A true and correct copy of the foregoing is attached hereto as **Exhibit 18**.

5.      **The Defaults.**

a.      As set forth in § 2.1 of the Glendale Deed of Trust, the "Debt" includes, without limitation, the outstanding principal amount, together with all interest accrued and unpaid thereon and all other sums due and owing under the Glendale Loan Documents.

b.      Pursuant to § 9.1 of the Glendale Deed of Trust, an "Event of Default" occurs "if any portion of the Debt is not paid prior to the seventh (7th) calendar day after the same is due . . . ."

c.    Pursuant to Section 5 of the Glendale Note, South Tech Glendale agreed that "[s]o long as an Event of Default exists, [Original Lender] may, at its option, without notice or demand to Borrower, declare the Debt immediately due and payable."

d.    Similarly, pursuant to § 10.1 of the Glendale Deed of Trust, the parties agreed that, upon an Event of Default, Original Lender had the following rights and remedies:  (i) the right to "declare the entire unpaid balance of the Debt immediately due and payable;" (ii) the right to institute nonjudicial foreclosure proceedings; (iii) the right to exercise any rights or remedies allowed under the UCC; and (iv) any other rights and remedies available to Original Lender pursuant to applicable law.

e.    On or about February 12, 2010, Secured Creditor's predecessor-in-interest provided written notice to South Tech Glendale for failing to make the September 1, 2009 and subsequent monthly payments due under the Glendale Note as well as escrow installments, late charges, and default interest.

f.    On or about April 27, 2010, Secured Creditor's predecessor-in-interest provided South Tech Glendale written notice of its acceleration of the outstanding Debt, and a written demand for payment of rents.  Additional fees, costs, and interest may continue to accrue and are recoverable under the terms of the Glendale Loan Documents.

g.    South Tech Glendale's failure to pay monies due and owing under the terms of the Glendale Loan Documents constitutes an "Event of Default."  South Tech Glendale's default under the Glendale Loan Documents remains uncured.

h.    As a result of South Tech Glendale's default, the maturity dates of all of the indebtedness owed under and in connection with the Glendale Loan Documents have been properly accelerated.  All of South Tech Glendale's indebtedness is now due, payable and delinquent, but has not been paid in full.

i.    On August 10, 2010, Secured Creditor's predecessor-in-interest caused a "Notice of Default and Election to Sell Under Deed of Trust" to be recorded in Washoe, Nevada pursuant to the Glendale Deed of Trust.

6. **The Receivership**

a. On August 19, 2010, Secured Creditor's predecessor-in-interest filed a complaint for the appointment of a receiver with the state court.

b. The state court entered an Order appointing a receiver for the Property on or about October 20, 2010.

c. On December 17, 2011, Debtor, Secured Creditor and the receiver filed a stipulation in this case for the receiver to turn over the Glendale Property to the Debtor.

C. **Loan to South Tech Brooks 2750K, LLC**

7. **The Loan Documents**

a. On or about December 16, 2005, South Tech Brooks 2750K, LLC ("South Tech Brooks") executed that certain "Fixed Rate Note" (the "Brooks Note") in favor of Original Lender, pursuant to which South Tech Brooks promised to pay the principal sum of $2,100,000.00 with interest thereon. A true and correct copy of the Brooks Note is attached hereto as **Exhibit 19**.

b. On or about December 16, 2005, South Tech Brooks executed that certain "Deed of Trust and Security Agreement" (the "Brooks Deed of Trust") to secure, among other things, "the payment of the Debt . . . and the performance of all of its obligations under the Note and the Other Obligations." Pursuant to Article I, the Brooks Deed of Trust encumbers the Brooks Property. The Brooks Deed of Trust was duly recorded with the Clark County Recorder on December 19, 2005 in Book No. 20051219 as Instrument No. 0001293. A true and correct copy of the recorded Brooks Deed of Trust is attached hereto as **Exhibit 20**.

c. On or about December 16, 2005, South Tech Brooks further executed that certain "Assignment of Leases and Rents" (the "Brooks Assignment of L&R"). The Brooks Assignment of L&R was duly recorded with the Clark County Recorder on December 19, 2005 in Book No. 20051219 as Instrument No. 0001294. A true and correct copy of the recorded Brooks Assignment of L&R is attached hereto as **Exhibit 21**.

