1  HAL L. BAUME, ESQ.
   *Admitted Pro Hac Vice*
2  BRETT A. AXELROD, ESQ.
   Nevada Bar No. 5859
3  ANNE M. LORADITCH, ESQ.
   Nevada Bar No. 8164
4  MICAELA RUSTIA, ESQ.
   Nevada Bar No. 9676
5
   **FOX ROTHSCHILD LLP**
6  3800 Howard Hughes Parkway, Suite 500
7  Las Vegas, Nevada 89169
   Telephone: (702) 262-6899 / Facsimile: (702) 597-5503
8  Email: hbaume@foxrothschild.com; baxelrod@foxrothschild.com
          aloraditch@foxrothschild.com; mrustia@foxrothschild.com
9  *Counsel for Debtors*

| | Electronically Filed April 18, 2011 |

10                **UNITED STATES BANKRUPTCY COURT**

11                      **DISTRICT OF NEVADA**

12

13  In re                              Case Nos. BK-S-10-32857-BAM
                                       and  BK-S-10-32680-BAM
14  WHITTON CORPORATION, a Nevada
    corporation,                       Jointly Administered Under
15                         Debtor.     Case No. BK-S-10-32680-BAM

16  ☐ Affects this Debtor             Chapter 11
    ☒ Affects all Debtors
17  ☐ Affects South Tech Simmons 3040C, LLC   **NOTICE OF FILING OF DEBTORS'**
                                       **JOINT CHAPTER 11 PLAN OF**
18                                     **REORGANIZATION**

19
                                       Hearing Date:   N/A
20                                     Hearing Time:   N/A

21

22          **PLEASE TAKE NOTICE** that Whitton Corporation, together with its wholly-owned

23  subsidiary, South Tech Simmons 3040C, LLC (collectively, "Debtors"), debtors and debtors in

24  possession in the above-captioned cases (the "Chapter 11 Cases"), hereby submit their Joint Chapter

25  11 Plan of Reorganization (the "Plan"), dated as of April 18, 2011, pursuant to section 1121(c) of

26  title 11 of the United States Code (the "Bankruptcy Code"), a copy of which is attached hereto as

27  Exhibit A.

28  ///

Debtors' Disclosure Statement, schedules, exhibits and other related supplemental documents will be filed separately at a later date.

DATED this 18th day of April 2011.

**FOX ROTHSCHILD LLP**

By_____*s/ Anne M. Loraditch*_____
HAL L. BAUME, ESQ.
*Admitted Pro Hac Vice*
BRETT A. AXELROD, ESQ.
Nevada Bar No. 5859
ANNE M. LORADITCH, ESQ.
Nevada Bar No. 8164
MICAELA RUSTIA, ESQ.
Nevada Bar No. 9676
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
*Counsel for Debtors*

# EXHIBIT A

### DEBTORS' JOINT CHAPTER 11 PLAN
### OF REORGANIZATION

> **DEBTORS' JOINT CHAPTER 11 PLAN OF REORGANIZATION IS BEING FILED FOR INFORMATIONAL PURPOSES ONLY. ANY OFFER OR SOLICITATION OF ACCEPTANCES OR REJECTIONS OF THE ABOVE-REFERENCED PLAN WILL COMPLY WITH ALL APPLICABLE PROVISIONS OF THE BANKRUPTCY CODE ONCE A DISCLOSURE STATEMENT TO ACCOMPANY SUCH PLAN HAS BEEN APPROVED BY THIS COURT. ALL REFERENCES TO THE DISCLOSURE STATEMENT CONTAINED HEREIN ARE TO SUCH DISCLOSURE STATEMENT AND THE EXHIBITS TO BE ATTACHED THERETO THAT WILL CONTAIN MATERIAL INFORMATION ABOUT DEBTORS AND WILL BE SUBMITTED FOR COURT APPROVAL AT THE EARLIEST POSSIBLE OPPORTUNITY.**

1  HAL L. BAUME, ESQ.
   *Admitted Pro Hac Vice*
2  BRETT A. AXELROD, ESQ.
   Nevada Bar No. 5859
3  ANNE M. LORADITCH, ESQ.
   Nevada Bar No. 8164
4  MICAELA RUSTIA, ESQ.
   Nevada Bar No. 9676
5
   **FOX ROTHSCHILD LLP**
6  3800 Howard Hughes Parkway, Suite 500
   Las Vegas, Nevada 89169
7  Telephone: (702) 262-6899 / Facsimile: (702) 597-5503
   Email: hbaume@foxrothschild.com; baxelrod@foxrothschild.com
8         aloraditch@foxrothschild.com; mrustia@foxrothschild.com
9  *Counsel for Debtors*

Electronically Filed April 18, 2011

10        **UNITED STATES BANKRUPTCY COURT**

11            **DISTRICT OF NEVADA**

12

13  In re                              Case Nos. BK-S-10-32857-BAM and
                                       BK-S-10-32680-BAM
14
    WHITTON CORPORATION, a Nevada      Jointly Administered Under
15  corporation                        Case No. BK-S-10-32680-BAM

16                                     Chapter 11

17  ☐ Affects this Debtor              **DEBTORS' JOINT CHAPTER 11 PLAN**
    ☒ Affects all Debtors              **OF REORGANIZATION**
18  ☐ Affects South Tech Simmons 3040C, LLC

19                                     Hearing Date:    N/A
                                       Hearing Time:    N/A
20

21      **DEBTORS' JOINT CHAPTER 11 PLAN OF REORGANIZATION IS
22    BEING FILED FOR INFORMATIONAL PURPOSES ONLY. ANY OFFER
       OR SOLICITATION OF ACCEPTANCES OR REJECTIONS OF THE
23      ABOVE-REFERENCED PLAN WILL COMPLY WITH ALL
        APPLICABLE PROVISIONS OF THE BANKRUPTCY CODE ONCE A
24    DISCLOSURE STATEMENT TO ACCOMPANY SUCH PLAN HAS BEEN
        APPROVED BY THIS COURT. ALL REFERENCES TO THE
25      DISCLOSURE STATEMENT CONTAINED HEREIN ARE TO SUCH
      DISCLOSURE STATEMENT AND THE EXHIBITS TO BE ATTACHED
26      THERETO THAT WILL CONTAIN MATERIAL INFORMATION
         ABOUT DEBTORS AND WILL BE SUBMITTED FOR COURT
27      APPROVAL AT THE EARLIEST POSSIBLE OPPORTUNITY.**
28

*VG1 82210v3 04/18/11*

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

Whitton Corporation, together with its wholly-owned subsidiary, South Tech Simmons 3040C, LLC ("<u>Debtors</u>"), debtors and debtors-in-possession in the above-captioned cases (the "<u>Chapter 11</u> <u>Cases</u>"), hereby propose their joint Chapter 11 plan of reorganization (the "<u>Plan</u>") for Debtors, dated as of April 19, 2011, pursuant to section 1121(c) of title 11 of the United States Code (the "<u>Bankruptcy</u> <u>Code</u>").

## <u>DISCLAIMER</u>

Reference is made to the Disclosure Statement accompanying this Plan, including the exhibits appended thereto, for a discussion of Debtors' history, business, results of operations and properties, and brief summary and detailed analysis of this Plan. All creditors are encouraged to consult the Disclosure Statement and to read this Plan carefully and completely before voting to accept or reject this Plan.

THIS PLAN AND THE EXHIBITS APPENDED HERETO, THE ACCOMPANYING DISCLOSURE STATEMENT AND EXHIBITS APPENDED THERETO REMAIN SUBJECT TO APPROVAL BY THE BANKRUPTCY COURT AND HAVE NOT BEEN AUTHORIZED BY THE BANKRUPTCY COURT FOR USE IN SOLICITING ACCEPTANCES OR REJECTIONS OF THIS PLAN.

## ARTICLE I

## <u>DEFINITIONS AND RULES OF INTERPRETATION</u>

**A.      Definitions.**

For the purposes of this Plan and the accompanying Disclosure Statement, the following terms (which appear herein as capitalized terms) shall have the respective meanings as hereinafter set forth; such meanings to be equally applicable to the singular and the plural forms of the terms defined, unless the context otherwise requires. Capitalized terms used in this Plan at all times shall refer to terms defined in this Article I, or, if not defined in this Article I, then as defined in any other section of this Plan. Capitalized terms used but not immediately defined in this Plan shall have the meanings ascribed to them later in this Plan. Unless otherwise provided in this Plan, all terms used herein shall have the meaning assigned to them under the Bankruptcy Code or Bankruptcy Rules. The rules of construction applicable to the Bankruptcy Code and the Bankruptcy Rules shall be applicable to this Plan.

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

1.1.    "506 Application" means one or more applications filed by the Debtors seeking, among other things, (i) a determination of the Property Value of the Properties, as of the Effective Date; (ii) that, subject to an 1111(b) Election, each Secured Lender's Claim is Secured in an amount equal to the Bankruptcy Court's determination of the Property Value of the Property securing such Secured Lender's Claim, less the amount of the Secured Note Deduction for such Property; and (iii) other relief as set forth therein.

1.2.    "506 Properties" means, collectively, those Properties that are the subject to the 506 Application, which seeks to fix the aggregate total value of such Properties at $18,315,000.

1.3.    "1111(b) Election" means an election made by a Secured Lender, pursuant to Bankruptcy Code section 1111(b), to have its entire Allowed Claim treated as secured in accordance therewith.

1.4.    "1111(b) Interest Rate" means, for the Claim of a Secured Lender that made the 1111(b) Election the interest rate set forth for such Secured Lender's Claim in Section 2.3 of this Plan.

1.5.    "1111(b) Loan Amortization Schedule" means, for the Claim of a Secured Lender that made the 1111(b) Election, the number of years set forth for such Secured Lender's Claim in Section 2.3 of this Plan over which the Refinanced Secured Loan shall be amortized over at the 1111(b) Interest Rate, for purposes of calculating all monthly installment payments, except for the final "balloon" payment for such Refinanced Secured Loan.

1.6.    "1111(b) Loan Maturity" means that date which is twenty five (25) years from the Effective Date for a Secured Claim for which the Secured Lender made the 1111(b) Election.

1.7.    "1111(b) Loan Payment Terms" means the payment terms of the Refinanced Secured Note of a Secured Loan for which its Secured Lender made the 1111(b) Election, which payment terms shall be in two-hundred ninety-nine (299) equal monthly payments at the 1111(b) Interest Rate based on the 1111(b) Loan Amortization Schedule set forth for such Secured Lender's Claim in Section 2.3 of this Plan with a final (300th) balloon payment for the remaining balance due on the Refinanced Secured Note at the 1111(b) Loan Maturity.

1.8.    "Administrative Claim" means a Claim for costs and expenses of administration, pursuant to Bankruptcy Code sections 503(b), 507(a)(2) or 507(b), including: (a) the actual and

necessary costs and expenses incurred after the Petition Dates and through the Effective Date of preserving the Estates and operating the businesses of Debtors (such as wages, salaries, or commissions for services, and payments for goods and services); (b) compensation and reimbursement of expenses for legal, financial advisory, accounting, and other services, including but not limited to, Allowed Professional Fees, pursuant to Bankruptcy Code sections 328, 330(a), or 331 or otherwise for the period commencing on the Petition Date and ending on the Effective Date; (c) all fees and charges assessed against the Estates, pursuant to chapter 123 of the Judicial Code and 28 U.S.C. § 1930; and (d) all Bankruptcy Court approved requests for compensation or expense reimbursement for making a substantial contribution in the Chapter 11 Cases, pursuant to Bankruptcy Code sections 503(b)(3), (4), and (5).

1.9. "Administrative Claim Bar Date" means the deadline for filing requests for payment of Administrative Claims, which shall be thirty (30) days after the Effective Date, except with respect to Professional Fees, which shall be subject to the provisions of Section 2.2 hereof.

1.10. "Allowed" means, with reference to any Claim, Equity Interest or Interest and with respect to Debtors: (a) any Claim against or Interest in Debtors that has been listed by Debtors in their Schedules, as such Schedules may be amended by Debtors from time to time in accordance with Bankruptcy Rule 1009, as liquidated in amount and not disputed or contingent and for which no contrary Proof of Claim or Interest has been Filed; (b) any Claim or Interest allowed (i) under this Plan, (ii) by Final Order, or (iii) as to which the liability of Debtors and the amount thereof are determined by a final order of a court of competent jurisdiction other than the Bankruptcy Court; or (c) as to which a Proof of Claim has been timely Filed in a liquidated amount with the Bankruptcy Court, pursuant to the Bankruptcy Code or any order of the Bankruptcy Court, or has been Filed with leave of the Bankruptcy Court after notice and a hearing, provided that no objection to the allowance of such Claim or motion to expunge such Claim has been interposed by any party in interest before any final date for the filing of such objections or motions set forth in this Plan, the Confirmation Order or other order of the Bankruptcy Court. For purposes of determining the amount of an Allowed Claim, there shall be deducted therefrom an amount equal to the amount of any valid and enforceable Claim that Debtors

///

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

may hold against the Holder thereof, to the extent such Claim may be validly offset, recouped, or otherwise reduced under applicable law.

1.11. "Assets" means all of the assets, property (including the Properties), interests, and effects, Cash, receivables, real and personal, tangible and intangible, wherever situated, of Debtors, as they existed on the Effective Date or thereafter, including: (a) executory contracts and unexpired leases; (b) all of the Debtors' other non-Cash property and assets, including all of the Causes of Action; and (c) any interest in any security deposit held on the Effective Date.

1.12. "Assumed Contracts" means any of Debtors' unexpired leases and executory contracts existing on the Petition Date and any unexpired leases and executory contracts entered into by Debtors post-petition which, prior to the Confirmation Date have been assumed by the Debtors pursuant to Bankruptcy Code section 365, or are to be assumed by the Debtors or Reorganized Debtor and, where applicable, assigned to Hallett Entity pursuant to this Plan.

1.13. "Avoidance Actions" means any actions commenced, or that may be commenced before or after the Effective Date, pursuant to Bankruptcy Code sections 544, 545, 547, 548, 550 or 551.

1.14. "Bankruptcy Code" means Title 11 of the United States Code, as amended from time to time, as applicable to this Chapter 11 Case.

1.15. "Bankruptcy Court" means the United States Bankruptcy Court for the District of Nevada, or such other court as may from time to time have jurisdiction over these Chapter 11 Cases.

1.16. "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure, as heretofore or hereafter amended and the general, local and chambers rules and orders of the Bankruptcy Court.

1.17. "Bar Date" means April 6, 2011, the date established by the Bankruptcy Court by which non-governmental Creditors are required to file proofs of claim with respect to pre-petition Claims including Claims asserted, pursuant to Bankruptcy Code section 503(b)(9), except with respect to Administrative Claims, Claims arising from the rejection of any executory contracts and unexpired leases, and Claims that were scheduled by the Debtors as undisputed, non-contingent, and unliquidated; and July 5, 2011, by which governmental Creditors are required to file proofs of claim with respect to pre-petition Claims, including but not limited to Priority Tax Claims.

1.18. "BLV" means Bank of Las Vegas.

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

1.19. "BLV Cheyenne Claims" means the claims held by BLV and/or any other Persons under the BLV Cheyenne Loan, BLV Cheyenne Note and related loan documents.

1.20. "BLV Cheyenne Loan" means the loan pursuant to the BLV Cheyenne Note, that certain loan agreement dated October 24, 2008, between Black Mountain Community Bank and South Tech Cheyenne, LLC, with respect thereto, the deed of trust and assignment of rents dated October 24, 2008, pursuant to which the BLV Cheyenne Loan is secured by the BLV Cheyenne Property and Rents thereof, together with any and all documents related thereto or executed contemporaneously or at any time (s) thereafter in connection therewith, and as more fully described and set forth in the Final Order (I) Authorizing Debtor's Use of Cash Collateral, Pursuant to 11 U.S.C. § 363; and (II) Providing Adequate Protection to Bank of Las Vegas, Pursuant to 11 U.S.C. §§ 361, 362, 363 and 364 entered by the Bankruptcy Court on January 25, 2011, at Docket No. 154.

1.21. "BLV Cheyenne Note" means the promissory note dated October 24, 2008, by and between Black Mountain Community Bank and South Tech Cheyenne, LLC, in the original principal amount of $2,740,000 Dollars, as thereafter assigned to or held by BLV, as successor in interest.

1.22. "BLV Cheyenne Property" means 27,363 square feet of flexible use and light industrial space located at 2475 West Cheyenne Avenue in North Las Vegas, Nevada 89032, together with the Rents thereof.

1.23. "BLV Cheyenne Refinanced Secured Note" means as set forth in Section 2.3(b) of this Plan, the form of which is annexed as an exhibit to the Disclosure Statement.

1.24. "BLV Cheyenne Refinanced Secured Loan" means BLV Cheyenne Loan as restructured and refinanced under the terms of this Plan evidenced by the BLV Cheyenne Refinanced Secured Note, on terms and conditions set forth in the BLV Cheyenne Refinanced Secured Loan Documents, as more particularly defined and set forth in Section 2.3(b) of this Plan, the form of which is annexed as an exhibit to the Disclosure Statement.

1.25. "BLV Cheyenne Refinanced Secured Loan Documents" means the definitive loan documents in connection with and evidencing the BLV Cheyenne Refinanced Secured Loan between the Reorganized Debtor and BLV, which are attached as an exhibit to the Disclosure Statement, with

///

any material modifications or additional documents to be included and filed as part of the Plan Supplement.

1.26. "BLV Dean Martin Claims" means the claims held by BLV and/or any other Persons under the BLV Dean Martin Loan, BLV Dean Martin Note and related loan documents.

1.27. "BLV Dean Martin Loan" means the loan made by BLV, pursuant to the BLV Dean Martin Note, the deed of trust dated December 7, 2005, and assignment of rents dated December 7, 2005, pursuant to which the BLV Dean Martin Loan is secured by (i) the BLV Dean Martin Property and Rents thereof, together with any and all documents related thereto or executed contemporaneously or at any time(s) thereafter in connection therewith, and as more fully described and set forth in the Interim Order (I) Authorizing Debtor's Use of Cash Collateral, Pursuant to 11 U.S.C. § 363; and (II) Providing Adequate Protection to Bank of Las Vegas, Pursuant to 11 U.S.C. §§ 361, 362, 363 and 364 and (III) Scheduling a Final Hearing Pursuant to Fed. R. Bankr. P. 2002, 4001(b), 4001(c) and 6004 entered by the Bankruptcy Court on March 24, 2011, at Docket No. 319; and (ii) the BLV Mesquite Property, pursuant to the deed of trust dated April 26, 2010, together with any and all documents related thereto or executed contemporaneously or at any time(s) thereafter in connection therewith.

1.28. "BLV Dean Martin Note" means the promissory note dated December 7, 2005, executed by South Tech-Rio, LLC, payable to Black Mountain Community Bank in the original principal amount of Two Million Dollars ($2,000,000), as thereafter assigned to or held by BLV, as successor in interest.

1.29. "BLV Dean Martin Property" means 14,176 square feet of flexible use and light industrial space located at 7635 Dean Martin Drive, Las Vegas, NV (APN 177-08-211-003), together with the Rents thereof.

1.30. "BLV Dean Martin Refinanced Secured Note" means as set forth in Section 2.3(d) of this Plan, the form of which is annexed as an exhibit to the Disclosure Statement.

1.31. "BLV Dean Martin Refinanced Secured Loan" means the BLV Dean Martin Secured Loan as restructured and refinanced under the terms of this Plan evidenced by the BLV Dean Martin Refinanced Secured Note, on terms and conditions set forth in the BLV Dean Martin Refinanced Secured Loan Documents, and as set forth in Section 2.3(d) of this Plan.

///

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

1    1.32.   "BLV Dean Martin Refinanced Secured Loan Documents" means the definitive loan

2  documents evidencing the BLV Dean Martin Refinanced Secured Loan between the Hallett Entity and

3  BLV, which is attached as and exhibit to the Disclosure Statement, with any material modifications or

4  additional documents to be included and filed as part of the Plan Supplement.

5    1.33.   "BLV Mountain Vista Claims" means the claims held by BLV and/or any other Persons

6  under the BLV Mountain Vista Loan, BLV Mountain Vista Note and related loan documents.

7    1.34.   "BLV Mountain Vista Loan" means the loan made by BLV pursuant to the BLV

8  Mountain Vista Note, the deed of trust dated February 23, 2007, and assignment of rents dated February

9  23, 2007, pursuant to which the BLV Mountain Vista Loan is secured by the BLV Mountain Vista

10 Property and Rents thereof, together with any and all documents related thereto or executed

11 contemporaneously or at any time(s) thereafter in connection therewith, and as more fully described and

12 set forth in the Interim Order (I) Authorizing Debtor's Use of Cash Collateral, Pursuant to 11 U.S.C. §

13 363; and (II) Providing Adequate Protection to Bank of Las Vegas, Pursuant to 11 U.S.C. §§ 361, 362,

14 363 and 364 and (III) Scheduling a Final Hearing Pursuant to Fed. R. Bankr. P. 2002, 4001(b), 4001(c)

15 and 6004 entered by the Bankruptcy Court on March 24, 2011, at Docket No. 319.

16    1.35.   "BLV Mountain Vista Note" means the promissory note dated September 19, 2005,

17 executed by South Tech Partners, LLC, in the original principal amount of One Hundred Thousand

18 Dollars ($100,000)[1] payable to Black Mountain Community Bank as thereafter assigned to or held by

19 BLV, as successor in interest.

20    1.36.   "BLV Mountain Vista Property" means 27,436 square feet of flexible use and light

21 industrial space located at 6100 Mountain Vista Street, Henderson, NV (APN 161-32-711-005) together

22 with the Rents thereof.

23    1.37.   "BLV Mountain Vista Refinanced Secured Note" means as set forth in Section 2.3(c) of

24 this Plan, the form of which is annexed as an exhibit to the Disclosure Statement.

25 ///

26

27    [1] The terms of the Mountain Vista Loan and Mountain Vista Note were subsequently modified,
pursuant to agreement between the parties, to increase the maximum principal amount to $800,000.

28

1.38. "BLV Mountain Vista Refinanced Secured Loan" means the BLV Mountain Vista Secured Loan as restructured and refinanced under the terms of this Plan evidenced by the BLV Mountain Vista Refinanced Secured Note, on terms and conditions set forth in the BLV Mountain Vista Refinanced Secured Loan Documents, as set forth in Section 2.3(c) of this Plan.

1.39. "BLV Mountain Vista Refinanced Secured Loan Documents" means the definitive loan documents evidencing the BLV Mountain Vista Refinanced Secured Loan between the Hallett Entity and BLV, which is attached as an exhibit to the Disclosure Statement, with any material modifications or additional documents to be included and filed as part of the Plan Supplement.

1.40. "BLV Mesquite Property" means that certain real property parcel consisting of vacant land located at 1300 West Pioneer Boulevard, NV (APN 002-13-701-012).

1.41. "BofA" means Bank of America, N.A.

1.42. "BofA Claims" means the claims held by BofA, and/or any other Persons, under the BofA Loan and BofA Note and its related documents.

1.43. "BofA Loan" means the loan made by First Republic Bank, pursuant to the promissory note secured by deed of trust executed by First Republic and Fidelity National Title Insurance Company, as trustee, and Shoshone Cattle and Land Development Co., as borrower, dated February 11, 2004, as more fully described and set forth in the Final Order (I) Authorizing Debtor's Use of Cash Collateral, Pursuant to 11 U.S.C. § 363; and (II) Providing Adequate Protection to Bank Of America, N. A., Pursuant to 11 U.S.C. §§ 361, 362, 363 and 364 entered by the Bankruptcy Court on January 25, 2011, at Docket No. 155.

1.44. "BofA Note" means the secured promissory note by and between First Republic Bank and Shoshone Cattle and Land Development Co. in the original principal amount of Four Million Dollars ($4,000,000), at a fixed rate of 5.75% through March 1, 2009, subject to rate adjustment thereafter, as thereafter assigned to or held by a successor in interest.

1.45. "BofA Property" means 26,941 square feet of office and flexible use space located at Sunset Road and Annie Oakley Drive in Las Vegas, Nevada (3950 E. Sunset Road, Las Vegas, Nevada), which BofA asserts is subject to a lien it holds thereon.

///

1.46. "BofA Refinanced Secured Note" means as set forth in Section 2.3(e) of this Plan.

