DOMINICA C. ANDERSON (SBN 2988)
LUCAS M. GJOVIG (SBN 10053)
**DUANE MORRIS LLP**
100 North City Parkway, Suite 1560
Las Vegas, NV 89106
Telephone: 702.868.2600
Facsimile:  702.385.6862
E-Mail: dcanderson@duanemorris.com
         lmgjovig@duanemorris.com

PHILLIP K. WANG (CA 186712)
*Admitted Pro Hac Vice*
**DUANE MORRIS LLP**
Spear Tower
One Market Plaza, Suite 2200
San Francisco, CA  94105
Telephone: 415.957.3000
Facsimile: 415.957.3001
E-Mail:  pkwang@duanemorris.com

WENDY M. SIMKULAK (PA 89452)
*Admitted Pro Hac Vice*
**DUANE MORRIS LLP**
30 South 17th Street
Philadelphia, PA  19103
Telephone: 215.979.1000
Facsimile:  215.979.1020
E-Mail:  wmsimkulak@duanemorris.com

Attorneys for Secured Creditor GSMS 2004-GG2
SPARKS INDUSTRIAL, LLC

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF NEVADA

In re

WHITTON CORPORATION[1], a Nevada corporation,

☒ Affects this Debtor
☐ Affects all Debtors
☐ Affects South Tech Simmons 3040C, LLC,

Debtors.

---

GSMS 2004-GG2 SPARKS INDUSTRIAL, LLC

Movant,

v.

SOUTH TECH SIMMONS 3040C, LLC, a Nevada corporation,

Respondent.

Case No. 10-32680-bam
Case No. 10-32857-bam

Chapter 11

Jointly Administered Under
Case No. 10-32680-bam

**MOTION OF GSMS 2004-GG2 SPARKS INDUSTRIAL, LLC FOR (I) RELIEF FROM STAY PURSUANT TO 11 U.S.C. § 362(d)(2) AND (d)(1), OR (II) IN THE ALTERATIVE, (A) DETERMINATION THAT DEBTOR IS SUBJECT TO SINGLE ASSET REAL ESTATE REQUIREMENTS OF 11 U.S.C. § 362(d)(3) AND (B) FOR RELIEF FROM STAY THEREUNDER OR (III) IN THE ALTERNATIVE, FOR ADEQUATE**

---

[1] Debtor was formerly doing business as the following entities: South Tech Brooks 2750, LLC, fdba Desert Pacific Properties, L.L.C., fdba South Tech Partners, LLC, fdba South Tech Real Estate Services, LLC, fdba South Tech-Polaris, LLC, fdba South Tech Dean Martin 7625, LLC, fdba South Tech Annie Oakley, LLC, fdba TEH Investments, LLC, fdba South Tech Seven Hills, LLC, fdba South Tech Construction Corp., fdba South Tech Cheyenne 2475, LLC, fdba South Tech Cheyenne West 2455A LLC, fdba South Tech Kleppe, LLC fdba, South Tech Stephanie 1000, LLC, fdba South Tech Development, LLC, fdba South Tech-Russell, LLC, fdba South Tech Glendale 155, LLC, fdba South Tech Greg, LLC, fdba South Tech – Rio, LLC, fdba South Tech – Diablo, LLC

|   |   |
|---|---|
| 1 | **PROTECTION PURSUANT TO 11 U.S.C. § 363(e)** |
| 2 | **Hearing Date:** June 20, 2011 |
| 3 | **Hearing Time:** 9:30 a.m. |
| 4 | **Estimated Time for Hearing:** 30 minutes |
| 5 | **Hearing Location:** |
| 6 | United States Bankruptcy Court<br>Foley Federal Building, Courtroom No. 3 |
| 7 | 300 Las Vegas Blvd South, Third Floor<br>Las Vegas, Nevada 89101 |

GSMS 2004-GG2 Sparks Industrial, LLC ("Movant" or "Secured Creditor"), by and through its counsel, Duane Morris LLP, hereby brings this *Motion for (I) Relief from Stay pursuant to 11 U.S.C. § 362(d)(2) and (d)(1), or (II) in the Alternative, (a) Determination that Debtor is Subject to Single Asset Real Estate Requirements of 11 U.S.C. § 362(d)(3) and (b) for Relief from Stay thereunder or (III) in the Alternative, for Adequate Protection Pursuant to 11 U.S.C. § 363(e)* (the "Motion") to allow Secured Creditor to exercise any and all of its available rights and remedies in and to its collateral, which consists of certain real and personal property located at 1215 & 1275 Kleppe Lane and 1455 Deming Way, City of Sparks, Washoe County, Nevada (together with other real property related thereto, the "Real Property" and together with the other collateral as more specifically defined herein, the "Property").