d. As set forth in §§ 1.2 and 18.1 of the recorded Brooks Deed of Trust, South Tech Brooks assigned all of its "right, title, and interest in and to all current and future Leases and Rents" relating to or arising from the "Property" as more specifically defined in the Brooks Deed of

Trust to "Lender and any subsequent holder of the Note." Similarly, pursuant to § 1.1 of the Brooks Assignment of L&R, South Tech Brooks assigned to Original Lender all "Leases" and "Rents" and related property interests as more specifically defined therein.

e.    Pursuant to § 1.2 of the Brooks Deed of Trust and § 4.1 of the Brooks Assignment of L&R, so long as South Tech Brooks was not in default under the Brooks Deed of Trust, South Tech Brooks was entitled to utilize its license to collect and use the "Rents" for payment of the "Debt" owed to Original Lender. Such license terminated automatically upon the occurrence of a default by South Tech Brooks.

f.    The Brooks Deed of Trust was intended as a security agreement within the meaning of the Uniform Commercial Code ("UCC"), and Original Lender was granted a security interest in the "Collateral" defined in § 12.1 of the Brooks Deed of Trust. UCC Financing Statements (including amendments and continuation) were duly filed with the Secretary of State of the State of Nevada on December 20, 2005, July 3, 2006, and July 26, 2010 as Document Numbers 2005039896-4, 2006021167-1, and 2010018589-9. UCC Financing Statements were also recorded with the Clark County Recorder on December 19, 2005 as document number 20051219-0001295, on September 6, 2006 as document number 20060906-0002514, and on July 27, 2010 as document number 200100727-0000926. Collectively such documents are hereafter referred to as the "Brooks Financing Statements." True and correct copies of the Brooks Financing Statements are attached hereto as **Exhibit 22**.

g.    Pursuant to the terms of § 12.2 therein, the Brooks Deed of Trust was effective as a financing statement filed as a fixture filing with respect to all fixtures included within the Brooks Property.

h.    Original Lender has a first priority, properly perfected lien in, on and to, among other things, the "Property" more specifically identified in § 1.1 of the Brooks Deed of Trust which includes, without limitation, (i) the "Land;" (ii) all "Improvements;" (iii) all easement and other rights of way, (iv) all fixtures and "Personal Property;" (v) all "Leases" and "Rents;" (vi) all condemnation awards, (vii) all insurance proceeds; (viii) all agreements, (ix) all accounts, and (x) any and all other rights related to the Brooks Property.

i.      The Brooks Note, Brooks Deed of Trust, Brooks Assignment of L&R, and Brooks Financing Statements, together with all other documents specifically identified therein as "Loan Documents" or the "Other Loan Documents" in the Brooks Deed of Trust are hereinafter collectively referred to as the "Brooks Loan Documents."

j.      The Greg Loan Documents, Glendale Loan Documents and Brooks Loan Documents are hereinafter collectively referred to as the "Loan Documents."

k.      Pursuant to Article 16 of the Brooks Deed of Trust, South Tech Brooks agreed that Original Lender could at any time sell, transfer, or assign the Brooks Loan Documents or otherwise issue mortgage pass-through certificates or other securities.

l.      Following the initial loan transaction, Original Lender assigned its interest in the Brooks Loan Documents to the Trust.

m.      On September 6, 2006, an "Assignment of Deed of Trust and Security Agreement and Assignment of Assignment of Leases and Rents" (the "Brooks Loan Assignment") was recorded with the Clark County Recorder in Book No. 20060906 as Instrument No. 0002513. Attached hereto as **Exhibit 23** is a true and correct copy of the recorded Brooks Loan Assignment.

n.      On or about July 2, 2010, the Trust assigned its interest in the Brooks Loan Documents to Secured Creditor pursuant to the following documents:  (i) Allonge in favor of Secured Creditor assigning the Brooks Note to Secured Creditor, (ii) Assignment of Security Instrument, recorded with the Clark County Recorder on July 20, 2010 in Book No. 20100720 as Instrument No. 0003794; and (iii) Assignment of Assignment of L&R to Secured Creditor, recorded with the Clark  County Recorder on July 20, 2010 in Book No. 201007200 as Instrument No. 0003795.  True and correct copies of each of the foregoing documents are attached hereto as **Exhibit 24, Exhibit 25** and **Exhibit 26,** respectively.

o.      A UCC Financing Statement Amendment to reflect the assignment to Secured Creditor was duly filed with the Secretary of State of the State of Nevada on July 26, 2010 as Document Number 2010018589-9.  A true and correct copy of the foregoing is attached hereto as **Exhibit 27**.