1.47. "BofA Refinanced Secured Loan" means the BofA Loan as restructured and refinanced under the terms of this Plan evidenced by the BofA Refinanced Secured Note, on terms and conditions set forth in the BofA Refinanced Secured Loan Documents, as more particularly defined and set forth in Section 2.3(e) of this Plan.

1.48. "BofA Refinanced Secured Loan Documents" means the BofA Refinanced Secured Note, any loan agreement for the BofA Refinanced Secured Loan, a deed of trust and assignment of rents pursuant to which the BofA Refinanced Secured Loan is secured by the BofA Property, to be executed and delivered by the Reorganized Debtor, which is attached as and exhibit to the Disclosure Statement, with any material modifications or additional documents to be included and filed as part of the Plan Supplement, together with any and all documents related thereto or executed contemporaneously or and any time(s) thereafter in connection therewith by the Reorganized Debtor.

1.49. "BofA Secured Claims" shall mean (i) the amount of the BofA Claims up to the amount of the Property Value of the BofA Property, unless BofA makes an 1111(b) Election, in which case it shall mean the amount of the Allowed BofA Claims.

1.50. "Borrowers" means Whitton and Simmons.

1.51. "Business Day" means a day, other than a Saturday, Sunday, or other day on which commercial banks in Las Vegas, Nevada are authorized or required by law to close.

1.52. "Cash" means legal tender of the United States of America, which may be conveyed by check or wire transfer.

1.53. "Cash Collateral Orders" means any and all interim and final orders entered by the Bankruptcy Court, which permitted the Debtors to use the cash collateral of any of the Secured Lenders.

1.54. "Causes of Action" means any Claim, Avoidance Action, cause of action, controversy, demand, right, action, Lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, offset, power, privilege, license, and franchise of any kind or character whatsoever, known, unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether

///

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

arising before, on or after the Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law.

1.55. "Chapter 11 Cases" means the chapter 11 cases filed by Debtors as set forth in the caption to this Plan.

1.56. "Claim" has the meaning set forth in Bankruptcy Code section 101(5).

1.57. "Claim Objection Deadline" means one (1) year from the Effective Date for all Claims, except for Claims for which a specific objection deadline has been set forth elsewhere in this Plan.

1.58. "Claims Register" means the official register of Claims and Interests maintained by Debtors.

1.59. "Class" means a class of Holders of Claims or Interests as described in Article II of the Plan.

1.60. "Confirmation" means the entry by the Bankruptcy Court of the Confirmation Order.

1.61. "Confirmation Date" means the date upon which the clerk of the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases, within the meaning of Bankruptcy Rules 5003 and 9021.

1.62. "Confirmation Funds" means all funds required to be disbursed, or deposited and held for later disbursement upon allowance or other Bankruptcy Court authorization, on or as of the Effective Date (i) to Holders of Allowed Professional Fee Claims, other Allowed Administrative Claims, Allowed Priority Claims to be paid in Cash on the Effective Date, any Allowed Priority Tax Claims other than Priority Tax Claims to be paid in deferred payments pursuant to this Plan, (ii) to create the Creditor Fund, (iii) to the DIP Lender to fully pay and satisfy the DIP Loan, (iv) to the U.S. Trustee for US Trustee Fees due as of the Effective Date and (v) for any other Distributions and payment of costs and expenses in connection with consummating the Plan.

1.63. "Confirmation Hearing" means the hearing held by the Bankruptcy Court to consider confirmation of the Plan pursuant to Bankruptcy Code section 1129, as such hearing may be adjourned or continued from time to time.

///

///

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

1.64. "Confirmation Order" means the order entered by the Bankruptcy Court confirming the Plan in accordance with the Bankruptcy Code, which shall be in form and substance reasonably acceptable to Debtors.

1.65. "Creditor" means a Holder of a Claim.

1.66. "Creditor Fund" means Cash in the sum of Two Hundred Fifty Thousand Dollars ($250,000) to be distributed Pro Rata on account of Allowed General Unsecured Claims, pursuant to the terms of this Plan.

1.67. "Cure" means the payment of Cash by Debtors, or the Distribution of other property and the performance of any other obligations as the parties may agree or the Bankruptcy Court may order necessary to cure defaults under an executory contract or unexpired lease of Debtors that are required to allow Debtors to assume, or to assume and assign that contract or unexpired lease under section 365(a) of the Bankruptcy Code, or under this Plan.

1.68. "Cure Bar Date" means the deadline for filing requests for payment of Cure, which shall be fifteen (15) days prior to the Confirmation hearing

1.69. "Custodian" means any Person or Entity appointed by a state court, prior to December 5, 2010, as receiver for one or more of the Properties and the Rents thereof.

1.70. "Custodian Orders" means any and all interim and final orders entered by the Bankruptcy Court pursuant to Bankruptcy Code section 543(d)(1), which permitted a Custodian to continue in possession during these Chapter 11 Cases of the Property or Properties for which it was appointed, pursuant to the terms and conditions set forth in such orders.

1.71. "Debtors" means Whitton Corporation, a Nevada corporation, and South Tech Simmons 3040C, LLC, a Nevada limited liability company.

1.72. "Debtor in Possession" means either of the Debtors, as debtor in possession in the Chapter 11 Cases, pursuant to Bankruptcy Code sections 1107 and 1108.

1.73. "Deficiency Claim" means the Claim of any Secured Lender which does not make the 1111(b) Election, which is Allowed as a General Unsecured Claim, which amount shall equal the difference between such Secured Lender's Allowed Claim and the Property Value of the Property which secures such Secured Lender's Claim.

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

1.74. "DIP Lender" means Ruby Capital Investments, LLC, and Silver Phoenix, LLC, their successors, assigns and/or designees, which made the DIP Loan to the Debtors.

1.75. "DIP Loan" means the postpetition loan in the amount of Two Million One Hundred Thousand Dollars ($2,100,000) made by DIP Lender to the Debtors pursuant to the DIP Financing Order.

1.76. "DIP Financing Order" means the order of the Bankruptcy Court entered on March 29, 2011 [Docket No. 340] approving and authorizing the DIP Loan on an interim basis and any final order entered with respect thereto.

1.77. "Disallowed Claim" means any Claim or portion thereof that has been disallowed by a Final Order of the Bankruptcy Court.

1.78. "Disclosure Statement" means the solicitation and disclosure statement for this Plan, including all exhibits and schedules thereto.

1.79. "Disputed Claim" means:  (a) any Claim or portion of a Claim (including any Administrative Claim, Priority Claim or Other Secured Claim) listed in the Schedules as disputed, contingent or unliquidated; or (b) any Claim, as to which an objection to the allowance thereof has been filed with the Bankruptcy Court within any time limitation fixed by the Bankruptcy Code, the Bankruptcy Rules, this Plan or an order of the Bankruptcy Court, which objection has not been settled, withdrawn, or determined, in whole or in part, by a Final Order.

1.80. "Distribution" means any distribution made by the Distribution Agent pursuant to the terms of this Plan.

1.81. "Distribution Agent" means Debtors, or the Person or Entity chosen by Debtors to make or to facilitate Distributions pursuant to this Plan.

1.82. "Distribution Record Date" means the Confirmation Date unless the Bankruptcy Court establishes a different date for the Distribution Record Date in the Confirmation Order.

1.83. "Effective Date" means the first Business Day on which the conditions specified in Article IX of this Plan have been satisfied in full or waived.

1.84. "Entity" has the meaning as set forth in Bankruptcy Code section 101(15).

///

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

1.85. "Estate" means, the estates of Debtors that were created by the commencement of the Chapter 11 Cases pursuant to Bankruptcy Code section 541, and shall be deemed to include any and all privileges and incorporeal hereditaments of Debtors and any and all interests in property, whether real, personal or mixed, rights, Causes of Action, avoidance powers or extensions of time that Debtors or the estates shall have had effective as of the Petition Date or thereafter, whether by virtue of Bankruptcy Code sections 544, 545, 546, 547, 548, 549 or 550 or otherwise.

1.86. "Equity Interest" means the same as "Interest."

1.87. "File" means to file with the Bankruptcy Court in the Chapter 11 Cases.

1.88. "Final Decree" means an order of the Bankruptcy Court closing the Chapter 11 Cases pursuant to Bankruptcy Code section 350.

1.89. "Final Order" means an order or judgment entered by the Bankruptcy Court: (a) that has not been reversed, stayed, modified, amended, revoked, varied or set aside, and as to which (i) any right to appeal or seek certiorari, review, reargument, stay or rehearing has been waived, or (ii) the time to appeal or seek certiorari, review, reargument, stay or rehearing has expired and no appeal or petition for certiorari, review, reargument, stay or rehearing is pending; or (b) as to which an appeal has been taken or petition for certiorari, review, reargument, stay or rehearing has been filed, and (i) such appeal or petition for certiorari, review, reargument, stay or rehearing has been resolved by the highest court to which the order or judgment was appealed or from which certiorari, review, reargument, stay or rehearing was sought, and (ii) the time to appeal further or seek certiorari, review, reargument, stay or rehearing has been waived or expired and no such further appeal or petition for certiorari, review, reargument, stay or rehearing is pending, provided, however, that no order or judgment shall fail to be a "Final Order" hereunder solely because of the possibility that a motion pursuant to section 502(j) or 1144 of the Bankruptcy Code, Rule 59 or 60 of the Federal Rules of Civil Procedure or Bankruptcy Rule 9024 may be Filed with respect to such order or judgment.

1.90. "General Unsecured Claims" means all the Claims against the Debtors, including Deficiency Claims of Secured Lenders who did not make the 1111(b) Election and Claims resulting from rejection of executory contracts and unexpired leases, that are not Secured, Administrative, or Priority Claims, and that are not subject to subordination by agreement or otherwise.

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

1.91.    "German American" means German American Capital Corporation.

1.92.    "German American Brooks Claims" means the Claims held by German American, and/or any other Persons, under the German American Brooks Loan, German American Brooks Note and related documents.

1.93.    "German American Brooks Loan" means the loan made pursuant to the German American Brooks Note which is secured by that certain deed of trust and security agreement dated December 16, 2005 and that certain assignment of leases and rents dated December 16, 2005 which was filed with the Clark County Recorder on September 6, 2006 as Instrument No. 20060906-0002513, which is one of the loans referred to in the Stipulation and Order Permitting Custodians to Continue in Possession of Property entered by the Bankruptcy Court on December 27, 2010, at Docket No. 81.

1.94.    "German American Brooks Note" means that certain fixed interest rate note dated December 16, 2005, executed South Tech Brooks 2750K, LLC, as borrower, payable to the order of JP Morgan Chase Bank, which had an original principal amount of $2.1 million at a rate of 5.75% per annum through January 1, 2016, as thereafter assigned to or held by a successor in interest, if any.

1.95.    "German American Brooks Property" means 28,710 square feet of light industrial space located at N. Simmons Street and W. Cheyenne Avenue in Las Vegas, Nevada.

1.96.    "German American Brooks Secured Claim" means the amount of the German American Brooks Claims up to the amount of the Property Value of the German American Brooks Property.

1.97.    "German American Glendale Claims" means the claims held by German American, and/or any other Persons, under the German American Glendale Loan and German American Glendale Note and its related documents.

1.98.    "German American Glendale Loan" means the loan made pursuant to the German American Glendale Note, which is secured by that certain deed of trust and security agreement dated December 21, 2005 and that certain assignment of leases and rents dated December 21, 2005, and which is one of the loans referred to in the Stipulation and Order Permitting Custodians to Continue in Possession of Property entered by the Bankruptcy Court on December 27, 2010 at Docket No. 81.

1.99.    "German American Glendale Note" means that certain fixed interest rate note dated December 21, 2005 executed by South Tech–Glendale 155, LLC, as borrower, payable to JP Morgan

Chase Bank, as lender, which had an original principal amount of $2.6 million at a rate of 5.76% per annum through January 1, 2016, as thereafter assigned to or held by a successor in interest, if any.

1.100. "German American Glendale Property" means 57,679 square feet of flexible use, light industrial, and warehouse space located at E. Glendale Avenue and S. Stanford Way in Sparks, Nevada.

1.101. "German American Glendale Refinanced Note" means as set forth in Section 2.3(n) of this Plan.

1.102. "German American Glendale Refinanced Secured Loan" means as set forth in Section 2.3(n) of this Plan.

1.103. "German American Glendale Refinanced Secured Loan Documents" means the German American Glendale Refinanced Secured Note, any loan agreement for the German American Glendale Refinanced Secured Loan, a deed of trust and assignment of rents pursuant to which the German American Glendale Refinanced Secured Loan is secured by the German American Glendale Property, to be executed and delivered by the Reorganized Debtor, which are attached as exhibits to the Disclosure Statement, with any material modifications or additional documents to be included and filed as part of the Plan Supplement, together with any and all documents related thereto or executed contemporaneously or and any time(s) thereafter in connection therewith by the Reorganized Debtor.

1.104. "German American Glendale Secured Claim" means (i) the amount of the German American Glendale Claims up to the amount of the Property Value of the German American Glendale Property, unless German American makes an 1111(b) Election, in which case it shall mean the amount of the Allowed German American Glendale Claims.

1.105. "German American Greg Claims" means the claims held by German American, and/or any other Persons, under the German American Greg Loan, German American Greg Note and related documents

1.106. "German American Greg Loan" means the loan made pursuant to the German American Greg Note which is secured by that certain deed of trust and security agreement dated December 21, 2005 and that certain assignment of leases and rents dated December 21, 2005, and which is one of the loans which is referred to in the Stipulation and Order Permitting Custodians to Continue in Possession of Property entered by the Bankruptcy Court on December 27, 2010, at Docket No. 81.

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

1.107. "German American Greg Note" means that certain fixed interest rate note dated December 21, 2005 executed by South Tech Greg, LLC, as borrower, payable to JP Morgan Chase, as lender, which had an original principal amount of $3.45 million at a rate of 5.76% per annum through January 1, 2016, as thereafter assigned to or held by a successor in interest, if any.

1.108. "German American Greg Property" means 69,236 square feet of flexible use, light industrial, and warehouse space located at 1220 and 1250 Greg Street in Sparks, Nevada.

1.109. "German American Greg Refinanced Secured Note" means as set forth in Section 2.3(m) of this Plan.

1.110. "German American Greg Refinanced Secured Loan" means as set forth in Section 2.3(m) of this Plan.

1.111. "German American Greg Refinanced Secured Loan Documents" means the German American Greg Refinanced Secured Note, any loan agreement for the German American Greg Refinanced Secured Loan, a deed of trust and assignment of rents pursuant to which the German American Greg Refinanced Secured Loan is secured by the German American Greg Property, to be executed and delivered by the Reorganized Debtor, which is attached as an exhibit to the Disclosure Statement, with any material modifications or additional documents to be included and filed as part of the Plan Supplement, together with any and all documents related thereto or executed contemporaneously or and any time(s) thereafter in connection therewith by the Reorganized Debtor.

1.112. "German American Greg Secured Claim" means (i) the amount of the German American Greg Claims up to the amount of the Property Value of the German American Greg Property, unless German American makes an 1111(b) Election, in which case it shall mean the amount of the Allowed German American Greg Claims.

1.113. "GSMS" means GSMS 2004, GG2 Sparks Industrial, LLC.

1.114. "GSMS Claims" means the claims held by GSMS, and/or any other Persons, under the GSMS Loan and GSMS Note and its related documents.

1.115. "GSMS Loan" means the loan made pursuant to the GSMS Note which is secured by (i) that certain Deed of Trust, Assignment of Rents and Security Agreement dated June 23, 2004, recorded with the Washoe County Recorder on June 23, 2004, as document number 3057978 which was

thereafter assigned pursuant to an Assignment of Deed of Trust, Assignment of Rents and Security Agreement from Original Lender to Trust, which was recorded with the Washoe County Recorder on February 3, 2005, as document number 3165775, and thereafter assigned pursuant to Assignment of Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing and Assignment of Assignment of Leases and Rents from LaSalle Bank to U.S. Bank as trustee for the Trust, recorded with the Washoe County Recorder on April 18, 2008, as document number 3641436, and thereafter assigned pursuant to Assignment of Deed of Trust, Assignment of Rents and Security Agreement and Other Loan Documents from Trust to GSMS 2004-GG2 Sparks Industrial, LLC, recorded with the Washoe County Recorder on November 8, 2010 as document number 3951357; and (ii) that certain Assignment of Leases and Rents dated June 23, 2004, recorded with the Washoe County Recorder on June 23, 2004, as document number 3057979, which was assigned pursuant to Assignment of Assignment of Leases and Rents from Original Lender to Trust, recorded with the Washoe County Recorder on February 3, 2005, as document number 3165774, which was assigned pursuant to Assignment of Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing and Assignment of Assignment of Leases and Rents from LaSalle Bank to U.S. Bank as trustee for the Trust, recorded with the Washoe County Recorder on April 18, 2008, as document number 3641436, which was assigned pursuant to Assignment of Assignment of Leases and Rents from Trust to GSMS 2004-GG2 Sparks Industrial, LLC, recorded with the Washoe County Recorder on December 8, 2010, as document number 3951358, as more fully described and set forth in the Final Order (I) Authorizing Debtor's Use of Cash Collateral, Pursuant to 11 U.S.C. § 363; and (II) Providing Adequate Protection to GSMS 2004-GG2 Sparks Industrial, LLC, Pursuant to 11 U.S.C. §§ 361, 362, 363 and 364.

1.116. "GSMS Note" means the "Promissory Note (Kleppe Industrial Park)" dated June 23, 2004, payable to the order of Skymar Capital Corporation, as original lender, executed by Kleppe Industrial Park A, B, & E, LLC, as original borrower, which had an original principal amount of $2.9 million, together with an Allonge from Original Lender to LaSalle Bank, as trustee for the registered holders of GS Mortgage Securities Corporation II, Commercial Mortgage Pass-Through Certificates, Series 2004-GG2 ("Trust") which was executed, an Allonge from LaSalle Bank to U.S. Bank, as trustee

///

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

for the Trust which was executed and an Allonge dated November 29, 2010 from Trust to GSMS 2004-GG2 Sparks Industrial, LLC which was executed.

1.117.  "GSMS Property" means 1215 and 1275 Kleppe Lane and 1455 Deming Way, Sparks, Nevada, consisting of approximately 80,518 square feet of office, light industrial and warehouse space.

1.118.  "GSMS Refinanced Secured Note" means as set forth in Section 2.3(l) of this Plan.

1.119.  "GSMS Refinanced Secured Loan" means as set forth in Section 2.3(l) of this Plan.

1.120.   "GSMS Refinanced Secured Loan Documents" means the GSMS Refinanced Secured Note, any loan agreement for the GSMS Refinanced Secured Loan, a deed of trust and assignment of rents pursuant to which the GSMS Refinanced Secured Loan is secured by the GSMS Property, to be executed and delivered by the Reorganized Debtor, which are attached as exhibits to the Disclosure Statement, with any material modifications or additional documents to be included and filed as part of the Plan Supplement, together with any and all documents related thereto or executed contemporaneously or and any time(s) thereafter in connection therewith by the Reorganized Debtor.

1.121.  "GSMS Secured Claim" shall mean (i) the amount of the GSMS Claims up to the amount of the Property Value of the GSMS Property, unless GSMS makes an 1111(b) Election, in which case it shall mean the amount of the Allowed GSMS Claims.

1.122.  "Hallett" means Tom E. Hallett.

1.123.  "Hallett Entity" means Tom Hallett,  his designee, or an entity formed and created by Hallett or his designee to (i) receive ownership of the BLV Mountain Vista Property, assume the borrower's obligations and become the borrower of the BLV Mountain Vista Refinanced Secured Loan; and (ii) receive ownership of the BLV Dean Martin Property, assume the borrower's obligations and become the borrower of the BLV Dean Martin Refinanced Secured Loan, as set forth in this Plan.

1.124.  "Hallett Properties" means the BLV Mountain Vista Property and the BLV Dean Martin Property, (each, individually a "Hallett Property").

1.125.  "Holder" means any Person or Entity that is the owner of a Claim or Interest in the Chapter 11 Cases.

1.126.  "Impaired" means with respect to any Class of Claims or Interests, a Class of Claims or Interests that is impaired within the meaning of Bankruptcy Code section 1124.

1.127. "Interest" means any: (i) any equity or other ownership interest in any Person or Entity, including, but not limited to, all issued and outstanding or reserved for issuance, common stock, preferred stock, membership interests, warrants, options, or other ownership rights or rights to purchase or receive additional shares of stock or membership interests in any Person or Entity, and/or any other instrument or document to the extent that it directly or indirectly evidences, creates or reserves any equity or ownership interest in any Person or Entity giving rise to any Claim or Interest, (ii) equity security, including all membership interests together with any warrants, options, or contractual rights to purchase or acquire such equity securities at any time and all rights arising with respect thereto and (iii) partnership, limited liability company or similar interest.

1.128. "Interest Holder" means the Holder of an Interest (or Equity Interest).

1.129. "JPMCC" means JPMCC 2006-CIBC14 Simmons Street, LLC.

1.130. "JPMCC Claims" means the claims held by JPMCC, and/or any other Persons, under the JPMCC Loan and JPMCC Note and its related documents.

1.131. "JPMCC Loan" means the loan made pursuant to the JPMCC Note, which is secured by that certain deed of trust and security agreement dated December 16, 2005, and that certain assignment of leases and rents dated December 16, 2005, which were recorded in the Official Records of the Clark County Recorder on December 19, 2005, as Instrument Nos. 0001297 and 0001298, respectively, in Book 20051219 and for which JPMCC filed a UCC-1 financing statement with the Nevada Secretary of State December 20, 2005, as Document No. 2005039897-6, all as more fully described and set forth in the Interim Order (I) Authorizing the Debtor's Use of Cash Collateral, Pursuant to 11 U.S.C. § 363; (II) Providing Adequate Protection to JPMCC 2006-CIBC14 SIMMONS STREET, LLC, Pursuant to 11 U.S.C. §§ 361, 362, 363 and 364; and (III) Scheduling a Final Hearing, Pursuant to Fed. R. Bankr. P. 2002, 4001(b), 4001(c) and 6004 entered by the Bankruptcy Court on January 25, 2011, at Docket No. 157.

1.132. "JPMCC Note" means that certain fixed rate note dated December 16, 2005 (the which had an original principal amount of $3.8 million at a rate of 5.705% per annum through December 1, 2015 executed by Debtor, as borrower, as thereafter assigned to or held by successor(s) in interest, if any.

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

1.133. "JPMCC Property" means approximately 51,690 square feet of light industrial and warehouse space located at 3040 Simmons Street, North Las Vegas, Nevada 89032.

1.134. "JPMCC Refinanced Secured Note" means as set forth in Section 2.3(p) of this Plan.

1.135. "JPMCC Refinanced Secured Loan" means as set forth in Section 2.3(p) of this Plan.

1.136. "JPMCC Refinanced Secured Loan Documents" means the JPMCC Refinanced Note, any loan agreement for the JPMCC Refinanced Secured Loan, a deed of trust and assignment of rents pursuant to which the JPMCC Refinanced Secured Loan is secured by the JPMCC Property, to be executed and delivered by the Reorganized Debtor, which are attached as exhibits to the Disclosure Statement, with any material modifications or additional documents to be included and filed as part of the Plan Supplement, together with any and all documents related thereto or executed contemporaneously or and any time(s) thereafter in connection therewith by the Reorganized Debtor.

1.137. "JPMCC Secured Claim" means (i) the amount of the JPMCC Claims up to the amount of the Property Value of the JPMCC Property, unless JPMCC makes an 1111(b) Election, in which case it shall mean the amount of the Allowed JPMCC Claims..

1.138. "Key Transaction Documents" means, the Plan, the Disclosure Statement, the Ballots, the Refinanced Secured Loan Documents with respect to each Refinanced Secured Loan, Reorganized Debtor Bylaws, amended certificate of incorporation, Reorganized Debtor Parent formation documents and bylaws, Deed and related conveyance documentation for the Hallett Properties to the Hallett Entity, the New Property Management Agreement and any and all Plan implementation documents filed with the Plan Supplement.

1.139. "Lien" has the meaning set forth in Bankruptcy Code section 101(37).