This Motion is filed against Whitton Corporation ("Debtor" or "Borrower") and is supported by the accompanying Memorandum of Points and Authorities, the § 362 Information Sheet required by LR 4001(a)(2), the Declaration of D'Juan O'Donald, filed concurrently herewith (the "Declaration"), all pleadings and papers of record, and any oral argument the Court may entertain.

1 | DATED: May 4, 2011

DUANE MORRIS LLP

By: /s/ Lucas M. Gjovig
    Dominica C. Anderson (SBN 2988)
    Lucas M. Gjovig (SBN 10053)

Attorneys for Secured Creditor and Movant
JPMCC 2006-CIBC14 SIMMONS STREET, LLC

DM3\1761996.2 R1501/00093

3

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Secured Creditor holds a properly-perfected, first priority security interest in and lien on the Property.  Debtor has defaulted under the Loan Documents (as defined herein).

As a preliminary matter, the automatic stay should be immediately terminated pursuant to 11 U.S.C. § 362(d)(2) and (d)(1) and Federal Rule of Bankruptcy Procedure 4001(a)(3).  Specifically, the Court should terminate the automatic stay pursuant to Section 362(d)(2) because Debtor does not have equity in the Property and the Property is not necessary to an effective reorganization.  Additionally, "cause" exists to terminate the stay pursuant to Section 362(d)(1) because Secured Creditor is not adequately protected and Debtor has defaulted under the Loan Documents.  Alternatively, the Court should find that the Debtor is subject to the single asset real estate requirements set forth in 11 U.S.C. § 362(d)(3) and enter an order providing that the automatic stay terminates, without the need for further action or order, automatically 30 days from the date of such order.  If the court does not grant relief from the stay, Secured Creditor is entitled to adequate protection under 11 U.S.C. § 363(e).

## II.    JURISDICTION

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(G) and is a contested matter pursuant to Rule 9014 of the Federal Rules of Bankruptcy Procedure.

## III.    RELEVANT FACTS AND BACKGROUND

Secured Creditor has a properly-perfected, first priority security interest in and lien on the Property.  Debtor has defaulted under the Loan Documents.

1.    **The Loan Documents**

   a.    On or about June 23, 2004, Kleppe Industrial Park A, B & E, LLC ("Original Borrower") executed that certain "Promissory Note" (the "Note") in favor of Skymar Capital Corporation ("Original Lender"), pursuant to which Original Borrower promised to pay the principal sum of $2,900,000.00 with interest thereon.[2]

---

[2] Copies of the documents referenced herein are attached to the Declaration.

b.  On or about June 23, 2004, Original Borrower executed that certain "Deed of Trust, Assignment of Rents and Security Agreement" (the "Deed of Trust") to secure, among other things, "the repayment of the indebtedness evidenced by [Original Borrower's] note . . .[and] the performance of the covenants and agreements. . . contained in any . . . Loan Document." The Deed of Trust encumbers the Property. The Deed of Trust was duly recorded with the Washoe County Recorder on June 23, 2004 as document number 3057978.

c.  On or about June 23, 2004, Original Borrower further executed that certain "Assignment of Leases and Rents" (the "Assignment of L&R"). The Assignment of L&R was duly recorded with the Washoe County Recorder on June 23, 2004 as document number 3057979.

d.  As set forth in the fourth paragraph of the recorded Deed of Trust, Original Borrower assigned all of its "right, title and interest in, to and under any and all leases now or hereinafter in existence . . . together with all rents" relating to or arising from the "Property" as more specifically defined in the Deed of Trust to "[Original Lender], together with its successors, assigns and transferees." Similarly, pursuant to paragraph 1 of the Assignment of L&R, Original Borrower assigned to Original Lender all "Leases, together with all rents" and related property interests as more specifically defined therein.

e.  Pursuant to § 18 of the Deed of Trust and paragraph 1 of the Assignment of L&R, so long as Original Borrower was not in default under the Note or any of the Loan Documents, Original Borrower was entitled to collect and use the "Rents" "as trustee for the benefit of Lender" and to apply the "Rents" to "the sums secured by [the Deed of Trust]" and, thereafter, to the account of Original Borrower. Upon the occurrence of a default by Original Borrower, the "Rents" would be held "by [Original Borrower] as trustee for the benefit of [Original Lender] only."