8.      **The Defaults.**

a.      As set forth in § 2.1 of the Brooks Deed of Trust, the "Debt" includes, without limitation, the outstanding principal amount, together with all interest accrued and unpaid thereon and all other sums due and owing under the Brooks Loan Documents.

b.      Pursuant to § 9.1 of the Brooks Deed of Trust, an "Event of Default" occurs "if any portion of the Debt is not paid prior to the seventh (7th) calendar day after the same is due . . . ."

c.      Pursuant to Section 5 of the Brooks Note, South Tech Brooks agreed that "[s]o long as an Event of Default exists, [Original Lender] may, at its option, without notice or demand to Borrower, declare the Debt immediately due and payable."

d.      Similarly, pursuant to § 10.1 of the Brooks Deed of Trust, the parties agreed that, upon an Event of Default, Original Lender had the following rights and remedies:  (i) the right to "declare the entire unpaid balance of the Debt immediately due and payable;" (ii) the right to institute nonjudicial foreclosure proceedings; (iii) the right to exercise any rights or remedies allowed under the UCC; and (iv) any other rights and remedies available to Original Lender pursuant to applicable law.

e.      On or about February 12, 2010, Secured Creditor's predecessor-in-interest provided written notice to South Tech Brooks for failing to make the September 1, 2009 and subsequent monthly payments due under the Brooks Note as well as escrow installments, late charges, and default interest.

f.      On or about April 27, 2010, Secured Creditor's predecessor-in-interest provided South Tech Brooks written notice of its acceleration of the outstanding Debt, and a written demand for payment of rents.  Additional fees, costs, and interest may continue to accrue and are recoverable under the terms of the Brooks Loan Documents.

g.      South Tech Brooks' failure to pay monies due and owing under the terms of the Brooks Loan Documents constitutes an "Event of Default."  South Tech Brooks' default under the Brooks Loan Documents remains uncured.

h.      As a result of South Tech Brooks' default, the maturity dates of all of the indebtedness owed under and in connection with the Brooks Loan Documents have been properly

accelerated.  All of South Tech Brooks' indebtedness is now due, payable and delinquent, but has not been paid in full.

i.      On August 10, 2010, Secured Creditor's predecessor-in-interest caused a "Notice of Default and Election to Sell Under Deed of Trust" to be recorded in Clark County, Nevada pursuant to the Brooks Deed of Trust.

9.      **The Receivership**

a.      On August 19, 2010, Secured Creditor's predecessor-in-interest filed a complaint for the appointment of a receiver with the state court.

b.      The state court entered an Order appointing a receiver for the Property on or about September 28, 2010.

10.     On December 17, 2011, Debtor, Secured Creditor and the receiver filed a stipulation in this case for the receiver to turn over the Brooks Property to the Debtor.

11.     **The Merger**

12.     According to the Omnibus Declaration of Tom E. Hallett Filed in Support of First Day Motions (the "Hallett Declaration"), effective December 3, 2010, certain subsidiaries and affiliates of Debtor, including, without limitation, South Tech Greg, South Tech Glendale and South Tech Brooks merged with and into Debtor and Debtor assumed the operations, assets, and liabilities of those subsidiaries.  *See* Hallett Declaration ¶9.

13.     **Debtor's Bankruptcy Petition**

a.      On December 5, 2010 (the "Petition Date"), Debtor filed a chapter 11 petition for relief.  On December 22, 2010, the Court entered an order directing joint administration of Debtor's case with *In re South Tech Simmon 3040C, LLC*, Case No. 10-32857.  The cases have not been substantively consolidated.