1.140. "New Capital Contribution" means the aggregate sum in an amount of $2,100,000 from the New Equity Investor for, among other things, providing the Reorganized Debtor with the amount of Cash required for all Confirmation Funds, working capital for the Reorganized Debtor to fund operations, and any Plan needs. The aggregate sum of the New Capital Contribution may be increased, with the mutual agreement of the Debtors and New Equity Investor. The New Capital Contribution shall be paid to the Reorganized Debtor on the Effective Date by way of (i) if the New Equity Investor and DIP Lender are the same or related Persons, the funding of the maximum amount of the DIP Loan (and

payment in Cash to the Reorganized Debtor in an amount equal to the difference between $2,100,000 and the outstanding amount of the DIP Loan advanced to the Debtors prior to the Effective Date) and, contemporaneously therewith, the forgiveness, release and discharge of the DIP Loan and Liens securing same; or (ii) if the New Equity Investor is a Person or Entity other than or unrelated to the DIP Lender, payment of Cash to the Reorganized Debtor in the amount of $2,100,000.

1.141. "New Equity Interests" means those new shares of common stock of the Reorganized Debtor to be authorized and issued to the Reorganized Debtor Parent, pursuant to this Plan, on the Effective Date in exchange for the New Capital Contribution.

1.142. "New Equity Investor" means the Person or Entity who provides the New Capital Contribution in exchange for New Equity Interests under this Plan and includes the DIP Lender or any affiliate or related entity thereto, including the Reorganized Debtor Parent.

1.143. "New Property Manager" means Hallett, or any Person or Entity designated by Hallett and set forth in the New Property Management Agreement as the New Property Manager.

1.144. "New Property Management Agreement" means the new property management agreement and leasing agency agreement to be entered into between Reorganized Debtor and New Property Manager, in a form and substance acceptable to Reorganized Debtor and New Property Manager, a form of which will be attached to the Plan Supplement as an exhibit.

1.145. "Notice of Confirmation" means that certain notice, pursuant to Bankruptcy Rule 3020(c)(2), notifying Holders of Claims and Interests that the Bankruptcy Court has confirmed this Plan.

1.146. "Nova" means LSREF2 Nova Investments II, LLC, and/or any other Persons, as the current owner and holder of the Nova Loan (defined herein) made to Whitton's predecessor evidenced by certain documents described herein, as executed by Whitton's predecessor and delivered to secure repayment.

1.147. "Nova Claims" means the Claims held by Nova, and/or any other Persons, under the Nova Loan and Nova Note and its related documents.

1.148. "Nova Loan" means the loan made pursuant to the Nova Note, which is secured by that certain deed of trust, assignment of rents, security agreement and fixture filing dated April 4, 2006,

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

which was filed with the Clark County Recorder on April 6, 2006 as Instrument No. 20060406-0004307, and for which a UCC-1 financing statement was filed with the Nevada Secretary of State February 9, 2006, Document No. 2006011117-4, and which is one of the loans referred to in the Final Order Permitting Custodian to Continue in Possession of Property, Authorizing Custodian's Use of Cash Collateral and for Adequate Protection entered by the Bankruptcy Court on January 25, 2011, at Docket No. 159.

1.149.   "Nova Note" means  that certain adjustable rate promissory note dated April 4, 2006 executed by South Tech – Rio, as borrower, payable to Citibank (West) FSB, as lender, which had an original principal amount of $3.9 million at an initial rate of 6.64% per annum through May 1, 2011, as thereafter assigned to or held by a successor in interest.

1.150.   "Nova Property" means 1000 and 1030 Stephanie Place, Henderson, Nevada 89104, APN 161-34-201-001.

1.151.   "Nova Refinanced Note" means as set forth in Section 2.3(i) of this Plan.

1.152.   "Nova Refinanced Secured Loan" means as set forth in Section 2.3(i) of this Plan..

1.153.   "Nova Refinanced Secured Loan Documents" means the Nova Refinanced Secured Note, any loan agreement for the Nova Refinanced Secured Loan, a deed of trust and assignment of rents pursuant to which the Nova Refinanced Secured Loan is secured by the Nova Property, to be executed and delivered by the Reorganized Debtor, which are attached as exhibits to the Disclosure Statement, with any material modifications or additional documents to be included and filed as part of the Plan Supplement, together with any and all documents related thereto or executed contemporaneously or and any time(s) thereafter in connection therewith by the Reorganized Debtor.

1.154.   "Nova Secured Claim" means (i) the amount of the Nova Claims up to the amount of the Property Value of the Nova Property, unless Nova makes an 1111(b) Election, in which case it shall mean the amount of the Allowed Nova Claims.

1.155.   "Old Equity Interests" means Equity Interests in the Debtors.

1.156.   "Operative Document" means any contract, instrument, release, settlement agreement or other agreement or document, if any, that is reasonably necessary to effectuate and implement the transactions provided for in this Plan, including the Key Transaction Documents.

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

1.157. "Other Secured Claims" means any Secured Claim other than a Claim with respect to a Secured Loan.

1.158. "Permitted Encumbrances" means (i) Liens for *ad valorem* taxes not yet due and payable, (ii) easements, restrictions, conditions and limitations of record that affected the title to the Properties as of the Petition Date, (iii) any Liens securing Other Secured Claims that are reinstated or assumed by Reorganized Debtor or Hallett Entity (as applicable), and (iv) as such term is defined in the Refinanced Secured Loan Documents.

1.159. "Person" means any individual, corporation, partnership, limited liability company, joint venture, association, trust or organization, or other "person" as defined in Bankruptcy Code section 101(41), as well as any governmental agency, governmental unit or political subdivision.

1.160. "Petition Date" means December 5, 2010, for Whitton and December 8, 2010, for Simmons.

1.161. "Plan" means this chapter 11 plan, including all documents referenced herein and all exhibits, supplements, appendices and schedules hereto or thereto, either in its present form or as the same may be altered, amended or modified from time to time pursuant to the Bankruptcy Code or Final Order.

1.162. "Plan of Merger" means the merger between the Debtors with Whitton as the surviving entity and Reorganized Debtor pursuant to this Plan, if not already accomplished with Court approval prior to the Confirmation Date and all documentation to effectuate same.

1.163. "Plan Supplement" means a compilation of documents supplementing and giving effect to the terms to this Plan, which shall be: (a) filed no later than the Plan Supplement Filing Date, and (b) in a form and substance acceptable to Debtor and Investors. The Plan Supplement shall include: (i) a schedule of Assumed Contracts and the Debtor's proposed respective Cure amounts (if any), (ii) New Property Management Agreement, (iii) any of the Operative Documents and Refinanced Secured Loan Documents not attached to the Disclosure Statement, and (iv) any information required for confirmation of this Plan pursuant to the terms of the Bankruptcy Code, including a list of individuals referenced in Bankruptcy Code section 1129(a)(5)(A)(i).

///

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

1.164. "Plan Supplement Filing Date" means 14 days prior to the Confirmation Hearing. Debtors reserve the right to submit amended or revised versions of the Plan Supplement up to the Confirmation Date.

1.165. "Post Effective Date Fees" means the reasonable fees and expenses of Debtors' Professionals incurred by the Debtors and/or Reorganized Debtor after the Effective Date, including those fees and expenses incurred for legal, financial advisory, accounting and other services rendered in connection with the implementation, consummation and performance of the Plan and which are necessary to complete the administration of, conclude and close the Chapter 11 Cases.

1.166. "Post Effective Date Fee Fund" means a sum of Thirty-Five-Thousand Dollars ($35,000) to be paid to the Distribution Agent on the Effective Date from the New Capital Contribution, which shall be part of the Confirmation Funds and used by the Distribution Agent to pay any Post Effective Date Fees.

1.167. "Priority Claim" means a Claim entitled to priority under Bankruptcy Code sections 507(a)(2) through (7).

1.168. "Priority Tax Claims" means any Claim that is entitled to priority under section 502(i) or Bankruptcy Code section 507(a)(8). Priority Tax Claims do not include *ad valorem* tax Claims if such Claims under applicable state law are Secured by a Lien on Debtors' Assets.

1.169. "Professional" means an Person or Entity: (a) employed pursuant to a Bankruptcy Court order in accordance with Bankruptcy Code sections 327 or 1103 and to be compensated for services rendered prior to or on the Effective Date, pursuant to Bankruptcy Code sections 327, 328, 329, 330, or 331; or (b) awarded compensation and reimbursement by the Bankruptcy Court, pursuant to Bankruptcy Code section 503(b)(4).

1.170. "Professional Fees" means all reasonable fees and expenses incurred by Professionals and allowed by the Bankruptcy Court.

1.171. "Professional Fee Claim" means any Claim for compensation or reimbursement of fees and expenses as may be requested by a Professional to the extent such Professional is required to apply to the Bankruptcy Court for payment of such Claim pursuant to Bankruptcy Code sections 326, 328, 330 or 331 and the terms of this Plan.

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

1.172. "Proof of Claim" means a proof of Claim Filed against Debtors in the Chapter 11 Cases.

1.173. "Properties" means, collectively, all real estate and Rents thereof owned by the Debtors and listed on the Debtors' Schedules, as amended or modified, including, the BLV Cheyenne Property, BLV Mountain Vista Property, BLV Dean Martin Property, BLV Mesquite Property, BofA Property, German American Brooks Property, German American Glendale Property, German American Greg Property, GSMS Property, Wells Cheyenne Property, Wells Dean Martin Property, Wells Diablo Property, Wells Russell Property, Wells Seven Hills Property, Nova Property, JPMCC Property, and Umbra Property.

1.174. "Properties' Value" means the aggregate going concern value of the Properties, as determined by the Bankruptcy Court or through stipulation between the Debtors and their respective lenders, which value must be consistent with the economics of this Plan.

1.175. "Property" means any one of the Properties, together with its Rents.

1.176. "Property Value" means, for any Property, its going concern value, as determined by the Bankruptcy Court or through stipulation between the Debtors and the Secured Lender holding a Lien on such Property, which value must be consistent with the economics of this Plan.

1.177. "Proponent" means the Debtors as proponents of this Plan.

1.178. "Pro Rata" means, with respect to an amount of Cash or other consideration to be paid or distributed on a particular date to a Holder of an Allowed Claim, that such Distribution shall be made in accordance with the ratio, as of such date, of the amount such Allowed Claim is to the aggregate of the amounts of Claims in the Class to which such Allowed Claim belongs.

1.179. "Refinanced Secured Loan" means the refinanced (restructured) Secured Loan pursuant to the terms of this Plan with respect to a Property to be evidenced by a Refinanced Secured Note and Refinanced Secured Loan Documents with respect to such Secured Loan and Property.

1.180. "Refinanced Secured Loan Documents" means the Refinanced Secured Note, deed of trust and assignment of rents for the Property securing the Refinanced Secured Note, and related documents evidencing, securing and providing for the terms and conditions of a Refinanced Secured Loan, to be executed by and between a Secured Lender and the Reorganized Debtor or Hallett Entity (as applicable) on or as of the Effective Date which are attached as exhibits to the Disclosure Statement,

with any material modifications or additional documents to be included and filed as part of the Plan Supplement.

1.181. "Refinanced Secured Loan Maturity" means that date which is eighty-four months from the Effective Date.

1.182. "Refinanced Secured Loan Payment Terms" means the payment terms of the Refinanced Secured Note if no 1111(b) Election is made by the Secured Lender receiving same, which shall be in eighty-three (83) equal monthly payments at the Refinanced Secured Loan Interest Rate based on a twenty-five (25) year amortization schedule with a final (84th) balloon payment for the remaining balance due on the Refinanced Secured Note at the Refinanced Loan Maturity.

1.183. "Refinanced Secured Note" means a promissory note to be distributed to a Secured Lender evidencing the Refinanced Secured Loan as set forth Section 2.3 of this Plan which provides for the treatment of such Secured Lender's Claims.

1.184. "Refinanced Secured Note Interest Rate" means four and one-quarter percent (4.25%) per annum, if no section 1111(b) election is made by the Secured Lender, unless otherwise determined by the Bankruptcy Court, which rate must be satisfactory to Reorganized Debtor.

1.185. "Rejected Contract" means any expired lease or contract, or any unexpired lease or executory contract that has been rejected prior to Confirmation, or is the subject of a pending motion for rejection or has been designated in the Plan Supplement (or in any other contract, instrument, stipulation, settlement, release, or other agreement or document entered into in connection with this Plan) as a contract or lease that is not to be an Assumed Contract, or is otherwise rejected pursuant to the this Plan.

1.186. "Released Liabilities" means, with respect to a given Releasor, all claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action and liabilities based on any act, omission, transaction, event or other occurrence (other than rights to enforce the terms of this Plan or any related document or agreement), whether known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise that arose prior to the Effective Date and relate to the Debtors, this Plan, the Chapter 11 Cases, which could have been asserted by such Releasor (or on behalf of Debtors or their Estates) against any Releasee or any of its Representatives.

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

1.187. "Releasees" means each of the Debtors, the Distribution Agent, Reorganized Debtor, New Equity Investor, DIP Lender, and any current shareholders, subsidiaries, partners, members or affiliates of the aforementioned Persons and any of their respective Representatives.

1.188. "Releasors" means each of the Debtors, the Distribution Agent, Reorganized Debtor, New Equity Investor, DIP Lender, and any current shareholders, subsidiaries, partners, members or affiliates of the aforementioned Persons and any of their Representatives.

1.189. "Rents" means, with respect to a Property, such Property's rents, earnings, income, profits, benefits and advantages arising from such Property, if any, as set forth in the deed of trust and/or assignment of rents securing any Secured Loan with respect to such Property.

1.190. "Reorganized Debtor" means, on or after the Effective Date, Whitton Corporation as a reorganized debtor.

1.191. "Reorganized Debtor Bylaws" means the amended and restated agreements that will govern the Reorganized Debtor as of the Effective Date, the form of which is attached to the Disclosure Statement as an exhibit.

1.192. "Reorganized Debtor Parent" means a Nevada limited liability company that will be formed and funded by the DIP Lender, or any other Person if not the DIP Lender, for the purposes of owning and receiving one hundred percent (100%) of the New Equity Interests in consideration of the New Capital Contribution in accordance with the terms of this Plan.

1.193. "Reorganized Debtor Parent Equity Interests" means the Equity Interests in the Reorganized Debtor Parent.

1.194. "Representatives" means, with respect to a given Person or Entity, its past and current directors, officers, shareholders, members, partners, employees, agents, attorneys, professionals, advisors, trustees, consultants, accountants, contractors and other representatives.

1.195. "Schedule of Assumed Contracts" means the schedule of Assumed Contracts and the Debtors' proposed respective Cure amounts, if any, which is attached as an exhibit to the Disclosure Statement.

1.196. "Schedule of Disputed Claims" means the non-exhaustive list of Claims whose amounts are disputed, which is attached as an exhibit to the Disclosure Statement.

1.197. "Schedules" means the schedules of Assets and liabilities, the list of Holders of Interests and the statements of financial affairs Filed by Debtors under Bankruptcy Code section 521 and Bankruptcy Rule 1007, and all amendments and modifications thereto through the Confirmation Date.

1.198. "Secured" means when referring to a Claim: (a) secured by a Lien on property in which the Estates have an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or that is subject to setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the Creditor's interest in the Estates' interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code; or (b) Allowed pursuant to this Plan as a secured Claim.

1.199. "Secured Lenders" means, collectively, all lenders holding Liens on Debtors' real property and Rents thereof to secure their Claims as set forth in Debtors' Schedules, as amended or modified, including:  BLV, BofA, German American, GSMS, Wells, JPMCC, and Umbra, and any respective other Persons or Entities holding Claims with respect to each Secured Loan held by each of the Secured Lenders and any permitted assignee or other transferee thereof, each individually, a "Secured Lender."

1.200. "Secured Loan" means a loan held by a Secured Lender which is Secured by a Property.

1.201. "Secured Note Deduction" means, for each Property and the Secured Lender's Claim secured by a Lien on such Property, an amount equal to (i) the amount of any Claims secured by a Lien on the subject Property which is senior in priority to the Lien held by the Secured Lender on the said Property, plus (ii) any post petition amounts paid to a Secured Lender as adequate protection or otherwise to the extent there was no diminution in value of its interest in the subject Property during the Chapter 11 Case, plus (iii) any amounts the Bankruptcy Court determines, at the Confirmation Hearing, should be surcharged to the Property or the Secured Lender pursuant to Bankruptcy Code section 506(c).

1.202. "Security Deposits" means the security deposits received from tenants of the Properties.

1.203. "Simmons" means the Debtor South Tech Simmons 3040C, LLC, a Nevada limited liability company.

1.204. "Umbra" means Umbra Partners, LLC.

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

1.205. "Umbra Claim" means the claims held by Umbra, under the Umbra Loan, Umbra Note and related documents.

1.206. "Umbra Loan" means the loan made by Umbra pursuant to the Umbra Note, which is secured by a deed of trust and assignment of rents dated December 3, 2010, in the principal amount of $300,000.

1.207. "Umbra Note" means the Convertible Secured Promissory Note dated December 3, 2010, in the amount of $300,000 payable to Umbra Partners, LLC.

1.208. "Umbra Property" means that certain real property known as Clark County, Nevada Assessor Parcel Numbers 139-17-510-042 and 137-17-510-043.

1.209. "Umbra Secured Claim" means shall mean the amount of the Umbra Claim up to the amount of the Property Value of the Umbra Property.

1.210. "Unclassified Claims" means Administrative Claims and Priority Tax Claims.

1.211. "US Trustee Fees" means fees payable pursuant to 28 U.S.C. § 1930.

1.212. "Wells" means Wells Fargo Bank, National Association, and/or any other Persons, as the current owner and holder of the following loans (defined herein) made to Debtors' predecessors, as evidenced by certain notes described herein and beneficiary of the deeds of trust executed by Debtors' predecessors and delivered to secure repayment: Wells Diablo Loan, Wells Cheyenne Loan, Wells Dean Martin Loan, Wells Russell Loan, and Wells Seven Hills Loan.

1.213. "Wells Cheyenne Claims" means the claims held by Wells, and/or any other Persons, under the Wells Cheyenne Loan and Wells Cheyenne Note and its related documents.

1.214. "Wells Cheyenne Loan" means the loan made pursuant to the Wells Cheyenne Note, which is secured by that certain deed of trust, assignment of rents, security agreement and fixture filing dated January 12, 2006, which was filed with the Clark County Recorder on January 13, 2006, as Instrument No. 20060113-0003744 and for which a UCC-1 financing statement was filed with the Nevada Secretary of State on February 9, 2006, Document No. 2006004513-5, and which is one of the loans referred to in the Final Order Permitting Custodian to Continue in Possession of Property, Authorizing Custodian's Use of Cash Collateral and for Adequate Protection entered by the Bankruptcy Court on January 25, 2011, at Docket No. 159.

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

1.215. "Wells Cheyenne Note" means that certain fixed rate promissory note dated January 12, 2006, executed by South Tech Partners, LLC, as borrower, payable to Citibank (West) FSB, as lender, which had an original principal amount of $3.0 million at an initial rate of 6.23% per annum through February 1, 2016, as thereafter assigned to or held by a successor in interest, if any.

1.216. "Wells Cheyenne Property" means 2455 Cheyenne Avenue, Las Vegas, Nevada 89032, APN 139-17-510-039.

1.217. "Wells Cheyenne Secured Claim" means the amount of the Wells Cheyenne Claims up to the amount of the Property Value of the Wells Cheyenne Property.

1.218. "Wells Dean Martin Claims" means the claims held by Wells, and/or any other Persons, under the Wells Dean Martin Loan and Wells Dean Martin Note and its related documents.

1.219. "Wells Dean Martin Loan" means the loan made pursuant to the Wells Dean Martin Note which is secured by that certain deed of trust, assignment of rents, security agreement and fixture filing dated April 4, 2006, which was filed with the Clark County Recorder on April 6, 2006, as Instrument No. 20060406-0004306, and for which a UCC-1 financing statement was filed with the Nevada Secretary of State February 9, 2006, Document No. 2006011116-2, and which is one of the loans referred to in the Final Order Permitting Custodian to Continue in Possession of Property, Authorizing Custodian's Use of Cash Collateral and for Adequate Protection entered by the Bankruptcy Court on January 25, 2011, at Docket No. 159.

1.220. "Wells Dean Martin Note" means that certain adjustable rate promissory note dated April 4, 2006 executed by South Tech – Rio, LLC, as borrower, payable to Citibank (West) FSB, as lender, which had an original principal amount of $2.1 million at an initial rate of 6.64% per annum through May 1, 2011, as thereafter assigned to or held by a successor in interest, if any.

1.221. "Wells Dean Martin Property" means 7625 Dean Martin Drive, Las Vegas, Nevada 89139, APN 177-08-211-001.

1.222. "Wells Dean Martin Refinanced Note" means as set forth in Section 2.3(j) of this Plan.

1.223. "Wells Dean Martin Refinanced Secured Loan" means as set forth in Section 2.3(j) of this Plan.

1.224. "Wells Dean Martin Refinanced Secured Loan Documents" means the Wells Dean

Martin Refinanced Secured Note, any loan agreement for the Wells Dean Martin Refinanced Secured Loan, a deed of trust and assignment of rents pursuant to which the Wells Dean Martin Refinanced Secured Loan is secured by the Wells Dean Martin Property, to be executed and delivered by the Reorganized Debtor, which are attached as exhibits to the Disclosure Statement, with any material modifications or additional documents to be included and filed as part of the Plan Supplement, together with any and all documents related thereto or executed contemporaneously or and any time(s) thereafter in connection therewith by the Reorganized Debtor.

1.225. "Wells Dean Martin Secured Claim" means (i) the amount of the Wells Dean Martin Claims up to the amount of the Property Value of the Wells Dean Martin Property, unless Wells makes an 1111(b) Election, in which case it shall mean the amount of the Allowed Wells Dean Martin Claims.

1.226. "Wells Diablo Claims" means the claims held by Wells, and/or any other Persons, under the Wells Diablo Loan and Wells Diablo Note and its related documents.

1.227. "Wells Diablo Loan" means the loan made pursuant to the Wells Diablo Note which is secured by that certain deed of trust, assignment of rents, security agreement and fixture filing dated March 31, 2005, and an absolute assignment of rents and of landlord's interest in leases dated March 31, 2005, which Deed of Trust and Assignment of Rents was filed with the Clark County Recorder on April 8, 2005, as Instrument Nos. 20050408-0004830 and 20050408-0004831 respectively, and for which a UCC-1 was filed with the Nevada Secretary of State on June 29, 2005, Document No. 2005020085-4, and which is one of the loans referred to in the Final Order Permitting Custodian to Continue in Possession of Property, Authorizing Custodian's Use of Cash Collateral and for Adequate Protection entered by the Bankruptcy Court on January 25, 2011, at Docket No. 159.

1.228. "Wells Diablo Note" means that certain adjustable rate promissory note dated March 31, 2005, executed by South Tech – Diablo, LLC, as borrower, payable to Citibank (West) FSB as lender which had an original principal amount of $2.4 million at an initial rate of 5.58% per annum through April 1, 2015, as thereafter assigned to or held by a successor in interest, if any.

1.229. "Wells Diablo Property" means 5480 South Valley View Boulevard, Las Vegas, Nevada 89118, APN 162-29-301-039.

1.230. "Wells Diablo Refinanced Note" means as set forth in Section 2.3(f) of this Plan.

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

1.231. "Wells Diablo Refinanced Secured Loan" means as set forth in Section 2.3(f) of this Plan.

1.232. "Wells Diablo Refinanced Secured Loan Documents" means the Wells Diablo Refinanced Secured Note, any loan agreement for the Wells Diablo Refinanced Secured Loan, a deed of trust and assignment of rents pursuant to which the Wells Diablo Refinanced Secured Loan is secured by the Wells Diablo Property, to be executed and delivered by the Reorganized Debtor, which are attached as exhibits to the Disclosure Statement, with any material modifications or additional documents to be included and filed as part of the Plan Supplement, together with any and all documents related thereto or executed contemporaneously or and any time(s) thereafter in connection therewith by the Reorganized Debtor.

1.233. "Wells Diablo Secured Claim" means (i) the amount of the Wells Diablo Claims up to the amount of the Property Value of the Wells Diablo Property, unless Wells makes an 1111(b) Election, in which case it shall mean the amount of the Allowed Wells Diablo Claims.

1.234. "Wells Russell Claims" means the Claims held by Wells, and/or any other Persons, under the Wells Russell Loan and Wells Russell Note and its related documents.