f.  The Deed of Trust was intended as a security agreement within the meaning of the Uniform Commercial Code ("UCC"), and Original Lender was granted a security interest in the "Collateral" defined in the eighth paragraph of the Deed of Trust. UCC Financing Statements (including amendments and continuation) were duly filed with the Secretary of State of the State of Nevada on July 13, 2004, January 11, 2006, January 11, 2006, April 10, 2008, January 20, 2009, and December 21, 2010 as Document Numbers 2004021944-5, 2006001211-2, 2006001212-4,

2008011709-3, 2009001705-5 and 2010032361-5.  UCC Financing Statements were also recorded with the Washoe County Recorder on July 13, 2004 and on January 4, 2006 as document numbers 3057980 and 3332286.  Collectively such documents are hereafter referred to as the "Financing Statements."

        g.      Original Lender has a first priority, properly perfected lien in, on and to, among other things:  (A) the "Property," more specifically identified in the Deed of Trust, which includes, without limitation, (i) all buildings, improvements and tenements; (ii) all easements, rights, appurtenances, rents and royalties; (iii) all fixtures; and (iv) any and all other rights related to the "Property" as more particularly described and defined in the Deed of Trust; (B) the "Leases," "Rents" and "Accounts," more specifically identified in the Deed of Trust, which include, without limitation (i) all right, title and interest in, to and under any and all leases covering space in or on the Property; (ii) all rents, earnings, income, profits, benefits and advantages arising from the Property; and (iii) all reserve, deposit or escrow accounts.

        h.      The Note, Deed of Trust, Assignment of L&R, and Financing Statements, together with all other documents specifically identified therein as "Loan Documents" or the "Other Loan Documents" are hereinafter collectively referred to as the "Loan Documents."

        i.      Pursuant to an Assumption of Liability and Modification Agreement dated January 4, 2006, South Tech Kleppe, LLC ("Second Borrower") agreed to assume Original Borrower's obligations under the Loan Documents.

        j.      According to the Omnibus Declaration of Tom E. Hallett Filed in Support of First Day Motions (the "Hallett Declaration"), effective December 3, 2010, certain subsidiaries and affiliates of Debtor, including, without limitation, Second Borrower merged with and into Debtor and Debtor assumed the operations, assets, and liabilities of Second Borrower.  *See* Hallett Declaration ¶9.

        k.      Pursuant to § 33 of the Deed of Trust, Original Borrower agreed that Original Lender could at any time sell, transfer, or assign the Loan Documents or otherwise issue mortgage pass-through certificates or other securities.

l.  Following the initial loan transaction, Original Lender assigned its interest in the Loan Documents to LaSalle Bank National Association, as Trustee for the registered holders of GS Mortgage Securities Corporation II, Commercial Mortgage Pass-Through Certificates, Series 2006-CIBC14 (the "Trust").

m.  On June 23, 2004, an "Assignment of Deed of Trust, Assignment of Rents and Security Agreement" and an "Assignment of Assignment of Leases and Rents" (the "Loan Assignment") were recorded with the Washoe County Recorder as document numbers 3165775 and 3165774, respectively.

n.  Subsequently, the Trust assigned its interest in the Loan Documents to U.S. Bank National Association, in its capacity as Trustee for the Registered Holders of GS Mortgage Securities Corporation II, Commercial Mortgage Pass-Through Certificates, Series 2004-GG2 (the "Second Trust").

o.  On February 28, 2008, an "Assignment of Deed of Trust, Assignment of Leases and Rents and Security Agreement and Fixture Filing and Assignment of Assignment of Leases and Rents" (the "Second Loan Assignment") was recorded with the Washoe County Recorder as document number 3641436.

p.  On November 29, 2010, the Second Trust assigned its interest in the Loan Documents to Secured Creditor pursuant to the following documents: (i) Allonge in favor of Secured Creditor assigning the Note to Secured Creditor; (ii) Omnibus Assignment of Loan Documents; (iii) Assignment of Deed of Trust, Assignment of Rents and Security Agreement and Other Loan Documents recorded with the Washoe County Recorder on December 8, 2010 as document number 3951357; (iv) Assignment of Assignment of Leases and Rents recorded with the Washoe County Recorder on December 8, 2010 as document number 3951358.

q.  A UCC Financing Statement Amendment to reflect the assignment to Secured Creditor was duly filed with the Secretary of State of the State of Nevada on December 21, 2010 as Document Number 2010032361-5.