## IV.     RELIEF REQUESTED[2]

14.     Secured Creditor respectfully requests that the Court enter an order terminating the automatic stay pursuant to 11 U.S.C. § 362(d)(2) and (d)(1) permitting Secured Creditor to exercise

---

[2]      In accordance with Local Rule of Bankruptcy Procedures, 4001(a)(2), the Secured Creditor has attempted to resolve the relief requested in this Motion with the Debtor both prior to and after the Petition Date.

any and all of its available rights and remedies in and to the Property and providing therein that, pursuant to Federal Rule of Bankruptcy Procedure 4001(a)(3), the Court's order takes effect immediately and the fourteen (14) day stay period set forth therein expressly does not apply.

15.    Alternatively, Secured Creditor respectfully requests that this Court find that the Debtor is subject to the single asset real estate requirements set forth in 11 U.S.C. § 362(d)(3) and enter an order providing that the automatic stay terminates, without the need for further action or order, automatically 30 days from the date of such order.

16.    In the further alternative, Secured Creditor respectfully requests that this Court grant Secured Creditor adequate protection in the form of periodic cash payments pursuant to 11 U.S.C. §§ 363(e) and 361.

## V.    ARGUMENT

Secured Creditor holds a properly-perfected, first priority security interest in and lien on the Property.  Debtor has defaulted under the Loan Documents (as defined herein).  Secured Creditor is entitled to relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(2) and (d)(1) and Federal Rule of Bankruptcy Procedure 4001(a)(3) because:  (i) Debtor does not have equity in the Property and the Property is not necessary to an effective reorganization; and (ii) "cause" exists because Secured Creditor is not adequately protected and Debtor has defaulted under the Loan Documents. If this Court does not immediately terminate the stay, the Court should make a determination that the Debtor is subject to the single asset real estate requirements set forth in 11 U.S.C. § 362(d)(3) and enter an order providing that the automatic stay terminates, without the need or requirement for further action or order, automatically 30 days from the date of such order.  Alternatively, if the Court does not grant relief from stay, Secured Creditor is entitled to adequate protection under 11 U.S.C. § 363(e).

**A.    Relief From The Automatic Stay Should Be Granted Pursuant To 11 U.S.C. § 362(d)(2) and (1)**

   **1.    Secured Creditor Is Entitled To Relief Pursuant To 11 U.S.C. § 362(d)(2) Because The Debtor Does Not Have Equity In The Property And The Property Is Not Necessary To An Effective Reorganization**

Pursuant to section 362(d)(2) of the Bankruptcy Code, relief with respect to the stay of an act

against property should be granted if the debtor does not have equity in the property and the property is not necessary to an effective reorganization.  Once the movant establishes that there is no equity in the collateral "it is the burden of the *debtor* to establish that the collateral at issue is 'necessary to an effective reorganization.'" *United Savings Assoc. of Texas v. Timbers of Inwood Forest Associates, Ltd.*, 484 U.S. 365, 375 (1988) (citation omitted; emphasis in original); *see also* 11 U.S.C. § 362(g) (movant has burden of proof on issue of debtor's equity in property; debtor has burden of proof on all other issues).  In particular, the debtor must establish that there is "'a reasonable possibility of successful reorganization within a reasonable time.'"  *United Savings,* 44 U.S. at 376 (citations omitted).

The Debtor's own schedules filed with this Court evidence that Debtor lacks equity in the Property.  In particular, Debtor values its total interest in the Real Property at $4,012,247.00.  The total amount due and owing to Secured Creditor is at least $8,497,891.27 (plus accruing interest and other charges) (the Debtor values its interest in the Greg Real Property as $1,732,014.00 and the amount due and owing to Secured Creditor under the Greg Loan Documents is at least $3,595,114.17; the Debtor values its interest in the Glendale Real Property as $1,417,413.00 and the amount due and owing to Secured Creditor under the Glendale Loan Documents is at least $2,712,981.40; and the Debtor values its interest in the Brooks Real Property as $862,820.00 and the amount due and owing to Secured Creditor under the Brooks Loan Documents is at least $2,189,795.70).  Thus, there is no question that Debtor lacks equity in the Property.  Accordingly, Debtor must carry its burden to show that the Property is necessary for a reasonably imminent, successful reorganization.  To that end, it should be noted that Debtor has not even filed a disclosure statement or plan of reorganization, let alone shown that a successful reorganization will occur within a reasonable time.  Moreover, Secured Creditor's deficiency claim would, upon information and belief, constitute a blocking vote among a class of general unsecured creditors and, therefore, Secured Creditor asserts that Debtor will not be able to confirm a plan.  In other words, there is no possible consenting impaired class to support reorganization.  Therefore, relief from stay is appropriate under 11 U.S.C. § 362(d)(2).