1.235. "Wells Russell Loan" means the loan made pursuant to the Wells Russell Note, which is secured by that certain deed of trust, assignment of rents, security agreement and fixture filing dated March 31, 2005, and an absolute assignment of rents and of landlord's interest in leases dated March 31, 2005, which were filed with the Clark County Recorder on April 8, 2005, as Instrument Nos. 20050408-0004834 and 20050408-0004835 respectively, and for which a UCC-1 was filed with the Nevada Secretary of State June 29, 2005, Document No. 2005020089-42, and which is one of the loans referred to in the Final Order Permitting Custodian to Continue in Possession of Property, Authorizing Custodian's Use of Cash Collateral and for Adequate Protection entered by the Bankruptcy Court on January 25, 2011, at Docket No. 159.

1.236. "Wells Russell Note" means that certain adjustable rate promissory note dated March 31, 2005, executed by South Tech – Russell, LLC, as borrower, payable to Citibank (West) FSB, as lender, which had an original principal amount of $2.0 million at an initial rate of 5.58% per annum through April 1, 2015, as thereafter assigned to or held by a successor in interest.

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

1.237. "Wells Russell Property" means 5720 and 5770 South Valley View Boulevard, Las Vegas, Nevada 89119, APN 162-32-101-001.

1.238. "Wells Russell Refinanced Note" means as set forth in Section 2.3(g) of this Plan.

1.239. "Wells Russell Refinanced Secured Loan" means as set forth in Section 2.3(g) of this Plan.

1.240. "Wells Russell Refinanced Secured Loan Documents" means the Wells Russell Refinanced Secured Note, any loan agreement for the Wells Russell Refinanced Secured Loan, a deed of trust and assignment of rents pursuant to which the Wells Russell Refinanced Secured Loan is secured by the Wells Russell Property, to be executed and delivered by the Reorganized Debtor, which are attached as exhibits to the Disclosure Statement, with any material modifications or additional documents to be included and filed as part of the Plan Supplement, together with any and all documents related thereto or executed contemporaneously or and any time(s) thereafter in connection therewith by the Reorganized Debtor.

1.241. "Wells Russell Secured Claim" means (i) the amount of the Wells Russell Claims up to the amount of the Property Value of the Wells Russell Property, unless Wells makes an 1111(b) Election, in which case it shall mean the amount of the Allowed Wells Russell Claims.

1.242. "Wells Seven Hills Claims" means the Claims held by Wells, and/or any other Persons, under the Wells Seven Hills Loan and Wells Seven Hills Note and its related documents.

1.243. "Wells Seven Hills Loan" means the loan made pursuant to the Wells Seven Hills Note which is secured by that certain deed of trust, assignment of rents, security agreement and fixture filing dated February 1, 2008, and a security interest in the property, which includes tangible or intangible personal property, fixtures, goods, accounts, deposit accounts, instruments, chattel paper, documents, letters of credit, letter of credit rights, supporting obligations, and general intangibles described in the Deed of Trust, and all proceeds of such collateral, and which Deed of Trust was filed with the Clark County Recorder on February 5, 2008, as Instrument No. 20080202-0003559 and for which a UCC-1 financing statement was filed with the Nevada Secretary of State on February 8, 2008, Document No. 2008004213-3, and which is one of the loans referred to in the Final Order Permitting Custodian to

///

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

Continue in Possession of Property, Authorizing Custodian's Use of Cash Collateral and for Adequate Protection entered by the Bankruptcy Court on January 25, 2011, at Docket No. 159.

1.244. "Wells Seven Hills Note" means that certain fixed rate promissory note dated February 1, 2008 executed by South Tech – Polaris, LLC, as borrower, payable to Citibank, NA as lender, which had an original principal amount of $8.0 million at a fixed rate of 7.54%, as thereafter assigned to or held by a successor in interest.

1.245. "Wells Seven Hills Property" means 835 and 855 Seven Hills Road, Henderson, Nevada 89053, APN 177-35-512-002 and -004.

1.246. "Wells Seven Hills Refinanced Secured Note" means as set forth in Section 2.3(k) of this Plan.

1.247. "Wells Seven Hills Refinanced Secured Loan" means as set forth in Section 2.3(k) of this Plan.

1.248. "Wells Seven Hills Refinanced Secured Loan Documents" means the Wells Seven Hills Refinanced Secured Note, any loan agreement for the Wells Seven Hills Refinanced Secured Loan, a deed of trust and assignment of rents pursuant to which the Wells Seven Hills Refinanced Secured Loan is secured by the Wells Seven Hills Property, to be executed and delivered by the Reorganized Debtor, which are attached as exhibits to the Disclosure Statement, with any material modifications or additional documents to be included and filed as part of the Plan Supplement, together with any and all documents related thereto or executed contemporaneously or and any time(s) thereafter in connection therewith by the Reorganized Debtor.

1.249. "Wells Seven Hills Secured Claim" means (i) the amount of the Wells Seven Hills Claims up to the amount of the Property Value of the Wells Seven Hills Property, unless Wells makes an 1111(b) Election, in which case it shall mean the amount of the Allowed Wells Seven Hills Claims.

1.250. "Whitton" means the Debtor Whitton Corporation, a Nevada corporation.

**B.  Rules of Interpretation.**

Any term used in this Plan that is not defined in this Plan, either in this Article I or elsewhere, but that is used in the Bankruptcy Code or the Bankruptcy Rules, has the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules. For purposes of this Plan: (a) whenever from the

context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural; (b) to the extent a reference or description in this Plan to an Operative Document is inconsistent with the terms or conditions of that Operative Document, the terms and conditions of the Operative Document shall govern over the reference or description contained in this Plan; (c) any reference in this Plan to an existing document, schedule, Operative Document, or exhibit Filed or to be Filed means such document, schedule, Operative Document, or exhibit, as it may have been or may be amended, modified, or supplemented as of the Confirmation Date in accordance with the terms hereof; (d) unless otherwise specified in a particular reference, all references in this Plan to Sections, Articles, and exhibits are references to Sections, Articles, and exhibits of or to this Plan; (e) the words "herein", "hereof", "hereto", "hereunder", and others of similar import refer to this Plan in its entirety rather than to only a particular portion of this Plan; (f) the word "all" shall mean "any and all;" (g) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretations of this Plan; (h) the rules of construction set forth in Bankruptcy Code section 102 shall apply, including that the terms "includes," "shall include," and "including" are not limiting; (i) reference to a pleading, request, or document being "Filed" means duly and properly filed with the Bankruptcy Court as reflected on the docket of the Bankruptcy Court; (j) all exhibits and schedules to this Plan are incorporated into this Plan, and shall be deemed to be included in this Plan, regardless of when they are Filed; (k) any service or notice provided for in this Plan shall be provided at the addresses specified in Article XII hereof; (1) except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent the exhibits or Operative Documents provide otherwise, the rights, duties and obligations under this Plan shall be governed, construed and enforced in accordance with the laws of the State of Nevada; and (m) to the extent a reference or description in the Disclosure Statement to this Plan or an Operative Document is inconsistent with the terms or conditions of this Plan or Operative Document, the terms and conditions of this Plan or Operative Documents, as applicable, shall govern over the reference contained in the Disclosure Statement.

///

///

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

# ARTICLE II

## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

2.1    Introduction.

(a)    All Claims and Interests, except Administrative Claims (including Professional Fee Claims) and Priority Tax Claims, are placed in the Classes set forth below. In accordance with Bankruptcy Code section 1123(a)(1), Administrative Claims and Priority Tax Claims, as described below, have not been classified.

(b)    A Claim or Interest is placed in a particular Class only to the extent that the Claim or Interest falls within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest falls within the description of such other Classes. A Claim or Interest is also placed in a particular Class for the purpose of receiving Distributions pursuant to this Plan only to the extent that such Claim or Interest is an Allowed Claim in that Class and such Claim has not been paid, released or otherwise settled prior to the Effective Date.

2.2.    Unclassified Claims.

(a)    Administrative Claims.

(1)    Deadline to File Administrative Claims. The Holder of an Administrative Claim, other than (i) a Professional Fee Claim, or (ii) a liability incurred and paid in the ordinary course of business by the Debtors, must file with the Bankruptcy Court and serve on the Debtors and their counsel, notice of such Administrative Claim on or before the Administrative Claim Bar Date. Such notice must include, at minimum, (i) the name of the Holder of such Claim, (ii) the basis of the Claim, and (iii) the amount of the Claim. Failure to file such notice timely and properly shall result in the Administrative Expense Claim being forever barred and discharged.

(2)    Payment Provisions. Subject to the provisions of Bankruptcy Code sections 330(a), 331 and 503(b), each Holder of an Administrative Claim shall, either:

(A)    from the Confirmation Funds, be paid in Cash in the Allowed amount of any such Claim on, or as soon as reasonably practicable after, the later of (i) the Effective Date, (ii) the date upon which such Administrative Claim becomes Allowed, or (iii) such date as is otherwise agreed by Debtors and the Holder of such Claim; or

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

(B)     have such Claim assumed by the Reorganized Debtor, to be paid by Reorganized Debtor in Cash in the Allowed amount of any such Claim on, or as soon as reasonably practicable after, the later of (i) the date upon which such Administrative Claim becomes Allowed, (ii) the date on which such Administrative Claim becomes due in the ordinary course of business, or (iii) such date as is otherwise agreed by Debtors, Reorganized Debtor and the Holder of such Claim.

(3)     <u>Professional Fee Claims and US Trustee Fees</u>.  Notwithstanding the foregoing or anything to the contrary in this Plan:

(A)     all final applications for Professional Fee Claims constituting amounts due for services rendered on or before the Effective Date shall be Filed no later than twenty (20) days after the Effective Date, unless otherwise ordered by the Bankruptcy Court:

(B)     Debtor shall pay, or cause to be paid, all accrued US Trustee Fees on or before the Effective Date of the Plan; and following the Effective Date, the Reorganized Debtor shall be responsible for timely payment of all US Trustee Fees until such time as the Final Decree closing these Chapter 11 Cases is entered and all US Trustee Fees due are paid in full.

(C)     Debtors or Reorganized Debtor (as applicable) shall File with the Bankruptcy Court and serve on the United States Trustee a quarterly financial report for each quarter (or portion thereof) that the Chapter 11 Cases remains open in such format as reasonably may be required by the United States Trustee.

(b)     <u>Priority Tax Claims</u>.  The legal and equitable rights of the Holders of Priority Tax Claims are unaltered by this Plan.  Each Holder of an Allowed Priority Tax Claim shall, subject to <u>Section 5.5</u> hereof and at Debtors' option, either:

(1)     from the Confirmation Funds, be paid the Allowed amount of such Claim in Cash on the Effective Date,

(2)     have such Claim assumed by Reorganized Debtor, to be paid by Reorganized Debtor in Cash in the Allowed amount of any such Claim on the date on which such Claim is payable under applicable law or any agreement relating thereto; or

(3)     receive such other treatment as is agreed by the Holder of the Allowed Priority Tax Claim, and the Debtors and Reorganized Debtor.  Under the Plan, Holders of Allowed

Priority Tax Claims against the Debtors shall not be entitled to any payments on account of any post Petition Date interest or penalty with respect to or in connection with an Allowed Priority Tax Claim. Any such Claim or demand for any post Petition Date interest or penalty will be discharged upon the entry of the Confirmation Order by Bankruptcy Code section 1141(d)(1), and the Allowed Priority Tax Claim Holder shall not assess or attempt to collect such accrued interest or penalty from the Debtors, Reorganized Debtor, or their property.

  2.3.   <u>Classified Claims and Interests</u>.

     (a)   <u>Class 1:  Priority Claims</u>.

*Claims in Class*:  Class 1 consists of Priority Claims against Debtors.

*Treatment*:   The legal and equitable rights of the Holders of Allowed Priority Claims are unaltered by this Plan.  Each Holder of an Allowed Priority Claim shall, either:  (i) be paid the Allowed amount of such Claim in Cash on the Effective Date, (ii) have such Claim assumed by Reorganized Debtor, to be paid by Reorganized Debtor in Cash in the Allowed amount of any such Claim on the date on which such Claim is payable under applicable law or any agreement relating thereto; or (iii) receive such other treatment as is agreed by the Holder of the Allowed Priority Claim, Debtors and Reorganized Debtor.

*Impairment and Voting*:  Class 1 is not Impaired and the Holders of Allowed Priority Claims are conclusively deemed to have accepted this Plan, pursuant to Bankruptcy Code section 1126(f).  Therefore, the Holders of Class 1 are not entitled to vote to accept or reject this Plan.

     (b)   <u>Class 2: BLV Cheyenne Secured Claims</u>.

*Claims in Class*:  Class 2 consists of BLV Cheyenne Secured Claims against Whitton.

*Treatment*.  On the Effective Date, the Holders of the BLV Cheyenne  Secured Claims shall receive, in full satisfaction, settlement, release and exchange for BLV Cheyenne Secured Claims, a Refinanced Secured Loan ("BLV Cheyenne Refinanced Secured Loan") evidenced by a promissory note payable to the order of BLV, in the principal amount of Two Million Two Hundred Thousand Dollars ($2,200,000) maturing five (5) years from the Effective Date, payable as follows: (i) for the first twelve (12) months, interest only monthly payments at the interest rate of 4% per annum, and (ii) for the next forty-eight (48) months, monthly payments at the interest rate of 6 % per annum based on a

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

twenty-five (25) year amortization schedule with a balloon payment for the remaining balance due at maturity ("BLV Cheyenne Refinanced Secured Note"). The BLV Cheyenne Refinanced Secured Note shall be executed by the Reorganized Debtor. The BLV Cheyenne Refinanced Secured Note shall be secured, pursuant to the BLV Refinanced Secured Loan Documents, by the BLV Cheyenne Property and shall be in the form annexed as an exhibit to the Disclosure Statement.

*Impairment and Voting*: Class 2 is Impaired. Therefore, the Holder of Class 2 BLV Cheyenne Secured Claims is entitled to vote to accept or reject this Plan.

(c)     Class 3:  BLV Mountain Vista Secured Claims.

*Claims in Class*:  Class 3 consists of BLV Mountain Vista Secured Claims against Whitton.

*Treatment*.  On the Effective Date, the Holders of the BLV Mountain Vista Secured Claims shall receive, in full satisfaction, settlement, release and exchange for BLV Mountain Vista Secured Claims, a Refinanced Secured Loan ("BLV Mountain Vista Refinanced Secured Loan") evidenced by a promissory note payable to the order of BLV, in the principal amount of One Million One Hundred Sixty Eight Thousand Ninety Six Dollars ($1,168,096) maturing five (5) years from the Effective Date, payable as follows: (i) for the first twelve (12) months, interest only monthly payments at the interest rate of 6% per annum, and (ii) for the next forty-eight (48) months, monthly payments at the interest rate of 6 % per annum based on a twenty-five (25) year amortization schedule with a balloon payment for the remaining balance due at maturity ("BLV Mountain Vista Refinanced Secured Note"). The BLV Mountain Vista Refinanced Secured Note shall be executed by the Hallett Entity. The BLV Mountain Vista Refinanced Secured Note shall be secured, pursuant to the BLV Mountain Vista Refinanced Secured Loan Documents, by the BLV Mountain Vista Property and shall be in the form annexed to the Disclosure Statement as an exhibit.

*Impairment and Voting*:  Class 3 is Impaired.  Therefore, the Holder of Class 3 BLV Mountain Vista Secured Claims is entitled to vote to accept or reject this Plan.

///

///

///

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

(d)     Class 4:  BLV Dean Martin Secured Claims.

*Claims in Class*:  Class 4 consists of BLV Dean Martin Secured Claims against Whitton.

*Treatment*.  In full satisfaction, settlement, release and exchange for BLV Dean Martin Secured Claims, the Holders of the BLV Dean Martin Secured Claims shall receive the following:

(1)     On or before the Effective Date, the BLV Mesquite Property, upon which the BLV holds a Lien to secure the BLV Dean Martin Loan, shall be transferred to BLV in consideration of a credit and reduction of the BLV Dean Martin Loan and BLV Dean Martin Secured Claim by the sum of $1,275,000 thereupon resulting in an unpaid balance of the BLV Dean Martin Loan in the amount of $700,000.

(2)     On the Effective Date, the Holders of the BLV Dean Martin Secured Claims shall receive a Refinanced Secured Loan ("BLV Dean Martin Refinanced Secured Loan") evidenced by a promissory note payable to the order of BLV, in the principal amount of $700,000 maturing five (5) years from the Effective Date, payable as follows: (i) for the first twelve (12) months, interest only at the interest rate of 2% per annum not paid, but accrued until maturity, (ii) for the next twelve (12) months, interest only monthly payments at the interest rate of 4% per annum, and (ii) for the next thirty-six (36) months, monthly payments at the interest rate of 6 % per annum based on a twenty-five (25) year amortization schedule with a balloon payment for the remaining balance due at maturity ("BLV Dean Martin Refinanced Secured Note").  The BLV Dean Martin Refinanced Secured Note shall be executed by the Hallett Entity.  The BLV Dean Martin Refinanced Secured Note shall be secured, pursuant to the BLV Dean Martin Refinanced Secured Loan Documents, by the BLV Dean Martin Property and shall be in the form annexed to the Disclosure Statement as an exhibit.

*Impairment and Voting*:  Class 4 is Impaired.  Therefore, the Holder of Class 4 Dean Martin Secured Claims is entitled to vote to accept or reject this Plan.

(e)     Class 5:  BofA Secured Claims.

*Claims in Class*:  Class 5 consists of BofA Secured Claims against Debtor.

*Treatment*:  On the Effective Date, the Holders of the BofA Secured Claims shall, in full satisfaction, settlement, release and exchange for their Secured Claims, receive a Refinanced Secured Loan ("BofA Refinanced Secured Loan") evidenced by a promissory note payable to the order of BofA,

executed by the Reorganized Debtor ("BofA Refinanced Secured Note"). The BofA Refinanced Secured Note shall be secured, pursuant to the BofA Refinanced Secured Loan Documents, by the BofA Property and shall be in one of the forms as set forth below annexed to the Disclosure Statement as an exhibit.

The BofA Refinanced Secured Note, will take one of the following two forms in accordance with Bankruptcy Code section 1129(b), depending on whether BofA makes the 1111(b) Election:

(1) If BofA Does Not Make the 1111(b) Election: - The BofA Refinanced Secured Note shall be in the principal amount (the "BofA Present Value Principal") which is equal to (x) the Property Value of the BofA Property minus (y) the Secured Note Deduction with respect to the BofA Property and BofA Loans (the "BofA Secured Note Deduction"), and shall be payable in accordance with the Refinanced Secured Loan Payment Terms.

(2) If BofA Makes the 1111(b) Election: In the event that BofA makes a timely 1111(b) Election, then the BofA Refinanced Secured Note shall be in the principal amount (the "BofA 1111(b) Principal") which is equal to (x) BofA's Allowed Claims minus (y) the BofA Secured Note Deduction, and shall be payable pursuant to the 1111(b) Loan Payment Terms based on an 1111(b) Loan Amortization Schedule of thirty-seven (37) years, having a net present value equal to or not less than the BofA Present Value Principal based on the 1111(b) Interest Rate. For purposes of this Section 2.3(e), the 1111(b) Interest Rate shall be 0.80994% per annum. The BofA Refinanced Secured Note, which will have a net present value as described above, will provide BofA with a stream of payments equal to or not less than the BofA 1111(b) Principal. Interest payments on the BofA Refinanced Secured Note will retire the principal amount of the BofA Refinanced Secured Note on a dollar-for-dollar basis. The form of the BofA Refinanced Note if the 1111(b) Election is made is attached to the Disclosure Statement as an exhibit. The final form and amount of the BofA Refinanced Secured Note will be revised, as appropriate, including to the extent BofA does not make the 1111(b) Election.

*Impairment and Voting*: Class 5 is Impaired. Holders of Class 5 BofA Secured Claims are entitled to vote to accept or reject this Plan.

///

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

(f)     Class 6:  Wells Diablo Secured Claims.

*Claims in Class*:  Class 6 consists of Wells Diablo Secured Claims against Debtor secured by the Wells Diablo Property.

*Treatment*:   On the Effective Date, the Holders of the Wells Diablo Secured Claims shall, in full satisfaction, settlement, release and exchange for the Wells Diablo Secured Claims, receive a Refinanced Secured Loan ("Wells Diablo Refinanced Secured Loan") evidenced by a promissory note ("Wells Diablo Refinanced Secured Note") payable to the order of Wells, executed by the Reorganized Debtor.  The Wells Diablo Refinanced Secured Note shall be secured by the Wells Diablo Property, pursuant to the Wells Diablo Refinanced Secured Loan Documents, and shall be in one of the forms as set forth below annexed to the Disclosure Statement as an exhibit.

The Wells Diablo Refinanced Secured Note will take one of the following two forms in accordance with Bankruptcy Code section 1129(b), depending on whether Wells makes the 1111(b) Election:

(1) If Wells Does Not Make the 1111(b) Election:  The Wells Diablo Refinanced Secured Note shall be in the principal amount ("Wells Diablo Present Value Principal") equal to (x) the Property Value of the Wells Diablo Property minus (y) the Secured Note Deduction with respect to the Wells Diablo Property and Wells Diablo Loan (the "Wells Diablo Secured Note Deduction"), and shall be amortized and payable in accordance with the Refinanced Secured Loan Payment Terms.

(2) If Wells Makes the 1111(b) Election:  In the event that Wells makes a timely 1111(b) Election, then the Wells Diablo Refinanced Secured Note shall be in the principal amount (the "Wells Diablo 1111(b) Principal") equal to (x) Wells' Allowed Claim with respect to the Wells Diablo Loan minus (y) the Wells Diablo Secured Note Deduction, and shall be payable pursuant to the 1111(b) Loan Payment Terms based on an 1111(b) Loan Amortization Schedule of thirty-five (35) years, having a net present value equal to or not less than the Wells Diablo Present Value Principal based on the 1111(b) Interest Rate.  For purposes of this Section 2.3(f), the 1111(b) Interest Rate shall be 0.93931% per annum.  The Wells Diablo Refinanced Secured Note in the face amount equal to the Wells Diablo 1111(b) Principal, which will have a net present value equal to the Wells Diablo Present Value Principal, will provide Holders of the Wells Diablo Secured Claims with a stream of payments

equal to or not less than the Wells Diablo 1111(b) Principal. Interest payments on the Wells Diablo Refinanced Secured Note will retire the principal amount of the Wells Diablo Refinanced Secured Note on a dollar-for-dollar basis. The form of the Wells Diablo Refinanced Note if the 1111(b) Election is made is attached as an exhibit to the Disclosure Statement. The final form and amount of the Wells Diablo Refinanced Secured Note will be revised, as appropriate.

*Impairment and Voting*: Class 6 is Impaired. Holders of Class 6 Wells Diablo Secured Claims are entitled to vote to accept or reject this Plan.

(g) Class 7: Wells Russell Secured Claims.

*Claims in Class*: Class 7 consists of Wells Russell Secured Claims against Debtor secured by the Russell Property.

*Treatment*: On the Effective Date, the Holders of the Wells Russell Secured Claims shall, in full satisfaction, settlement, release and exchange for the Wells Russell Secured Claims, receive a Refinanced Secured Loan ("Wells Russell Refinanced Secured Loan") evidenced by a promissory note ("Wells Russell Refinanced Secured Note") payable to the order of Wells, executed by the Reorganized Debtor. The Wells Russell Refinanced Secured Note shall be secured by the Wells Russell Property pursuant to the Wells Russell Refinanced Secured Loan Documents, and shall be in one of the forms as set forth below annexed to the Disclosure Statement as an exhibit.

The Wells Diablo Refinanced Secured Note will take one of the following two forms in accordance with Bankruptcy Code section 1129(b), depending on whether Wells makes the 1111(b) Election:

(1) If Wells Does Not Make the 1111(b) Election: The Wells Russell Refinanced Secured Note shall be in the principal amount ("Wells Russell Present Value Principal") equal to (x) the Property Value of the Wells Russell Property minus (y) the Secured Note Deduction with respect to the Wells Russell Property and Wells Russell Loan (the "Wells Russell Secured Note Deduction") and shall be amortized and payable in accordance with the Refinanced Secured Loan Payment Terms.