2. **The Defaults.**

  a. As set forth in the ninth paragraph of the Deed of Trust, the debt secured by the Deed of Trust (the "Debt") includes, without limitation, the outstanding principal amount, together with all interest accrued and unpaid thereon and all other sums due and owing under the Loan Documents.

  b. Pursuant to § 19 of the Deed of Trust, an "Event of Default" occurs upon "[a]ny failure of [Original Borrower] to pay any money as and when due under the Note or under any of the other Loan Documents."

  c. Pursuant to Section 5 of the Note, Original Borrower agreed that "[u]pon and at any time following the occurrence of any Event of Default, then at the option of the holder hereof and without notice, the entire principal amount and all interest accrued and outstanding hereunder and all other amounts outstanding under any of the Loan Documents shall at once become due and payable."

  d. Similarly, pursuant to § 19 of the Deed of Trust, the parties agreed that, upon an Event of Default, Original Lender had the following rights and remedies: (i) the right to "declare all of the sums secured by [the Deed of Trust] to be immediately due and payable without further demand;" and (ii) the right to "invoke the power of sale," including instituting nonjudicial foreclosure proceedings; and (iii) any other rights and remedies available to Original Lender pursuant to applicable law.

  e. On or about May 13, 2010, Secured Creditor's predecessor-in-interest provided written notice to Second Borrower for failing to make the March 1, 2010 and subsequent monthly payments due under the Note as well as escrow installments, late charges, and default interest.

  f. On or about June 15, 2010, Secured Creditor's predecessor-in-interest provided Second Borrower written notice of its acceleration of the outstanding Debt, and a written demand for payment of rents. The total amount due and owing from Borrower to Secured Creditor is not less than $2,766,020.55. Additional fees, costs, and interest may continue to accrue and are recoverable under the terms of the Loan Documents.

   g. Borrower's failure to pay monies due and owing under the terms of the Loan Documents constitutes an "Event of Default." Borrower's default under the Loan Documents remains uncured.

   h. As a result of Borrower's default, the maturity dates of all of the indebtedness owed under and in connection with the Loan Documents have been properly accelerated. All of the Borrower's indebtedness is now due, payable and delinquent, but has not been paid in full.

 3. **Debtor's Bankruptcy Petition**

   a. On December 5, 2010 (the "Petition Date"), Debtor filed a chapter 11 petition for relief. On December 22, 2010, the Court entered an order directing joint administration of Debtor's case with *In re South Tech Simmon 3040C, LLC*, Case No. 10-32857. The cases have not been substantively consolidated.

### IV. RELIEF REQUESTED[3]

4. Secured Creditor respectfully requests that the Court enter an order terminating the automatic stay pursuant to 11 U.S.C. § 362(d)(2) and (d)(1) permitting Secured Creditor to exercise any and all of its available rights and remedies in and to the Property and providing therein that, pursuant to Federal Rule of Bankruptcy Procedure 4001(a)(3), the Court's order takes effect immediately and the fourteen (14) day stay period set forth therein expressly does not apply.

5. Alternatively, Secured Creditor respectfully requests that this Court find that the Debtor is subject to the single asset real estate requirements set forth in 11 U.S.C. § 362(d)(3) and enter an order providing that the automatic stay terminates, without the need for further action or order, automatically 30 days from the date of such order.

6. In the further alternative, Secured Creditor respectfully requests that this Court grant Secured Creditor adequate protection in the form of periodic cash payments pursuant to 11 U.S.C. §§ 363(e) and 361.

### V. ARGUMENT

Secured Creditor holds a properly-perfected, first priority security interest in and lien on the

---

[3]  In accordance with Local Rule of Bankruptcy Procedures, 4001(a)(2), the Secured Creditor has attempted to resolve the relief requested in this Motion with the Debtor both prior to and after the Petition Date.

Property. Debtor has defaulted under the Loan Documents (as defined herein). Secured Creditor is entitled to relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(2) and (d)(1) and Federal Rule of Bankruptcy Procedure 4001(a)(3) because: (i) Debtor does not have equity in the Property and the Property is not necessary to an effective reorganization; and (ii) "cause" exists because Secured Creditor is not adequately protected and Debtor has defaulted under the Loan Documents. If this Court does not immediately terminate the stay, the Court should make a determination that the Debtor is subject to the single asset real estate requirements set forth in 11 U.S.C. § 362(d)(3) and enter an order providing that the automatic stay terminates, without the need or requirement for further action or order, automatically 30 days from the date of such order. Alternatively, if the Court does not grant relief from stay, Secured Creditor is entitled to adequate protection under 11 U.S.C. § 363(e).