### 2.    **"Cause" Exists to Terminate the Stay Under 11 U.S.C. § 362(d)(1)**

Pursuant to 11 U.S.C. § 362(d)(1), a party-in-interest may be granted relief from the automatic stay for "cause."   Section 362(d)(1) does provide that "cause" can include lack of adequate protection.   Further, courts have consistently held that a debtor's failure to make contractually obligated payments to a creditor constitutes "cause."   *In re Delaney-Morin*, 304 B.R. 365, 370 (9th Cir. B.A.P. 2003); *In re Jones*, 189 B.R. 13,15 (Bankr. E.D. Okla. 1995); *In re Balco Ltd.*, 312 B.R. 734, 749 (Bankr. S.D.N.Y. 2004) (continued failure to make monthly payments under loan documents can constitute cause for granting relief from automatic stay and cause typically exists where failure to make monthly payments corresponds with nonexistent equity cushion).

### a.    **Secured Creditor Is Not Adequately Protected**

Cause exists to terminate the stay because Secured Creditor is not adequately protected. Pursuant to the Bankruptcy Code, once the movant establishes that debtor does not have equity in the subject property, the burden on all other issues shifts to the debtor.  11 U.S.C. § 362(g).  *See also Sun Valley Ranches, Inc. v. Equitable Life Assurance Society of the United States (In re Sun Valley Ranches, Inc.)*, 823 F.2d 1373, 1376 (9th Cir. 1987) (debtor has burden to prove that movant's interest in property at issue is adequately protected).  As set forth above, the Debtor's own schedules evidence that the Debtor lacks equity in the Property.

Moreover, the Debtor will not be able to satisfy its burden of proving adequate protection.  A secured creditor lacks adequate protection if there is a threat of decline or an actual decline in the value of its collateral.  *In re Delaney-Morin*, 304 B.R. at 370 n.3 (noting that secured creditor lacks adequate protection if there is threat of decline in value of its collateral).  In this case, not only is there a threat of decline in value given the general decline of value of real estate nationally and especially in the immediate geographical area of the Property, but there has also been substantial actual decline in value.

In the Hallett Declaration, Mr. Hallett states that the Greg Real Property was purchased in December 2005 for $4,675,000.00, that the Glendale Real Property was purchased in December 2005 for $5,010,000.00, and that the Brooks Real Property was purchased in August 2005 for $3,000,000.00.

Movant has appraisals, which have been provided to Debtor's counsel and which are dated December 1, 2010. These include: (i) an appraisal valuing the Greg Real Property at $2,540,000 ("as is market value") (the "Greg Appraisal"); (ii) an appraisal valuing the Glendale Real Property at $1,960,000 ("as is market value") (the "Glendale Appraisal"); and (iii) an appraisal valuing the Brooks Real Property at $1,000,000 ("as is market value") (the "Brooks Appraisal" and collectively with the Greg Appraisal and Glendale Appraisal, the "Movant Appraisal").[3]

More recently, Debtor has obtained additional appraisals (the "Debtor Appraisal" and together with the Movant Appraisal, the "Appraisals") that value the Greg Real Property at $1,900,000 as of March 2, 2011, the Glendale Real Property at $1,580,000 as of March 2, 2011 [Docket No. 307].

Accordingly, assuming the Debtor's numbers are accurate, not only has the value of the Property decreased substantially but the rate thereof has accelerated considerably within the last year. Therefore, the Debtor cannot possibly satisfy its burden of proving Secured Creditor is adequately protected and thus, cause exists to lift the stay.