(2) If Wells Makes the 1111(b) Election: In the event that Wells makes a timely 1111(b) Election, then the Wells Russell Refinanced Secured Note shall be in the principal amount (the

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

"Wells Russell 1111(b) Principal") equal to (x) Wells' Allowed Claim with respect to the Wells Russell Loan minus (y) the Wells Russell Secured Note Deduction, and shall be payable pursuant to the 1111(b) Loan Payment Terms based on an 1111(b) Loan Amortization Schedule of thirty (30) years, having a net present value equal to or not less than the Wells Russell Present Value Principal based on the 1111(b) Interest Rate. For purposes of this Section 2.3(g), the 1111(b) Interest Rate shall be 2.41% per annum. The Wells Russell Refinanced Secured Note in the face amount equal to the Wells Russell 1111(b) Principal, which will have a net present value equal to the Wells Russell Present Value Principal, will provide Holders of the Wells Russell Secured Claims with a stream of payments equal to or not less than the Wells Russell 1111(b) Principal. Interest payments on the Wells Russell Refinanced Secured Note will retire the principal amount of the Wells Russell Refinanced Secured Note on a dollar-for-dollar basis. The form of the Wells Russell Refinanced Note if the 1111(b) Election is made is attached as an exhibit to the Disclosure Statement. The final form and amount of the Wells Diablo Refinanced Secured Note will be revised, as appropriate.

*Impairment and Voting*: Class 7 is Impaired. Holders of Class 7 Wells Russell Secured Claims are entitled to vote to accept or reject this Plan.

(h)    Class 8:  Wells Cheyenne Secured Claims.

*Claims in Class*:  Class 8 consists of Wells Cheyenne Secured Claims against Debtor secured by the Wells Cheyenne Property.

*Treatment*:  On the Effective Date, the Holders of the Class 8 Wells Cheyenne Secured Claims shall, in full satisfaction, settlement, release and exchange for the Wells Cheyenne Secured Claims, receive title to the Wells Cheyenne Property, which will be irrevocably and indefeasibly transferred and assigned Wells, free and clear of all Claims, Liens and interests of Creditors and interests of all Interest Holders.

*Impairment and Voting*:  Class 8 is not Impaired and the Holders of Wells Cheyenne Secured Claims are conclusively deemed to have accepted this Plan, pursuant to Bankruptcy Code section 1126(f). Therefore, the Holders of Wells Cheyenne Secured Claims are not entitled to vote to accept or reject this Plan.

///

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

(i)     Class 9:  Nova Secured Claims.

*Claims in Class*:  Class 9 consists of Nova Secured Claims against Debtor secured by the Nova Property.

*Treatment*:  On the Effective Date, the Holders of the Nova Secured Claims shall, in full satisfaction, settlement, release and exchange for the Nova Secured Claims, receive a Refinanced Secured Loan ("Nova Refinanced Secured Loan") evidenced by a promissory note ("Nova Refinanced Secured Note") payable to the order of Nova, executed by the Reorganized Debtor.  The Nova Refinanced Secured Note shall be secured by the Nova Property pursuant to the Nova Refinanced Secured Loan Documents, and shall be in one of the forms as set forth below annexed to the Disclosure Statement as an exhibit.

The Nova Refinanced Secured Note will take one of the following two forms in accordance with Bankruptcy Code section 1129(b), depending on whether Nova makes the 1111(b) Election:

(1)     If Nova Does Not Make the 1111(b) Election:  The Nova Refinanced Secured Note shall be in the principal amount ("Nova Present Value Principal") equal to (x) the Property Value of the Nova Property minus (y) the Secured Note Deduction with respect to the Nova Property and Nova Loan (the "Nova Secured Note Deduction"), and shall be amortized and payable in accordance with the Refinanced Secured Loan Payment Terms.

(2)     If Nova Makes the 1111(b) Election:  In the event that Nova makes a timely 1111(b) Election, then the Nova Refinanced Secured Note shall be in the principal amount (the "Nova 1111(b) Principal") equal to (x) Nova's Allowed Claim with respect to the Nova Loan minus (y) the Nova Secured Note Deduction, and shall be payable pursuant to the 1111(b) Loan Payment Terms based on an 1111(b) Loan Amortization Schedule of thirty (30) years, having a net present value equal to or not less than the Nova Present Value Principal based on the 1111(b) Interest Rate.  For purposes of this Section 2.3(i) the 1111(b) Interest Rate shall be 1.139% per annum.  The Nova Refinanced Secured Note in the face amount equal to the Nova 1111(b) Principal, which will have a net present value equal to the Nova Present Value Principal, will provide Holders of the Nova Secured Claims with a stream of payments equal to or not less than the Nova 1111(b) Principal.  Interest payments on the Nova

Refinanced Secured Note will retire the principal amount of the Nova Refinanced Secured Note on a dollar-for-dollar basis. The form of the Nova Refinanced Note if the 1111(b) Election is made is attached to the Disclosure Statement as an exhibit. The final form and amount of the Nova Refinanced Secured Note will be revised, as appropriate.

*Impairment and Voting*: Class 9 is Impaired. Holders of Class 9 Nova Secured Claims are entitled to vote to accept or reject this Plan.

(j)    Class 10:  Wells Dean Martin Secured Claims.

*Claims in Class*: Class 10 consists of Wells Dean Martin Secured Claims against Debtor secured by the Wells Dean Martin Property.

*Treatment*:    On the Effective Date, the Holders of the Wells Dean Martin Secured Claims shall, in full satisfaction, settlement, release and exchange for the Wells Dean Martin Secured Claims, receive a Refinanced Secured Loan ("Wells Dean Martin Refinanced Secured Loan") evidenced by a promissory note ("Wells Dean Martin Refinanced Secured Note") payable to the order of Wells, executed by the Reorganized Debtor. The Wells Dean Martin Refinanced Secured Note shall be secured by the Wells Dean Martin Property, pursuant to the Wells Dean Martin Refinanced Secured Loan Documents, and shall be in one of the forms as set forth below annexed to the Disclosure Statement as an exhibit.

The Wells Dean Martin Refinanced Secured Note will take one of the following two forms in accordance with Bankruptcy Code section 1129(b), depending on whether Wells makes the 1111(b) Election:

(1)    If Wells Does Not Make the 1111(b) Election:  The Wells Dean Martin Refinanced Secured Note shall be in the principal amount ("Wells Dean Martin Present Value Principal") equal to (x) the Property Value of the Wells Dean Martin Property minus (y) the Secured Note Deduction with respect to the Wells Dean Martin Property and Wells Dean Martin Loan (the "Wells Dean Martin Secured Note Deduction"), and shall be amortized and payable in accordance with the Refinanced Secured Loan Payment Terms.

(2)    If Wells Makes the 1111(b) Election:  In the event that Wells makes a timely 1111(b) Election, then the Wells Dean Martin Refinanced Secured Note shall be in the principal amount

(the "Wells Dean Martin 1111(b) Principal") equal to (x) Wells' Allowed Claim with respect to the Wells Dean Martin Loan minus (y) the Wells Dean Martin Secured Note Deduction, and shall be payable pursuant to the 1111(b) Loan Payment Terms based on an 1111(b) Loan Amortization Schedule of forty-two (42) years, having a net present value equal to or not less than the Wells Dean Martin Present Value Principal based on the 1111(b) Interest Rate. For purposes of this Section 2.3(j), the 1111(b) Interest Rate shall be 0.03020% per annum. The Wells Dean Martin Refinanced Secured Note in the face amount equal to the Wells Dean Martin 1111(b) Principal, which will have a net present value equal to the Wells Dean Martin Present Value Principal, will provide Holders of the Wells Dean Martin Secured Claims with a stream of payments equal to or not less than the Wells Dean Martin 1111(b) Principal. Interest payments on the Wells Dean Martin Refinanced Secured Note will retire the principal amount of the Wells Dean Martin Refinanced Secured Note on a dollar-for-dollar basis. The form of the Wells Dean Martin Refinanced Note if the 1111(b) Election is made is attached as an exhibit to the Disclosure Statement. The final form and amount of the Wells Dean Martin Refinanced Secured Note will be revised, as appropriate.

*Impairment and Voting*:  Class 10 is Impaired. Holders of Class 10 Wells Dean Martin Secured Claims are entitled to vote to accept or reject this Plan.

(k)     Class 11:  Wells Seven Hills Secured Claims.

*Claims in Class*:  Class 11 consists of Wells Seven Hills Secured Claims against Debtor secured by the Wells Seven Hills Property.

*Treatment*:   On the Effective Date, the Holders of the Wells Seven Hills Secured Claims shall, in full satisfaction, settlement, release and exchange for the Wells Seven Hills Secured Claims, receive a Refinanced Secured Loan ("Wells Seven Hills Refinanced Secured Loan") evidenced by a promissory note ("Wells Seven Hills Refinanced Secured Note") payable to the order of Wells, executed by the Reorganized Debtor. The Wells Seven Hills Refinanced Secured Note shall be secured by the Wells Seven Hills Property pursuant to the Wells Seven Hills Refinanced Secured Loan Documents, and shall be in one of the forms as set forth below annexed to the Disclosure Statement as an exhibit.

///

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

The Wells Seven Hills Refinanced Secured Note will be secured, by the Wells Seven Hills Property and will take one of the following two forms in accordance with Bankruptcy Code section 1129(b), depending on whether Wells makes the 1111(b) Election:

(1) <u>If Wells Does Not Make the 1111(b) Election</u>: The Wells Seven Hills Refinanced Secured Note shall be in the principal amount ("Wells Seven Hills Present Value Principal") equal to (x) the Property Value of the Wells Seven Hills Property minus (y) the Secured Note Deduction with respect to the Wells Seven Hills Property and Wells Seven Hills Loan (the "Wells Seven Hills Secured Note Deduction"), and shall be amortized and payable in accordance with the Refinanced Secured Loan Payment Terms.

(2) <u>If Wells Makes the 1111(b) Election</u>: In the event that Wells makes a timely 1111(b) Election, then the Wells Seven Hills Refinanced Secured Note shall be in the principal amount (the "Wells Seven Hills 1111(b) Principal") equal to (x) Wells' Allowed Claim with respect to the Wells Seven Hills Loan minus (y) the Wells Seven Hills Secured Note Deduction, and shall be payable pursuant to the 1111(b) Loan Payment Terms based on an 1111(b) Loan Amortization Schedule of fifty-one (51) years, having a net present value equal to or not less than the Wells Seven Hills Present Value Principal based on the 1111(b) Interest Rate. For purposes of this Section 2.3(k), the 1111(b) Interest Rate shall be 0.00243% per annum. The Wells Seven Hills Refinanced Secured Note in the face amount equal to the Wells Seven Hills 1111(b) Principal, which will have a net present value equal to the Wells Seven Hills Present Value Principal, will provide Holders of the Wells Seven Hills Secured Claims with a stream of payments equal to or not less than Wells Seven Hills 1111(b) Principal. Interest payments on the Wells Seven Hills Refinanced Secured Note will retire the principal amount of the Wells Seven Hills Refinanced Secured Note on a dollar-for-dollar basis. The form of the Wells Seven Hills Refinanced Note if the 1111(b) Election is made is attached to the Disclosure Statement as an exhibit. The final form and amount of the Wells Seven Hills Refinanced Secured Note will be revised, as appropriate.

*Impairment and Voting*: Class 11 is Impaired. Holders of Class 11 Wells Seven Hills Secured Claims are entitled to vote to accept or reject this Plan.

///

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

(l)     Class 12:  GSMS Secured Claims.

*Claims in Class*:  Class 12 consists of GSMS Secured Claims against Debtor secured by the GSMS Property.

*Treatment*:   On the Effective Date, the Holders of the GSMS Secured Claims shall, in full satisfaction, settlement, release and exchange for the GSMS Secured Claims, receive a Refinanced Secured Loan ("GSMS Refinanced Secured Loan") evidenced by a promissory note ("GSMS Refinanced Secured Note") payable to the order of GSMS, executed by the Reorganized Debtor.  The GSMS Refinanced Secured Note shall be secured by the GSMS Property pursuant to the GSMS Refinanced Secured Loan Documents, and shall be in one of the forms as set forth below annexed to the Disclosure Statement as an exhibit.

The GSMS Refinanced Secured Note will take one of the following two forms in accordance with Bankruptcy Code section 1129(b), depending on whether GSMS makes the 1111(b) Election:

(1)   <u>If GSMS Does Not Make the 1111(b) Election</u>:  The GSMS Refinanced Secured Note shall be in the principal amount ("GSMS Present Value Principal") equal to (x) the Property Value of the GSMS Property minus (y) the Secured Note Deduction with respect to the GSMS Property and GSMS Loan (the "GSMS Secured Note Deduction"), and shall be amortized and payable in accordance with the Refinanced Secured Loan Payment Terms.

(2)   <u>If GSMS Makes the 1111(b) Election</u>:  In the event that GSMS makes a timely 1111(b) Election, then the GSMS Refinanced Secured Note shall be in the principal amount (the "GSMS 1111(b) Principal") equal to (x) GSMS' Allowed Claim with respect to the GSMS Loan minus (y) the GSMS Secured Note Deduction, and shall be payable pursuant to the 1111(b) Loan Payment Terms based on an 1111(b) Loan Amortization Schedule of thirty (30) years, having a net present value equal to or not less than the GSMS Present Value Principal based on the 1111(b) Interest Rate.  For purposes of this Section 2.3(l), the 1111(b) Interest Rate shall be 2.47574% per annum.  The GSMS Refinanced Secured Note in the face amount equal to the GSMS 1111(b) Principal, which will have a net present value equal to the GSMS Present Value Principal, will provide Holders of the GSMS Secured Claims with a stream of payments equal to or not less than the GSMS 1111(b) Principal.

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

Interest payments on the GSMS Refinanced Secured Note will retire the principal amount of the GSMS Refinanced Secured Note on a dollar-for-dollar basis. The form of the GSMS Refinanced Note if the 1111(b) Election is made is attached to the Disclosure Statement as an exhibit. The final form and amount of the GSMS Refinanced Secured Note will be revised, as appropriate.

*Impairment and Voting*: Class 12 is Impaired. Holders of Class 12 GSMS Secured Claims are entitled to vote to accept or reject this Plan.

(m)     Class 13: German American Greg Secured Claims.

*Claims in Class*: Class 13 consists of German American Greg Secured Claims against Debtor secured by the German American Greg Property.

*Treatment*: On the Effective Date, the Holders of the German American Greg Secured Claims shall, in full satisfaction, settlement, release and exchange for the German American Greg Secured Claims, receive a Refinanced Secured Loan ("German American Greg Refinanced Secured Loan") evidenced by a promissory note ("German American Greg Refinanced Secured Note") payable to the order of German American, executed by the Reorganized Debtor. The German American Greg Refinanced Secured Note shall be secured by the German American Greg Property pursuant to the German American Greg Refinanced Secured Loan Documents, and shall be in one of the forms as set forth below annexed to the Disclosure Statement as an exhibit.

The German American Greg Refinanced Secured Note will take one of the following two forms in accordance with Bankruptcy Code section 1129(b), depending on whether German American makes the 1111(b) Election:

(1)     If German American Does Not Make the 1111(b) Election: The German American Greg Refinanced Secured Note shall be in the principal amount ("German American Greg Present Value Principal") equal to (x) the Property Value of the German American Greg Property minus (y) the Secured Note Deduction with respect to the German American Greg Property and German American Greg Loan (the "German American Greg Secured Note Deduction"), and shall be amortized and payable in accordance with the Refinanced Secured Loan Payment Terms.

(2)     If German American Makes the 1111(b) Election: In the event that German American makes a timely 1111(b) Election, then the German American Greg Refinanced Secured Note

shall be in the principal amount (the "German American Greg 1111(b) Principal") equal to (x) German American's Allowed Claim with respect to the German American Greg Loan minus (y) the German American Greg Secured Note Deduction, and shall be payable pursuant to the 1111(b) Loan Payment Terms based on an 1111(b) Loan Amortization Schedule of thirty-five (35) years, having a net present value equal to or not less than the German American Greg Present Value Principal based on the 1111(b) Interest Rate. For purposes of this Section 2.3(m), the 1111(b) Interest Rate shall be 1.4761% per annum. The German American Greg Refinanced Secured Note in the face amount equal to the German American Greg 1111(b) Principal, which will have a net present value equal to the German American Greg Present Value Principal, will provide Holders of the German American Greg Secured Claims with a stream of payments equal to or not less than the German American Greg 1111(b) Principal. Interest payments on the German American Greg Refinanced Secured Note will retire the principal amount of the German American Greg Refinanced Secured Note on a dollar-for-dollar basis. The form of the German American Greg Refinanced Note if the 1111(b) Election is made is attached to the Disclosure Statement as an exhibit. The final form and amount of the German American Greg Refinanced Secured Note will be revised, as appropriate.

*Impairment and Voting*: Class 13 is Impaired. Holders of Class 13 German American Greg Secured Claims are entitled to vote to accept or reject this Plan.

(n)     Class 14:  German American Glendale Secured Claims.

*Claims in Class*: Class 14 consists of German American Glendale Secured Claims against Debtor secured by the German American Glendale Property.

*Treatment*:  On the Effective Date, the Holders of the German American Glendale Secured Claims shall, in full satisfaction, settlement, release and exchange for the German American Glendale Secured Claims, receive a Refinanced Secured Loan ("German American Glendale Refinanced Secured Loan") evidenced by a promissory note ("German American Glendale Refinanced Secured Note") payable to the order of German American, executed by the Reorganized Debtor. The German American Glendale Refinanced Secured Note shall be secured by the German American Glendale Property pursuant to the German American Glendale Refinanced Secured Loan Documents, and shall be in one of the forms as set forth below annexed to the Disclosure Statement as an exhibit.

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

1    The German American Glendale Refinanced Secured Note will take one of the following

2    two forms in accordance with Bankruptcy Code section 1129(b), depending on whether German

3    American makes the 1111(b) Election:

4         (1) <u>If German American Does Not Make the 1111(b) Election</u>: The German

5    American Glendale Refinanced Secured Note shall be in the principal amount ("German American

6    Glendale Present Value Principal") equal to (x) the Property Value of the German American Glendale

7    Property minus (y) the Secured Note Deduction with respect to the German American Glendale

8    Property and German American Glendale Loan (the "German American Glendale Secured Note

9    Deduction"), and shall be amortized and payable in accordance with the Refinanced Secured Loan

10   Payment Terms.

11        (2) <u>If German American Makes the 1111(b) Election</u>: In the event that German

12   American makes a timely 1111(b) Election, then the German American Glendale Refinanced Secured

13   Note shall be in the principal amount (the "German American Glendale 1111(b) Principal") equal to (x)

14   German American's Allowed Claim with respect to the German American Glendale Loan minus (y) the

15   German American Glendale Secured Note Deduction, and shall be payable pursuant to the 1111(b)

16   Loan Payment Terms based on an 1111(b) Loan Amortization Schedule of thirty (30) years, having a

17   net present value equal to or not less than the German American Glendale Present Value Principal based

18   on the 1111(b) Interest Rate. For purposes of this Section 2.3(n), the 1111(b) Interest Rate shall be

19   1.25886% per annum. The German American Glendale Refinanced Secured Note in the face amount

20   equal to the German American Glendale 1111(b) Principal, which will have a net present value equal to

21   the German American Glendale Present Value Principal, will provide Holders of the German American

22   Glendale Secured Claims with a stream of payments equal to or not less than the German American

23   Glendale 1111(b) Principal. Interest payments on the German American Glendale Refinanced Secured

24   Note will retire the principal amount of the German American Glendale Refinanced Secured Note on a

25   dollar-for-dollar basis. The form of the German American Glendale Refinanced Note if the 1111(b)

26   Election is made is attached as an exhibit to the Disclosure Statement. The final form and amount of

27   the German American Glendale Refinanced Secured Note will be revised, as appropriate.

28   ///

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

1    *Impairment and Voting*:  Class 14 is Impaired.  Holders of Class 14 German American

2    Glendale Secured Claims are entitled to vote to accept or reject this Plan.

3              (o)    Class 15:  German American Brooks Secured Claims.

4              *Claims in Class*:  Class 15 consists of German American Brooks Secured Claims against

5    Debtor secured by the German American Brooks Property.

6              *Treatment*:    On the Effective Date, the Holders of the Class 15 German American

7    Brooks Secured Claims shall, in full satisfaction, settlement, release and exchange for the German

8    American Brooks Secured Claims, receive title to the German American Brooks Property, which will be

9    irrevocably and indefeasibly transferred and assigned German American, free and clear of all Claims,

10   Liens and interests of Creditors and interests of all Interest Holders.

11             *Impairment and Voting*:  Class 15 is not Impaired and the Holders of German American

12   Brooks Secured Claims are conclusively deemed to have accepted this Plan, pursuant to Bankruptcy

13   Code section 1126(f).  Therefore, the Holders of German American Brooks Secured Claims are not

14   entitled to vote to accept or reject this Plan.

15             (p)    Class 16:  JPMCC Secured Claims.

16             *Claims in Class*:  Class 16 consists of JPMCC Secured Claims against Debtor secured by

17   the JPMCC Property.

18             *Treatment*:    On the Effective Date, the Holders of the JPMCC Secured Claims shall, in

19   full satisfaction, settlement, release and exchange for the JPMCC Secured Claims, receive a Refinanced

20   Secured Loan ("JPMCC Refinanced Secured Loan") evidenced by a promissory note ("JPMCC

21   Refinanced Secured Note") payable to the order of JPMCC, executed by the Reorganized Debtor.  The

22   JPMCC Refinanced Secured Note shall be secured by the JPMCC Property pursuant to the JPMCC

23   Refinanced Secured Loan Documents, and shall be in one of the forms as set forth below annexed to the

24   Disclosure Statement as an exhibit.

25             The JPMCC Refinanced Secured Note will take one of the following two forms in

26   accordance with Bankruptcy Code section 1129(b), depending on whether JPMCC makes the 1111(b)

27   Election:

28   ///

F OX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

(1)  <u>If JPMCC Does Not Make the 1111(b) Election</u>:  The JPMCC Refinanced Secured Note shall be in the principal amount ("JPMCC Present Value Principal") equal to (x) the Property Value of the JPMCC Property minus (y) the Secured Note Deduction with respect to the JPMCC Property and JPMCC Loan (the "JPMCC Secured Note Deduction"), and shall be amortized and payable in accordance with the Refinanced Secured Loan Payment Terms.

(2)  <u>If JPMCC Makes the 1111(b) Election</u>:  In the event that JPMCC makes a timely 1111(b) Election, then the JPMCC Refinanced Secured Note shall be in the principal amount (the "JPMCC 1111(b) Principal") equal to (x) JPMCC's Allowed Claim with respect to the JPMCC Loan minus (y) the JPMCC Secured Note Deduction, and shall be payable pursuant to the 1111(b) Loan Payment Terms based on an 1111(b) Loan Amortization Schedule of thirty-five (35) years, having a net present value equal to or not less than the JPMCC Present Value Principal based on the 1111(b) Interest Rate.  For purposes of this Section 2.3(p), the 1111(b) Interest Rate shall be 0.99689% per annum.  The JPMCC Refinanced Secured Note in the face amount equal to the JPMCC 1111(b) Principal, which will have a net present value equal to the JPMCC Present Value Principal, will provide Holders of the JPMCC Secured Claims with a stream of payments equal to or not less than the JPMCC 1111(b) Principal.  Interest payments on the JPMCC Refinanced Secured Note will retire the principal amount of the JPMCC Refinanced Secured Note on a dollar-for-dollar basis.  The form of the JPMCC Refinanced Note if the 1111(b) Election is made is attached to the Disclosure Statement as an exhibit. The final form and amount of the JPMCC Refinanced Secured Note will be revised, as appropriate..

*Impairment and Voting*:  Class 16 is Impaired.  Holders of Class 16 JPMCC Secured Claims are entitled to vote to accept or reject this Plan.

(q)  <u>Class 17:  Umbra Secured Claims</u>.

*Claims in Class*:  Class 17 consists of Umbra Secured Claims against Debtor secured by the Umbra Property.

*Treatment*:  On the Effective Date, the Holders of the Class 17 Umbra Secured Claims shall, in full satisfaction, settlement, release and exchange for the Umbra Secured Claims, receive title to the Umbra Property, which will be irrevocably and indefeasibly transferred and assigned Umbra, free and clear of all Claims, Liens and interests of Creditors and interests of all Interest Holders.