**A.    Relief From The Automatic Stay Should Be Granted Pursuant To 11 U.S.C. § 362(d)(2) and (1)**

   **1.    Secured Creditor Is Entitled To Relief Pursuant To 11 U.S.C. § 362(d)(2) Because The Debtor Does Not Have Equity In The Property And The Property Is Not Necessary To An Effective Reorganization**

Pursuant to section 362(d)(2) of the Bankruptcy Code, relief with respect to the stay of an act against property should be granted if the debtor does not have equity in the property and the property is not necessary to an effective reorganization. Once the movant establishes that there is no equity in the collateral "it is the burden of the *debtor* to establish that the collateral at issue is 'necessary to an effective reorganization.'" *United Savings Assoc. of Texas v. Timbers of Inwood Forest Associates, Ltd.*, 484 U.S. 365, 375 (1988) (citation omitted; emphasis in original); *see also* 11 U.S.C. § 362(g) (movant has burden of proof on issue of debtor's equity in property; debtor has burden of proof on all other issues). In particular, the debtor must establish that there is "'a reasonable possibility of successful reorganization within a reasonable time.'" *United Savings,* 44 U.S. at 376 (citations omitted).

The Debtor's own schedules filed with this Court evidence that Debtor lacks equity in the Property. In particular, Debtor values its interest in the Real Property at $1,800,000.00. The total amount due and owing to Secured Creditor is at least $2,766,020.55 (plus accruing interest and other

charges). Thus, there is no question that Debtor lacks equity in the Property. Accordingly, Debtor must carry its burden to show that the Property is necessary for a reasonably imminent, successful reorganization. To that end, it should be noted that Debtor has not even filed a disclosure statement nor scheduled a hearing on its plan of reorganization, let alone shown that a successful reorganization will occur within a reasonable time. Moreover, Secured Creditor's deficiency claim would, upon information and belief, constitute a blocking vote among a class of general unsecured creditors and, therefore, Secured Creditor asserts that Debtor will not be able to confirm a plan. In other words, there is no possible consenting impaired class to support reorganization. Therefore, relief from stay is appropriate under 11 U.S.C. § 362(d)(2).

### 2. "Cause" Exists to Terminate the Stay Under 11 U.S.C. § 362(d)(1)

Pursuant to 11 U.S.C. § 362(d)(1), a party-in-interest may be granted relief from the automatic stay for "cause." Section 362(d)(1) does provide that "cause" can include lack of adequate protection. Further, courts have consistently held that a debtor's failure to make contractually obligated payments to a creditor constitutes "cause." *In re Delaney-Morin*, 304 B.R. 365, 370 (9th Cir. B.A.P. 2003); *In re Jones*, 189 B.R. 13,15 (Bankr. E.D. Okla. 1995); *In re Balco Ltd.*, 312 B.R. 734, 749 (Bankr. S.D.N.Y. 2004) (continued failure to make monthly payments under loan documents can constitute cause for granting relief from automatic stay and cause typically exists where failure to make monthly payments corresponds with nonexistent equity cushion). Additionally, courts recognize that a debtor's bad faith in filing bankruptcy may constitute cause to terminate the automatic stay. *See, e.g., In re Arnold*, 806 F.2d 937, 939 (9th Cir. 1986). In this matter, Secured Creditor lacks adequate protection. Moreover, recent actions, including pre-petition mergers and other corporate transactions, evidence of bad faith.

#### a. Secured Creditor Is Not Adequately Protected

Cause exists to terminate the stay because Secured Creditor is not adequately protected. Pursuant to the Bankruptcy Code, once the movant establishes that debtor does not have equity in the subject property, the burden on all other issues shifts to the debtor. 11 U.S.C. § 362(g). *See also Sun Valley Ranches, Inc. v. Equitable Life Assurance Society of the United States (In re Sun Valley Ranches, Inc.)*, 823 F.2d 1373, 1376 (9th Cir. 1987) (debtor has burden to prove that movant's

interest in property at issue is adequately protected). As set forth above, the Debtor's own schedules evidence that the Debtor lacks equity in the Property.