### b.    The Debtor Has Failed to Make Monthly Payments

It is well-established that a debtor's failure to make its regular monthly payments to a creditor, coupled with a small or non-existent equity cushion, constitutes "cause" to terminate the automatic stay. *In re Balco Ltd.*, 312 B.R. at 749 (continued failure to make monthly payments under loan documents can constitute cause for granting relief from automatic stay and cause typically exists where failure to make monthly payments corresponds with nonexistent equity cushion); *Equitable Life Assurance Society v. James River Assoc. (In re James River Assoc.),* 148 B.R. 790 (E.D. Va. 1992) (same); *Delaney-Morin*, 304 B.R. at 370; *In re Jones*, 189 B.R. at 15. As set forth above, Debtor has failed to make the payments due under the Loan Documents and there is no equity cushion[4]. Specifically, Debtor has not made the monthly payments as required under the Loan Documents since about September 1, 2009 and Secured Creditor has claims of approximately

---

[3]    The Movant Appraisal is a voluminous document. The relevant pages are attached hereto as Exhibit 28.
[4]    The Debtor has made certain small payments to the Secured Creditor since the Petition Date. The Debtor has characterized these payments as "adequate protection" payments. However, these payments are not only not the monthly payments required by the Loan Documents (even before acceleration) but also do not constitute "adequate protection."

$8,497,891.27 leaving a substantial deficiency amount.  Accordingly, "cause" exists to terminate the stay due to Debtor's failure to make regular monthly payments.

### c.    The Debtor's Recent Actions Evidence Bad Faith

Cause exists to terminate the stay when a debtor files bankruptcy in bad faith.  *See* 11 U.S.C. § 362(d); *see also In re Arnold*, 806 F.2d 937, 939 (9th Cir. 1986).  "The existence of good faith depends on an amalgam of factors and not upon a specific fact.  The test is whether a debtor is attempting to deter and harass creditors or attempting a speedy, efficient reorganization on a feasible basis."  *Marsch v. Marcsch* (*In re Marsch*), 36 F.3d 825, 828 (9th Cir. 1994); *see also Adelson v. Smith* (*In re Smith*), 389 B.R. 902, 924 (Bankr. D. Nev. 1998).  Once a movant establishes the existence of a genuine issue concerning the debtor's lack of good faith, the debtor then bears the burden of proving good faith by a preponderance of the evidence.  *See, e.g., In re Yukon Enterprises*, 39 B.R. 919, 921-22 (Bankr. CD. Cal. 1984); *In re Setzer*, 47 B.R. 340, 345 (Bankr. E.D.N.Y. 1985).

In determining whether a creditor has filed in bad faith, courts look to the following factors: (i) the debtor has only one asset; (ii) secured creditors' liens encumber the asset; (iii) there are no employees except for principals, and there is little or no cash flow, and no available sources of income to sustain a plan of reorganization or to make adequate protection payments; (iv) the property has been posted for foreclosure because of arrearages on debt, and the debtor has been unsuccessful in defending against foreclosure in state court; (v) there are few, if any, unsecured creditors whose claims are relatively small; (vi) there are allegations of wrongdoing on the part of the debtor or its principals; (vii) bankruptcy offers the only possibility of forestalling loss of the property; and (viii) there is "new debtor syndrome." *Little Creek*, 779 F.2d at 1073.  "The 'new debtor syndrome" is the situation in which a one-asset entity has been created or revitalized on the eve of foreclosure to isolate the insolvent property and its creditors, exemplifies, although it does not uniquely categorize, bad faith cases." *Id*.  The *Little Creek* court went on to note that "[r]esort to the protection of the bankruptcy laws is not proper under these circumstances because there is no going concern to preserve, there are no employees to preserve, and there is no hope of rehabilitation, except according to the debtor's 'terminal euphoria.'" *Id*.

The *Little Creek* factors weigh heavily in favor of a finding of bad faith in this case.  Until

roughly two days before the Petition Date, Debtor consisted of single asset real estate entities ("SAREs"), each with their own separate loans.  Most of these properties were in receivership in State Court prior to the chapter 11 filing.  Thus, several of the bad faith factors are present in the instant case: (i) secured creditors' liens encumber most of the debtor's property, (ii) state court litigation where the debtor has thus far been unsuccessful, (iii) as a result of the receiverships, minimal, if any, cash flow so as to sustain a plan of reorganization or make adequate protection payments, and (iv) bankruptcy offering the only possibility of forestalling loss of the property.