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

*Impairment and Voting*: Class 17 is not Impaired and the Holders of Umbra Secured Claims are conclusively deemed to have accepted this Plan, pursuant to Bankruptcy Code section 1126(f). Therefore, the Holders of Umbra Secured Claims are not entitled to vote to accept or reject this Plan.

(r)  Class 18:  General Unsecured Claims.

*Claims in Class*:  Class 18 consists of General Unsecured Claims against Debtor.

*Treatment*:  Holders of Class 18 General Unsecured Claims on the Effective Date shall, in full satisfaction, settlement, release and exchange for such Allowed General Unsecured Claims, receive their Pro Rata share of the Creditor Fund on account of their Allowed General Unsecured Claims. Upon the Effective Date, all General Unsecured Claims shall be released without further action by Debtor or notice to Holders of General Unsecured Claims being necessary.

*Impairment and Voting*:  Class 18 is Impaired. Holders of Class 18 General Unsecured Claims are entitled to vote to accept or reject this Plan.

(s)  Class 19:  Old Equity Interests.

*Claims in Class*:  Class 19 consists of all Old Equity Interests.

*Treatment*:  Holders of Old Equity Interests shall not receive or retain any property on account of such Old Equity Interests under this Plan. Upon the Effective Date, all Old Equity Interests shall be extinguished and cancelled without further action by Debtors or notice to Holders of Old Equity Interests being necessary.

*Impairment and Voting*:  Class 19 is Impaired and the Holders of Old Equity Interests are conclusively deemed to have rejected this Plan, pursuant to Bankruptcy Code section 1126(g), and will therefore not be entitled to vote to accept or reject the Plan.

2.4.  Retention of Defenses Regarding Claims.  Except as otherwise provided in (a) this Plan, and (b) the DIP Financing Order, nothing shall affect Debtor's rights and defenses, both legal and equitable, with respect to any Claims.

2.5.  Voting by Impaired Classes.  Members of Classes 2, 3, 4, 5, 6, 7, 9, 10, 11, 12, 13, 14, 16, and 18 are impaired and entitled to vote to reject or accept this Plan.

///

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

2.6.    <u>Disputed, Contingent and Unliquidated Claims and Interests</u>.  Any Claim or Interest that has been or is hereafter listed in the Schedules as disputed, contingent, or unliquidated, and for which no Proof of Claim or Interest has been timely Filed by the Bar Date, is not considered Allowed and shall be expunged without further action by Debtors and without any further notice to or action, order, or approval of the Bankruptcy Court.

**ARTICLE III**

**<u>ACCEPTANCE OR REJECTION OF THIS PLAN</u>**

3.1    <u>Acceptance by an Impaired Class</u>.  In accordance with Bankruptcy Code section 1126(c) and except as provided in Bankruptcy Code section 1126(e), an Impaired Class of Claims shall be deemed to have accepted this Plan if this Plan is accepted by the Holders of at least two-third (2/3) in dollar amount and more than one-half (1/2) in number of the Allowed Claims of such Class that have timely and properly voted to accept or reject this Plan.

3.2.    <u>Summary of Classes Voting on this Plan</u>.

(a)    Only the votes of Holders of Claims of Classes 2, 3, 4, 5, 6, 7, 9, 10, 11, 12, 13, 14, 16 and 18 will be solicited with respect to this Plan.

(b)    Holders of Claims in Classes 1, 8, 15 and 17 shall be deemed to accept the Plan and Holders of Interests in Class 19 will be deemed to have rejected the Plan and, accordingly, will not be solicited with respect to this Plan.

3.3.    <u>Elimination of Vacant Classes</u>.  Any Class of Claims that is not occupied as of the date of the commencement of the Confirmation Hearing by an Allowed Claim or a Claim temporarily Allowed under Bankruptcy Rule 3018 shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to Bankruptcy Code section 1129(a)(8).

3.4.    <u>Tabulation of Votes</u>.  Debtors will tabulate all votes on this Plan for the purpose of determining whether this Plan satisfies Bankruptcy Code sections 1129(a)(8) and (10).

3.5.    <u>Nonconsensual Confirmation</u>.  If any Impaired Class of Claims entitled to vote shall not accept the Plan by the requisite statutory majorities provided in Bankruptcy Code section 1126(c), the Debtors reserve the right to amend the Plan in accordance with Section 12.1 hereof or undertake to have

the Bankruptcy Court confirm the Plan under Bankruptcy Code section 1129(b) or both. With respect to any Impaired Classes of Claims that are deemed to reject the Plan, Debtors shall request that the Bankruptcy Court confirm the plan under Bankruptcy Code section 1129(b).

## ARTICLE IV

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

4.1. <u>Executory Contracts and Unexpired Leases</u>. Debtors/Reorganized Debtor shall be deemed to have assumed each Assumed Contract and to have assigned such contracts to the Reorganized Debtor or Hallett Entity (as applicable) for the Property to which such contracts relate as of the Effective Date. The Confirmation Order shall constitute an order of the Bankruptcy Court under Bankruptcy Code Sections 365 and 1123(b)(2) approving the contract and lease assumptions by Debtors/Reorganized Debtor and assignment (where applicable) to Hallett Entity, as of the Effective Date.

4.2 <u>Cure of Defaults for Assumed Executory Contracts and Unexpired Leases</u>.

(a) Any of the Assumed Contracts that are, or may be, alleged to be in default, shall be Cured either in the ordinary course of business or on the Effective Date. Except with respect to Assumed Contracts with respect to which Debtors and the applicable counterparties have stipulated in writing the appropriate Cure, all requests of Cure that differ from the amounts and treatment proposed by Debtors must be Filed with the Bankruptcy Court on or before the Cure Bar Date. Any request for payment or other Cure that is not timely Filed shall be disallowed automatically and forever barred from assertion and shall not be enforceable against Debtors, Reorganized Debtor or Hallett Entity, without the need for any objection by Debtors or further notice to or action, order, or approval of the Bankruptcy Court, and any Claim for Cure shall be deemed fully satisfied, released, and discharged upon payment by Reorganized Debtor of the amounts listed on the proposed Cure schedule, notwithstanding anything included in the Schedules or in any Proof of Claim to the contrary. Debtors or Reorganized Debtor also may settle any Cure without further notice to or action, order, or approval of the Bankruptcy Court.

(b) If a counterparty objects to any Cure or any other matter related to assumption and assignment, the Bankruptcy Court shall determine the Allowed amount of such Cure and any related

*VG1 82210v3 04/18/11*

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

issues. If there is a dispute regarding such Cure, the ability of Debtors, Reorganized Debtor or Hallett Entity (as applicable) to provide "adequate assurance of future performance" within the meaning of Bankruptcy Code section 365, or any other matter pertaining to assumption, then Cure shall occur as soon as reasonably practicable after entry of an order resolving such dispute, approving such assumption (and, if applicable, assignment), or as may be agreed upon by Debtors, Reorganized Debtor or Hallett Entity and the counterparty to the Assumed Contract. Any counterparty to an Assumed Contract that fails to object timely to the proposed assumption and assignment of any such contract or unexpired lease will be deemed to have consented to such assumption and assignment. Debtors, Reorganized Debtor and Hallett Entity reserve the right either to reject or nullify the assumption of any executory contract or unexpired lease no later than thirty (30) days after a Final Order determining the Cure or any request for adequate assurance of future performance required to assume such executory contract or unexpired lease.

(c)     Assumption of any Assumed Contract pursuant to this Plan or otherwise shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults with respect to provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any Assumed Contract at any time prior to the effective date of assumption and assignment. Any Proofs of Claim Filed with respect to an Assumed Contract that has been assumed shall be deemed disallowed and expunged, without further notice to or action, order, or approval of the Bankruptcy Court.

4.3.    Rejection of Executory Contracts.

(a)     Entry of the Confirmation Order shall, subject to and upon the occurrence of the Effective Date, constitute the approval, pursuant to Bankruptcy Code sections 365(a) and 1123(b)(2), of the rejection of all executory contracts and unexpired leases other than the Assumed Contracts.

(b)     Any Holder of a Claim whose Claim arises from the rejection of an executory contract or unexpired lease with Debtors shall have the rights of a Holder of a General Unsecured Claim and shall receive the treatment provided to Holders of Class 18 General Unsecured Claims as set forth in this Plan.

///

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

4.4.  Filing of Rejection Claims.  Any Person or Entity who believes they are entitled to assert a Claim against Debtors by virtue of the rejection of an executory contract or unexpired lease pursuant to this Article IV or a Final Order entered after the Confirmation Date, may File a Claim with the Clerk of the Bankruptcy Court not later than twenty (20) days after the date of any such rejection or such later time as may be set forth for the filing of such Claim in said Final Order.  If such Claim is not so Filed, it shall be forever barred from assertion against Debtors, Reorganized Debtor and Hallett Entity (as applicable).  Nothing in this Section 4.4 shall affect the right of any party-in-interest to object to any Claim, which has been improperly Filed or not Filed on a timely basis.

4.5.  Modifications, Amendments, Supplements, Restatements, or Other Agreements.

(a)  Unless otherwise provided in the Plan Supplement, each Assumed Contract that is assumed and assigned shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Assumed Contract, and all executory contracts and unexpired leases related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under this Plan.

(b)  Modifications, amendments, supplements, and restatements to pre-petition executory contracts and unexpired leases that have been executed by Debtors during the Chapter 11 Cases shall not be deemed to alter the pre-petition nature of the executory contract or unexpired lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

4.6.  Reservation of Rights.  Neither the exclusion nor inclusion of any contract or lease in the Plan Supplement, nor anything contained in this Plan, shall constitute an admission by Debtors, Reorganized Debtor and Hallett Entity (as applicable) that any such contract or lease is in fact an executory contract or unexpired lease or that Debtors, Reorganized Debtor or Hallett Entity (as applicable) has any liability thereunder.  If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, Debtors, Reorganized Debtor and/or Hallett Entity (as applicable), shall have thirty (30) days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease.

///

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

**ARTICLE V**

**PLAN IMPLEMENTATION**

5.1.  Plan Implementation.

(a)  This Plan shall be implemented in all respects in a manner that is consistent with the terms and conditions of the Operative Documents, DIP Financing Order, the and the requirements of section 1123(a) and other applicable provisions of the Bankruptcy Code.  Without limiting the generality of the foregoing, the New Capital Contribution shall be used to fund this Plan and shall be distributed or applied in the manner necessary to provide all required Confirmation Funds for Distribution pursuant to this Plan, satisfy the costs, expenses, required payments and entitlements outlined herein on the Effective Date and provide the Reorganized Debtor with working capital and funding for operations and Plan needs.  On the Effective Date, that portion of the New Capital Contribution to be used for the Confirmation Funds shall be turned over to the Distribution Agent for Distribution pursuant to this Plan.

(b)  If the DIP Lender, or any Person affiliated or related to the DIP Lender, is the New Equity Investor, then on the Effective Date the DIP Lender shall (i) fund the maximum amount of the DIP Loan (and pay Cash to the Reorganized Debtor in an amount equal to the difference between the maximum amount of the DIP Loan of $2,100,000 and the outstanding amount of the DIP Loan advanced and paid to the Debtors prior to the Effective Date), (ii) the DIP Lender shall, thereupon, forgive, release and discharge the DIP Loan and Liens securing same in consideration of the New Equity Interests provided pursuant to this Plan; and (3) the Reorganized Debtor Parent shall receive its New Equity Interests pursuant to this Plan.

(c)  If the New Equity Investor is a Person or Entity other than or unrelated to the DIP Lender, the New Equity Investor shall pay Cash to the Reorganized Debtor in the amount of Two Million One Hundred Thousand Dollars ($2,100,000) to be used in accordance with the provisions of this Plan.

5.2.  Issuance of Equity Interests.

(a)  Reorganized Debtor.  On the Effective Date, Old Equity Interests shall be extinguished. Canceled, terminated and of no force and effect.  In consideration of the New Capital

Contribution, one hundred percent (100%) of the New Equity Interests in the Reorganized Debtor shall be issued to the Reorganized Debtor Parent.

(b) <u>Hallett Entity</u>. After the Confirmation Date, the Hallett Entity will be formed, if necessary, and on the Effective Date, the BLV Mountain Vista Property and BLV Dean Martin Property, shall be transferred to the Hallett Entity as part of the consideration for Hallett's employment by the Reorganized Debtor and provision of property management services for the Properties, pursuant to the New Property Management Agreement, all as more fully set forth hereinbelow.

(c) <u>Reorganized Debtor Parent</u>. The Reorganized Debtor Parent Equity Interests shall be issued as follows:

(1) 70% of the Reorganized Debtor Parent Equity Interests shall be issued to Ruby Capital Investments, LLC and Silver Phoenix, LLC, their successors, assigns and/or designees in consideration for their provision of all of the funds to, or on behalf of, the Reorganized Debtor Parent from which the New Capital Contribution is made to the Reorganized Debtor pursuant to this Plan; and

(2) 30% of the Reorganized Debtor Parent Equity Interests shall be issued to Hallett, or his successor, assigns and/or designees, as part of the consideration for Hallett's employment by the Reorganized Debtor and provision of property management services for the Properties pursuant to the New Property Management Agreement.

5.3 <u>Disposition of Assets, Properties and Equity Interests</u>.

(a) <u>Custodians</u>. On or before the Effective Date (as more fully set forth in Section 11.7 of this Plan), to the extent not already done, each Custodian shall turn over to the Reorganized Debtor (for disposition in accordance with this Plan) possession of the Property or Properties in its possession (along with any Rents thereof, security deposits, proceeds, product, offspring, rents or profits of such Property, funds anywhere held by the Custodian with respect to any of the foregoing, and all bank account records with respect to any bank accounts in which any such funds are held by the Custodian).

(b) <u>Reorganized Debtor</u>. On the Effective Date (as more fully set forth in <u>Article XI</u> of this Plan), without any further action, the Reorganized Debtor will be vested with all of

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

Properties (except for the Hallett Properties), free and clear of all Claims, Liens and Old Equity Interests (except for Liens provided or authorized pursuant to this Plan).

(c) <u>Hallett Entity</u>. On or after the Effective Date (as applicable), and in accordance with the Confirmation Order, each of the Hallett Properties will be irrevocably and indefeasibly transferred and assigned (and the Estate's title to each of the Properties shall pass) to the Hallett Entity, free and clear of all Claims, Liens and interests of Creditors and interests of all Interest Holders in accordance with Bankruptcy Code Section 1141, except for the Claims with respect to each Refinanced Secured Loan, and Liens securing same, respectively, with respect to the Hallett Properties, as provided, granted or approved pursuant to this Plan and Permitted Encumbrances. Any Claims and Liens not provided for and/or specifically addressed under the Plan, including, but not limited to, Liens of record for Claims, which are disputed based upon such Claims being reflected in the Debtors' books and records as having been paid and satisfied and for which no proof of claim has been filed, shall be deemed satisfied and shall be discharged of record.

5.4. <u>Assumption of Liabilities</u>. On the Effective Date, unless such Claims shall be paid on or prior to such date, Reorganized Debtor shall be deemed to have assumed any Claim that is an Administrative Claim, a Priority Tax Claim or a Priority Claim (including any such Claims that are Disputed Claims or with respect to which any applicable period for asserting a Claim has not expired).

5.5. <u>Corporate Actions</u>.

(a) <u>Adoption of Reorganized Debtor Bylaws</u>. On the Effective Date and without further order of the Bankruptcy Court or need for corporate approval, the Reorganized Debtor Bylaws shall supersede and replace all other corporate agreements and bylaws previously governing the Debtors.

(b) <u>Renaming Reorganized Debtor and Authority to Execute Operative Documents</u>. The Confirmation Order shall, among other things, constitute an Order authorizing the managers, officers, and agents of the Debtors, Reorganized Debtor and Reorganized Debtor Parent to execute and deliver the Operative Documents, as applicable (to the extent they have not already been executed and delivered), including without limitation all documents necessary to, on or prior to the Effective Date, rename Reorganized Debtor, at the option and in the sole discretion of the Reorganized Debtor Parent,

without requiring any further corporate authorizations and notwithstanding the requirements under any applicable non-bankruptcy law.

(c) <u>Good Faith and Non Avoidability</u>. The Confirmation Order shall, among other things, provide that: (i) Debtors, Reorganized Debtor, New Equity Investor, Reorganized Debtor Parent, Hallett, and Hallett Entity have acted in good faith; (ii) the Distributions and/or consideration received by the New Equity Investor, Reorganized Debtor and Hallett and Hallett Entity shall not be subject to avoidance, turnover or disgorgement in any subsequent insolvency proceeding by any Person or Entity; and (iii) the Liens securing the Refinanced Secured Loans constitute valid first priority Liens, subject only to any Permitted Encumbrances.

5.6. <u>Merger of Debtors</u>.

(a) The Plan contemplates and is predicated upon the merger of the Debtors into Whitton, as the survivor and Reorganized Debtor. If a Final Order approving the merger of the Debtors into Whitton as the survivor is not entered prior to the Confirmation, entry of the Confirmation Order shall constitute the approval, pursuant to Bankruptcy Code sections 105(a) and 1123(a)(5)(C), effective as of the Effective Date, of the merger of the Debtors into Whitton, as the survivor and Reorganized Debtor, for all purposes.

(b) On and after the Effective Date, Simmons will be fully merged into Whitton, with Whitton as the surviving entity, and accordingly, (i) all assets and liabilities of the Debtors shall be merged so that all of the assets of the Debtors shall be available to pay all of the liabilities, as if it were one Person or Entity; (ii) no distributions shall be made under the Plan on account of intercompany claims between the Debtors, (iii) all prepetition cross-company guarantees shall be deemed eliminated; and (iv) each and every Claim filed or to be filed in one of the individual Chapter 11 Cases shall be deemed filed against the Reorganized Debtor and shall be deemed one Claim against, and obligation of, the Reorganized Debtor. The merger of Debtors shall not expand or reduce the rights of any creditor that asserts a Lien in or against any of the Properties or other property of the Debtors.

(c) As of the Effective Date, the Simmons Chapter 11 Case shall be closed and a Final Decree entered with respect to same.

///

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

5.7    Management.  Following the Effective Date, Reorganized Debtor shall be managed as provided in the Reorganized Debtor Bylaws and New Property Management Agreement. It is anticipated that the Reorganized Debtor and the Reorganized Debtor Parent will be managed by Ezra Nilson, David Crocket (both of whom are not related to or insiders of the Debtors) and Hallett.

It is a condition to New Equity Investors' support of this Plan and DIP Lenders' agreement to the satisfaction of the DIP Loan obligations by the issuance of the New Equity Interests that Hallett continue his employment with and management of the Reorganized Debtor and the Properties. Accordingly, Hallett, as part of the consideration for his employment and property management on behalf, or for the benefit, of the Reorganized Debtor Parent, will receive the following:  (i) an employment agreement providing Hallett with an annual salary of $200,000 and thirty percent (30%) of the Equity Interests in the Reorganized Parent; and (ii) the New Property Management Agreement pursuant to which Hallett will receive compensation in the form of the Hallett Entity receiving title to the BLV Mountain Vista Property and the BLV Dean Martin Property, subject to the Refinanced Secured Loans encumbering same as provided under this Plan by way of indefeasible transfer of title to the BLV Mountain Vista Property and the BLV Dean Martin Property to the Hallett Entity, free and clear of all Claims, Liens, encumbrances and interests other than the Refinanced Secured Loans and Permitted Encumbrances with respect to same.

5.8.    Exemption from Certain Transfer Taxes and Further Transactions.  Pursuant to Bankruptcy Code section 1146(a), the issuance or exchange of any security, or the making or delivery of any instrument of transfer under, in furtherance, or in connection with this Plan, including, but not limited to, any deeds, bills of sale, assignments or other instruments of transfer (including those with respect to the Properties), shall not be subject to any stamp tax, real estate transfer tax or similar tax.

5.9.    Final Decree.  Notwithstanding otherwise applicable law, the Simmons Chapter 11 Case shall be closed and a Final Decree entered as soon as possible after the occurrence of the Effective Date, but the Debtors shall not request entry of the Final Decree with respect to the Whitton Chapter 11 Case, unless and until:

///

///

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

(a)    The New Capital Contribution has been disbursed to Reorganized Debtor to be distributed in accordance with this Plan, and the New Equity Interests have been issued in accordance with this Plan.

(b)    All adversary proceedings and contested matters pending before the Bankruptcy Court have been resolved by a Final Order.

(c)    All Claims have either:  (i) become Allowed Claims and have been paid in accordance with the treatment to be given such Allowed Claim pursuant to this Plan; (ii) been disallowed by a Final Order or deemed to be a Disallowed Claim, in accordance with the terms of this Plan; (iii) been assumed by Reorganized Debtor, and (iv) where applicable, assigned by the Debtors or Reorganized Debtor to Hallett Entity (as applicable); or (v) reinstated.

(d)    All Distributions to be made to Holders of Allowed Claims shall have been made by the Distribution Agent, in accordance with the requirements of this Plan.

5.10.   _Effectuating Documents, Further Transactions._  On and after the Effective Date, Debtors and their agents, officers and members thereof, are authorized to and may issue, execute, deliver, file, or record such contracts, securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of this Plan in the name of and on behalf of Debtors, as applicable, without the need for any approvals, authorizations, or consents except for those expressly required pursuant to this Plan.

5.11   _Post Effective Date Fees and Expenses_.

(a)    From and after the Effective Date, the Distribution Agent shall pay all Post Effective Date Fees from the Post Effective Date Fee Fund without the necessity of any approval by the Bankruptcy Court.

(b)    In the event, and to the extent, that there are not sufficient funds in the Post Effective Date Fee Fund from which to pay any of the Post Effective Date Fees, the Reorganized Debtor shall, in the ordinary course of business and without the necessity of any approval by the Bankruptcy Court, pay any Post Effective Date Fees and Expenses, which are not paid by the Distribution Agent from the Post Effective Date Fee Fund.

(c) In order to seek payment of Post Effective Date Fees, each respective Professional will send its invoice to the Reorganized Debtor and Distribution Agent, and the Reorganized Debtor shall have ten (10) business days thereafter within which to notify the Professional and the Distribution Agent in writing that it objects to the invoice. If no objection is made within that time frame, Distribution Agent or Reorganized Debtor (as applicable) shall pay the invoice within thirty (30) days thereafter. In the event the Reorganized Debtor objects and the parties are unable to resolve the objection, the Professional may bring the matter before the Bankruptcy Court on a motion for determination.

## ARTICLE VI
## PROVISIONS CONCERNING PLAN DISTRIBUTIONS

6.1.    Distributions on Account of Claims Allowed as of the Effective Date.  Distributions under this Plan on account of Claims Allowed on or before the Effective Date shall be made on the Effective Date, or on the first date thereafter as is reasonably practicable.

6.2    Distributions on Account of Claims Allowed After the Effective Date.

(a)    Payments and Distributions on Disputed Administrative and Priority Claims.  In the event that there are Disputed Administrative Claims or Disputed Priority Claims requiring adjudication and resolution and such Claims have not become Allowed or Disallowed prior to the Effective Date, then the obligation to satisfy such Claims shall be from the Confirmation Funds which are held for same, but to the extent there are no available Confirmation Funds from which to pay such Claim, the obligation to satisfy such Claims will be assumed by Reorganized Debtor, subject to Allowance or Disallowance by the Bankruptcy Court.  Except as otherwise provided in this Plan, or Final Order, any Disputed Administrative Claim or Disputed Priority Claim that becomes Allowed after the Effective Date shall be satisfied from the Confirmation Funds or performed by Reorganized Debtor in the ordinary course of business in accordance with the terms and conditions of any controlling agreements, course of dealing, course of business, or industry practice.

(b)    Special Rules for Distributions to Holders of Disputed Claims.  Except as otherwise provided in this Plan and except as otherwise agreed by the relevant parties:  (i) no partial payments and no partial Distributions shall be made with respect to a Disputed Claim until all such

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

disputes in connection with such Disputed Claim have been resolved by settlement or Final Order, and (ii) any Entity that holds both an Allowed Claim and a Disputed Claim shall not receive any Distribution on the Allowed Claim unless and until all objections to the Disputed Claim have been resolved by settlement or Final Order and the Claims have been Allowed.

6.3.    Manner of Payment Under this Plan.  Distributions of Cash to be made by the Distribution Agent pursuant to this Plan shall be made, at the discretion of the Distribution Agent, by check drawn on the Distribution Agent's bank account or by wire transfer from a domestic bank.