Moreover, the Debtor will not be able to satisfy its burden of proving adequate protection. A secured creditor lacks adequate protection if there is a threat of decline or an actual decline in the value of its collateral. *In re Delaney-Morin*, 304 B.R. at 370 n.3 (noting that secured creditor lacks adequate protection if there is threat of decline in value of its collateral). In this case, not only is there a threat of decline in value given the general decline of value of real estate nationally and especially in the immediate geographical area of the Property, but there has also been substantial actual decline in value. In short, in the Hallett Declaration, Mr. Hallett states that the Real Property was purchased in January 2006 for $5,170,000. Secured Creditor received an appraisal (the "Movant Appraisal")[4] that valued the Real Property at $2,540,000 ("as is market value") as of December 1, 2010 and Debtor has provided Secured Creditor with an appraisal (the "Debtor Appraisal" and together with the Movant Appraisal, the "Appraisals") that valued the Real Property at $1,780,000 as of March 2, 2011. *See* Docket No. 307. Accordingly, not only has the value of the Property decreased substantially but the rate thereof has accelerated considerably within the last year. Therefore, the Debtor cannot possibly satisfy its burden of proving Secured Creditor is adequately protected and thus, cause exists to lift the stay.

### b.    The Debtor Has Failed to Make Monthly Payments

It is well-established that a debtor's failure to make its regular monthly payments to a creditor, coupled with a small or non-existent equity cushion, constitutes "cause" to terminate the automatic stay. *In re Balco Ltd.*, 312 B.R. at 749 (continued failure to make monthly payments under loan documents can constitute cause for granting relief from automatic stay and cause typically exists where failure to make monthly payments corresponds with nonexistent equity cushion); *Equitable Life Assurance Society v. James River Assoc. (In re James River Assoc.),* 148 B.R. 790 (E.D. Va. 1992) (same); *Delaney-Morin*, 304 B.R. at 370; *In re Jones*, 189 B.R. at 15. As set forth above, Debtor has failed to make the payments due under the Loan Documents and there is

---

[4] The Movant Appraisal is voluminous. The relevant pages from the Movant Appraisal are attached hereto as Exhibit A.

no equity cushion[5]. Specifically, Debtor has not made the monthly payments as required under the Loan Documents since about March 1, 2010 and Secured Creditor has a claim of approximately $2,766,020.55 leaving a substantial deficiency amount. Accordingly, "cause" exists to terminate the stay due to Debtor's failure to make regular monthly payments.

### c. The Debtor's Recent Actions Evidence Bad Faith

Cause exists to terminate the stay when a debtor files bankruptcy in bad faith. *See* 11 U.S.C. § 362(d); *see also In re Arnold*, 806 F.2d at 939. "The existence of good faith depends on an amalgam of factors and not upon a specific fact. The test is whether a debtor is attempting to deter and harass creditors or attempting a speedy, efficient reorganization on a feasible basis." *Marsch v. Marcsch* (*In re Marsch*), 36 F.3d 825, 828 (9th Cir. 1994); *see also Adelson v. Smith* (*In re Smith*), 389 B.R. 902, 924 (Bankr. D. Nev. 1998). Once a movant establishes the existence of a genuine issue concerning the debtor's lack of good faith, the debtor then bears the burden of proving good faith by a preponderance of the evidence. *See, e.g., In re Yukon Enterprises*, 39 B.R. 919, 921-22 (Bankr. CD. Cal. 1984); *In re Setzer*, 47 B.R. 340, 345 (Bankr. E.D.N.Y. 1985).

In determining whether a creditor has filed in bad faith, courts look to the following factors: (i) the debtor has only one asset; (ii) secured creditors' liens encumber the asset; (iii) there are no employees except for principals, and there is little or no cash flow, and no available sources of income to sustain a plan of reorganization or to make adequate protection payments; (iv) the property has been posted for foreclosure because of arrearages on debt, and the debtor has been unsuccessful in defending against foreclosure in state court; (v) there are few, if any, unsecured creditors whose claims are relatively small; (vi) there are allegations of wrongdoing on the part of the debtor or its principals; (vii) bankruptcy offers the only possibility of forestalling loss of the property; and (viii) there is "new debtor syndrome." *Little Creek*, 779 F.2d at 1073. "The 'new debtor syndrome" is the situation in which a one-asset entity has been created or revitalized on the eve of foreclosure to isolate the insolvent property and its creditors, exemplifies, although it does not uniquely categorize, bad faith cases." *Id*. The *Little Creek* court went on to note that "[r]esort to the

---

[5]   The Debtor has made certain small payments to the Secured Creditor since the Petition Date. The Debtor has characterized these payments as "adequate protection" payments. However, these payments are not only not the monthly payments required by the Loan Documents (even before acceleration) but also do not constitute "adequate protection."

protection of the bankruptcy laws is not proper under these circumstances because there is no going concern to preserve, there are no employees to preserve, and there is no hope of rehabilitation, except according to the debtor's 'terminal euphoria.'" *Id*.