Further, until the mergers immediately prior to the Petition Date, the Debtor was comprised of SAREs.  If those SAREs had filed individually, they would have undoubtedly been subject to § 362(d)(3) that would have required them to make adequate protection payments or file a reorganization plan with a reasonable possibility of confirmation within 90 days.  The mergers, which arguably constitute a defacto substantive consolidation without satisfying the requirements therefor, unnecessarily complicate the case and prejudice all of Debtor's creditors, not merely those creditors who issued loans to Debtor as a pre-bankruptcy, SARE.  Especially given that prior to the Petition Date, most of the SAREs were in the hands of a court-appointed receiver, the Debtor's mergers are evidence that the Debtor is not focusing on a "speedy, efficient reorganization on a feasible basis"  but is instead seeking to "deter and harass creditors."  *See Smith*, 389 B.R. at 924.  Accordingly, cause exists to terminate the stay based on Debtor's recent actions.

**B.      Alternatively, The Debtor Is Subject To 11 U.S.C. § 362(d)(3) And Thus, The Stay Should Automatically Terminate Pursuant Thereto**

If this Court does not immediately terminate the stay pursuant to 11 U.S.C. § 362(d)(2) or (d)(1), Secured Creditor avers that the Debtor's case is a single asset real estate ("SARE") case and that the stay should be automatically terminated, without further action or order, 30 days from the date this Court finds that the Debtor's case is an SARE case.  As a preliminary matter, the Bankruptcy Code defines SARE as "real property constituting a single property or project . . . which generates substantially all of the gross income of a debtor who is not a family farmer and on which no substantial business is being conducted by a debtor other than the business of operating the real property and activities incidental."  11 U.S.C. § 101(51B).

In the Hallett Declaration, Mr. Hallett, as sole manager of Debtor, asserts that: (i) Debtor's properties include "office, warehouse, and light industrial space;" (iii) "[b]ased on current occupancy rates . . . Debtor's projected net operating income before administrative expenses is $1,300,000;" and (iv) "court ordered receivers have been appointed for nine of Debtor's properties thereby depriving Debtor of all cash flow generated by those properties and causing further deterioration in occupancy." *See* Hallett Declaration ¶¶ 2, 4-5, 7-8.  Moreover, courts have repeatedly found that warehouse facilities constitute SARE.  *See, e.g., In re 221-06 Merrick Blvd. Assocs. LLC,* No. 10-45657, 2010 Bankr. LEXIS 4431 (Bankr. E.D.N.Y. Dec. 3,  2010) (noting that debtor was limited liability company that owned warehouse and that debtor's case was SARE case); *In re Salem Logistics Distrib. Servs., LLC*, No. 09-50505C-11, 2009 Bankr. LEXIS 1679 (Bankr. M.D.N.C. June 22, 2009) (same).  Accordingly, until the mergers immediately prior to the Petition Date, the Debtor was comprised of SAREs and the Debtor should be subject to the requirements of Section 362(d)(3).

Section 362(d)(3) sets forth specific conditions for relief from stay of an act against SARE. In particular, section 362(d)(3) provides in relevant part:

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection ( a) of this section, such as by terminating, annulling, modifying, or conditioning such stay-

> ... (3) with respect to a stay of an act against single asset real estate under subsection (a), by a creditor whose claim is secured by an interest in such real estate, unless, not later than the date that is 90 days after the entry of the order for relief ... or 30 days after the court determines that the debtor is subject to this paragraph, whichever is later-

>> (A) the debtor has filed a plan of reorganization that has a reasonable possibility of being confirmed within a reasonable time; or

>> (B) the debtor has commenced monthly payments that-

>>> (i) may, in the debtor's sole discretion, notwithstanding Section 363(c)(2), be made from rents or other income generated before, on, or after the date of the commencement of the case by or from the property to each creditor whose claim is secured by the real estate (other than a claim secured by a judgment lien or by an unmatured statutory lien); and

>>> (ii) are in an amount equal to interest at the then

applicable nondefault contract rate of interest on the
value of the creditor's interest in the real estate.