6.4.    Whole Dollars.  Any other provision of this Plan to the contrary notwithstanding, no payments of cents will be made.  Whenever any payment of cents would otherwise be called for, the actual payment may reflect a rounding of such fraction to the nearest whole dollar (up or down).

6.5.    [reserved]

6.6.    Escheat.  Holders of Allowed Claims shall have three (3) months from the check date to negotiate Distribution checks issued by the Distribution Agent under the terms of this Plan, otherwise payment on such checks may at the Distribution Agent's sole discretion be stopped and the funds shall escheat to the Distribution Agent and shall be promptly distributed to Reorganized Debtor (in accordance with Bankruptcy Code section 347).

6.7.    Delivery of Distributions.

(a)    Record Date for Distributions.  On the Distribution Record Date, the Claims Register shall be closed and any Person responsible for making Distributions shall be authorized and entitled to recognize only those record Holders listed on the Claims Register as of the close of business on the Distribution Record Date.  Notwithstanding the foregoing, if a Claim is transferred twenty or fewer days before the Distribution Record Date, the Distribution Agent shall make Distributions to the transferee only to the extent practical and in any event only if the relevant transfer form contains an unconditional and explicit certification and waiver of any objection to the transfer by the transferor.

(b)    Distribution Agent.  The Distribution Agent shall make all Distributions required under this Plan.

(c)    Delivery of Distributions in General.  Except as otherwise provided in this Plan, and notwithstanding any authority to the contrary, Distributions to all Holders of Allowed Claims shall

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

be made to Holders of record as of the Distribution Record Date by the Distribution Agent: (a) in accordance with Federal Rule of Civil Procedure 4, as modified and made applicable by Bankruptcy Rule 7004; (b) to the signatory set forth on any of the Proofs of Claim Filed by such Holder or other representative identified therein (or at the last known addresses of such Holder if no Proof of Claim is Filed or if Debtor has been notified in writing of a change of address); (c) at the addresses set forth in any written notices of address changes delivered to the Debtors after the date of any related Proof of Claim; (d) at the addresses reflected in the Schedules if no Proof of Claim has been Filed and the Distribution Agent has not received a written notice of a change of address; or (e) on any counsel that has appeared in the Chapter 11 Cases on the Holder's behalf. Except as otherwise provided in this Plan, Distributions under this Plan on account of Allowed Claims shall not be subject to levy, garnishment, attachment, or like legal process, so that each Holder of an Allowed Claim shall have and receive the benefit of the Distributions in the manner set forth in this Plan. Absent willful misconduct or gross negligence, Debtors, Reorganized Debtor, Hallett Entity (as applicable) and Distribution Agent, as applicable, shall not incur any liability on account of any Distributions made under this Plan.

6.8.  <u>Returned Distributions</u>.  In the case of Distributions to the Holders of Allowed Claims that are returned to the Distribution Agent due to an incorrect or incomplete address, the Distribution Agent shall retain any such returned Distribution in a segregated account established by the Distribution Agent to keep track of any returned Distributions. Unless the Holder of the Allowed Claim relating to any such returned Distribution contacts the Distribution Agent (or its designee) within three (3) months from the date on which such Distribution was returned and provides the Distribution Agent (or its designee) with acceptable proof of identity and an accurate address, such Holder shall forfeit all rights thereto, and to any and all future Distributions or rights under this Plan. In such event, the Claim for which such Distributions was issued shall be treated as a Disallowed Claim and the Distribution on account of such Disallowed Claim shall promptly be distributed Reorganized Debtor.

6.9.  <u>Disputed Distributions</u>.  In the event of any dispute between or among Holders of Claims as to the right to any Holder of a Claim to receive or retain any Distribution to be made to such Holder under this Plan, the Distribution Agent, in lieu of making such Distribution to such Holder, may make it instead into an escrow account for payment as ordered by the Bankruptcy Court or as the interested

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

parties to such dispute may otherwise agree among themselves. Any such Holder who fails to raise such dispute by filing an appropriate request for relief with the Bankruptcy Court prior to the issuance of such disputed Distribution by the Distribution Agent shall be deemed to have forever waived any right to dispute such Distribution or to enjoin, impair or otherwise restrict the use of any such Distribution.

6.10.   Setoffs.  The Distribution Agent may, but shall not be required to, set-off against any Distributions to be made pursuant to this Plan to a Holder of an Allowed Claim, Claims of any nature whatsoever that Debtor may have, or may have had, against such Holder that have not been previously released, but neither the failure to do so, nor the allowance of any Claim held by such Holder shall constitute a waiver or release by the Distribution Agent of any such Claim Debtor may have, or may have had, against such Holder.

6.11.   Withholding Taxes.  The Distribution Agent shall be entitled to deduct any applicable federal or state withholding taxes from any payments made with respect to Allowed Claims, as appropriate, and shall otherwise comply with Bankruptcy Code section 346.

6.12.   Allocation of Distributions.  Distributions on account of Allowed Claims shall, for tax purposes, be treated as allocated first to principal, and thereafter to interest only to the extent that the entire principal amount has been recovered, if applicable.

**ARTICLE VII**

**PROCEDURES FOR RESOLVING DISPUTED CLAIMS**

7.1.   Objection to and Resolution of Claims.  Except as to applications for allowance of compensation and reimbursement of expenses under Bankruptcy Code sections 330, 331 and/or 503, the Reorganized Debtor shall, on and after the Effective Date, have the exclusive right to make and file objections to Claims ("Disputed Claims").  On and after the Effective Date, the Reorganized Debtor shall have the authority to compromise, settle, otherwise resolve or withdraw any objections to any Claims and compromise, settle or otherwise resolve Disputed Claims without approval of the Bankruptcy Court.  Unless otherwise ordered by the Bankruptcy Court, the Debtors and, on and after the Effective Date, the Reorganized Debtor, shall file all objections to Claims that are the subject of proofs of Claim or requests for payment filed with the Bankruptcy Court (other than applications for

allowances of compensation and reimbursement of expenses with respect to Professional Fee Claims) and serve such objections upon the Holder of the Claim as to which the objection is made as soon as is practicable, but in no event later than one (1) year after the Effective Date or such later date as may be approved by the Bankruptcy Court.

7.2.  Payments.  Payments and Distributions to each Holder of a Disputed Claim that ultimately becomes an Allowed Claim shall be made in accordance with the provision of this Plan with respect to the Class of Creditors to which the respective Holder of an Allowed Claim belongs.  Without limiting the generality of the foregoing, Debtors shall not be required to object to any Claim irrespective of whether such Claim is Allowed or Disputed, whether in whole or in part.

7.3  Contingent Claims.  Until such time as a contingent Claim or a contingent portion of an Allowed Claim becomes fixed or absolute or is Disallowed, such Claim will be treated as a Disputed Claim for all purposes related to Distributions under the Plan.  The Holder of a contingent Claim will only be entitled to a Distribution under the Plan when and if such contingent Claim becomes an Allowed Claim.

7.4.  Personal Injury Claims.  All objections to Claims Filed for personal injury tort damages, if any, shall be determined by the United States District Court for the District of Nevada.

7.5.  Estimation of Claims.  Debtors or Reorganized Debtor shall be permitted, at any time, to request that the Bankruptcy Court estimate any contingent or unliquidated Claim pursuant to section Bankruptcy Code 502(c), regardless of whether Debtors previously had objected to such Claim or whether the Bankruptcy Court had ruled on such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any Claim at any time during any litigation concerning any objection to such Claim, including during the pendency of any appeal relating to such objection.  In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim, the amount so estimated shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court.  If such estimated amount constitutes a maximum limitation on the amount of such Claim, Debtors may elect to pursue any supplemental proceedings to object to the allowance of such Claim.

///

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

7.5    Reserve for Disputed Claims.  On and after the Effective Date, the Distribution Agent shall hold in segregated reserve accounts (the "Reserve"), Cash in an aggregate amount sufficient to make Distributions to each Holder of a Disputed Claim at the time distributions are made pursuant to the Plan in the amount that such Holder would have been entitled to receive if such Claim had been an Allowed Claim on the Effective Date.  Nothing contained herein shall be deemed to entitle the Holder of a Disputed Claim to post-Petition Date interest on such Claim.  Any funds remaining in the Reserve after all Distributions on account of Allowed Claims have been made shall be promptly distributed to Reorganized Debtor.

## ARTICLE VIII

## RESERVATION OF RIGHTS PENDING CONFIRMATION AND EFFECTIVE DATE

8.1    Withdrawal of Plan;  Rights if Plan Not Confirmed or Effective Date Does Not Occur.

Debtors reserve the right to revoke or withdraw this Plan prior to the Confirmation Date and to File subsequent plans of reorganization.  If Debtors revoke or withdraw this Plan, or if Confirmation of this Plan or the Effective Date does not ultimately occur, then:  (1) this Plan shall be null and void in all respects; (2) any settlement or compromise embodied in this Plan (including the fixing or limiting to an amount certain of any Claim or Class of Claims), assumption or rejection of executory contracts or unexpired leases effected by this Plan, and any document or agreement executed pursuant to this Plan, shall be deemed null and void; and (3) nothing contained in this Plan shall:  (a) constitute a waiver or release of any Claims or Interests by or against the Debtors or any Person or Entity; (b) prejudice in any manner the rights of Debtors or any other Person or Entity in any further proceedings involving the Debtors; or (c) constitute an admission, acknowledgment, offer, or undertaking of any sort by Debtors or any other Person or Entity.

8.2    No Admissions or Waiver.  Without limiting the generality of any similar provision in this Plan, notwithstanding anything in the Plan to the contrary, nothing contained in the Plan, Plan Supplement or in the Disclosure Statement shall be deemed an admission by Debtors or any Person or Entity with respect to any matter set forth herein.  If Confirmation of this Plan or the Effective Date does not ultimately occur, no statement contained in the Plan, Plan Supplement or in the Disclosure Statement may be used or relied on in any manner in any suit, action, proceeding o controversy within

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

or outside of the Chapter 11 Cases against the Debtors. Without in any way limiting the provisions set forth in Section 8.1, the Debtors reserve any and all of their rights as against all Persons and Entities in the event Confirmation of this Plan or the Effective Date does not ultimately occur.

8.3    Term of Bankruptcy Injunction or Stays. All injunctions or stays provided for in the Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date unless the Bankruptcy Court shall order otherwise.

## ARTICLE IX

## CONDITIONS TO EFFECTIVE DATE

9.1.    Conditions to Occurrence of Effective Date. Each of the following are conditions to be met on or before the Effective Date, which conditions must be satisfied or waived in writing by Debtors:

(a)    That the Confirmation Order shall be entered by the Bankruptcy Court and shall have become a Final Order;

(b)    The New Capital Contribution has been fully funded and paid to the Reorganized Debtor in an amount which sufficiently provides for the required amount Confirmation Funds, working capital and other Cash needs;

(c)    The required amount of Confirmation Funds have been paid and turned over to the Distribution Agent for Distribution in accordance with this Plan;

(d)    The Custodians have turned over to Debtors or Reorganized Debtor all Properties, Rents thereof, and funds related thereto or any other property of the Estate which is in their possession, as required by this Plan;

(e)    That the Confirmation Order authorizes the assumption and assignment of all Assumed Contracts;

(f)    To the extent Confirmation Funds are insufficient to satisfy the Allowed Administrative Claims and Allowed Priority Claims in full, the Reorganized Debtor and/or Hallett Entity, as applicable, has assumed or will pay the remaining amounts unless otherwise agreed by the Holder of such Allowed Administrative and Allowed Priority Claims Claim;

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

(g)     Hallett Entity has been fully formed and all of the Hallett Properties have been transferred to Hallett Entity by the Reorganized Debtor;

(h)     All conditions precedent to the closing of the Refinanced Secured Loan Documents have been satisfied or waived in accordance with the terms hereof; and

(i)     Any outstanding US Trustee Fees shall have been paid in full.

Debtors, in their sole discretion, may waive the Final Order condition in subpart (a) above at any time from and after the Confirmation Date.  In that event, Debtors will be entitled to render any or all performance under the Plan prior to what otherwise would be the Effective Date if the above-referenced conditions were not waived; including, but not limited to, the right to perform under any circumstances which would moot any appeal, review or other challenge of any kind to the Confirmation Order if the Confirmation Order is not stayed pending such appeal, review or other challenge.

## ARTICLE X

## RETENTION OF JURISDICTION

10.1.   <u>Retention of Jurisdiction</u>.  Except to the extent otherwise expressly set forth herein, the Bankruptcy Court shall retain jurisdiction of the Chapter 11 Case following the Confirmation Date for the following purposes, it being expressly intended that such retention of jurisdiction shall in all cases hereafter set forth, extend to any actions or proceedings commenced prior or subsequent to the Confirmation Date and/or the Effective Date whether by Debtors, Reorganized Debtor, Hallett Entity or the parties specified herein:

(a)     To hear and determine any objections to the allowance of Claims, including any objections by Reorganized Debtor or Hallett Entity (as applicable) with respect to any Claims which have been reinstated or assumed in accordance with the terms of this Plan;

(b)     To determine any and all applications for compensation for any Professionals and similar fees to the extent made specifically subject to a hearing under this Plan and applicable provisions of the Bankruptcy Code;

(c)     To determine any and all applications for the rejection or assumption and assignment of executory contracts or for the rejection or assumption and assignment, as the case may

be, of unexpired leases to which Debtors are a party or with respect to which it may be liable, and to hear and determine, and if need be to liquidate, any and all Claims arising therefrom;

(d)     To modify this Plan pursuant to Bankruptcy Code section 1127 or to remedy any defect or omission or reconcile any inconsistency in the Confirmation Order to the extent authorized by the Bankruptcy Code;

(e)     To hear and determine all controversies, suits and disputes, if any, as may arise in connection with the interpretation or enforcement of this Plan;

(f)     To hear and determine all controversies, suits and disputes, if any, as may arise with regard to orders of this Bankruptcy Court entered in the Chapter 11 Cases;

(g)     To adjudicate all controversies concerning the classification of any Claim;

(h)     To liquidate damages in connection with any disputed, contingent or unliquidated Claim;

(i)     To adjudicate all Claims to a security or ownership interest in any of the Assets, or in any proceeds thereof,

(j)     To adjudicate all Claims or controversies arising out of any purchases, sales or contracts made or undertaken by Debtors;

(k)     To determine all questions and disputes regarding recovery of and entitlement to any property of Debtors, or in any proceeds thereof;

(l)     To adjudicate all Causes of Action with respect to which Debtors, Reorganized Debtor or Hallett Entity are a party, whether or not such Claim or controversy is raised or filed before or after the Effective Date;

(m)     To determine issues and disputes concerning entitlement to Distributions to be made under and pursuant to this Plan;

(n)     To enter any order, including injunctions, necessary to enforce the title, rights and powers of Debtors, Reorganized Debtor, Hallett Entity or the rights of any Person or Entity hereunder and to impose such limitations, restrictions, terms and conditions on such title, rights and powers as the Bankruptcy Court may deem necessary or appropriate;

///

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

(o)     To determine such other matters as may be provided for in the Confirmation Order and this Plan, or as may from time to time be authorized under the provisions of the Bankruptcy Code or any other applicable law;

(p)     To enter a Final Decree closing the Chapter 11 Cases;

(q)     To enforce the provisions of any Administrative Claim Bar Date entered by the Bankruptcy Court;

(r)     To make such orders as are necessary or appropriate to carry out the provisions of this Plan, including but not limited to orders interpreting, clarifying or enforcing the provisions thereof;

(s)     To determine issues and disputes with respect to the Refinanced Secured Loan Documents arising after the Effective Date; and

(t)     Without limiting the generality of any of the foregoing, to hear and determine matters concerning state, local, and federal taxes in accordance with Bankruptcy Code sections 345, 505, and 1146.

10.2.    Jurisdiction Unaffected.  The occurrence of the Effective Date and/or the entry of a Final Decree shall not divest the Bankruptcy Court of any jurisdiction otherwise retained under this Article X or the Confirmation Order.

10.3.    Failure of Bankruptcy Court To Exercise Jurisdiction.  If the Bankruptcy Court abstains from exercising or declines to exercise jurisdiction, or is otherwise without jurisdiction over any matter arising under, arising in or related to the Bankruptcy Case, including any of the matters set forth in the Plan, the Plan shall not prohibit or limit the exercise of jurisdiction by any other court of competent jurisdiction with respect to such matter.

## ARTICLE XI

## EFFECT OF CONFIRMATION OF PLAN

11.1.    Discharge.

(a)     IN CONJUNCTION WITH BANKRUPTCY CODE SECTION 1141, EXCEPT AS OTHERWISE PROVIDED FOR HEREIN, THE RIGHTS AFFORDED HEREIN AND THE TREATMENT OF ALL CLAIMS AND EQUITY INTERESTS HEREIN SHALL BE IN EXCHANGE FOR AND IN COMPLETE SATISFACTION, DISCHARGE AND RELEASE OF CLAIMS AND

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

1 EQUITY INTERESTS OF ANY NATURE WHATSOEVER AGAINST THE DEBTORS, AND OF

2 THE ASSETS OR PROPERTIES OF THE ESTATE, INCLUDING ANY INTEREST ACCRUED ON

3 SUCH CLAIMS FROM AND AFTER THE PETITION DATE.

4        (b)     WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, EXCEPT

5 AS PROVIDED IN THE CONFIRMATION ORDER, CONFIRMATION DISCHARGES THE

6 DEBTORS AND REORGANIZED DEBTOR FROM ALL CLAIMS, OR OTHER DEBTS THAT

7 AROSE BEFORE THE EFFECTIVE DATE, AND ALL DEBTS OF THE KIND SPECIFIED IN

8 SECTIONS 502(G), 502(H) OR 502(I) OF THE BANKRUPTCY CODE, WHETHER OR NOT: (X)

9 A PROOF OF CLAIM BASED ON SUCH A DEBT HAS BEEN FILED, OR DEEMED TO HAVE

10 BEEN FILED, UNDER BANKRUPTCY CODE SECTIONS 501 OR 1111(A); (Y) A CLAIM BASED

11 ON SUCH DEBT IS ALLOWED UNDER BANKRUPTCY CODE SECTION 502 OF THE

12 BANKRUPTCY CODE; OR (Z) THE HOLDER OF A CLAIM BASED ON SUCH DEBT HAS

13 ACCEPTED THE PLAN.

14        (c)     EXCEPT AS OTHERWISE PROVIDED IN THE PLAN, (I) ON THE

15 EFFECTIVE DATE, ALL CLAIMS AGAINST THE DEBTORS WHICH AROSE BEFORE THE

16 EFFECTIVE DATE SHALL BE SATISFIED, DISCHARGED AND RELEASED IN FULL, (II) ON

17 THE EFFECTIVE DATE, THE RIGHTS AND INTERESTS OF ALL HOLDERS OF OLD EQUITY

18 INTERESTS SHALL BE TERMINATED, CANCELED AND OF NO FORCE AND EFFECT, AND

19 (III) ALL PERSONS SHALL BE PRECLUDED FROM ASSERTING AGAINST THE DEBTORS,

20 REORGANIZED DEBTOR, HALLETT ENTITY, THEIR SUCCESSORS, OR ANY OF THEIR

21 ASSETS OR PROPERTIES, ANY OTHER OR FURTHER CLAIMS OR EQUITY INTERESTS

22 BASED UPON ANY ACT OR OMISSION, TRANSACTION OR OTHER ACTIVITY OF ANY

23 KIND OR NATURE THAT OCCURRED BEFORE THE EFFECTIVE DATE, AS WELL AS ANY

24 DEBT OF A KIND SPECIFIED IN BANKRUPTCY CODE SECTIONS 502(G), 502(H), OR 502(I),

25 IRRESPECTIVE OF WHETHER (X) A PROOF OF CLAIM BASED ON SUCH A DEBT HAS

26 BEEN FILED, OR DEEMED TO HAVE BEEN FILED, UNDER BANKRUPTCY CODE SECTIONS

27 501 OR 1111(a), (Y) SUCH CLAIM IS ALLOWED UNDER BANKRUPTCY CODE SECTION 502,

28 OR (Z) THE HOLDER OF THE CLAIM HAS ACCEPTED THE PLAN.

(d)     THE DISCHARGE OF THE DEBTORS AND REORGANIZED DEBTOR, AS SET FORTH IN THIS SECTION 11.1 OR AS OTHERWISE SET FORTH IN THIS PLAN, SHALL NOT RELEASE OR DISCHARGE HALLETT FROM ANY PERSONAL OBLIGATIONS HE MAY HAVE TO ANY SECURED LENDER OR OTHER CREDITOR UNDER ANY PERSONAL GUARANTY OR OTHERWISE.

11.2    Binding Effect of Plan/Injunction.

(a)     UPON THE EFFECTIVE DATE, BANKRUPTCY CODE SECTION 1141 SHALL BECOME APPLICABLE WITH RESPECT TO THE PLAN AND THE PLAN SHALL BE BINDING ON ALL PARTIES TO THE FULLEST EXTENT PERMITTED BY BANKRUPTCY CODE SECTION 1141(A).  IN ACCORDANCE WITH BANKRUPTCY CODE SECTION 1141, ALL OF THE DEBTORS' PROPERTY SHALL BE VESTED IN THE REORGANIZED DEBTOR FREE AND CLEAR OF ALL CLAIMS, LIENS AND INTERESTS OF CREDITORS AND EQUITY INTEREST HOLDERS AND THE HALLETT PROPERTIES SHALL BE VESTED IN THE HALLETT ENTITY FREE AND CLEAR OF ALL CLAIMS, LIENS AND INTERESTS OF CREDITORS AND EQUITY INTEREST HOLDERS.

(b)     UPON THE EFFECTIVE DATE, ALL PERSONS AND ENTITIES SHALL BE PERMANENTLY ENJOINED BY THE PLAN FROM (I) COMMENCING OR CONTINUING ANY ACTION, EMPLOYING ANY PROCESS, ASSERTING OR UNDERTAKING AN ACT TO COLLECT, RECOVER, OR OFFSET, DIRECTLY OR INDIRECTLY, ANY CLAIM, RIGHTS, CAUSES OF ACTION, LIABILITIES, OR INTERESTS IN OR AGAINST ANY PROPERTY DISTRIBUTED OR TO BE DISTRIBUTED UNDER THE PLAN, OR VESTED IN THE REORGANIZED DEBTOR AND/OR IN THE HALLETT ENTITY, BASED UPON ANY ACT, OMISSION, TRANSACTION, OR OTHER ACTIVITY THAT OCCURRED BEFORE THE EFFECTIVE DATE, (II) CREATING, PERFECTING OR ENFORCING ANY LIEN OR ENCUMBRANCE AGAINST ANY PROPERTY DISTRIBUTED OR TO BE DISTRIBUTED UNDER THE PLAN OTHER THAN AS PERMITTED UNDER THE PLAN, AND (III) WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, ASSERTING ANY CLAIMS AGAINST THE REORGANIZED DEBTOR, HALLETT ENTITY OR REORGANIZED DEBTOR PARENT

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

BASED ON SUCCESSOR LIABILITY OR SIMILAR OR RELATED THEORY, EXCEPT TO THE EXTENT A PERSON OR ENTITY HOLDS AN ALLOWED CLAIM UNDER THE PLAN AND IS ENTITLED TO A DISTRIBUTION AND/OR LIEN UNDER THE PLAN IN ACCORDANCE WITH ITS TERMS, AND TO ENFORCE ITS RIGHTS TO DISTRIBUTION UNDER THE PLAN.

(c)     ON AND AFTER THE EFFECTIVE DATE, EACH HOLDER OF ANY CLAIM AGAINST OR INTEREST IN DEBTORS IS PERMANENTLY ENJOINED FROM TAKING OR PARTICIPATING IN *ANY* ACTION THAT WOULD INTERFERE OR OTHERWISE HINDER DEBTOR FROM IMPLEMENTING THIS PLAN, THE CONFIRMATION ORDER OR ANY OPERATIVE DOCUMENTS IN ACCORDANCE WITH THE TERMS THEREOF.