The *Little Creek* factors weigh heavily in favor of a finding of bad faith in this case. Until roughly two days before the Petition Date, Debtor consisted of single asset real estate entities ("SAREs"), each with their own separate loans. Most of these properties were in receivership in State Court prior to the chapter 11 filing. Thus, several of the bad faith factors are present in the instant case: (i) secured creditors' liens encumber most of the debtor's property, (ii) state court litigation where the debtor has thus far been unsuccessful, (iii) as a result of the receiverships, minimal, if any, cash flow so as to sustain a plan of reorganization or make adequate protection payments, and (iv) bankruptcy offering the only possibility of forestalling loss of the property.

Further, until the mergers immediately prior to the Petition Date, the Debtor was comprised of SAREs. If those SAREs had filed individually, they would have undoubtedly been subject to § 362(d)(3) that would have required them to make adequate protection payments or file a reorganization plan with a reasonable possibility of confirmation within 90 days. The mergers, which arguably constitute a defacto substantive consolidation without satisfying the requirements therefor, unnecessarily complicate the case and prejudice all of Debtor's creditors, not merely those creditors who issued loans to Debtor as a pre-bankruptcy, SARE. Especially given that prior to the Petition Date, most of the SAREs were in the hands of a court-appointed receiver, the Debtor's mergers are evidence that the Debtor is not focusing on a "speedy, efficient reorganization on a feasible basis" but is instead seeking to "deter and harass creditors." *See Smith*, 389 B.R. at 924. Accordingly, cause exists to terminate the stay based on Debtor's recent actions.

**B.    Alternatively, The Debtor Is Subject To 11 U.S.C. § 362(d)(3) And Thus, The Stay Should Automatically Terminate Pursuant Thereto**

If this Court does not immediately terminate the stay pursuant to 11 U.S.C. § 362(d)(2) or (d)(1), Secured Creditor avers that the Debtor's case is a single asset real estate ("SARE") case and that the stay should be automatically terminated, without further action or order, 30 days from the date this Court finds that the Debtor's case is an SARE case. As a preliminary matter, the

Bankruptcy Code defines SARE as "real property constituting a single property or project . . . which generates substantially all of the gross income of a debtor who is not a family farmer and on which no substantial business is being conducted by a debtor other than the business of operating the real property and activities incidental." 11 U.S.C. § 101(51B).

In the Hallett Declaration, Mr. Hallett, as sole manager of Debtor, asserts that: (i) Debtor's properties include "office, warehouse, and light industrial space;" (iii) "[b]ased on current occupancy rates . . . Debtor's projected net operating income before administrative expenses is $1,300,000;" and (iv) "court ordered receivers have been appointed for nine of Debtor's properties thereby depriving Debtor of all cash flow generated by those properties and causing further deterioration in occupancy." *See* Hallett Declaration ¶¶ 2, 4-5, 7-8. Moreover, courts have repeatedly found that warehouse facilities constitute SARE. *See, e.g., In re 221-06 Merrick Blvd. Assocs. LLC,* No. 10-45657, 2010 Bankr. LEXIS 4431 (Bankr. E.D.N.Y. Dec. 3, 2010) (noting that debtor was limited liability company that owned warehouse and that debtor's case was SARE case); *In re Salem Logistics Distrib. Servs., LLC*, No. 09-50505C-11, 2009 Bankr. LEXIS 1679 (Bankr. M.D.N.C. June 22, 2009) (same). Accordingly, until the mergers immediately prior to the Petition Date, the Debtor was comprised of SAREs and the Debtor should be subject to the requirements of Section 362(d)(3).

Section 362(d)(3) sets forth specific conditions for relief from stay of an act against SARE. In particular, section 362(d)(3) provides in relevant part:

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection ( a) of this section, such as by terminating, annulling, modifying, or conditioning such stay-
>
> ... (3) with respect to a stay of an act against single asset real estate under subsection (a), by a creditor whose claim is secured by an interest in such real estate, unless, not later than the date that is 90 days after the entry of the order for relief ... or 30 days after the court determines that the debtor is subject to this paragraph, whichever is later-
>
> > (A) the debtor has filed a plan of reorganization that has a reasonable possibility of being confirmed within a reasonable time; or
> >
> > (B) the debtor has commenced monthly payments that-
> >
> > > (i) may, in the debtor's sole discretion, notwithstanding

> Section 363(c)(2), be made from rents or other income generated before, on, or after the date of the commencement of the case by or from the property to each creditor whose claim is secured by the real estate (other than a claim secured by a judgment lien or by an unmatured statutory lien); and
>
> (ii) are in an amount equal to interest at the then applicable nondefault contract rate of interest on the value of the creditor's interest in the real estate.