11 U.S.C. § 362(d)(3)(B).  The Ninth Circuit Bankruptcy Appellate Panel has stated that "relief under § 362(d)(3) is *mandatory* where its provisions are not strictly complied with."  *In re CBJ Development, Inc.*, 202 B.R. 467, 470 (9th Cir. BAP 1996) (quoting *In re LDN Corp.*, 191 B.R. 320, 327 (Bankr. E.D. Va. 1996) (emphasis added)); *see also In re Kkemko, Inc.*, 181 B.R. 47, 49 (Bankr. S.D. Ohio 1995) (noting that consequence of not meeting requirements of § 362(d)(3) is that automatic stay "may be lifted without further ado").

As set forth above, until the mergers immediately prior to the Petition Date, the Debtor was comprised of SAREs.  The Debtor should not be permitted to avoid the 90 day requirements of § 362(d)(3) because two days prior to its Petition Date, it merged all of the SAREs into one entity. Moreover, because 90 days have now passed since the Petition Date and because the Debtor has neither filed a disclosure statement or plan of reorganization nor commenced monthly payments to Secured Creditor.  Accordingly, the Debtor has thus far failed to meet the requirements of § 362(d)(3).  Therefore, the stay should automatically terminate on a day that is 30 days from the date this Court determines that § 362(d)(3) applies without the need or requirement for further order of this Court or for Secured Creditor to take any further action.

**C.    Alternatively, If The Court Does Not Lift The Stay, Secured Creditor Shall Be Entitled To Adequate Protection Pursuant to 11 U.S.C. § 363(e),**

If the Court declines to grant relief from the automatic stay, Secured Creditor is entitled to adequate protection pursuant to 11 U.S.C. § 363(e).  Pursuant to Section 363(e), "on request of an entity that has an interest in property used, sold or leased, or proposed to be used, sold or leased, by the trustee, the court with or without a hearing, shall prohibit or condition such use, sale or lease as is necessary to provide adequate protection of such interest."  11 U.S.C. § 363(e).  Adequate protection may include periodic cash payments equivalent to decrease in value, an additional or replacement lien on other property, or other relief that provides the indubitable equivalent.  11 U.S.C. § 361; *In re Mellor*, 734 F.2d 1396, 1400 (9th Cir. 1984).

As set forth above, the Debtor's schedules evidence that the Debtor lacks equity in the

Property and the Appraisals show a substantial and accelerating decrease in value of the Real Property.  The Debtor cannot offer replacement liens as it does not have sufficient unencumbered property.  Nor can it offer any other form of protection that constitutes an "indubitable equivalent".  Therefore, Secured Creditor is entitled to receive periodic cash payments from the Debtor equal to the decline in value of the Property.

## VI.    <u>CONCLUSION</u>

For the reasons set forth above, Secured Creditor respectfully requests that the Court (I) (A) enter an order terminating the automatic stay pursuant to 11 U.S.C. § 362(d)(2) and (d)(1) to permit Secured Creditor to exercise any and all of its available rights and remedies in and to its collateral and provide therein that, pursuant to Federal Rule of Bankruptcy Procedure 4001(a)(3), the Court's order take effect immediately and the fourteen (14) day stay period set forth therein expressly not apply, (B) or alternatively, find that the Debtor is subject to the single asset real estate requirements set forth in 11 U.S.C. § 362(d)(3) and enter an order providing that the automatic stay terminates, without the need for further action or order, automatically 30 days from the date of such order, (C) or alternatively, grant Secured Creditor adequate protection in form of periodic cash payments pursuant to 11 U.S.C. §§ 363(e) and 361 and (II) grant such other relief as is just and proper.

DATED: April 18, 2011

DUANE MORRIS LLP


By:    _/s/ Lucas M. Gjovig_____
        Dominica C. Anderson (SBN 2988)
        Lucas M. Gjovig (SBN 10053)

Attorneys for Secured Creditor and Movant
German American Capital Corporation