11.3    <u>Exculpation</u>.    None of the Releasees nor any of their respective Representatives shall have or incur any liability to any Holder of a Claim against or Interest in Debtors, or any other party-in-interest, or any of their Representatives, or any of their successors or assigns, for any act, omission, transaction or other occurrence in connection with, relating to, or arising out of the Chapter 11 Cases, the pursuit of confirmation of this Plan, or the consummation of this Plan, except and solely to the extent such liability is based on fraud, gross negligence or willful misconduct.  The Releasees shall be entitled to reasonably rely upon the advice of counsel with respect to any of their duties and responsibilities under this Plan or in the context of the Chapter 11 Cases.  No Holder of a Claim against or Interest in Debtors, or any other party-in-interest, including their respective Representatives, shall have any right of action against the Releasees or any of their Representatives, for any act, omission, transaction or other occurrence in connection with, relating to, or arising out of, the Chapter 11 Cases, the pursuit of confirmation of this Plan, the consummation of this Plan or the administration of this Plan, except to the extent arising from fraud.  Nothing in this Section 11.3 shall be deemed an exculpation by any Releasor of any Releasee or any of its Representatives for any acts, omissions, transactions, events or other occurrences taking place after the Effective Date or an exculpation by Secured Lenders or any other party in connection with any obligations with respect to the Refinanced Secured Loans or any amounts owed under any Refinanced Secured Loan Documents (if and where applicable).

///

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

11.4.   Releases.  As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, each Releasor will be deemed to release, waive and forever discharge all Released Liabilities against each Releasee and each Releasee's respective Representatives; provided, however, that, the releases provided in this Section 11.4 shall not constitute a release of any liability based on willful misconduct, gross negligence or fraud; provided, further, that nothing herein shall be deemed to constitute a release (a) by any Releasor of any Releasee or any of its Representatives for any acts, omissions, transactions, events or other occurrences taking place after the Effective Date, (b) by Secured Lenders in connection with any obligations with respect to the Refinanced Secured Loans or any amounts owed under the Refinanced Secured Loan Documents; (c) by Secured Lenders or other Creditors in connection with any personal guaranty of their Claims by any person other than the Debtors; and provided, further, that any party who is rightly included in the definition of Releasee that challenges the Plan or its implementation shall no longer be classified as a Releasee.

11.5.   Injunctions.

(a)   Injunction Against Releasors.  All of the Releasors, along with any of their successors or assigns, are permanently enjoined, from and after the Effective Date, from (i) commencing or continuing in any manner any action or other proceeding of any kind against the Releasees or any of their respective Representatives in respect of any Released Liabilities, (ii) enforcing, attaching, collecting or recovering by any manner or means of any judgment, award, decree or order against the Releasees or any of their respective Representatives in respect of any Released Liabilities, (iii) creating, perfecting, or enforcing any encumbrance of any kind against the Releasees or any of their respective Representatives in respect of any Released Liabilities, or (iv) asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from the Releasees or any of their respective Representatives or against the property or interests in property of the Releasees or any of their respective Representatives, in respect of any Released Liabilities; provided, however, that nothing contained herein shall preclude such Releasors from exercising their rights pursuant to and consistent with the terms hereof and the contracts, instruments, releases and other agreements and documents delivered under or in connection with this Plan; provided, further, that nothing contained

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

herein shall be deemed to enjoin any Releasor from taking any action against any Releasee or any of its Representatives based on the release exceptions contained in Section 11.4 of this Plan.

(b)    Injunction Protecting Exculpation of Releasees.  All Holders of Claims against or Interests in Debtors and any other parties-in-interest, along with any of their Representatives and any of their successors or assigns are permanently enjoined, from and after the Effective Date, from (i) commencing or continuing in any manner any action or other proceeding of any kind against Releasees or any of their respective Representatives in respect of any potential liability for which exculpation is granted pursuant to Section 11.3 of this Plan, (ii) enforcing, attaching, collecting or recovering by any manner or means of any judgment, award, decree or order against Releasees or any of their respective Representatives in respect of any potential liability for which exculpation is granted pursuant to Section 11.3 of this Plan, (iii) creating, perfecting, or enforcing any encumbrance of any kind against Releasees or any of their respective Representatives in respect of any potential liability for which exculpation is granted pursuant to Section 11.3 of this Plan, or (iv) asserting any right of setoff, subrogation or recoupment of any kind against any Releasee or any of their respective Representatives or against the property or interests in property any Releasee or any of their respective Representatives, in respect of any potential liability for which exculpation is granted pursuant to Section 11.3 of this Plan; provided, however, that nothing contained herein shall preclude any Holder or other party-in-interest from exercising its rights pursuant to and consistent with the terms hereof and the contracts, instruments, releases and other agreements and documents delivered under or in connection with this Plan.

(c)    Injunction Against Interference With Plan.    Upon the Effective Date, all Holders of Claims against or Interests in Debtors and their respective Representatives and any of their successors or assigns shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan.

11.6.   Adequate Protection Liens; Cash Collateral Orders.

(a)    As of the Effective Date, any replacement Liens granted as adequate protection pursuant to the terms of any Cash Collateral Orders shall be deemed to be terminated, discharged, eliminated and of no further force and effect;

///

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

(b)     As of the Effective Date, Debtors' obligations under all Cash Collateral Orders shall be deemed to be fully satisfied, released, discharged and terminated, and such Cash Collateral Orders shall be of no further force and effect.

11.7   Custodian Orders.  As of the Effective Date, all Custodian Orders shall be deemed to be terminated, each of the Custodians shall no longer be permitted to continue in possession of the respective Property or Properties for which it was appointed as Custodian and, to the extent not already done, on or before the Effective Date, each Custodian shall turn over to the Reorganized Debtor (for disposition in accordance with this Plan) possession of the Property or Properties in its possession (along with any Rents thereof,  security deposits, proceeds, product, offspring, rents or profits of such Property, funds anywhere held by the Custodian with respect to any of the foregoing, and all bank account records with respect to any bank accounts in which any such funds are held by the Custodian).

11.8   DIP Loan and Liens.  As of the Effective Date, the DIP Loan shall be fully paid and satisfied, the DIP Lending Order shall terminate and all Liens granted under the DIP Lending Order, as well as Debtors' obligations under the DIP Loan and DIP Lending Order, shall be deemed to be terminated, discharged, eliminated and of no further force and effect.

11.9   Termination of Debt Instruments.  On the Effective Date, all instruments evidencing indebtedness of Debtors held by Holders of Claims that are Impaired by this Plan or have been paid in full pursuant thereto shall be deemed canceled as against Debtors.

11.10   Judgments Void.  Any judgment obtained before or after the Effective Date in any court other than the Bankruptcy Court shall be null and void as a determination of liability of the Debtors, Reorganized Debtor and/or Hallett Entity with respect to any debt treated by the Plan.

11.11   Revesting of Assets in Reorganized Debtor.  Except as otherwise expressly provided herein or in the Confirmation Order, on the Effective Date, but retroactive to the Confirmation Date, without any further action, the Reorganized Debtor will be vested with all of the property of the Estate, wherever situate, free and clear of all Claims, Liens and Old Equity Interests (except for Liens provided or authorized pursuant to this Plan and Permitted Encumbrances).  Without limiting the generality of the foregoing, on and after the Effective Date, the Reorganized Debtor shall be vested with all of the property of the Estate, wherever situate, free and clear of any Claims based on any form of successor

liability or similar or related theory of liability. On and after the Effective Date, (i) the Reorganized Debtor shall be free of any restrictions imposed by the Bankruptcy Code or Bankruptcy Court, may operate its business and may use, acquire or dispose of its assets (including the Properties) free of any restrictions imposed by the Bankruptcy Code and the Bankruptcy Rules and without supervision or approval by the Bankruptcy Court, other than the obligations set forth in this Plan, or the Confirmation Order. Without limiting the generality of the foregoing and except as otherwise expressly provided herein or in the Confirmation Order, any Causes of Action, will be preserved and retained solely for the Reorganized Debtors' commencement, prosecution, use and benefit.

11.12   Preservation of Causes of Action. Pursuant to Bankruptcy Code section 1123(b), Debtors as Reorganized Debtor shall retain and reserve the right to enforce all rights to commence and pursue Causes of Action whether arising prior to or after the Petition Dates, and whether pending as of or Filed after the Effective Date, in any court or other tribunal. Unless a Cause of Action is expressly waived, relinquished, released, compromised or settled in the Plan, or any Final Order, the Debtors on behalf of themselves and as the Reorganized Debtor expressly reserve all Causes of Action for later adjudication and, therefore, no preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches shall apply to any Causes of Action upon Confirmation or the Effective Date. No entity may rely on the absence of a specific reference in the Plan, any Plan Supplement, or the Disclosure Statement to any Cause of Action against them as an indication that the Debtors or the Reorganized Debtor, will not pursue any and all available Causes of Action against them. The Debtors and the Reorganized Debtor, expressly reserve all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in the Plan.

11.13   Maintenance of Administrative Claim Status Post Discharge. Notwithstanding any discharge granted to the Debtors, Allowed Administrative Claims shall maintain their administrative priority status under Bankruptcy Code section 507(a)(2) until paid in full.

11.14   No Limitation on Effect of Confirmation. Nothing contained in the Plan or the Disclosure Statement will limit, waive or restrict in any way the effect of Confirmation as set forth in Bankruptcy Code section 1141. Confirmation will bind the Debtors, all Creditors, Equity Interest

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

Holders and other parties in interest to the provisions of the Plan, whether or not the Claim or Equity Interest of such Creditor or Equity Interest Holder is Impaired under the Plan and whether or not such Creditor or Equity Interest Holder has accepted the Plan and whether or not a proof of Claim or Equity Interest has been filed or deemed to have been filed under Bankruptcy Code sections 501 or 1111(a), or such Claim or Equity Interest is allowed under Bankruptcy Code section 502.

## ARTICLE XII

## MISCELLANEOUS PROVISIONS

12.1.   Modification of this Plan.

(a)     Debtors may alter, amend or modify the Plan at any time before the entry of the Confirmation Order, provided that the Plan, as altered, amended or modified, satisfies the conditions of Bankruptcy Code sections 1122 and 1123, and Debtors shall have complied with Bankruptcy Code section 1125. However, the Bankruptcy Court may require a new disclosure statement and/or re-voting on the Plan if Debtors modify the plan before Confirmation.

(b)     The Debtors may also seek to alter, amend or modify the Plan at any time after Confirmation so long as (1) the Plan has not been substantially consummated, (2) as altered, amended or modified the Plan satisfies the conditions of Bankruptcy Code section 1122 and 1123, and (3) the Bankruptcy Court authorizes the proposed modification after notice and a hearing under Bankruptcy Code section 1129.

(c)     A Holder of a Claim that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended or modified, if the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claim of such Holder. Prior the Effective Date, Debtors may make appropriate technical non-material modifications to the Plan or the Disclosure Statement without further order or approval of the Bankruptcy Court, provided that such technical modifications do not adversely affect the treatment of Holders of Claims or Equity Interest.

(d)     Debtors further reserve the right to modify the treatment of any Allowed Claims at any time after the Effective Date of the Plan upon the consent of the Creditor whose Allowed Claim treatment is being modified, so long as no other Creditors are materially adversely affected.

VG1 82210v3 04/18/11

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

(e)     Debtors reserve the right, in accordance with the Bankruptcy Code, to amend, amend or modify this Plan before or after the Confirmation Date, including to make any amendments or modifications to satisfy the requirements of Bankruptcy Code section 1129(b), if necessary.

12.2.   Notices.  Except as otherwise set forth in Section 12.3 below, all notices, requests, elections or demands in connection with this Plan, including any change of address of any Holder of a Claim for the purposes of receiving any Distributions under this Plan, shall be in writing and shall be delivered personally or by facsimile, electronic mail or overnight courier (confirmed by first class mail or express mail) or mailed by first class mail.  Such notice shall be deemed to have been given when received or, if mailed by first class mail, seven (7) days after the date of mailing, or if express mailed, the next Business Day following the date of mailing and addressed to the following:

(a)     If to Debtors, to:

Whitton Corporation and South Tech Simmons 3040, LLC
1999 Whitney Mesa, Suite 120
Henderson, Nevada 89014
Attention:  Tom Hallett
Email:  tom.hallett@south-tech.com
Facsimile:  (702) 895-7508

with copies to:

Fox Rothschild LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
Attention:  Hal L. Baume, Esq.
Email:  hbaume@foxrothschild.com; and
Attention:  Brett A. Axelrod
Email:  baxelrod@foxrothschild.com
Facsimile:  (702) 597-5503

(b)     If to Bank of America, to:

Lionel Sawyer & Collins
1700 Bank of America Plaza
300 South Fourth Street
Las Vegas, NV 89101
Attention:  Rodney M. Jean
Email:  rjean@lionelsawyer.com
Attention:  Mohamed A. Iqbal, Jr.
Email:  miqbal@lionelsawyer.com
Facsimile:  (702) 383-8845

with copies to:

Santoro, Driggs, Walch, Kearney, Holley & Thompson
400 South Fourth Street, Third Floor
Las Vegas, NV 89101
Attention: Richard F. Holley
Email: rholley@nevadafirm.com
Attention: Ogonna M. Atamoh
Email: oatamoh@nevadafirm.com
Facsimile: (702) 791-1912

(c)     If to Wells Fargo Bank, N.A. and/or LSREF2 Nova Investments II, LLC, to:

Snell & Wilmer L.L.P.
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, NV 89169
Attention: Robert R. Kinas
Email: rkinas@swlaw.com
Attention: Claire Y. Dossier
Email: cdossier@swlaw.com
Facsimile: (702) 784-5252

(d)     If to Bank of Las Vegas, to:

Kolesar & Leatham, Chtd.
3320 West Sahara, Suite 380
Las Vegas, NV 89102
Attention: Nile Leatham
Email: nleatham@klnevada.com
Attention: Joseph G. Went
Email: jwent@duanemorris.com
Facsimile: (702) 362-9472

(e)     If to German American Capital Corporation; GSMS 2004-GG2
Sparks Industrial, LLC; or JPMCC 2006-CIBC14 Simmons Street, LLC, to:

Duane Morris LLP
100 North City Parkway, Suite 1560
Las Vegas, NV 89106
Attn: Lucas M. Gjovig
Email: lmgjovig@duanemorris.com
Facsimile: (702) 385-6862

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

with copies to:

Duane Morris LLP
30 South 17th Street
Philadelphia, PA 19103
Attn: Wendy K. Simkulak
Email: wmsimkulak@duanemorris.com
Facsimile: (215) 979-1020

and

Duane Morris LLP
Suite 2200
One Market Plaza, Spear Tower
San Francisco, CA 94105-1127
Attn: Phillip Wang
Email: pwang@duanemorris.com
Facsimile: (415) 358-4725

All notices and requests to Holders of Claims of any Class shall be sent to them at their known address. Any Holder of a Claim of any Class may designate in writing any other address for purposes of this Section 12.2, which designation shall be effective upon receipt.

12.3.    Limitation of Notice.  Debtor shall give the following notice with regard to the following matters, which notice shall be deemed to be good and sufficient notice of such matters, with no requirement for any additional or further notice:

(a)    Notice of Entry of Confirmation Order.  Notice of the entry of the Confirmation Order shall be sufficient if mailed to all known Holders of Claims (which have not become Disallowed Claims) and Interests within five (5) Business Days of the entry of Confirmation Order.

(b)    Post-Confirmation Date Service List - Additional Persons Entitled to Notice. Except as set forth in Section 12.2 hereof, from and after the date the Confirmation Order becomes a Final Order, notices of appearances and demands for service of process Filed with the Bankruptcy Court prior to such date shall no longer be effective, and no further notices, other than Notice of Confirmation Order, shall be required to be sent to such parties, unless such parties File a new notice of appearance and demand for service of process dated subsequent to the Effective Date, which subsequent notice and demand must be Filed with the Bankruptcy Court and served upon the Persons and Entities listed in Section 12.2 above.

///

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

(c)    Subordination.  Nothing in this Plan shall in any way be deemed to have Impaired, altered or otherwise affected the rights of Debtors or Reorganized Debtor to enforce any right of subordination that may exist by agreement or otherwise, including under Bankruptcy Code section 510.

12.4.    Requisite Secured Lender's Approval.  Wherever the approval of a Secured Lender with respect to a Secured Loan or Refinanced Secured Loan is referred to anywhere in this Plan, the Person or Entity seeking such approval shall be entitled to direct the request for approval solely to that Secured Lender named herein with respect to such Secured Loan or Refinanced Secured Loan on behalf of other Holders of Claims with respect to such Secured Loan or Refinanced Secured Loan ("Related Secured Claim Holders") and such Secured Lender shall then be responsible for determining and communicating whether or not such approval has or has not been obtained. Any statement by such Secured Lender to any other Person or Entity concerning any consent or approval of the Secured Lender and Related Secured Claim Holders required hereunder may be relied upon by such Person or Entity.

12.5.    Headings.  The headings used in this Plan are inserted for convenience only and neither constitute a portion of this Plan nor in any manner affect the provisions of this Plan.

12.6.    Exhibits.  All exhibits and documents included in the Plan Supplement are incorporated into and are a part of this Plan, as if set forth in full in this Plan.  Except as otherwise provided in this Plan, such exhibits and documents included in the Plan Supplement shall be Filed with the Bankruptcy Court on or before the Plan Supplement Filing Date.  After the exhibits and documents are Filed, copies of such exhibits and documents shall have been available upon written request to Debtors' counsel at the address above or by downloading such exhibits and documents from the Bankruptcy Court's website at http://www.nvb.uscourts.gov.  To the extent any exhibit or document is inconsistent with the terms of this Plan, unless otherwise ordered by the Bankruptcy Court, the non-exhibit or non-document portion of this Plan shall control.

12.7.    Nonseverability of Plan Provisions.  If, prior to Confirmation, any term or provision of this Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power, at the request of Debtors and subject to the consent of any party adversely affected thereby, to alter and interpret such term or provision to make it valid or enforceable to the

maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of this Plan will remain in full force and effect and will in no way be affected, Impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (a) valid and enforceable pursuant to its terms; (b) integral to this Plan and may not be deleted or modified without the consent of Debtors and any other Person or Entity affected by such provision; and (c) nonseverable and mutually dependent.

12.8.    Waiver or Estoppel. Each Holder of a Claim or an Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, Secured or not subordinated by virtue of an agreement made with Debtor or its counsel, Investors or their counsel, or any other Entity, if such agreement was not disclosed in this Plan, the Disclosure Statement, or papers Filed with the Bankruptcy Court prior to the Confirmation Date.

12.9.    Conflicts.

(a)    To the extent that any provision of the Disclosure Statement, the Plan Supplement (other than any amendments to the Plan or any Refinanced Secured Loan Documents), or any other order (other than the Confirmation Order) referenced in this Plan (or any exhibits, schedules, appendices, supplements or amendments to any of the foregoing), conflict with or are in any inconsistent with any provision of this Plan, this Plan shall govern and control, unless expressly set forth herein.

(b)    From and after the Effective Date, to the extent that any provision of this Plan, the Disclosure Statement, the Plan Supplement, or any other order (other than the Confirmation Order) referenced in this Plan (or any exhibits, schedules, appendices, supplements or amendments to any of the foregoing), conflict with or are in any way inconsistent with any provision of any Refinanced Secured Loan Document, then such Refinanced Secured Loan Document shall govern and control, unless expressly set forth therein.

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

12.10.  <u>Computation of Time</u>.  In computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

12.11.  <u>Governing Law</u>.  Except to the extent that the Bankruptcy Code or any other Federal law is applicable, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Nevada.

12.12.  <u>Successors and Assigns</u>.  The rights and obligations of any Person or Entity named or referred to in this Plan shall be binding upon, and shall inure to the benefit of, the successors and assigns of such Person or Entity.

12.13.  <u>Good Faith</u>.  Confirmation of the Plan will constitute a finding that the Plan has been proposed in good faith and in compliance with all applicable provisions of the Bankruptcy Code.

12.14.  <u>Post Confirmation Conversion or Dismissal</u>.  A creditor or party in interest may bring a motion to convert or dismiss the Chapter 11 Cases under Bankruptcy Code section 1112(b), after the Plan is confirmed, if there is a default in performance of the Plan or if cause exists under Bankruptcy Code section 1112(b).  If the Bankruptcy Court orders the case converted to chapter 7 after the Plan is confirmed, then all property that had been property of the Estate, and that has not been disbursed or distributed pursuant to the Plan, will revest in the chapter 7 estate, and the automatic stay will be re-imposed upon the re-vested property only to the extent that relief from stay was not previously granted by the Bankruptcy Court during these Chapter 11 Cases.  In addition, any Allowed  Administrative Claims which are not paid on the Effective Date shall continue to be entitled to administrative priority, under Bankruptcy Code section 507(a)(1) in any such subsequent Chapter 7 case to which this case is converted.

12.15.  <u>Post Confirmation Quarterly Fees</u>.  US Trustee Fees continue to be payable to the Office of the United States Trustee post-confirmation until such time as the case is converted, dismissed, or closed pursuant to Final Decree.

12.16.  <u>Entire Agreement</u>.  The Plan, as described herein, the Disclosure Statement and exhibits thereto, and the Plan Supplement set forth the entire agreement and understanding of the parties hereto relating to the subject matter hereof and supersede all prior discussions and documents.  No party hereto shall be bound by any terms, conditions, definitions, warrants, understandings or representations with

respect to the subject matter hereof, other than as in expressly provided for herein or as may hereafter be agreed by the parties in writing.

DATED this 18th day of April 2011.

**WHITTON CORPORATION,**
a Nevada corporation


By_____*s/Tom Hallett*_____
        Tom Hallett, President

**SOUTH TECH SIMMONS 3040, LLC,**
a Nevada limited liability company


By_____*s/Tom Hallett*_____
        Tom Hallett, President


Respectfully submitted by:

**FOX ROTHSCHILD LLP**

By_____*s/Hal L. Baume*_____
    HAL L. BAUME, ESQ.
    *Admitted Pro Hac Vice*
    BRETT A. AXELROD, ESQ.
    Nevada Bar No. 5859
    ANNE M. LORADITCH, ESQ.
    Nevada Bar No. 8164
    MICAELA RUSTIA, ESQ.
    Nevada Bar No. 9676
    3800 Howard Hughes Parkway, Suite 500
    Las Vegas, Nevada 89169
*Counsel for Debtors*

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

# EXHIBIT A

## INFORMATION RE PROPERTIES

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

| PROPERTY | VALUE PER DEBTOR | NEW BORROWER FOR PROPERTY | SECURED LENDER | REFINANCED SECURED LOAN PRINCIPAL |
|---|---|---|---|---|
| BLV Cheyenne | $2,200,000 | Reorganized Debtor | Bank of Las Vegas | $2,200,000 |
| BLV Mountain Vista | $1,168,000 | Hallett Entity | Bank of Las Vegas | $1,168,000 |
| BLV Dean Martin | $1,975,000 | Hallett Entity | Bank of Las Vegas | $700,000 |
| BLV Mesquite | $1,275,000 | NONE - to be transferred to Bank of Las Vegas in reduction of BLV Dean Martin Loan | Bank of Las Vegas | $0 |
| BofA | $2,115,000 | Reorganized Debtor | Bank of America | Property Value |
| German American Brooks | $1,000,000 | NONE - to be transferred to German American | German American Capital Corporation | $0 |
| German American Glendale | $1,580,000 | Reorganized Debtor | German American Capital Corporation | Property Value |
| German American Greg | $1,900,000 | Reorganized Debtor | German American Capital Corporation | Property Value |
| GSMS | $1,780,000 | Reorganized Debtor | GSMS 2004, GG2 Sparks Industrial, LLC | Property Value |
| Wells Cheyenne | N/A | NONE – to be transferred to Wells/Wells Fargo | Wells Fargo | $0 |
| Wells Dean Martin | $500,000 | Reorganized Debtor | Wells Fargo | Property Value |
| Wells Russell | $1,250,000 | Reorganized Debtor | Wells Fargo | Property Value |
| Wells Seven Hills | $3,080,000 | Reorganized Debtor | Wells Fargo | Property Value |

| PROPERTY | VALUE PER DEBTOR | NEW BORROWER FOR PROPERTY | SECURED LENDER | REFINANCED SECURED LOAN PRINCIPAL |
|---|---|---|---|---|
| Nova | $2,400,000 | Reorganized Debtor | LSREF2 Nova Investments II, LLC | Property Value |
| JPMCC | $2,000,000 | Reorganized Debtor | JPMCC 2006-CIB 14 Simmons Street, LLC | Property Value |
| Umbra | $300,000 | NONE – to be transferred to Umbra | Umbra Partners, LLC | $0 |

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)