11 U.S.C. § 362(d)(3)(B). The Ninth Circuit Bankruptcy Appellate Panel has stated that "relief under § 362(d)(3) is *mandatory* where its provisions are not strictly complied with." *In re CBJ Development, Inc.*, 202 B.R. 467, 470 (9th Cir. BAP 1996) (quoting *In re LDN Corp.*, 191 B.R. 320, 327 (Bankr. E.D. Va. 1996) (emphasis added)); *see also In re Kkemko, Inc.*, 181 B.R. 47, 49 (Bankr. S.D. Ohio 1995) (noting that consequence of not meeting requirements of § 362(d)(3) is that automatic stay "may be lifted without further ado").

As set forth above, until the mergers immediately prior to the Petition Date, the Debtor was comprised of SAREs. The Debtor should not be permitted to avoid the 90 day requirements of § 362(d)(3) because two days prior to its Petition Date, it merged all of the SAREs into one entity. Moreover, because 90 days have now passed since the Petition Date and because the Debtor has not filed a disclosure statement or scheduled a hearing on its plan of reorganization; nor has it commenced monthly payments to Secured Creditor. Accordingly, the Debtor has thus far failed to meet the requirements of § 362(d)(3). Therefore, the stay should automatically terminate on a day that is 30 days from the date this Court determines that § 362(d)(3) applies without the need or requirement for further order of this Court or for Secured Creditor to take any further action.

**C.    Alternatively, If The Court Does Not Lift The Stay, Secured Creditor Shall Be Entitled To Adequate Protection Pursuant to 11 U.S.C. § 363(e),**

If the Court declines to grant relief from the automatic stay, Secured Creditor is entitled to adequate protection pursuant to 11 U.S.C. § 363(e). Pursuant to Section 363(e), "on request of an entity that has an interest in property used, sold or leased, or proposed to be used, sold or leased, by the trustee, the court with or without a hearing, shall prohibit or condition such use, sale or lease as is necessary to provide adequate protection of such interest." 11 U.S.C. § 363(e). Adequate protection

may include periodic cash payments equivalent to decrease in value, an additional or replacement lien on other property, or other relief that provides the indubitable equivalent. 11 U.S.C. § 361; *In re Mellor*, 734 F.2d 1396, 1400 (9th Cir. 1984).

As set forth above, the Debtor's schedules evidence that the Debtor lacks equity in the Property and the Appraisals show a substantial and accelerating decrease in value of the Real Property. The Debtor cannot offer replacement liens as it does not have sufficient unencumbered property. Nor can it offer any other form of protection that constitutes an "indubitable equivalent". Therefore, Secured Creditor is entitled to receive periodic cash payments from the Debtor equal to the decline in value of the Property.

## VI.  CONCLUSION

For the reasons set forth above, Secured Creditor respectfully requests that the Court (I) (A) enter an order terminating the automatic stay pursuant to 11 U.S.C. § 362(d)(2) and (d)(1) to permit Secured Creditor to exercise any and all of its available rights and remedies in and to its collateral and provide therein that, pursuant to Federal Rule of Bankruptcy Procedure 4001(a)(3), the Court's order take effect immediately and the fourteen (14) day stay period set forth therein expressly not apply, (B) or alternatively, find that the Debtor is subject to the single asset real estate requirements set forth in 11 U.S.C. § 362(d)(3) and enter an order providing that the automatic stay terminates, without the need for further action or order, automatically 30 days from the date of such order, (C) or alternatively, grant Secured Creditor adequate protection in form of periodic cash payments pursuant to 11 U.S.C. §§ 363(e) and 361 and (II) grant such other relief as is just and proper.

DATED: May 4, 2011

DUANE MORRIS LLP

By:  */s/ Lucas M. Gjovig*
 Dominica C. Anderson (SBN 2988)
 Lucas M. Gjovig (SBN 10053)

Attorneys for Secured Creditor and Movant
GSMS 2004-GG2 SPARKS INDUSTRIAL, LLC